**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 2 2 2026

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

) Civil Action No. 4:26cv611D PM

)

Plaintiff,

) JURY TRIAL DEMANDED

v.

)

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED; ALIBABA.COM US E-COMMERCE CORP.; ALIBABA GROUP HOLDING LIMITED; ZICHANG NEW MATERIALS (SHANDONG) CO., LTD.; ZHISHANG NEW MATERIALS (SHANDONG) CO., LTD. (name variation to be clarified); SHAANXI BLOOM TECH CO., LTD.; JOHN DOE ALIBABA.COM OWNER / OPERATOR / PARENT / AFFILIATE / ALTER-EGO ENTITIES 1-10; and JOHN DOE SELLER ACCOUNT OPERATORS, SALES AGENTS, PAYMENT BENEFICIARIES, AND CO-CONSPIRATORS 1-20,

)

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

Defendants.

### COMPLAINT FOR CIVIL RICO, RICO CONSPIRACY, FRAUD, BREACH OF CONTRACT, DECEPTIVE TRADE PRACTICES, UNJUST ENRICHMENT, AND RELATED RELIEF
### Civil RICO Case Statement Included

Plaintiff Bradley Burchfield, appearing pro se only as to his own individual claims and not purporting to represent any separate limited liability company unless counsel appears for that entity, alleges as follows based on personal knowledge as to his own actions and records and on information and belief as to Defendants' internal acts, account relationships, payment routing, and communications:

### I. NATURE OF THE ACTION

1. This is a civil action arising from an Alibaba.com Trade Assurance transaction, Order No. 9190609050102758582, dated on or about June 1, 2021, involving a chemical product

Page 1

identified in the contract records as factory N-Isopropylbenzylamine, CAS 102-97-6, and related communications and payment records.

2. The prior state-court transfer motion was framed as a request to leave small claims court because the amended damages sought exceeded the small-claims and district-civil monetary limits. This federal pleading is different. It is drafted as a new federal civil complaint, not as a plaintiff's notice of removal from state court.

3. The core theory is that Defendants and related John Doe participants operated an association-in-fact enterprise using Alibaba.com marketplace accounts, Trade Assurance representations, seller identities, sales-agent communications, and United States payment channels to induce Plaintiff and similarly situated buyers to pay money for chemical orders while failing to deliver the contracted goods, failing to honor Trade Assurance remedies, concealing or denying logistics/dispute records, and using coercive communications to discourage complaints or reports.

4. Plaintiff pleads in the alternative under Federal Rule of Civil Procedure 8(d): Plaintiff alleges that the contracted goods were not delivered as promised. To the extent Defendants contend that any goods were delivered, Plaintiff alternatively alleges that the goods were not as represented, were not fit for the lawful commercial/rust-inhibitor use represented to Plaintiff, and did not satisfy the contract, advertising, or Trade Assurance promises.

5. Plaintiff does not admit any unlawful purpose for any purchase. Plaintiff alleges that the product was represented and sold to him as a lawful commercial or industrial product and/or rust-inhibitor product, and Plaintiff seeks relief for injury to his business or property arising from alleged deception, non-delivery, failed dispute resolution, and wrongful retention of money.

## II. PARTIES

6. Plaintiff Bradley Burchfield is an Arkansas resident. Plaintiff alleges that he paid for, controlled, or beneficially owned the claim arising from Alibaba.com Order No. 919060905010127582 and suffered direct injury to his business or property. To the extent the Court determines that Burchfield Sales and Consulting LLC is the real party in interest, Plaintiff requests leave under Rule 17(a)(3) for ratification, joinder, substitution, or appearance of counsel for the LLC, rather than dismissal on that technical ground.

7. Defendant Alibaba.com Singapore E-Commerce Private Limited is identified in Plaintiff's records as the marketplace operator connected to the transaction. Plaintiff alleges that this entity operated or controlled material portions of the Alibaba.com marketplace, Trade Assurance contracting system, order records, buyer communications, and dispute-resolution process relevant to this case.

8. Defendant Alibaba.com US E-Commerce Corp. is alleged to be a United States Alibaba.com entity involved in or benefitting from United States-facing marketplace operations, seller support, buyer support, payments, records, and/or dispute-resolution functions. Its precise role is presently within Defendants' control and requires discovery.

9. Defendant Alibaba Group Holding Limited is alleged to be a parent, affiliate, alter ego, or controlling entity for Alibaba.com marketplace operations and policies, including seller onboarding, Trade Assurance representations, payment infrastructure, and dispute-

resolution systems. Plaintiff does not sue Alibaba Group merely because it is an investor or parent; Plaintiff sues based on alleged operational control, participation, benefit, or agency relationships to be proven through discovery.

10. Defendant Zichang New Materials (Shandong) Co., Ltd. is identified in the Trade Assurance Purchase Contract as the seller for Order No. 91906090501027582.

11. Defendant Zhishang New Materials (Shandong) Co., Ltd. is identified in uploaded payment records as a beneficiary associated with a domestic wire transfer account. Plaintiff alleges that Zichang and Zhishang may be a spelling, translation, affiliate, alias, account, or alter-ego variation related to the seller and requests discovery to determine the correct legal identity.

12. Defendant Shaanxi Bloom Tech Co., Ltd. is identified in uploaded payment records and the bloomtechz.com email address. Plaintiff alleges that this entity or its agents participated in related chemical-product solicitations, payment routing, buyer communications, or post-order communications.

13. The John Doe Alibaba.com owner/operator/parent/affiliate/alter-ego entities are presently unknown entities that owned, operated, controlled, administered, profited from, or provided records, payment, Trade Assurance, customer-service, seller-vetting, or dispute-resolution functions for the transaction and enterprise.

14. The John Doe seller account operators, sales agents, payment beneficiaries, and co-conspirators include persons using or associated with names, accounts, and communications such as Sweety Yin, Aurora Song, Erica Wang, sales@bloomtechz.com, and other marketplace or payment-account actors whose full legal identities, employers, agency relationships, and service addresses are presently unknown.

15. At all relevant times, each Defendant acted personally, through agents, through affiliated accounts, or through an association-in-fact enterprise, and each Defendant is liable for its own acts and for acts of agents, alter egos, co-conspirators, or joint enterprise participants where proven.

### III. JURISDICTION AND VENUE

16. This Court has federal-question jurisdiction under 28 U.S.C. Section 1331 because Plaintiff asserts claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1961-1968.

17. This Court has civil RICO jurisdiction and remedial authority under 18 U.S.C. Section 1964(c), which authorizes a person injured in business or property by reason of a violation of 18 U.S.C. Section 1962 to sue in an appropriate United States district court for treble damages, costs, and attorney fees.

18. This Court has supplemental jurisdiction under 28 U.S.C. Section 1367 over the related Arkansas and common-law claims because they arise from the same case or controversy as the federal RICO claims.

19. Venue is proper under 28 U.S.C. Section 1391 because Plaintiff resides in Arkansas, a substantial part of the events or omissions giving rise to the claims occurred in Arkansas, the goods or money were directed to or from Arkansas, electronic communications were

received in Arkansas, and one or more foreign Defendants may be sued in any judicial district where personal jurisdiction exists.

20. The enterprise affected interstate and foreign commerce because it used an international e-commerce marketplace, electronic mail, internet platform transmissions, United States bank accounts and/or United States payment channels, and communications between Arkansas, China, Singapore, California, New York, and other locations.

21. Personal jurisdiction exists because Defendants purposefully directed marketplace sales, Trade Assurance contracting, electronic communications, payment channels, customer-service communications, and dispute-resolution activity toward Plaintiff in Arkansas and/or the United States, and Plaintiff's injuries arise from those contacts.

## IV. NOTICE REGARDING PRIOR FEDERAL ACTION

22. Plaintiff previously filed Burchfield v. Alibaba Group et al., Civil No. 1:22-cv-01023, in the United States District Court for the Western District of Arkansas. That action was dismissed at preservice screening after the magistrate judge concluded that the earlier pleading did not adequately plead, among other things, a RICO enterprise distinct from the alleged racketeering activity, the particularized who/what/when/where/how of fraud as to most defendants, interstate wire communications, a plausible witness-tampering or retaliation predicate, and a controlled-substance predicate.

23. This Complaint is drafted to address those identified pleading defects by: (a) pleading a narrower operational association-in-fact enterprise; (b) identifying concrete marketplace, seller, sales-agent, payment, and customer-service roles; (c) pleading specific electronic communications, order records, payment records, email solicitations, and dates; (d) focusing the RICO predicates on wire fraud and only pleading witness-intimidation as an alternative predicate if discovery links the communications to Defendants; and (e) seeking damages for business or property injury, not personal injury or generalized grievances.

24. Plaintiff does not intend to relitigate claims that a court determines were finally adjudicated in the prior case. Plaintiff alleges separate, additional, and continuing facts, including the specific Trade Assurance Order No. 919060905 01027582, bank/payment records, post-transaction email solicitations, post-dismissal customer-service communications, and continued refusal to provide meaningful relief. Plaintiff pleads these facts to the fullest extent not barred by claim preclusion, issue preclusion, statutes of limitation, or other defenses.

## V. FACTUAL ALLEGATIONS

### A. Trade Assurance Contract and Order

25. On or about June 1, 2021, Plaintiff entered into or paid for Alibaba.com Order No. 919060905 01027582 through Alibaba.com's Trade Assurance system.

26. The Trade Assurance Purchase Contract identifies the seller as Zichang New Materials (Shandong) Co., Ltd. and identifies the buyer or contact as Burchfield Sales and Consulting LLC / Bradley Burchfield.

27. The contract identifies the product as "factory N-Isopropylbenzylamine CAS 102-97-6," quantity 1.00 kilograms, unit price $615.00, shipping fee $50.00, insurance charges $50.00, and total contract amount $715.00. Plaintiff's state-court motion alleges that Plaintiff paid $736.38 on or about June 1, 2021, including any platform, payment, tax, insurance, shipping, or related charges.

28. The contract and Alibaba.com records represented that the order was subject to Trade Assurance terms, including shipment, delivery, documentation, dispute determination, and refund/remedy processes if the seller failed to ship or failed to deliver goods in compliance with the contract.

29. Plaintiff alleges that the material representations inducing payment included, without limitation, that the seller was a real registered seller, that Alibaba.com's Trade Assurance process provided meaningful protection, that payment would be applied to a legitimate transaction, that the contracted goods would be shipped and delivered, and that Plaintiff could obtain a refund, credit, or other meaningful remedy if the seller failed to perform.

30. Plaintiff paid money in reliance on those representations. Plaintiff alleges that Defendants accepted, routed, processed, retained, benefitted from, or controlled the proceeds of that transaction.

31. Plaintiff alleges that the contracted goods were never delivered as promised. In the alternative, if any product or substitute was sent, Plaintiff alleges it was not delivered as contracted, was not fit for the lawful commercial/rust-inhibitor use represented to Plaintiff, did not conform to the order, and did not satisfy the Trade Assurance representations.

## B. Marketplace, Seller, and Payment Communications

32. Plaintiff's uploaded Alibaba message record shows a communication from a seller account identified as "Sweety Yin" stating that, due to Alibaba's monitoring, orders over $5,000 must be delivered to Alibaba for transportation, that the seller sent a pro forma invoice for a 1,000 kg order, and that payment could be made by bank. Plaintiff alleges that this communication shows the use of Alibaba.com platform messages, seller-agent accounts, Alibaba monitoring representations, and bank-payment routing in the same general course of chemical-product sales.

33. Plaintiff's uploaded payment records identify United States domestic wire-transfer account information for Shaanxi Bloom Tech Co., Ltd. through Citibank N.A., New York Branch, with a beneficiary address in San Mateo, California. For public filing, Plaintiff identifies the account only by beneficiary name and account ending 8500 unless the Court permits or requires an unredacted filing under seal.

34. Plaintiff's uploaded payment records also identify United States domestic wire-transfer account information for Zhishang New Materials (Shandong) Co., Ltd. through Citibank N.A., New York Branch, with a beneficiary address in San Mateo, California. For public filing, Plaintiff identifies the account only by beneficiary name and account ending 3443 unless the Court permits or requires an unredacted filing under seal.

35. Plaintiff alleges that these bank records are material because they show that foreign seller or affiliate entities used United States banking channels, United States addresses, and United

States wire-transfer infrastructure in connection with the same marketplace or seller network at issue.

36. Plaintiff alleges on information and belief that Defendants used multiple related names, seller accounts, sales agents, beneficiary names, and payment instructions to move money, conceal responsible parties, avoid direct refund obligations, and frustrate customer disputes.

## C. Threatening, Coercive, and Concealment Communications

37. On or about January 9, 2022, an email from sales@bloomtechz.com to Plaintiff under the subject line "Details N-Isopropylbenzylamine" promoted a "Fresh batch" of "Blue Pure N iso crystal," stated that 16 kg was in stock, and listed prices for 100g, 500g, and 1kg quantities.

38. The January 9, 2022 email advertised and priced chemical products including N-Isopropylbenzylamine, CAS 102-97-6; 4-Isopropylbenzylamine, CAS 4395-73-7; and 2-Amino-4-phenylbutane (2A4P), CAS 22374-89-6.

39. The January 9, 2022 email solicited direct contact through WhatsApp/WeChat, identified the sender as a sales manager, and used language about "effect," crystal form, smell or no smell, customization, food grade, molecule formula, chemical structure, and pharmaceutical properties to market the products.

40. The same January 9, 2022 email further stated, in substance and as shown on page 2 of the email exhibit, that from the sender's chemical-research opinion the product was the "Same Molecule Formula of C10H15N." Plaintiff alleges that C10H15N is the molecular formula commonly associated with methamphetamine, and that the seller's own language created a material red flag that the product was being compared to, substituted for, or promoted in relation to a controlled stimulant substance. Plaintiff does not allege that molecular formula alone conclusively proves illegality; Plaintiff pleads the statement as evidence of knowledge, deceptive marketing, concealment, represented effect, and the need for discovery and expert testimony.

41. The same email did not merely identify an ordinary industrial chemical. It discussed product "effect," crystal form, smell or no smell, customization, "Food grade," "diluting," molecule formula, chemical-space structure, and "pharmaceutical properties." Plaintiff alleges these statements are relevant to the factors used to evaluate whether a product was marketed, advertised, labeled, represented, or intended for a non-industrial use, including a use implicating the Federal Analogue Act.

42. Plaintiff pleads, in the alternative and subject to discovery and expert testimony, that if the product marketed as N-Isopropylbenzylamine / "N ISO" is proven to have a substantially similar chemical structure to methamphetamine or another Schedule I or II controlled substance, and if the product was represented, intended, marketed, or distributed to have substantially similar stimulant effects or was intended for human consumption, then the January 9, 2022 email supports a controlled-substance-analogue theory under 21 U.S.C. Sections 802(32)(A) and 813.

43. Plaintiff further alleges, in the alternative, that if the controlled-substance-analogue elements are proven, the alleged dealing, marketing, sale, attempted sale, concealment, or distribution of such analogue would be relevant to the RICO definition of racketeering

activity under 18 U.S.C. Section 1961(1), including controlled-substance or listed-chemical racketeering activity, independent of and in addition to the wire-fraud theory. Plaintiff does not seek to privately prosecute the Controlled Substances Act; Plaintiff pleads these facts to show fraudulent inducement, scienter, concealment, intimidation, deceptive trade practices, RICO predicate context, and the need for discovery.

44. The January 9, 2022 email contained statements that Plaintiff understood as threatening, intimidating, or coercive, including: "Each words and pictures here is real, dont talk about any fake here!" and "It must be a legal product, otherwise you have better keep silent."

45. Plaintiff alleges that these statements were intended or reasonably calculated to discourage Plaintiff and other buyers from disputing sales, reporting deceptive advertising, challenging the legality or legitimacy of products, or seeking credit, refund, chargeback, Trade Assurance relief, law-enforcement review, or court relief.

46. On or about April 10, 2022, Plaintiff replied to sales@bloomtechz.com and stated, in substance, that the product was advertised for rust-inhibitor use, did not work as advertised, and Plaintiff hoped for credit. Plaintiff did not admit any unlawful use or purpose.

47. Plaintiff's uploaded Facebook-message screenshots show threats and insulting messages from an account identified as "Gera Vid So," including statements in Spanish that Plaintiff understands as meaning, among other things, "tell her she is going to pay," "she is going to suffer," and related abusive language. Plaintiff alleges that these communications contributed to intimidation and fear surrounding his complaints. Because the sender's legal identity and relationship to Defendants require discovery, Plaintiff does not rely on these Facebook messages as necessary RICO predicates unless discovery confirms agency, direction, or ratification by one or more Defendants.

48. Plaintiff alleges that the coercive email and threatening messages are relevant to motive, concealment, intimidation, and continuity, and that discovery is required to determine whether Defendants, their sales agents, seller accounts, or co-conspirators sent, authorized, ratified, or benefitted from those communications.

**D. Failure of Trade Assurance and 2026 Customer-Service Email**

49. Plaintiff repeatedly attempted to resolve the matter through Alibaba.com's internal complaint or dispute-resolution process. Plaintiff alleges that for approximately three years he received no meaningful delivery, refund, credit, disclosure of logistics records, or remedy.

50. On or about June 18, 2026, Alibaba Customer Service sent Plaintiff an email concerning "Solution for Trade Assurance Order 919060090501027582." The email stated that Plaintiff's complaint had been escalated to a senior team.

51. The June 18, 2026 email stated that because the order was over three years old, logistics information could no longer be verified, and that the platform had no record of Plaintiff contacting customer service regarding the order.

52. The June 18, 2026 email offered Plaintiff a $500 Alibaba credit, valid for 90 days, for use toward a future Trade Assurance order, including product and shipping costs, but excluding payment-processing fees, taxes, or other additional services. The email instructed Plaintiff to reply "AGREE" if Plaintiff accepted that option.

53. Plaintiff alleges that the June 18, 2026 email is not a full refund, not return of the money paid, and not a meaningful remedy for Plaintiff's alleged injury. Plaintiff further alleges that the email supports his claims that Defendants failed to preserve, disclose, or honor logistics and dispute-resolution records while attempting to convert Plaintiff's refund demand into a future platform credit that would require additional dealings with Defendants.

54. Plaintiff alleges that Defendants' failure to maintain or produce logistics and customer-service records was foreseeable and wrongful because Alibaba.com and its Trade Assurance entities controlled the electronic order records, communications, payment records, seller account records, and dispute-resolution records necessary to resolve the claim.

## VI. CIVIL RICO ALLEGATIONS

### A. RICO Persons

55. Each named Defendant and each John Doe Defendant is a "person" within the meaning of 18 U.S.C. Section 1961(3) because each is an individual or entity capable of holding a legal or beneficial interest in property.

56. Plaintiff alleges that each Defendant named in the RICO counts conducted, participated in, agreed to conduct, or conspired to conduct the affairs of the enterprise through a pattern of racketeering activity, or knowingly benefitted from the enterprise while enabling the fraudulent scheme described herein.

### B. Association-in-Fact Enterprise

57. The RICO enterprise is an association-in-fact enterprise that Plaintiff refers to as the "Trade Assurance Chemical Sales Enterprise." The enterprise is distinct from any one Defendant and consisted of Alibaba.com marketplace operators, seller-account entities, related beneficiary entities, sales agents, customer-service/dispute-resolution personnel, payment beneficiaries, and John Doe participants who associated together to sell, process, receive money for, conceal, and avoid refund obligations for chemical-product orders marketed through or connected to Alibaba.com and related seller communications.

58. The enterprise had a common purpose: to obtain money from Plaintiff and other buyers by representing that chemical products and Trade Assurance-backed orders were legitimate, deliverable, protected, and refundable/creditable if not performed, while using multiple seller names, payment channels, post-sale communications, and dispute-resolution practices to retain money and avoid accountability when orders failed.

59. The enterprise had relationships among its participants. Alibaba marketplace entities provided the platform, Trade Assurance contract documents, order number, seller account infrastructure, buyer-facing representations, customer-service communications, dispute records, and platform credibility. Seller entities and sales agents supplied product descriptions, pricing, invoices, product solicitations, and buyer communications. Payment beneficiaries supplied or used domestic wire-transfer accounts and payment instructions. Customer-service personnel handled, denied, delayed, or limited remedies after complaints.

60. The enterprise had longevity sufficient to pursue its purpose. Plaintiff alleges the enterprise operated at least from the June 2021 Trade Assurance order, through the January 2022

chemical-solicitation email, through Plaintiff's April 2022 credit request, and through Alibaba's June 2026 customer-service email. The email language referring to a "group of buyers," "stable buyers," "senior buyer," and buying "more chemicals" further supports an ongoing multi-buyer business operation rather than an isolated one-time mistake.

61. The enterprise had an ascertainable structure distinct from the predicate racketeering acts. Its structure included seller onboarding and account maintenance, Trade Assurance contracting, sales-agent communication, pricing and product descriptions, payment routing, logistics and order records, complaint intake, customer-service escalation, and final credit/refund decisions.

## C. Pattern of Racketeering Activity

62. Plaintiff alleges a pattern of racketeering activity consisting primarily of multiple acts indictable as wire fraud under 18 U.S.C. Section 1343 and, if discovery supports the required agency and intent, additional acts indictable as witness or victim intimidation under 18 U.S.C. Section 1512(b)(3). Plaintiff also pleads, in the alternative and subject to discovery and expert testimony, controlled-substance / analogue racketeering activity to the extent the evidence establishes conduct involving a controlled substance analogue under 21 U.S.C. Sections 802(32)(A) and 813 and a qualifying RICO predicate under 18 U.S.C. Section 1961(1).

63. The predicate acts were related because they had the same or similar purpose, participants, methods, and victims: inducing buyers to pay for chemical-product orders or future orders through electronic communications and marketplace records, retaining payment or benefit when performance failed, and discouraging complaints or reports.

64. The predicate acts satisfy continuity because they occurred over multiple years, involved more than one communication and account, referenced multiple buyers and repeat purchases, used ongoing marketplace and payment infrastructure, and continued through the 2026 customer-service attempt to resolve the matter through future credit rather than refund.

65. Plaintiff alleges that the predicate acts directly caused injury to his business or property because Plaintiff paid money and lost the use of money, goods, business time, business opportunities, and related property interests in reliance on the alleged misrepresentations and omissions.

## D. Predicate Acts Pleaded With Particularity

The following allegations are pleaded to identify the who, what, when, where, and how of the alleged wire-fraud and intimidation predicates. Plaintiff expects discovery to supply internal records, sender identities, IP/account logs, seller-verification records, payment-routing records, and agency relationships.

| Approx. Date | Actor(s) | Communication / Conduct | Material Misrepresentation or Omission | RICO Predicate |
|---|---|---|---|---|
| June 1, 2021 | Alibaba.com marketplace entities; Zichang New Materials; seller account operators | Electronic Trade Assurance Purchase Contract and order record for Order No. 91906090501027582. | Represented that the seller and order were legitimate, Trade Assurance-backed, deliverable, documented, and subject to meaningful refund/remedy protections. | Wire fraud, 18 U.S.C. 1343 |
| June 1, 2021 | Marketplace/payment participants and seller/beneficiary entities | Electronic payment/order processing for contract amount $715.00 and alleged total paid $736.38. | Caused Plaintiff to part with money by representing that payment would secure conforming goods and Trade Assurance protection. | Wire fraud, 18 U.S.C. 1343 |
| June 2021 and related period | Seller agent/account identified as Sweety Yin and related seller entities | Alibaba.com message stating that Alibaba monitoring required certain high-value orders to be delivered to Alibaba for transportation, and soliciting payment by bank for a 1,000 kg pro forma invoice. | Represented Alibaba monitoring/logistics and bank-payment procedures in a manner Plaintiff alleges was used to legitimize seller conduct and payment routing. | Wire fraud, 18 U.S.C. 1343; evidence of enterprise structure |
| Jan. 9, 2022 | sales@bloomtechz.com; Aurora Song or related sales agent; Shaanxi Bloom Tech / related entities | Email titled "Details N-Isopropylbenzylamine" soliciting chemical purchases, direct WhatsApp/WeChat contact, price lists for multiple products, references to "effect," "diluting," "Food grade," chemical-space structure and pharmaceutical properties, and stating the product had the "Same Molecule Formula of C10H15N." | Represented legitimacy, availability, product characteristics, potential effects, molecular formula, and legality while using direct channels and warning buyers to keep silent if legality was questioned; supports scienter, concealment, and the alternative analogue theory subject to proof. | Wire fraud, 18 U.S.C. 1343; alternative intimidation predicate if intent and agency are proven; alternative controlled-substance / analogue racketeering predicate if expert proof establishes 21 U.S.C. 802(32)(A), 813 elements and 18 U.S.C. 1961(1) requirements. |
| Apr. 10, 2022 onward | Related seller/email recipients and Doe participants | Plaintiff requested credit after stating the product was advertised for rust-inhibitor use and did not work as advertised. | Failure to provide meaningful credit/refund despite notice of deceptive advertising and nonconforming performance. | Scheme continuation/concealment; wire fraud context |
| June 18, 2026 | Alibaba Customer Service / senior team | Email offering $500 future Alibaba credit, stating logistics could no longer be verified and no customer-service contact record existed. | Concealed, denied, or failed to preserve material logistics/dispute records and offered limited future credit rather than refunding Plaintiff's money. | Wire fraud/concealment context; continuing conduct |

## VII. CLAIMS FOR RELIEF

## COUNT I - CIVIL RICO VIOLATION, 18 U.S.C. SECTION 1962(c)

66. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67. Each Defendant named in this Count is a RICO person distinct from the association-in-fact enterprise described above.

Page 11

68. The Trade Assurance Chemical Sales Enterprise was an enterprise engaged in, and affecting, interstate and foreign commerce.

69. Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity consisting of multiple acts of wire fraud and, if proven, intimidation designed to hinder complaints or reports.

70. The wire-fraud predicates included electronic contracts, order records, marketplace messages, payment transmissions, product-solicitation emails, direct-contact solicitations, and post-sale customer-service communications used to obtain or retain money or property by materially false or misleading representations and omissions.

71. Plaintiff pleads the controlled-substance-analogue allegations as an alternative RICO predicate theory only. Plaintiff does not assert a freestanding private cause of action under the Controlled Substances Act. The analogue allegations are pleaded as predicate context and scienter evidence if discovery and expert proof establish the statutory elements, including substantial chemical-structure similarity, substantially similar or represented stimulant effect, and intended human consumption or marketing factors recognized by 21 U.S.C. Section 813.

72. Plaintiff relied on Defendants' representations and omissions and paid money that he would not have paid had the truth been disclosed, including the truth regarding seller identity, deliverability, Trade Assurance remedies, payment routing, complaint records, and Defendants' intent or ability to provide a refund or meaningful remedy.

73. As a direct and proximate result of Defendants' violation of 18 U.S.C. Section 1962(c), Plaintiff was injured in his business or property, including out-of-pocket payment, loss of use of funds, loss of expected goods, business interruption, lost opportunity, time and costs incurred pursuing relief, and other damages to be proven.

74. Plaintiff is entitled to treble damages, costs, and attorney fees under 18 U.S.C. Section 1964(c), plus all other relief allowed by law.

## COUNT II - RICO CONSPIRACY, 18 U.S.C. SECTION 1962(d)

75. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

76. Defendants and John Doe participants knowingly agreed, expressly or tacitly, that one or more members of the enterprise would conduct the enterprise's affairs through wire-fraud predicates and related concealment acts.

77. The agreement may be inferred from Defendants' coordinated roles: platform contracting, seller account operation, payment routing, direct chemical-product solicitation, post-sale complaint handling, denial or loss of records, and limited credit offers rather than refund.

78. Each conspirator knew the general nature of the enterprise and agreed to facilitate its objective of obtaining or retaining buyer money through misrepresentations, omissions, and failed remedial procedures.

79. Plaintiff was injured in his business or property by reason of the conspiracy and is entitled to the remedies provided by 18 U.S.C. Section 1964(c).

## COUNT III - FRAUD AND INTENTIONAL MISREPRESENTATION

80. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

81. Defendants made material representations to Plaintiff regarding seller identity, product availability, delivery, Trade Assurance protection, refund/credit remedies, product characteristics, payment routing, logistics records, and dispute records.

82. Those representations were false or misleading when made, or became false or misleading when Defendants failed to disclose that the goods would not be delivered as promised, that meaningful Trade Assurance relief would not be provided, that logistics records would not be preserved or verified, or that Plaintiff would be offered only limited future credit after years of delay.

83. Defendants intended for Plaintiff to rely on the representations and omissions, and Plaintiff did reasonably rely by paying money, continuing to pursue internal dispute remedies, and delaying other relief while Defendants controlled the relevant records.

84. Plaintiff suffered damages as a direct and proximate result, including out-of-pocket loss, consequential business/property damages, loss of use, costs, and other damages to be proven.

## COUNT IV - BREACH OF CONTRACT / TRADE ASSURANCE OBLIGATIONS

85. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

86. The Trade Assurance Purchase Contract and related Alibaba.com order records formed a binding contract or series of contracts among Plaintiff, the seller, and/or the responsible Alibaba.com marketplace entities, affiliates, agents, and alter egos.

87. Plaintiff performed or substantially performed by paying the required money and providing information necessary for delivery or dispute resolution.

88. Defendants breached the contract and Trade Assurance obligations by failing to deliver the contracted goods, failing to provide conforming goods, failing to provide valid shipment/logistics documentation, failing to provide a refund or full remedy, failing to preserve or disclose order records, and offering only partial future platform credit after years of delay.

89. Plaintiff suffered damages in an amount to be proven at trial, including the payment amount, loss of benefit of the bargain, consequential business/property damages, costs, and other contract damages.

## COUNT V - DECEPTIVE TRADE PRACTICES / UNFAIR OR UNCONSCIONABLE CONDUCT

90. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

91. Defendants engaged in deceptive, unfair, or unconscionable trade practices by representing that the seller, goods, payment process, Trade Assurance program, delivery process, and dispute-resolution process were legitimate and effective, while failing to deliver or refund and failing to provide meaningful dispute relief.

92. Defendants also engaged in deceptive, unfair, or unconscionable trade practices by using chemical-product marketing that referenced "effect," "diluting," "Food grade," molecule formula, chemical-space structure, and pharmaceutical properties, while stating that the product had the "Same Molecule Formula of C10H15N" and warning that buyers had "better keep silent" if legality was questioned. Plaintiff alleges these representations and warnings were material to legality, product character, intended use, buyer safety, and Plaintiff's ability to challenge the transaction or seek relief.

93. Defendants' conduct had the capacity or tendency to deceive a reasonable buyer using an international marketplace for goods represented as lawful commercial or industrial products.

94. Plaintiff seeks all remedies available under Arkansas law and any other applicable consumer-protection or deceptive-trade-practices law, including actual damages, costs, fees where permitted, punitive damages where permitted, and injunctive or declaratory relief.

## COUNT VI - UNJUST ENRICHMENT / MONEY HAD AND RECEIVED

95. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

96. Defendants received, retained, controlled, or benefitted from money paid by Plaintiff or from the proceeds, fees, commissions, platform charges, payment processing, customer retention, data, or other benefits derived from Plaintiff's transaction.

97. It would be inequitable for Defendants to retain those benefits because Plaintiff did not receive the contracted goods, full refund, or meaningful Trade Assurance remedy.

98. Plaintiff seeks restitution, disgorgement, return of money, constructive trust, prejudgment interest, and all other equitable relief allowed by law.

## COUNT VII - DECLARATORY AND INJUNCTIVE RELIEF

99. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

100. An actual controversy exists regarding Defendants' obligations to preserve and produce order records, logistics records, seller-account records, payment-routing records, customer-service records, Trade Assurance records, and communications concerning Plaintiff's order and related seller accounts.

101. Plaintiff requests a declaration that Defendants must preserve and produce the records necessary to determine the identity, roles, and responsibility of all participants, and that Defendants may not condition relief on Plaintiff placing another order or using future platform credit if the law requires refund or restitution.

102. Plaintiff requests appropriate injunctive relief requiring Defendants to preserve relevant documents, suspend deletion or alteration of account/logistics/dispute records, and disclose the correct legal identities and service addresses of the seller, seller-account operators, payment beneficiaries, and relevant marketplace entities.

## VIII. DAMAGES AND RELIEF REQUESTED

A. Actual damages in an amount to be proven at trial, including at minimum the money paid for Order No. 91906090501027582 and any related charges, fees, lost use, lost

business/property opportunity, business interruption, consequential damages, and costs directly caused by the alleged misconduct in the amount of $200,000,000,000.00;

B. Treble damages under 18 U.S.C. Section 1964(c) for the civil RICO claims in the amount of $200,000,000,000.00;

C. Costs of suit and attorney fees where allowed by RICO, contract, statute, or law. Plaintiff appears pro se at this stage and reserves any right to recover attorney fees if counsel appears and the law permits;

D. Restitution, disgorgement, money had and received, constructive trust, and prejudgment and post-judgment interest where allowed in the amount of $200,000,000,000.00;

E. Punitive damages only for non-RICO claims and only to the extent permitted by applicable law and proven by the evidence in the amount of $200,000,000,000.00;

F. Declaratory and injunctive relief requiring preservation, production, and disclosure of order, seller, payment, customer-service, and dispute-resolution records in the amount of $200,000,000,000.00;

G. Leave to amend after discovery to identify Doe defendants, correct entity names, add responsible parties, add facts regarding agency/alter ego relationships, and conform pleadings to evidence;

H. Trial by jury on all issues so triable; and

I. All other relief that the Court deems just and proper.

## IX. JURY DEMAND

103. Plaintiff demands a trial by jury on all claims and issues so triable.

## X. CIVIL RICO CASE STATEMENT

Plaintiff provides the following RICO case statement to clarify the theory and to avoid any claim that the Complaint rests only on labels or conclusions:

**RICO statute invoked:** 18 U.S.C. Sections 1962(c), 1962(d), and 1964(c).

**RICO persons:** Alibaba.com Singapore E-Commerce Private Limited; Alibaba.com US E-Commerce Corp.; Alibaba Group Holding Limited; Zichang New Materials (Shandong) Co., Ltd.; Zhishang New Materials (Shandong) Co., Ltd.; Shaanxi Bloom Tech Co., Ltd.; and Doe entities/persons identified through discovery.

**RICO enterprise:** The Trade Assurance Chemical Sales Enterprise, an association-in-fact enterprise distinct from any one defendant.

**Enterprise purpose:** To obtain and retain buyer money through marketplace and direct communications by representing that chemical-product orders were legitimate, deliverable, Trade Assurance-backed, and refundable/creditable when performance failed.

**Enterprise structure:** Marketplace operators, seller accounts, sales agents, payment beneficiaries, dispute-resolution personnel, and affiliate/alter-ego entities performing distinct roles in order creation, payment, delivery representations, product solicitation, and complaint handling.

Predicate acts: Multiple wire-fraud acts under 18 U.S.C. Section 1343; alternative witness/victim-intimidation predicate under 18 U.S.C. Section 1512(b)(3) only if discovery links the coercive communications to Defendants and proves intent to hinder reporting or court/law-enforcement communications; and alternative controlled-substance / controlled-substance-analogue racketeering predicate only if discovery and expert proof establish the required elements under 21 U.S.C. Sections 802(32)(A) and 813 and the RICO predicate requirements of 18 U.S.C. Section 1961(1).

**Pattern:** Related acts from at least June 2021 through June 2026 involving the same marketplace, seller/payment network, product category, victim type, methods of communication, payment channels, and complaint-suppression or complaint-deflection methods.

**Direct injury:** Plaintiff paid money and suffered loss of money, loss of use, loss of expected goods, business/property damages, and costs because of the alleged scheme.

**Causation:** The electronic representations, Trade Assurance promises, seller/product statements, and payment/dispute conduct directly induced Plaintiff to pay and directly caused the retention or loss of Plaintiff's property.

**Relief:** Treble damages, costs, attorney fees where available, restitution, injunctive relief, declaratory relief, and related state-law remedies.

## XI. PROPOSED EXHIBIT LIST

Exhibit A - Trade Assurance Purchase Contract, Order No. 919060905010227582, dated June 1, 2021.

Exhibit B - Plaintiff's receipt/payment record showing payment of $736.38, if available.

Exhibit C - Alibaba.com seller/message screenshot involving Sweety Yin and Alibaba monitoring / 1,000 kg order / bank payment language.

Exhibit D - Redacted domestic wire-transfer account record for Shaanxi Bloom Tech Co., Ltd. through Citibank N.A., account ending 8500.

Exhibit E - Redacted domestic wire-transfer account record for Zhishang New Materials (Shandong) Co., Ltd. through Citibank N.A., account ending 3443.

Exhibit F - January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine," including product list, direct-contact solicitation, "effect," "diluting," "Food grade," molecule-formula, chemical-structure, pharmaceutical-properties, "Same Molecule Formula of C10H15N," and "keep silent" language.

Exhibit G - Plaintiff's April 10, 2022 reply requesting credit and stating that the product was represented for rust-inhibitor use and did not work as advertised.

Exhibit H - Facebook-message screenshots from "Gera Vid So" showing threatening or intimidating statements, filed for context and discovery subject to proof of connection.

Exhibit I - June 18, 2026 Alibaba Customer Service email regarding Solution for Trade Assurance Order 91906090501027582, logistics records, no customer-service record, and $500 future credit offer.

Exhibit J - Prior federal order and report/recommendation, filed only for transparency and to show how this Complaint pleads a narrower and more particularized theory.

Exhibit K – 6/1/26 Small Claims Complaint filed in Pulaski County Small Claims Court leading to admittance by defendants/alter ego leading to Exhibit I.

## XII. SIGNATURE

Respectfully submitted,

/s/ Bradley Burchfield
Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

Date: 6/22/26

## CERTIFICATE OF SERVICE

I certify that on 6/22/26 , I served a true and correct copy of this Complaint and all exhibits on the Defendants by the method required by the Federal Rules of Civil Procedure, or will request issuance of summonses and complete service as directed by the Clerk and Court.

/s/ Bradley Burchfield
Bradley Burchfield