IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

CENTRAL DIVISION

BRADLEY BURCHFIELD,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-
COMMERCE PRIVATE LIMITED;
ALIBABA.COM US E-COMMERCE
CORP.;
ALIBABA GROUP HOLDING LIMITED;
ZICHANG NEW MATERIALS
(SHANDONG) CO., LTD.;
ZHISHANG NEW MATERIALS
(SHANDONG) CO., LTD.;
SHAANXI BLOOM TECH CO., LTD.; and
JOHN DOE ALIBABA.COM OWNER,
OPERATOR, PARENT, AFFILIATE,
AGENT, OR ALTER-EGO ENTITIES 1-10,

Defendants.

Civil Action No. *4:26cv611-DPM*

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 2 2 2026

TAMMY H. DOWNS, CLERK

By:_____ DEP CLERK

## PLAINTIFF'S FEDERAL MOTION FOR LEAVE TO PROCEED UNDER ALTER-EGO / PIERCING-CORPORATE-VEIL THEORY, TO SUPPLEMENT OR AMEND THE PLEADINGS, AND FOR LIMITED JURISDICTIONAL AND VEIL-PIERCING DISCOVERY

COMES NOW Plaintiff Bradley Burchfield, appearing pro se only as to his own individual claims, and moves this Court for leave to proceed under an alter-ego, agency, instrumentality, apparent-authority, and/or piercing-corporate-veil theory against the Alibaba.com owner, operator, parent, affiliate, agent, controlling entity, or proper responsible entity shown by the evidence. Plaintiff also asks for leave to supplement or amend the pleadings to include Alibaba's recent response to Plaintiff's state small-claims dispute involving the same marketplace-seller transaction, and for limited discovery into which Alibaba.com entity controlled the order, payment, Trade Assurance system, seller account, customer-service response, and dispute-resolution process.

This Motion is not asking the Court to make a final veil-piercing finding before discovery. Plaintiff asks the Court to allow the theory to proceed, to permit targeted discovery, and to prevent any Alibaba.com entity from avoiding responsibility by pointing to another

related Alibaba.com entity or to a marketplace seller while Alibaba itself controls the platform records, customer-service response, Trade Assurance remedy, and settlement-credit process.

## I. RELIEF REQUESTED

A. Grant Plaintiff leave to proceed under alter-ego, agency, instrumentality, apparent-authority, and/or piercing-corporate-veil theories against the Alibaba.com owner, operator, parent, affiliate, agent, or controlling entity shown by the evidence;

B. Permit Plaintiff to supplement or amend the pleadings under Federal Rule of Civil Procedure 15(a)(2) and/or 15(d) to add the Alibaba Customer Service response concerning Trade Assurance Order No. 919060905 01027582;

C. Order limited jurisdictional and veil-piercing discovery under Rules 26(b)(1) and 26(d)(1) into the identity, role, corporate relationship, operational control, platform authority, seller-account control, payment flow, and dispute-resolution authority of each Alibaba.com entity and the marketplace seller;

D. Require each appearing Alibaba.com corporate defendant to file a complete Federal Rule of Civil Procedure 7.1 disclosure statement and any necessary supplemental disclosure identifying parent corporations, publicly held owners of ten percent or more, and corporate relationships relevant to the Alibaba.com functions at issue;

E. Require any served Alibaba.com defendant that denies responsibility to identify, to the extent known, the Alibaba.com entity responsible for the order, payment, platform services, Trade Assurance services, customer-service response, seller account, and dispute-resolution process;

F. Permit Plaintiff to amend the complaint after discovery, if necessary, to name the proper Alibaba.com entity or entities; and

G. Reserve final veil-piercing determination until the Court has a developed factual record, including discovery and any evidentiary hearing, summary-judgment record, or trial record the Court deems appropriate.

## II. FACTUAL BACKGROUND

1. Plaintiff purchased goods through Alibaba.com Trade Assurance Order No. 919060905 01027582, dated on or about June 1, 2021.

2. The Trade Assurance Purchase Contract and related records identify the seller as Zichang New Materials (Shandong) Co., Ltd. and identify the transaction as an Alibaba.com Trade Assurance transaction.

3. Plaintiff alleges that he paid approximately $736.38 in connection with the transaction and did not receive the goods or a refund.

4. Plaintiff alleges that the transaction was not presented as an offline transaction with an unrelated stranger. It was presented through the unified Alibaba.com marketplace, Alibaba.com branding, Alibaba.com order system, Alibaba.com Trade Assurance framework, Alibaba.com customer-service channels, and Alibaba.com dispute-resolution process.

5. Plaintiff filed or pursued a state small-claims matter in Arkansas involving the same Alibaba.com Trade Assurance order and the marketplace seller Zichang New Materials (Shandong) Co., Ltd.

6. After Plaintiff pursued that state small-claims dispute or after Alibaba received notice of Plaintiff's complaint concerning that dispute, Alibaba Customer Service responded in writing from queryreply@service.alibaba.com under the subject line "Solution for Trade Assurance Order 91906090501027582."

7. In that response, Alibaba stated that it had received Plaintiff's complaint regarding the order, that the case had been escalated to Alibaba's senior team, that the order was over three years old, that logistics information could no longer be verified, and that the platform had no record of Plaintiff contacting customer service regarding the order.

8. Alibaba did not respond by saying the matter belonged only to the foreign marketplace seller and that Alibaba had no platform role. Instead, Alibaba reviewed the order and platform records, discussed the age of the order and logistics verification, and offered to help Plaintiff apply a $500 Alibaba credit to settle the case.

9. Alibaba further stated that the $500 credit would be valid for 90 days from issuance, could be used on future Alibaba Trade Assurance orders, and could be applied to product and shipping costs but not processing fees, taxes, or additional services. Alibaba asked Plaintiff to reply "AGREE" if he accepted the option.

10. Plaintiff alleges that this Alibaba response is important because the state small-claims matter involved the marketplace seller, but Alibaba itself responded through its Customer Service and Trade Assurance system, exercised access to platform/order records, and offered an Alibaba-administered credit to resolve or settle the dispute.

11. Plaintiff alleges that this response is evidence supporting limited discovery into whether Alibaba.com Singapore E-Commerce Private Limited, Alibaba.com US E-Commerce Corp., Alibaba Group Holding Limited, and/or unknown Alibaba.com owner/operator/affiliate entities controlled or participated in the order, payment process, seller account, Trade Assurance service, dispute records, customer-service response, and proposed settlement credit.

12. Plaintiff does not presently have access to Defendants' internal corporate records, intercompany agreements, seller-account records, payment-processing records, Trade

Assurance policies, complaint records, customer-service records, or documents identifying which Alibaba.com entity sent, authorized, or controlled the customer-service response.

13. Plaintiff therefore seeks targeted discovery before any defendant is allowed to avoid liability by asserting that a different Alibaba entity, a foreign affiliate, a seller account, or a third-party seller is the proper entity.

## III. LEGAL STANDARD

14. Federal Rule of Civil Procedure 7(b)(1) requires a motion to state with particularity the grounds for seeking the order and the relief sought. Federal Rule of Civil Procedure 7.1 requires nongovernmental corporate parties to identify parent corporations and publicly held corporations owning ten percent or more of their stock. This Motion identifies the facts, disclosures, and limited discovery Plaintiff requests so that the Court can manage the alter-ego and proper-party issues in an orderly manner.

15. Federal Rule of Civil Procedure 15(a)(2) provides that, outside amendment as a matter of course, a party may amend with the opposing party's written consent or the Court's leave, and the Court should freely give leave when justice so requires. Rule 15(d) also permits supplemental pleadings setting out events that happened after the date of the pleading to be supplemented.

16. Federal Rule of Civil Procedure 26(b)(1) permits discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Rule 26(d)(1) generally restricts discovery before the Rule 26(f) conference except by stipulation or court order; Plaintiff requests such an order because the proper-party, agency, control, and alter-ego facts are primarily within Defendants' possession.

17. Federal courts applying Arkansas law recognize that corporations and affiliated entities are generally separate legal persons. However, under Arkansas law, the corporate form may be disregarded when it has been abused to the injury of a third party and equity requires disregarding the corporate form to prevent fraud or injustice. See, e.g., Epps v. Stewart Info. Servs. Corp., 327 F.3d 642 (8th Cir. 2003); Anderson v. Stewart, 366 Ark. 203, 234 S.W.3d 295 (2006); Rhodes v. Veith, 2003 Ark. App. 307; Agrifund, LLC v. Regions Bank, 2020 Ark. 246, 602 S.W.3d 726; Fulmer v. Hurt, 2017 Ark. App. 117, 515 S.W.3d 129.

18. Plaintiff recognizes that veil-piercing is an equitable, fact-intensive remedy. Plaintiff is not asking the Court to impose final alter-ego liability merely because multiple entities use the Alibaba name. Plaintiff asks for leave to present the theory and to take discovery because Alibaba's own response to the state small-claims dispute tends to show platform-level control and a remedy process not limited to the named marketplace seller.

## IV. ARGUMENT

**A. Alibaba's response to the state small-claims dispute connects the Alibaba platform to the marketplace-seller transaction.**

19. The state veil-piercing motion asked for leave to proceed against the Alibaba.com owner, operator, parent, affiliate, or alter-ego entity responsible for the same transaction, and it emphasized that Plaintiff lacked internal records showing which Alibaba.com entity controlled the transaction, payment process, dispute-resolution process, and seller-account enforcement process.

20. The new Alibaba Customer Service response supports the same theory in federal court. Alibaba responded to the specific Trade Assurance order, acknowledged receipt of the complaint, discussed the platform's records and logistics verification, and offered an Alibaba credit to settle the case. Those are not merely the acts of an unrelated seller; they are platform-level acts by an Alibaba service channel.

21. The response matters because Defendants may attempt to divide responsibility among the foreign seller, the Singapore marketplace operator, the United States Alibaba.com entity, Alibaba Group Holding Limited, and unknown Alibaba.com affiliates. Alibaba's own response shows that at least one Alibaba-controlled customer-service or Trade Assurance unit had access to the dispute and authority to offer a remedy.

**B. Limited discovery is necessary because the relevant corporate and platform-control facts are not available to Plaintiff without court-ordered discovery.**

22. Plaintiff cannot determine from public records alone which Alibaba.com entity owned the platform account, administered the Trade Assurance contract, controlled the payment or credit process, reviewed the customer-service complaint, or had authority to offer the $500 credit. Those facts are within Defendants' records.

23. Without discovery, Plaintiff is prejudiced because one entity may disclaim responsibility by pointing to another related entity, while the actual controlling entity remains unidentified. The Court should not allow a corporate-identity shell game to prevent Plaintiff from naming the proper responsible entity or from pleading the facts required for agency, alter ego, or veil-piercing liability.

24. The requested discovery is narrow and proportional. It concerns one order number, one seller account, one customer-service response, one proposed credit, the relevant Trade Assurance rules and records, and the corporate or agency relationships needed to identify the proper responsible entity.

**C. The requested order does not require the Court to pierce the veil now; it preserves the issue for a proper record.**

25. Because veil-piercing is fact-intensive, Plaintiff asks the Court to preserve the issue and authorize discovery rather than requiring final proof before Plaintiff has access to the documents necessary to prove the theory.

26. If the Court finds that a standalone motion to pierce the corporate veil is premature, Plaintiff asks the Court to construe this Motion as a motion for leave to amend or supplement the complaint to plead alter ego, agency, apparent authority, and instrumentality allegations, and as a motion for limited discovery into those issues.

27. The same facts also support allowing Plaintiff to plead in the alternative under Rule 8(d). If Defendants contend that the seller alone is responsible, Plaintiff should be allowed to plead alternatively that the seller acted as an agent, instrumentality, marketplace account, alter ego, or apparent representative of the Alibaba.com platform entities for purposes of this transaction and dispute-resolution process.

## V. LIMITED DISCOVERY REQUESTED

Plaintiff requests a limited discovery period of 90 days, or another period the Court finds appropriate, limited to the following issues:

A. Identification of the Alibaba.com entity or entities that owned, operated, administered, controlled, or benefitted from Alibaba.com Trade Assurance Order No. 91906090501027582;

B. Identification of the entity or department that sent or authorized the Alibaba Customer Service email titled "Solution for Trade Assurance Order 91906090501027582," including the entity employing or controlling queryreply@service.alibaba.com;

C. Documents and communications concerning Plaintiff's complaint, the state small-claims dispute, the customer-service escalation, the senior-team review, the platform record search, the logistics verification statement, and the $500 Alibaba credit offer;

D. Seller-account records for Zichang New Materials (Shandong) Co., Ltd., Zhishang New Materials (Shandong) Co., Ltd., and any related seller or payment account involved with Order No. 91906090501027582;

E. Documents showing the relationship among Alibaba.com Singapore E-Commerce Private Limited, Alibaba.com US E-Commerce Corp., Alibaba Group Holding Limited, and any other Alibaba.com owner, operator, parent, affiliate, agent, or service entity involved with Trade Assurance, payments, credits, customer service, seller enforcement, or dispute resolution;

F.  Payment, bank, credit, coupon, Trade Assurance, and refund records showing who received Plaintiff's payment, who held or released funds, who could issue credits or refunds, and who benefitted financially from the transaction;

G.  Policies and procedures governing Trade Assurance disputes, seller enforcement, old-order logistics verification, customer-service escalation, and settlement-credit offers; and

H.  A Rule 30(b)(6) deposition or written interrogatory responses identifying the proper Alibaba.com contracting, operating, payment-processing, customer-service, Trade Assurance, seller-account, and dispute-resolution entity for the order.

## VI. REQUEST FOR ORDER REQUIRING IDENTIFICATION OF THE PROPER ALIBABA.COM ENTITY

28.  Plaintiff asks that any served Alibaba.com defendant be required to answer the complaint within the time required by the Federal Rules of Civil Procedure and that each appearing corporate defendant file a complete Rule 7.1 disclosure statement. If that defendant denies it is the correct responsible entity, Plaintiff asks the Court to require that defendant to identify, to the extent known, the correct Alibaba.com entity responsible for the order, payment, marketplace services, Trade Assurance services, seller-account control, customer-service response, and dispute-resolution process.

29.  This relief is necessary because Plaintiff is a pro se buyer facing foreign and domestic entities whose internal structure is not publicly available. Alibaba's own customer-service response demonstrates that an Alibaba-controlled service channel can locate or search platform records and offer a remedy, but Plaintiff cannot know which Alibaba entity controlled those acts without discovery.

## VII. CONCLUSION

For these reasons, Plaintiff respectfully asks the Court to grant this Motion, permit Plaintiff to proceed under alter-ego, agency, apparent-authority, instrumentality, and/or piercing-corporate-veil theories, permit supplementation or amendment to add Alibaba's response to the state small-claims dispute involving the marketplace seller, authorize limited jurisdictional and veil-piercing discovery, require served Alibaba defendants to identify the proper responsible entity if they deny responsibility, and grant all other just and proper relief.

Respectfully submitted,

Bradley Burchfield

Address: 5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Date:  6/22/26

## CERTIFICATE OF SERVICE

I certify that on _6/22/26_, 2026, I served a true and correct copy of this filing on all parties or counsel of record by the method required or permitted by the Federal Rules of Civil Procedure and this Court's local rules, including by CM/ECF where available and/or by mail or other authorized service method for any party not registered for electronic filing.

Bradley Burchfield

*Exhibit A*

🖨print this page  中文版本

# Trade Assurance Purchase Contract

## (this "Contract")

Order No. : 919060901027582

Version : 20210428003656

Date : 2021-06-01

Seller's Registered Company Name : Zichang New Materials (shandong) Co., Ltd.

Buyer's Registered Company Name/Contact Name : Burchfield Sales and Consulting LLC

Seller's Registered Company Address : Room A2-907, Xinyuanxin Center, Huaxin Road,Jinan,Shandong,CN

Buyer's Registered Company Address/Shipping Address : 121  2nd st Apt A Hot Springs, AR 71913,Hot Springs,Arkansas,US

Email : sweety@sdzcchemical.com

Email : burchfieldbradley123@gmail.com

## Important Conditions

By logging onto the Alibaba.com international platform, and clicking and agreeing to this Contract, both Buyer and Seller acknowledge, agree and confirm to be bound by the terms and conditions of this Contract and the applicable " Trade Assurance Services Rules ", including in particular those terms which are in bold and underlined. Unless otherwise defined herein, capitalized terms used in this Contract shall have the same meaning as those defined in the applicable " Trade Assurance Services Rules ".

## Contract Terms

Seller agrees to provide Trade Assurance Services to Buyer pursuant to this Contract. Seller hereby agrees to sell, and Buyer agrees to purchase, the products of Seller under the terms and conditions set forth in this Contract. Each of Seller and Buyer represents and warrants that it has obtained all necessary rights and authorizations to sell (in the case of Seller) or purchase (in the case of Buyer) the products respectively pursuant to this Contract.

### 1. Trade Terms

Trade Terms (Incoterms 2010) :EXW

## 2. Products

| N o. | Product Name | Product Description and Specifications | Product SKU | Quant ity | Unit | Unit Price | Contract Sum |
|---|---|---|---|---|---|---|---|
| 1 | factory N-Isopropylbenzylamine CAS 102-97-6 | | | 1.00 | Kilograms | USD 615.00 | USD 615.00 |

| Discount (if any): | USD 0.00 | Shipping Fee: | USD 50.00 |
|---|---|---|---|
| | | Total Amount: | USD 715.00 |

attachment files:

## 3. Delivery Terms

3.1 Shipping Address:     Bradley Burchfield +1 8706174081, Burchfield Sales and Consulting LLC, 6834 Cantrell Road Suite 210 little rock Arkansas 72207, 4 mile corner, Arkansas, 72207, United States of America

3.2 Transportation Method:     Express

3.3 Shipping Fee:     The shipping fee for this Contract is USD 50.00

3.4 Insurance charges:     The insurance charges for this Contract is USD 50.00

3.5 Shipment Date* :*Shipment Date refers to such date as indicated for completion of the shipping out of Products at the Port/Place of Loading or pickup of the express delivery of the Products     Seller should ship out Products at the designated Port/Place of Loading within 7 calendar day(s) after receiving the Deposit.

3.6 Identification of Actual Date of Shipment:     Unless otherwise mutually agreed by the Buyer and Seller, for the purposes of the Trade Assurance Terms of this Contract, the date of shipment according to the records of the Alibaba.com transaction system, except where Seller provides original

conclusive information on date of shipment to the contrary (in which case such information shall prevail).

| | |
|---|---|
| 3.7 Port / Place of Destination Tips: | Ports / Places of Destination in Iran, North Korea, Syria, Cuba, Sudan, Egypt and the Crimea region are not currently covered by Trade Assurance. |

## 4. Payment Terms

| | |
|---|---|
| 4.1 Total Amount: | The Total Amount for this Contract is USD 715.00 |
| 4.2 Deposit before Shipment (if applicable): | The Deposit (if applicable) before shipment for this Contract is USD 715.00 |
| 4.3 Discount: | The Discount for this Contract is USD 0.00 |
| 4.4 Remaining Balance(if applicable): | The Remaining Balance (if applicable) to this Contract shall be USD 0.00. Seller retains all ownership to the Product before Buyer completes payment of the Balance Amount (if applicable) under this Contract unless otherwise agreed between the Seller and Buyer, in which case Seller and Buyer shall act accordingly to such alternative arrangements. |
| 4.5 Payment Method : | Remittance to be made through those Payment Methods supported by Alibaba.com to the designated Beneficiary Bank Account under this Contract. |
| 4.6 Deadline of Payment of Deposit by Buyer (if applicable) : | Buyer must remit the Deposit (if applicable) to the Beneficiary Bank Account set forth in this Contract within 15 days (with the 15th day inclusive) from the date both Seller and Buyer have executed this Contract and before shipment, otherwise Seller shall have the right to unilaterally terminate this Contract. |
| 4.7 Deadline for paying Remaining Balance by Buyer(if applicable) : | Unless otherwise mutually agreed between Seller and Buyer, Buyer shall pay the full amount of the Remaining Balance (if applicable) upon receiving the copy of bill of lading (or other delivery voucher). |
| 4.8 Bank Charges : | Buyer shall bear any and all relevant bank charges. |

## 5. Liquidated Damages

5.1 Unless otherwise provided in this Contract, or unless Buyer and Seller have agreed otherwise, Buyer's unilateral termination of this Contract without cause and/or failure to pay the Remaining Balance in accordance with this Contract shall constitute a material breach of this Contract. If both Buyer and Seller have separately agreed on a sum to be paid as liquidated damages pursuant to the breach, such sum shall be remitted to the Beneficiary Bank Account under this Contract or deducted directly from any and all Payment that has been received by Seller.

5.2 Unless otherwise agreed by both Buyer and Seller, if the events of breach under the "Trade Assurance Terms" section (Section 6) occurs after Buyer pays the Deposit (if applicable) in full, this Contract shall be terminated accordingly and Seller shall bear the relevant liability as agreed.

## 6. Trade Assurance Terms

6.1 Trade Assurance Amount :

The Trade Assurance Amount for this Contract is USD 715.00

Trade Assurance Amount (as defined in the applicable " <u>Trade Assurance Services Rules</u> ")

**6.2 Trade Assurance Scope:**

Trade Assurance until 30 days (inclusive of the 30th day) after the Date of the Con firmed Receipt of the Products

*See Section 6.3 for detailed terms and conditions.

**6.3 Trade Assurance Obligations:**

6.3.1 Seller agrees to be liable for Trade Assurance Obligations if the Seller commi ts any of the following breaches:

(1)Shipping out Products later than Shipment Date in section 3.5 or did not ship o ut the Products at all; or

(2)Failing to: (i) deliver Products in compliance with the Product Description and S pecifications, or (ii) provide valid documentation in support of change of ownershi p of the Products to the Buyer, or (iii) provide valid documentation including but no t limited to corresponding invoice (or certification) in support of delivery, or (iv) co mmits any other material breach of this Contract, either (i) to (iv) scenario resultin g in a material damage to the value of the Products or the commercial objective k nown or should be known to both Seller and Buyer becoming unachievable.

6.3.2 Upon the occurrence of (1) or (2) of above 6.3.1, Seller shall assume the foll owing Trade Assurance Obligations:

Seller agrees to fully refund the Contract Sum received by the Seller or an amount mutually agreed upon by the Buyer and Seller (in accordance with the system reco rds of the Complaints Platform),   or other amount as designated by Alibaba.com (Partial refund shall be conditional upon the Buyer's acceptance of the Seller's act of breach of contract).

6.3.3 If Buyer has not paid the Remaining Balance in accordance with the terms of this Contract, the Seller's Trade Assurance Obligations under the Contract shall be corresponded to payment of the purchase price received by the Seller.

**6.4 Refund on behalf of the Seller :** If Buyer submits a request to Alibaba.com for Dispute Determination in accordanc e with the terms of applicable " <u>Trade Assurance Services Rules</u>" during the corres ponding Claim Period, and the determination of Alibaba.com confirms that Seller h as committed a breach of any of the conditions in sections 6.3.1(1), (2) or (3), the n Buyer may receive refund to be paid for and on behalf of the Seller in accordanc

e with the terms and conditions of the applicable " <u>Trade Assurance Services Rule s</u> " subject to the Trade Assurance Amount specified in this Contract. When the Trade Assurance Amount is zero (0) as agreed under section 6.1, Seller shall itself refund payment to Buyer.

6.5 Claim Period:

Buyer must submit a request to Alibaba.com for Dispute Determination (section 6.6) within the applicable Claim Period set out below, failing which, Alibaba.com shall have no obligation to make any refunds for and on behalf of Seller (unless Alibaba.com in its sole discretion decides to extend the Claim Period).

6.5.1 Where the Buyer complains the Seller of breaches sections 6.3.1 (1) and/or (2), the Buyer shall lodge a dispute claim no later than 30 days (inclusive of the 30th day) after the Date of Confirmed Receipt of the Products. 6.5.2 Date of Confirmed Receipt of the Products means either (1) the day when the Buyer clicks "Confirm" on the order system to confirm the receipt of the Products or (2) if the buyer did not click "Confirm" in the order system, then depending on which shipment method, should be no later than the following days after the Actual Date of Shipment (i) by express: 15 days; (ii) by air freight: 30 days; (iii) by land transportation, sea freight or postal parcel: 60 days; (iv) from overseas warehouse: 10 days. For the avoidance of doubt, the system's default Date of Confirmed Receipt shall only apply upon (i) receipt of Products or (ii) where there is no logistics status available. Where the logistics status states that the Products are still being delivered, the Date of Confirmed Receipt shall only be the day when the Buyer clicks "Confirm" on the order system to confirm the receipt of the Products. Where there is only partial shipment of the Products, the Claim Period shall commence on the Shipment Date of the final consignment of the remaining Products.

6.6 Dispute Determination :  If Seller refused to fulfill the "Trade Assurance Terms", Buyer may submit a request to Alibaba.com for dispute determination in accordance with the terms of " <u>Trade Assurance Services Rules</u> ". Each of the Buyer and Seller agrees to abide by the terms and conditions of the " <u>Trade Assurance Services Rules</u> " (including those versions updated from time to time).

## 7. Insurance

Unless otherwise agreed by both Buyer and Seller, if the Trade Terms selected for this Contract is Free on Board (FOB) or Cost and Freight (CFR), then insurance is to be effected by Buyer at Buyer's cost. Alternatively if the Trade Terms selected for this Contract is Cost, Insurance and Freight (CIF), then Seller must obtain insurance for the shipment at Seller's cost.

## 8. Product Inspection

If Buyer and Seller agreed to arrange for the products go through a product inspection process, the parties may agree on the terms of the inspection, such as method, inspection institution, fees, and etc., by way of a supplemental

agreement. If both Parties have agreed "Inspection & Logistics Service Trade Assurance", Buyer shall also be entitled to have the Products inspected before shipping (and Seller shall provide all necessary assistance to complete the relevant inspection so that the shipping of Products remains unaffected), so that Buyer can benefit from information relating to the inspection and shipping of the Products.

## 9. Force Majeure

If either Buyer or Seller is unable to perform or delayed in performing its obligations under this Contract due to events beyond its reasonable control (including but not limited to war, industry actions, acts of God, breakdown of network or public utilities), the party encountering such events shall not be liable thereto.

## 10. Termination

10.1 Either Buyer or Seller may terminate this Contract without liability to the other party if the Contract is terminated a s follows:

**a) Seller terminates this Contract before Buyer has paid the Deposit or Total Amount (as applicable);**

**b) Seller terminates this Contract after returning Deposit  (if applicable) to Buyer, and if other sums have also bee n received by Seller, such other sums received as well, in accordance with this Contract; or**

**c) This Contract is terminated in accordance with other terms agreed by both parties in writing.**

10.2 Unless otherwise expressly provided in this Contract, neither Buyer nor Seller may unilaterally terminate this Cont ract.

10.3 Upon termination of this Contract, the Seller and Buyer shall agree in writing on such other terms not explicitly set out in this Contract (such as, but not limited to, any arrangements relating to return of Products).

## 11. Tax

Unless otherwise agreed, all amounts required to be paid by Seller or Alibaba.com under the "Trade Assurance Services Rules" do not include any taxes, duties or other assessments levied or based upon such amounts. Buyer shall be responsible for all such taxes, duties, other assessments due under this Agreement and on all amounts payable hereunder. Taxes will be added to the amounts payable by Buyer to Seller or Alibaba.com (as the case may be) as

applicable and as required by law such that the net amount actually received by Seller or Alibaba.com (as the case may be) equals the full amount of the payment due hereunder. For greater certainty, Taxes will not be added to the amounts payable by Buyer to Seller or Alibaba.com (as the case may be) where Buyer has provided with evidence to Seller's or Alibaba.com 's (as the case may be) satisfaction of a lawful and applicable exemption for such Taxes.

If Buyer is or may be required under any law or regulation of any governmental entity or authority, domestic or foreign, to withhold or deduct any withholding tax from any amount due to Seller or Alibaba.com pursuant to this Agreement, the amount payable by Buyer shall be increased to the extent necessary to ensure that after making such deduction or withholding, Seller or Alibaba.com (as the case may be) receives and retains a net sum equal to the sum it would have received but for such deduction or withholding being required. Buyer shall promptly deliver to Seller or Alibaba.com (as the case may be) all receipts and/or certificates or other proof evidencing the amounts (if any) paid in respect of any such deduction or withholding. In determining whether and to what extent a deduction or withholding of tax is required by law, the Parties shall cooperate with each other and with Alibaba.com and use their reasonable efforts to apply for any exemption, and shall bear their respective cost and expenses in this regard.

The Buyer and the Seller shall each be responsible for the direct tax liability imposed on its own net income, unless otherwise agreed between the Buyer and the Seller.
Buyer shall be responsible for the payment of all other taxes including the local levies imposed by any relevant government authority in connection with Alibaba.com's provision of any services relating to this Contract. Buyer agrees to execute any and all documents with the Seller or such party as the Seller designated for the benefit of Alibaba.com to give effect to this provision.

If Seller or Buyer under this transaction is subject to any tax (such as US State Sales Tax) obligation or liability under any law or regulation of any local or non-local taxation authority of any jurisdiction, Seller or Buyer shall independently assume such obligation or liability, and Alibaba.com does not assume any tax obligation or liability attributable to Seller or Buyer. For the overseas warehouse goods, Seller shall be responsible independently for the processing fee and related taxes (including but not limited to customs duties) in relation to the import, customs clearance, logistics of goods. Alibaba.com does not assume any obligation or liability for the responsibility and expense for the Seller's goods.

"Taxes" refer to all federal, state, provincial, territorial, county, municipal, local, or foreign taxes and fees, including but not limited to sales, use, license, excise, goods and services, value added, stamp or transfer taxes, duties, imposts, levies, assessments, tariffs, fees, charges or withholdings of any nature whatsoever levied, imposed, assessed or collected by a taxation authority together with all interest, penalties, fines, or other additional amounts imposed in respect thereof, but for greater certainty excludes any of the foregoing which are (i) based on gross or net income, (ii) franchise tax, or (iii) property, personal property, or rental taxes (collectively referred to as "Excluded Taxes"). Each party shall be responsible for any and all Excluded Taxes that it is liable for under applicable law.

"Taxation Authority" refers to any government, state, municipality or any local, provincial, state or other fiscal, customs, excise or taxing authority, body or official anywhere in the world with responsibility for, and competency to, impose, collect, audit, assess, administer or levy any Taxes or make any decision or ruling in respect of any Taxes.

## 12. Other conventions

12.1 Limitation of Liability:

TO THE MAXIMUM EXTENT PERMITTED BY LAW, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL OR INCIDENTAL DAMAGES (INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF PROFITS OR REVENUE, INTERRUPTION OF BUSINESS, LOSS OF BUSINESS INFORMATION OR DATA, ETC) ARISING IN CONNECTION WITH THIS CONTRACT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR EVEN IF THE POSSIBILITY OF SUCH DAMAGES IS FORESEEABLE. TO THE MAXIMUM EXTENT PERMITTED BY LAW, EITHER PARTY'S AGGREGATE LIABILITY UNDER THIS CONTRACT SHALL NOT EXCEED THE TOTAL ORDER AMOUNT OF THIS CONTRACT.

12.2 Governing Law:

This Contract shall be governed by and construed in accordance with the laws of the People's Republic of China without recourse to its conflict of laws principles.

12.3 Disputes : Any dispute between both parties that arise out of this Contract (the "Dispute") shall first be resolved amicably by negotiation. The parties agree to submit a request to Alibaba.com for dispute determination in the event that both parties fail to reach a settlement on the Dispute. If either party does not agree to the final determination or decision made by Alibaba.com in connection with the Dispute, the Dispute may be referred to and resolved by arbitration at the Shenzhen Court of International Arbitration, and the party should inform alibaba.com.

12.4 Notice : Any and all notice and other communications in respect of this Contract shall be in writing in English and sent by email, or international express courier to the address of the other party stated in this Contract. Any changes to the address shall be notified to the other party within five (5) calendar days from the date the change has taken effect. Unless otherwise provided in this Contract or in the "Trade Assurance Services Rules ", any notice given pursuant to this clause shall be deemed effective if: i) delivered by email, when the email is successfully sent; ii) if sent by international express courier, when the courier has been received by the recipient.

12.5 Contract Term : This Contract is established from the time Buyer has clicked "confirm Contract" on the Alibaba.com.
This Contract shall take effect from the time Buyer had remitted the Deposit or the Total Amount (as applicable) to Seller in accordance with Contract.

12.6 Electronic Order : This Contract constitutes an electronic Contract between Seller and Buyer and shall have the same validity and binding effect as if the Contract is executed by both parties on paper.

12.7 Export and Import Agent : Seller may agree separately on the rights and obligations for its import and export agent in fulfilling the relevant obligations pursuant to this Contract. Seller shall be liable for any acts committed by its import and export agent for any obligations that are performed by the agent for and on behalf of Seller in connection with this Contract.

12.8 Other Provisions : Neither party may assign this Contract, in whole or in part, to any third party. In the event of any inconsistency between the Chinese and English versions of this Contract, the English version shall prevail.

12.9 Remarks :

# The end of text

*Exhibit B*

# Receipt

Receipt number: #91906090501027582

Receipt date: 10:41 AM, May 29th, 2026 (PDT)

Marketplace Operator:

**Alibaba.com Singapore E-Commerce Private Limited**

51 Bras Basah Road, #01-21 Lazada One, Singapore 189554

Sold by:

**Zichang New Materials (shandong) Co., Ltd.**
Room A2-907, Xinyuanxin Center, Huaxin Road,
Jinah, Shandong, CN

Buyer's company address:

**Burchfield Sales and Consulting LLC**
121 2nd st Apt A Hot Springs, AR 71913, Hot
Springs, Arkansas, US

Ship to:

**Bradley Burchfield**
Bradley Burchfield +1 8706174081, Burchfield Sales
and Consulting LLC, 6834 Cantrell Road Suite 210
little rock Arkansas 72207, 4 mile corner, Arkansas,
72207, United States of America

Order number: #91906090501027582

Order date: **8:55 PM, Jun 1st, 2021 (PDT)**

### Order details

| Item description | Qty | Unit price (excl. tax) | Total amount (excl. tax) |
|---|---|---|---|
| factory N-Isopropylbenzylamine CAS 102-97-6 | 1.00 | USD 615.0000 | USD 615.00 |
| | Subtotal | | USD 615.00 |
| | Shipping fee | | USD 50.00 |
| | Logistics insurance fee | | USD 50.00 |
| | **Order total** | | **USD 715.00** |

### Payment information

| | |
|---|---|
| Order total | USD 715.00 |
| Payment processing fee | USD 21.38 |
| **Amount paid** | **USD 736.38** |
| Paid on June 01, 2021 (Credit/debit card) | USD 736.38 |

**Notice:**

- Alibaba.com reserves the right to determine and conclude payment processing fee in this receipt.

- This is a computer-generated document and no signature is required.

- You alone shall bear any adverse consequences arising from tampering with the content for purposes other than intended.

- This receipt is not a tax invoice. You may download a tax invoice after your order is completed.

*Exhibit C*

## My Alibaba

 

Buy  Sell

🏠 Home

Messages

Buying Leads

Orders

Transactions

Contacts

My Lists

Trade Services

🔍 Search

| | | |
|---|---|---|
| A 1 **Amy Shao** | 2022-4-25 | |
| Shenzhen Conquest Communication Eq... [Message] | | |
| **Anna Ran** | 2022-4-24 | |
| Suzhou Xiaoli Pharmatech Co., Ltd. [Inquiry] | | |
| **Sunny Lin** | 2022-4-20 | |
| Sheng Shi Yuan (Xiamen) Hardware Pro... [Inquiry] | | |
| **grace hu...** | 2022-4-15 | |
| Hebei Shengyuan Jinlong Imp. & Exp. C... what product do you need? | | |
| **Starry Liao** | 2022-4-14 | |
| Changsha Xiangqian Supply Chain Man... Dear friend!◆◆ We would ... | | |
| **Rose Hou** | 2022-4-13 | |
| Yiwu Meian Arts & Crafts Co., Ltd. you need one colour how ... | | |
| **Cassie Yi** | 2022-4-13 | |
| Changsha Ayhhed Biotechnology Co., Ltd. ok | | |
| **Vivian Ya...** | 2022-4-13 | |
| Hangzhou Singer Building Materials Co.,... So if you will sell in USA m... | | |
| **Jason Wa...** | 2022-4-13 | |
| Hebei Luantong Trade Co., Ltd. yes, our quality is high and ... | | |
| **Erica N** | 2022-4-13 | |
| Beijing Hanbo Technology Deve... [Image] | | |
| **Cristina S...** | 2022-4-12 | |
| Shaanxi Chuzhan Chemical Co.,... [Message] | | |
| **Lucy cai** | 2022-2-26 | |
| Shenzhen Laserwin Technology Ltd. Hello We have a live show ... | | |
| **N Hitech** | 2022-2-16 | |
| Shenzhen Hitech Development Technol... 🙂 | | |
| **JoJo Luo** | 2022-1-21 | |
| Shenzhen Hosto Logistics Technology C... [Message] | | |

Can not find old inquiry messages? Old inquiry messages will be stored in Buying Leads.

---

### sweety yin
Local Time:
11:53 PM

📌 🔖 ⋯ 🗂 👤    ✕  Conversation

I GOT IT TODAY. BETTER THAN WHAT I GOT ~~BEFORE BUT I CANT REALLY SEE IT CAUSE~~ GLASS DIRTY. BUT THE PIECES POP CRISP WHEN BREAK THEM AND IT DOESNT BEND. STRAIGHT LINES RUN PARALLEL.

Read

sweety yin  2021-06-19 22:30

> wow !!!Great !

sweety yin  2021-06-19 22:31

> friend ,Due to Alibaba's monitoring, orders over $5000 must be delivered to Alibaba for transportation. It will bring you and me a lot of inconvenience. Therefore,I sent you Proform Invoice of 1000 kg order .Plz pay for us by bank .Hoping you will kindly understand .

sweety yin  2021-06-19 22:31

> PI—1000kg order.pdf
> 238.55 K

sweety yin  2021-06-19 22:31

> plz check PI ,Any questions about PI ,plz tell me .

sweety yin  2021-06-19 22:32

> The mode of shipping is up to you .

🔒 Booking your shipment? Check out the shockingly simple experience at Alibaba.com Freight. Compare rates

2021-06-20 10:37

I got it. better than what usually comes in but test piece was dirty.

Read

sweety yin  2021-06-20 20:03

> HI

sweety yin  2021-06-20 20:04

> if you have any questions and new needs ,plz just contact me .Beucase i am the only one who charge your business .

sweety yin  2021-06-20 20:15

Rate supplier    Start Order    Logistics Inquiry

The buyer's account is invalid and cannot be replied to.

---

**View More >**

Inquiries    Quotations



No inquiries with this supplier

Exhibit D

USD Domestic Wire Transfer Account

Transaction fee: Around USD 5.00 ⑦ (Charged by remitting bank)

Processing time: 1-2 business days

Payment limit: USD 1,000,000

Domestic Transfer option is not available to any order of more than US$1,000,000. The fund wired via the Domestic Transfer option in the equivalent amount of US$1,000,000 or more will be transferred to the seller in the same currency as it was wired and might be less than the agreed USD amount of the relevant order after being converted into USD by the seller.

ⓘ To avoid payment failure, please require your bank to confirm beneficiary bank's final receipt currency as in USD.

Payment currency: **USD only**

Beneficiary account number: **1566 0100 8665 8500 0**

Swift code: CITIUS33 or CITIUS33XXX

Beneficiary country/region: United States

Beneficiary name: Shaanxi Bloom Tech Co., Ltd.

Beneficiary address: 400 S EL Camino Real, San Mateo, California 94402

Beneficiary bank: CITIBANK N.A. New York Branch **citibank**

Beneficiary bank address: 111 Wall Street New York, New York 10043, United States

ABA number/Routing number: 031100209

ACH payment code: IAT

Notice  You can remit funds via ACH credit or wire transfers. ACH (Automated Clearing House) credit is a low-cost payment. You can contact your financial institution to learn more about ACH credit.

🖶 Print   ⬇ Download

*Exhibit E*

## USD Domestic Wire Transfer Account

| | |
|---|---|
| Transaction fee: | Around USD 5.00 ⑦ (Charged by remitting bank) |
| Processing time: | 1-2 business days |
| Payment limit: | USD 1,000,000 |

Domestic Transfer option is not available to any order of more than US$1,000,000. The fund wired via the Domestic Transfer option in the equivalent amount of US$1,000,000 or more will be transferred to the seller in the same currency as it was wired and might be less than the agreed USD amount of the relevant order after being converted into USD by the seller.

ⓘ To avoid payment failure, please require your bank to confirm beneficiary bank's final receipt currency as in USD.

| | |
|---|---|
| Payment currency: | **USD only** |
| Beneficiary account number: | **7051 0000 0467 3443 6** |
| Swift code: | CITIUS33 or CITIUS33XXX |
| Beneficiary country/region: | United States |
| Beneficiary name: | Zhishang New Materials (Shandong) Co., Ltd. |
| Beneficiary address: | 400 S EL Camino Real, San Mateo, California 94402 |
| Beneficiary bank: | CITIBANK N.A. New York Branch  citibank |
| Beneficiary bank address: | 111 Wall Street New York, New York 10043, United States |
| ABA number/Routing number: | 031100209 |
| ACH payment code: | IAT |

Notice    You can remit funds via ACH credit or wire transfers. ACH (Automated Clearing House) credit is a low-cost payment. You can contact your financial institution to learn more about ACH credit.

🖶 Print    ⤓ Download

*Exhibit F*

 **Gmail**    **Burchfield Bradley <burchfieldbradley123@gmail.com>**

## Details N-Isopropylbenzylamine

~~4 messages~~

**sales@bloomtechz.com** <sales@bloomtechz.com>    Sun, Jan 9, 2022 at 8:47 PM
To: burchfieldbradley123@gmail.com

## Fresh batch out!
**Only 16kg Blue Pure N iso crystal in stock, if miss each other, wait another month.**
**Price list (EXW USD$):**
**100g, $298usd, 500g, $496, 1kg, $820**



**Very Important information of Isopropylbenzylamine, CAS 102-97-6 crystal series product:**
Welcome to become a new comer of our group of buyers, I am Aurora Song, sales manager.
**WhatsApp/WeChat: +86 17791833715**
Frankly, the most we have been asked is the **effect**.

We have made many kinds of chemicals into crystals successfully. The **FAQ** pls check below:
**1.How we set the price**
We set the product price according to the price of raw materials and product production cycle, The price
has nothing to do with whether the product is nice to use.
**2.Which is the best**
From shape, Pure N ISO is big bar, it is the best. From smell, the 170N ISO and 2A4P
is the best. Or some other new kinds of chemical, we researched it for our stable buyers, we can't disclose it
to you.
If you request the big bar crystal is no smell, it is impossible. Because it is the theory of chemistry, it is nothing to
do with capacity.
**Each words and pictures here is real, dont talk about any fake here!**
**3.Could you disclose the shortcoming of our product?**
Yes, Pure N ISO has a bit of smell, and our 170MP N ISO is little smell. 2A4P is also little smell, in addition, it

has many other positive comments from other users.

**4.Crystal Mixed service**

It must be a legal product, otherwise you have better keep silent.

**Welcome to buy more chemicals from our company, welcome to be the senior buyer of our company and we can share more technology support for you!**

Maybe some of yours want to use the crystal for diluting, or want it has some effect of you want.

From the opinion of chemical researching, this is the Same Molecule Formula of C10H15N.

Does this chemical meet your requirements? Is it easy to use? This depends not only on his molecule formula, but also on his chemical space structure and the pharmaceutical properties that this structure should give.

## Price List(Without Shipping fee)

**1.CAS 102-97-6, N-Isopropylbenzylamine(N ISO)**

100g,$168, 500g,$389, 1kg,$650/kg

Please choose one specification below:

(1)Pure N iso 210, Largest crystal, smell

Pink/Blue/Yellow/Green etc. color N ISO,

1kg, $980/kg, Customization, Food grade

(2)N-ISO mixed 180 Medium

(3)N-ISO mixed 170, Smallest crystal, No smell


**2.CAS 4395-73-7, 4-Isopropylbenzylamine(4 ISO)**

100g,$280, 500g,$900, 1kg,$1,500/kg


**3.CAS 22374-89-6, 2-Amino-4-phenylbutane(2A4P)**

100g,$280, 500g,$900, 1kg,$1,500/kg

*Exhibit G*

---

**Burchfield Bradley** <burchfieldbradley123@gmail.com>            Sun, Apr 10, 2022 at 10:12 AM
To: sales@bloomtechz.com

Alex how you doing? Actually this product doesn't have a schedule with the DEA. But it's illegal in this state. I use it for a rust inhibitor, as was advertised. It didn't work.

[Quoted text hidden]

--
Hope credit

---

**Burchfield Bradley** <burchfieldbradley123@gmail.com>            Fri, Jun 10, 2022 at 12:43 PM
To: nick@covenantrecovery.com

[Quoted text hidden]

---

**Burchfield Bradley** <burchfieldbradley123@gmail.com>            Mon, Jun 13, 2022 at 11:01 AM
To: s.nathan300192@yahoo.com

---------- Forwarded message ---------
From: <sales@bloomtechz.com>
Date: Sun, Jan 9, 2022 at 8:47 PM
Subject: Details N-Isopropylbenzylamine
To: <burchfieldbradley123@gmail.com>

[Quoted text hidden]



Exhibit H

**Create story**   Taylor Page   Michelle Ellis   Lizzy Coleman



## Remember Password
Next time you log in on this browser, just click your profile picture instead of typing a password.

OK

What's on your mi

Live video

Create room

WW2 Crate
12h · 🌐

It fit!



Gera Vid So ⌄   📞 🎥 — ✕

Gera Vid So

Facebook
You're not friends on Facebook
1 mutual friend: Casey Zhao

12/13/21, 5:14 PM

Oye tú puto dile a esa pendeja de la Casey que me la va a pelar   ☺ ↩ ⋮

Que si sigue jodiendo me la va a pagar puta

12/13/:  ↓  PM

Hola pendajo

➕ 🖼 💬 GIF  Aa   😊 👍





👍❤ 75

3 Comments  1 Share

Like          Comment          Share

---

Gera Vid So ∨          📞 📹 — ✕

Gera Via So

Facebook

You're not friends on Facebook

1 mutual friend: Casey Zhao

12/13/21, 5:14 PM

Oye tú puto dile a esa
pendeja de la Casey          ☺ ↩ ⋮
que me la va a pelar

Que si sigue jodiendo
me la va a pagar puta

12/13/. ↓ ᴾM

Hola pendaio

➕ 🖼 🎴 GIF   Aa          😊 👍







Create story    Taylor Page    Michelle Ellis    Lizzy Coleman



## Remember Password

Next time you log in on this browser, just click your profile picture instead of typing a password.

OK



**Gera Vid So**

Hola pendajo

You can now message and call each other and see info like Active Status and when you've read messages.

Dile que la va a pagar

Maldita puta asquerosa de mierda

Me la pagar .la.

Va a sufrir

Avisale

↓

MALDITA PUTA

What's on your mi

 Live video

Create room

**WW2 Crate**
12h · 🌐

It fit!





 75

3 Comments  1 Share

 Like     Comment    Share

Gera Vid So ⌄

Hola pendajo

You can now message and call each other and see info like Active Status and when you've read messages.

Dile que la va a pagar

Maldita puta asquerosa de mierda

Me la pagar .la.

Va a sufrir

Avisale

↓

MALDITA PUTA

   GIF  Aa







Create story    Taylor Page    Michelle Ellis    Lizzy Coleman



## Remember Password

Next time you log in on this browser, just click your profile picture instead of typing a password.

OK



What's on your mi

Live video

Create room

WW2 Crate
12h · 🌐

It fit!

Gera Vid So

Dile que la va a pagar

Maldita puta
asquerosa de mierda

Me la pagar .la.

Va a sufrir

Avisale

MALDITA PUTA

.l.

Chupas mi juevos. Puto

Aa





   



❤️ 75

3 Comments  1 Share

Like          Comment          Share

**Gera Vid So** ⌄

Dile que la va a pagar

Maldita puta
asquerosa de mierda

Me la pagar .la.

Va a sufrir

Avisale

MALDITA PUTA

.l.

Chupas mi juevos. Puto

    Aa





 Gmail                                    **Burchfield Bradley <burchfieldbradley123@gmail.com>**

---

## Solution for Trade Assurance Order 91906090501027582

---

**Alibaba Customer Service** <queryreply@service.alibaba.com>          Thu, Jun 18, 2026 at 1:28 AM
To: burchfieldbradley123@gmail.com

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

Since this order is over three years old, the logistics information can no longer be verified. Additionally, the platform has no record of you contacting customer service regarding this order.

 However, we fully understand your concerns, to better assist you and enhance your purchasing experience on our platform, we will help you apply 500USD Alibaba credit (validity period is 90days from the date of issue) to settle this case. This credit can be applied to your future trade assurance order, including product and shipping costs, but please kindly note it cannot be applied to payment processing fees, taxes, or other additional services.
You may check the credit amount/validity in My Alibaba > Coupons and Credit.

Important note: All discounts (includes coupons & credit) can be combined used in your future trade assurance order as long as your order exceeds the minimum amount of USD 0.30.

Alibaba.com Credit cannot be used to settle the remaining balance of an order.

Please reply AGREE if you can accept this option.

Thank you for your kindly trust and patience with us.

Best Regard,
Alibaba Service Team

 **Gmail**

Burchfield Bradley <burchfieldbradley123@gmail.com>

## Solution for Trade Assurance Order 91906090501027582

**Alibaba Customer Service** <queryreply@service.alibaba.com>                    Mon, Jun 22, 2026 at 1:18 AM
To: burchfieldbradley123@gmail.com

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

We understand your concerns and the potential impact on you. If you confirm acceptance of USD 500 as the final settlement, we will offer you two refund options:

**Option 1:  We will refund 500 USD Alibaba credit to your Alibaba account. ( It will take approximately 1-2 business days.)**

The validity period is 90days from the date of issue. This credit can be applied to your future trade assurance order, including product and shipping costs, but please kindly note it cannot be applied to payment processing fees, taxes, or other additional services.

You may check the credit amount/validity in My Alibaba > Coupons and Credit.
Important note: All discounts (includes coupons & credit) can be combined used in your future trade assurance order as long as your order exceeds the minimum amount of USD 0.30.

Alibaba.com Credit cannot be used to settle the remaining balance of an order.

OR

**Option 2: We will refund 500 USD to your bank account. ( It will take approximately 5-7 business days.)**

**You will need to provide the following cash bank account information and ensure that the account can receive foreign currency. Also, due to bank fees, the actual refund you receive will be less than 500 USD.**

Beneficiary Name:
Beneficiary Account Number
IBAN Code:
Routing Number (for U.S. Banks):
Sort Code (for UK Banks):
BSB Code (for Australian Banks):
Beneficiary Address:
Beneficiary Bank:
Beneficiary Bank Country:
Beneficiary Bank SWIFT Code  (necessary) :
Intermediary Bank SWIFT Code (if applicable):
StreetName: (necessary，Maximum 70 characters)
BuildingNumber: (necessary，Maximum 16 characters)
PostalCode: (necessary，Maximum 16 characters)
TownName: (necessary，Maximum 35 characters)
CountrySubdivision: (necessary)

Please reply which option you prefer.

Thank you for your kindly trust and patience with us.

Best Regard,
Alibaba Service Team
-------------------------------------------------------------
发件人: [object Object]

发送时间: 19-06-2026 21:15
收件人: Alibaba Customer Service
主 题: Re: Solution for Trade Assurance Order 91906090501027582
[Quoted text hidden]
[Quoted text hidden]

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BRADLEY C. BURCHFIELD                                                                    PLAINTIFF

v.                                              Civil No. 1:22-cv-01023

ALIBABA GROUP HOLDING LTD.; JACK YUR
MA, Founder, Alibaba Group Holding Limited;
JP MORGAN CHASE BANK, 10% Investor, Alibaba
Group Holding Limited; AMAZON, 10% Investor,
Alibaba Group Holding Limited; BLACKROCK, 10%
Investor, Alibaba Group Holding Limited; CASEY ZHAO,
Alibaba Cloud; ERICA WANG, Employee/Salesperson
Xichang New Material Limited; SWEETY YIN; DRUG
ENFORCEMENT AGENCY; JOSEPH C. TSAI, Co-Founder,
Alibaba Group Holding Limited; JONATHAN ZHAOXI
LU, CEO and Director, Alibaba Group Holding Limited;
MAGGIE WEI WU, CFO, Alibaba Group Holding Limited;
DAVID ZHAIG, CEO, Alibaba Group Holding Limited;
XICHANG NEW MATERIALS LTD.; TIMOTHY J. SHEA,
Director, Drug Enforcement Agency; and JOHN DOE ("JUAN DOE")        DEFENDANTS

## REPORT AND RECOMMENDATION

Plaintiff, Bradley C. Burchfield, ("Burchfield") currently an inmate of the Randall L. Williams Correctional Facility of the Arkansas Division of Correction, filed this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and various other federal statutes as well as state law claim.  Burchfield proceeds *pro se* and *in forma pauperis* ("IFP").  Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.  This case concerns Burchfield's purchase of rust inhibiter and acrylic nail adhesive containing isopropylbenzylamine

1

from the website www.alibaba.com.

The case is before the Court for preservice screening of the Complaint under 28 U.S.C. § 1915(e)(2).  Pursuant to § 1915(e)(2), the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

## I.    BACKGROUND

Burchfield filed his initial Complaint on February 28, 2022.  On March 23, 2022, Burchfield filed an Amended Complaint (ECF No. 5).  While an Amended Complaint usually supersedes the original complaint, it is clear that from Burchfield's references to allegations in the initial Complaint, he meant for the Amended Complaint to be a supplement to the initial Complaint.  *See e.g., Owens v. Isaac,* 487 F.3d 561, 564 (8th Cir. 2007)(district court should have read the original and amended complaints together as plaintiff intended).  Additionally, on April 6, 2022, Burchfield filed a Supplement (ECF No. 15).

Burchfield owns Burchfield Sales & Consulting, LLC, and Burchfield's Welding and Fabrication, LLC.  (ECF No. 15 at 1).  In March of 2020, Burchfield "made purchases from Alibaba Group Holding Limited's ("Alibaba's") electronic platform (www.alibaba.com) for substances advertised as 'rust inhibitors' to be used as weld-through etch primer in the course of his business."  *Id.*  This substance was also marketed as "acrylic nail adhesive" which Burchfield purchased.  *Id.*

Burchfield used the rust inhibiter as a "top-applicated primer" and found the product did not inhibit rust.  (ECF No. 5 at 2).  When he used the acrylic nail adhesive, "the nails fell off."  *Id.*  Burchfield also used the substance on his welder and it "rusted the main armature and electrical coils . . . [and] will no longer strike an arc."  *Id.*  Burchfield indicates he sustained

2

excessive business losses as a result of his use of the product. *Id.* Burchfield says he put the substance on the under carriage of his two vehicles resulting in weaking of the "aluminum on the transfer case leading to the failure of the Allison Transmission" in his 2002 Chevrolet Silverado 3500. *Id.* at 6.

Burchfield indicates he spent "upwards of $6,000" on the product. (ECF No. 5 at 2). After research, Burchfield says he discovered the substance was a "by-product when pharmaceutical companies made methamphetamine." *Id.* Burchfield states the product is sold by various entities. *Id.* He also indicates the Drug Enforcement Agency's ("DEA's") website says the substance is "federally legal." *Id.* Burchfield states he was arrested with some of the product in his possession and charged with possession of methamphetamine. *Id.* He indicates all charges except one were dismissed. *Id.*

Burchfield states that he also discovered that silencers, M-16 bolt carriers, firing pins, armored vehicles, and personnel carriers could be purchased on the website. (ECF No. 5 at 4). This led Burchfield to "believe that the Alibaba platform is in all reality a narcotics and illegal arms 'criminal enterprise' which has also committed wire fraud 18 U.S.C. § 134[3] and mail fraud 18 U.S.C. § 134[1] by mislabeling the substances being paid for and the substances being shipped as they are shipped under the names calcium acetate, poly-vinyl alcohol, and acrylic nail resin." *Id.* Burchfield alleges that "[a]t all times, each Defendant was materially involved in multiple acts herein constituting a 'pattern of racketeering' [and] acts of terrorism as foreign narcotic kingpins." *Id.*

In January of 2021, Burchfield filed a complaint filed under 42 U.S.C. § 1983, *Burchfield v. Jones, et al.,* Case No. 6:20-cv-06150. (ECF No. 1 at 1). After he served the complaint, Alibaba announced in February of 2021 that it would no longer sell isopropylbenzylamine on its

3

electronic platform after April 2021. *Id.* Burchfield further alleges Alibaba committed securities fraud and that its stock price fell in half after this announcement. *Id.* Burchfield alleges that investors JP Morgan Chase, Amazon, and Blackrock withdrew their investments. *Id.*

In December of 2021, while at the house of his fiancée, Burchfield alleges he received a death threat from an unknown Mexican referring to Casey Zhao ("Zhao") who "operates an Alibaba website.[1]" (ECF No. 1 at 1). Burchfield alleges this threat establishes a pattern on racketeering activity in violation of 18 U.S.C. §§ 1961(1)(A), 1512 and 1513 "by tampering or retaliating against a witness or informant." *Id.* Burchfield contends the threat of violence is a violation of 18 U.S.C. §§ 1961 and 1962. He further maintains the Defendants "have an 'enterprise' established to sell narcotics and defraud the American public." *Id.*

In the Amended Complaint (ECF No. 5), Burchfield indicates that in addition to RICO he believes the Defendants' conduct violated the Alien Tort Act, 18 U.S.C. § 2333(a), the Anti-Terrorism Act, the Terrorism Risk Insurance Act, 21 U.S.C. § 1901, the Anti-Terrorism Clarification Act of 2018, and the Controlled Substances Act. Burchfield also asks to have the Defendants listed with the Office of Foreign Asset Control as a foreign narcotics kingpin pursuant to 18 U.S.C. §§ 2531, 2333-34. Finally, Burchfield asserts state law claims of theft under Ark. Code Ann. § 16-118-107, violations of the Online Marketplace Inform Act, Ark. Code Ann. §§ 4-119-101-05, and unjust enrichment. *Id.*

In his Supplement (ECF No. 15 at 1), Burchfield alleges the DEA's statement that isopropylbenzylamine is a federally legal substance "interferes with laws passed by the General

---

[1] The Amended Complaint (ECF No. 5 at 2) mentions threats made to his fiancée. While Burchfield has a right to represent himself, he cannot represent others. 28 U.S.C. § 1654. For this reason, the claims of his fiancée are not at issue.

Assembly of Arkansas regarding methamphetamine as the two substances have the same chemical formula." Burchfield states that the "pre-emptive theory of 21 U.S.C. § 903" and the Supremacy Clause create a conflict between the current drug laws in Arkansas and the statement on the DEA website which cannot consistently stand together. *Id.* Burchfield maintains the DEA created a public nuisance by allowing the other Defendants to "bypass the Controlled Substances Act" and sell isopropylbenzylamine. *Id.* at 1-2. Burchfield asserts that the "constitutionality of laws passed by the General Assembly of Arkansas and Congress can only be heard by the Supreme Court." *Id.* at 1. Burchfield ask that the case be referred pursuant to 28 U.S.C. § 2403 to the Supreme Court before dismissing the claims against the DEA. *Id.* at 2.

As relief, Burchfield seeks treble damages based on the threat to his life and the life of his fiancée (ECF No. 1 at 2). He seeks compensatory damages in the amount of $22,550 for damage to the welder and truck and in the amount of $18,000 for loss of business capital. (ECF No. 5 at 7). He seeks declaratory relief to have Defendants designated as foreign narcotics kingpins and to have their asserts frozen as well as the assets of third-party sellers on the Alibaba website and associated websites. *Id.* He seeks punitive damages in the amount of 500 billion dollars. *Id.* He also seeks witness protection for he and his fiancée.

## II.    APPLICABLE STANDARD

The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather

5

than to vindicate a cognizable right.  *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988); *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'"  *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III.   DISCUSSION

### A.  RICO Claims

"The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers."  *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 990 (8th Cir. 1989)(*citing United States v. Turkette*, 452 U.S. 576, 591 (1981)).  RICO, codified at 18 U.S.C. §§ 1961 *et seq.*, provides a civil cause of action for " [a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  To state a RICO claim, Burchfield must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

### (1) Existence of an Enterprise

The term enterprise is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "[A]n association-in-fact enterprise must have a least three structural features:   a purpose, relationships among those associated with the enterprise, and

6

longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938, 946 (2009). "The enterprise is not the pattern of racketeering activity. Rather, the enterprise must have a common or shared purpose, some continuity of personnel, and an ascertainable structure distinct from the pattern or racketeering." *Asa-Brandt, Inc. v. ADM Investor Services, Inc.,* 344 F.3d 738, 752 (8th Cir. 2003)(citing *United States v. Turkette,* 452 U.S. 576, 583 (1981)).

Burchfield's allegations are insufficient to allege the existence of an ascertainable structure distinct from the pattern of racketeering activity. In fact, he refers to the Alibaba platform as being the criminal enterprise, without reference to any association with the other named Defendants. (ECF No. 5 at 4). It appears Burchfield believes that because he has identified some of the named Defendants as employees, officers, founders, or investors in Alibaba Group Holdings that they are automatically part of a RICO enterprise. This is insufficient to allege the necessary structural features as set forth in *Boyle,* 556 U.S. at 946.

### (2). Existence of a Pattern

For a pattern to exist there must be at least two acts of racketeering activity. 18 U.S.C. § 1961(5). "There are two issues here that should be kept distinct: Whether the plaintiffs have sufficiently pleaded acts of racketeering, and whether those acts can be said to form a pattern." *Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 919 (8th Cir. 2001).

### (a). Acts of Racketeering Activity

The term racketeering activity is defined to include a variety of criminal offenses under state and federal law including mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, tampering with a witness, victim, or informant, 18 U.S.C. § 1512, and retaliating against a witness, victim, or informant, 18 U.S.C. § 1513—the four federal statutes Burchfield identifies as predicate

acts in this case.   18 U.S.C. § 1961(1).   Burchfield also alleges a violation of State law dealing with controlled substances as a predicate act.   The violations of law are referred to as predicate offenses or predicate acts and must be present to support the existence of a pattern of racketeering activity.   *Asa-Brandt,* 344 F.3d at 752.

The Supreme Court has "explained that, to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'   Proximate cause for RICO purposes, . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.'   A link is '"too remote," "purely contingent," or 'indirect is insufficient.'"   *Hemi Group, LLC v. City of New York, N.Y.,* 559 U.S. 1, 9 (2010)(quoting *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, 271, 274 (1992)).   In *Hemi Group,* the Supreme Court reaffirmed that it does not go beyond the "first step" in determining "proximate cause inquiries under RICO."   *Id.* at 10.   When the alleged violation did not lead "'directly to the plaintiff's injuries,'" the plaintiff "failed to meet RICO's 'requirement of a direct causal connection' between the predicate offense and the alleged harm."   *Id.* at 10-11 (quoting *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 460-61 (2006)).

**(1) Mail Fraud and Wire Fraud**

When a predicate offense is based on fraud, such as mail fraud and wire fraud, the pleading must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *Nitro Distrib, Inc. v. Altico, Inc.,* 565 F.3d 417, 428 (8th Cir. 2009).   "Rule 9(b) requires a party alleging fraud or mistake 'state with particularity the circumstances constituting a fraud or mistake.'"   *Id.* (citing Fed. R. Civ. P. 9(b)).

After discovering various other items, such as silencers, bold cutters, firing pins, armored vehicles, and personnel carriers could also be purchased on the site, Burchfield concluded that the

8

Alibaba platform was in "reality a narcotics and illegal arms 'criminal enterprise' which has also committed wire fraud . . . and mail fraud . . . by mislabeling the substances being paid for and the substances being shipped as they are shipped under the names calcium acetate, poly-vinyl alcohol, and acrylic nail resin." *Id.* at 4.

As to all Defendants other than Alibaba and David Zhaig, Burchfield fails to allege the key components of a fraud claim "the who, what, when, where, and how:   the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir. 2011)(cleaned up). Simply put, Burchfield's claims against the remaining Defendants do not meet the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.

"The elements of mail fraud under 18 U.S.C. § 1341 are (1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud, (3) reasonable foreseeability that the mail would be used, and (4) that the mail was used in furtherance of some essential step in the scheme." *United States v. Cole,* 721 F.3d 1016, 1021 (8th Cir. 2013)(cleaned up).   The elements of wire fraud under 18 U.S.C. § 1343 "are identical to the elements of mail fraud except wire fraud involves interstate wire communications rather than mail.   *Id.*

Burchfield's allegations against Alibaba and David Zhaig are sufficient to state a plausible claim of mail fraud as the allegedly defective product was shipped to him in the mail in furtherance of the alleged scheme to defraud.   However, Burchfield has not alleged the use of interstate wire communications.

### (2).   Intimidation of, or Retaliation Against, a Witness

Next, Burchfield alleges intimidation of, and retaliation against, a witness in violation of 18 U.S.C. §§ 1512-1513.   Presumably Burchfield believes he will someday be a witness against

9

one or more of the Defendants;[2] the alleged threating message was in Spanish and delivered via Facebook in December of 2021 by an unidentified person; the threat referenced a named Defendant, Casey Zhao.

Section 1512 "prohibits only specific types of conduct—intimidation, physical force, threats, or attempts to do so, misleading conduct, or harassment." *United States v. Risken,* 788 F.2d 1361, 1368 (8th Cir. 1986). Burchfield alleges he received a death threat which amounts to tampering with or retaliating against him in violation of § 1512. Burchfield does not indicate what subsection of § 1512 he believes was violated by this threat. Subsection (a)(1) involves killing or attempts to kill another person and is not applicable. Subsection (a)(2)(C) involves the use of physical force or the threat of physical force against a person to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings." Subsections (b)(1) & (2) apply only to official proceedings which are not alleged here. Subsection (b)(3) could possibly apply and provides as follows:

> (b)Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> * * *
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission of or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings.

---

[2] The civil action Burchfield brought under 42 U.S.C. § 1983 was closed on July 13, 2021, *Burchfield v. Jones, et al,* Civil No. 6:20-cv-06150. This case was not filed until April 13, 2022. Thus, Burchfield cannot be referring to being a witness in that case.

18 U.S.C. § 1512(b)(3). While § 1512 is not limited to pending official proceedings and covers potential witnesses and even those reporting criminal activity, *Riskin,* 788 F.2d at 1368, Burchfield has made no factual allegations that any of the named Defendants took any of the prohibited actions or even how, or when, he believes he might engage in a protected activity such as being a witness or communicating with law enforcement officers. Burchfield has not alleged a plausible violation of § 1512.

Section 1513 covers the retaliation against a witness, victim, or informant. 18 U.S.C. § 1513. Once again Burchfield does not cite to any specific subsection, however, Burchfield has not alleged that he acted as a witness or informant. Further, he has made no factual allegations suggesting that any of the named Defendants took retaliatory actions against him or threatened to do so. Burchfield has not alleged a plausible violation of § 1513.

### (3). Violation of State Controlled Substances Laws

Section 1961(1)(A) includes in its definition of racketeering activity "any act or threat . . . dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). Burchfield appears to be contending that isopropylbenzylamine should be a controlled substance under the Arkansas Controlled Substances Act, Ark. Code Ann. 5-64-101 *et seq.* However, he fails to allege that isopropylbenzylamine is a controlled substance or listed chemical under that Act. Burchfield's belief that this substance should be controlled under both Federal and State law is simply insufficient. Burchfield has not alleged a plausible violation of Ark. Code Ann. §§ 5-64-101 *et seq.*

### (b). Whether the Acts Form a Pattern

These acts of mail fraud must be related and must "amount to or pose a threat of continued

11

criminal activity." *United Healthcare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 571 (8th Cir. 1996)(citation omitted). "The relationship prong of the pattern element is satisfied if the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F.3d 402, 406 (8th Cir. 1999)(quoting *Handeen v. Lemaire,* 112 F.3d 1339, 1353 (8th Cir. 1997)). The continuity prong, "can be either closed-ended or open-ended. Closed-ended continuity involves 'a series of related predicates extending over a substantial period of time;' open ended continuity involves acts which, by their nature, threaten repetition into the future. Multiple predicates within a single scheme are encompassed within the RICO statute as long as the relationship and continuity elements are met." *Id.* (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989)). "The 'continuity' requirement generally requires proof that the predicate acts extended over a closed period of at least a year." *Webster Industries, Inc. v. Northwood Doors, Inc.,* 320 F. Supp. 2nd 821, 850 (N.D. Iowa 2004)(citing *Handeen,* 112 F.3d at 1353).

Burchfield maintains the products labelled rust inhibitor and acrylic nail adhesive which he purchased, beginning in March of 2020, on Alibaba's website did not work as described. He indicates the website ceased selling the product or products in April of 2021. In short, the entire case centers on Burchfield's unspecified number of purchases of the allegedly defective products between March of 2020 and April of 2021. While he maintains the product consisted of isopropylbenzylamine which he describes as a by-product of the pharmaceutical production of methamphetamine, he has not alleged this by-product is itself a scheduled controlled substance or listed chemical under either Federal or State law. Burchfield maintains the DEA should never have described isopropylbenzylamine as being legal under federal law and believes the substance

12

should be illegal; however, he has not alleged isopropylbenzylamine is in fact illegal under Federal or State law or has any of the properties of methamphetamine such as its production of euphoria or its acting as a stimulant.   His remaining allegations are based on his extrapolation from the fact that the website carried various other items which he has not alleged were unlawful to sell.   This falls far short of alleging the existence of a pattern of racketeering activity.   "If the pattern requirement has any force whatsoever, it is to prevent ordinary commercial fraud from being transformed into a federal RICO claim." *Menasco, Inc., v. Wasserman,* 886 F.2d 681, 685 (4th Cir. 1989).

In sum, the RICO fails because Burchfield has not sufficiently alleged the existence of an enterprise; the predicate acts, other than mail fraud, he relies on are insufficiently pled; and he has not sufficiently alleged the existence of a pattern of racketeering activity.

**B.   Alien Tort Statute ("ATS")**

The ATS, 28 U.S.C. § 1350 provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."   The Act was designed to ensure adequate remedies for foreign citizens. *Jesner v. Arab Bank, PLC,* ___ U.S. ___, 138 S. Ct. 1386, 1398 (2018).   "The ATS is 'strictly jurisdictional' and does not by its own terms provide or delineate the definition of a cause of action for violation of international law." *Id.*   Although referenced by Burchfield, this Act has no application because he is not an alien.

## C.  Anti-Terrorism Act ("ATA")[3]

The ATA provides a civil remedy for "[a]ny national of the United States injured in his or her person, property, or business by an act of international terrorism . . . may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees."  18 U.S.C. § 2333(a).  Section 2333(d) provides that aiding and abetting liability exists:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designation as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

*Id.*

The term international terrorism is defined in 18 U.S.C. § 2331(1) and means activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> (B) appear to be intended—
>
> > (i) to intimidate or coerce a civilian population;
> > (ii) to influence the policy of a government by intimidation or coercion; or
> > (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the person they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

---

[3] Burchfield also alleges violation of the Anti-Terrorism Clarification Act of 2018, Pub. L. No. 115-253.  However, this Act merely amended portions of 18 U.S.C. §§ 2331, 2333, & 2334.

14

*Id.*

"To qualify as international terrorism, the . . . acts must satisfy each of the criteria contained in § 2331(1)." *Gonzalez v. Google LLC,* 2 F.4th 871, 900 (9th Cir. 2021). A mass shooting at a Florida night club was held not to be an act of international terrorism giving rise to civil liability. *Colon v. Twitter, Inc.,* 14 F.4th 1213 (11th Cir. 2021). Similarly, giving money to a group which then sponsored a terroristic act did not constitute an act of international terrorism giving rise to civil liability when the donor had no knowledge of the donee's intended criminal use of funds. *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,* 291 F.3d 1000 (7th Cir. 2002).

Clearly, the selling of a product that does not act as advertised does not fall within the definition of an act of international terrorism. Burchfield has not alleged that an act of international terrorism has been committed. He has not alleged the Defendants provided material support to any terrorist groups, provided services to a terrorism group, or in any other way was involved with a terrorist group. No plausible claim is stated.

### D. Terrorism Risk Insurance Act ("TRIA")

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA") provides a terrorism exception to the jurisdictional immunity of a foreign state. 28 U.S.C. § 1605A. Specifically, it provides that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment or agency.

15

28 U.S.C. § 1605A(a)(1).

Subsection (c) provides that "[a] foreign state that is or was a state sponsor of terrorism . . . and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to—(1) a national of the United States . . . for personal injury or death," 28 U.S.C. § 1605A(c). The TRIA in turn provides allows the execution of judgments obtained under the FSIA against blocked assets of a terrorist party including an agency or instrumentality of that terrorist party. 28 U.S.C. § 1610; *Bank Markazi v. Peterson,* 578 U.S. 212, 217 (2016). Clearly, Burchfield's allegations state no plausible claim under the FSIA or the TRIA.

### E.   Foreign Narcotics Kingpin Designation Act ("Kingpin Act")

The Kingpin Act, 21 U.S.C. §§ 1901 *et seq.*, makes it the "policy of the United States to apply economic and other financial sanctions to significant foreign narcotics traffickers and their organizations worldwide to protect the national security, foreign policy, and economy of the United States from the threat" to the "national security, foreign policy and economy of the United States." 21 U.S.C. §§ 1901(b) and (a)(4). "The Kingpin Act authorizes the President to designate 'foreign person[s] that play a significant role in international narcotics trafficking ("SFNTs")." *Fares v. Smith,* 249 F. Supp. 3d 115, 118 (D.D.C. 2017)(citing 21 U.S.C. §§ 1903(b), 1907(7). The Office of Foreign Assets Control ("OFAC") has delegated authority to designate foreign persons "as materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of , a[n] [SFNT]," or "as playing a significant role in international narcotics trafficking." 21 U.S.C. §§ 1904(b)(3), 1904(b)(4). "Person designated pursuant to such authority are referred

16

to as 'specifically designated narcotics traffickers' ("SDNTs")." *Fares,* 249 F. Supp. 3d at 118 (citing 31 C.F.R. §§ 598.803, 598.314). Designation as an SDNT results in the freezing of assets including "all such property and interests in property within the United States, or within the possession or control of any United States person" and precluding any person from dealing in those assets. 21 U.S.C. §§ 1904(b), 1904(c).

Burchfield seeks to have the Defendants so designated. The Kingpin Act provides no civil cause of action.[4] The Court has no authority to make such designation or to require the President or the OFAC to make such designation. No plausible claim is stated.

### F.    The Controlled Substances Act ("CSA")

The CSA, 21 U.S.C. § 801 *et seq.,* makes it unlawful for any person to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense" any controlled substance "[e]xcept as authorized by [21 US.C. §§ 801-904]." 21 U.S.C. § 841(a)(1). "The CSA establishes five 'schedules' of controlled substances differentiated by the scheduled drug's potential for abuse, its usefulness in medical treatment, and the potential consequences if abused. 21 U.S.C. § 812(b)." *Monson v. Drug Enforcement Admin.,* 522 F. Supp. 2d 1188, 1192 (D.N.D. 2007).

The term "controlled substance" is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). The authority to add a substance to a schedule lies with the Attorney General. 21 U.S.C. § 811(a); *see also Gonzales v. Oregon,* 546 U.S. 243, 258 (2006)("The Attorney General has

---

[4] A person so designated may challenge the designation by seeking administrative review before the agency, 31 C.F.R. § 501.807, or on procedural due process grounds, *see e.g., Fares v. Smith,* 901 F.3d 315 (D.D.C. 2018).

17

rulemaking power to fulfill his duties under the CSA"). Isopropylbenzylamine is not a controlled substance under any of the five schedules. 21 U.S.C. § 812.

Burchfield maintains that isopropylbenzylamine has the same chemical formula, $C_{10}H_{15}N$, as methamphetamine. *See e.g.,* (ECF No. 15 at 1). In view of this, Burchfield contends the DEA should not have published a statement on its website that isopropylbenzylamine is a "federally legal" substance. *Id.* The CSA provides no enforceable federal substantive rights to Burchfield. *See e.g., Safe Streets Alliance v. Hickenlooper,* 859 F.3d 865, 897 (10th Cir. 2017)(no federal substantive rights to privately enforce the CSA).

G.    **Anti-Preemption Provision of the CSA and the Supremacy Clause**

Section 903 provides as follows:

> No provision of this subchapter shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the States, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903.

Burchfield contends the statement published on the DEA website interferes with laws passed by the General Assembly of Arkansas regarding methamphetamine because it has the same chemical formula as isopropylbenzylamine. Burchfield maintains this is in violation of § 903 and the Supremacy Clause. He asserts this creates a public nuisance by allowing the other Defendants to bypass the CSA. However, Burchfield has not identified any specific provision of Arkansas law or the CSA that the DEA statement allegedly preempts; nor does Burchfield allege that the substance isopropylbenzylamine has been made unlawful under Arkansas drug laws.

18

With respect to the Supremacy Clause, the Supreme Court has held that "[t]he Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Armstrong v. Exceptional Child Center, Inc.,* 575 U.S. 320, 325 (2015)(cleaned up).   Next, the question is whether § 903 creates "new federal substantive rights or incorporates a private citizen's existing substantive rights, elevating them for federal protection." *Safe Streets,* 859 F.3d at 903. The Supreme Court has stated that

> [t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class.   For a statute to create such private rights, its text muse be phrased in terms of the persons benefited.

*Gonzaga Univ. v. Doe,* 536 U.S. 273, 283-84 (2002).

"Where a federal statute 'simply does not create substantive rights,' the Supreme Court has explained that it is 'unnecessary to address [any] remaining issues' about a private citizen's ability to enforce that statute or obtain relief." *Safe Streets,* 859 F.3d at 903 (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 11 (1981)).   A private citizen may not enforce the CSA. *Id.* at 904.   Burchfield cannot bring his claim about the DEA statement or the non-listing of isopropylbenzylamine as a scheduled drug under the Supremacy Clause or § 903.   No plausible claim is stated.

### H.  Supplemental State Law Claims

Burchfield has alleged state law claims of theft, unjust enrichment, and violation of the Online Marketplace Consumer Inform Act, Ark. Code Ann. 4-119-101 *et seq.*   Pursuant to 28 U.S.C. § 1367(c)(3) the Court may decline to exercise supplemental jurisdiction over state law claim when it has dismissed all claims over which it has original jurisdiction.   As all federal claims

will be dismissed prior to the issuance of service of process, the Court declines to exercise supplement jurisdiction in accordance with the provisions of § 1367(c)(3).

### IV.   CONCLUSION

For these reasons, it is recommended that:

(1) all Burchfield's federal claims be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b)(1);

(2) the Court decline to exercise jurisdiction over the supplemental state law claims under 28 U.S.C. § 1367(c)(3); and

(3) the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of May 2022.

*/s/ Barry A. Bryant*
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

20

# SMALL CLAIMS COMPLAINT

Pulaski County District Court
3001 West Roosevelt Road
Little Rock, Arkansas 72204
Phone: 340-6830  Fax: 340-6899

CASE # PCSC-26-129

Pulaski County District Court
Pulaski County Arkansas

PLAINTIFF  Bradley Burchfield

ADDRESS  5420 Kavanaugh Blvd #1927 (HM) PHONE  479-223-0058  (WK) _____

CITY  Little Rock _____  STATE  AR  ZIP  72217

VS.

DEFENDANT - 1  Alibaba.com Singapore E-Commerce Private Limited

EMPLOYMENT _____

ADDRESS  51 Bras Basah Rd #01-71  HOME ADDRESS _____
CITY  Lazada One, Singapore 189554  STATE _____  CITY _____  STATE _____

ZIP _____  PHONE  N/A  ZIP _____  PHONE _____

DEFENDANT - 2  Alibaba.com US E-Commerce Corp.

EMPLOYMENT _____

ADDRESS  525 Almanor Ave. Suite 400  HOME ADDRESS _____
CITY  Sunnyvale  STATE  CA  CITY _____  STATE _____

ZIP  94085  PHONE  844-292-4741  ZIP _____  PHONE _____

AGENT OF SERVICE FOR CORPORATION (DEFENDANT'S)  @ Incorporating Services, Ltd.
ADDRESS  7801 Folsom Blvd. Suite 202  CITY  @ Sacramento  STATE  CA  ZIP  95826

AMOUNT OF RELIEF CLAIMED $  5,000.00 _____  DATE CLAIM AROSE  6/1/2021

FACTS EXPLAINING THIS CLAIM  I attempted to purchase a product from Alibaba.com and it was never delivered see attached receipt. I tried to resolve it through their dispute resolution process and to date it has not been resolved.

Bradley Burchfield
SIGNATURE OF PLAINTIFF

**IMPORTANT: IF YOU FAIL TO FILE A WRITTEN ANSWER WITHIN 30 DAYS FROM THE DATE YOU RECEIVE THIS COMPLAINT, JUDGMENT WILL BE ENTERED AGAINST YOU FOR THE AMOUNT OF THE CLAIM FILED PLUS THE COURT COSTS.**

CLAIM AMOUNT $  5000.00
FILING FEES $  105.00
SERVICE FEES $  75.52  SERVER CM
TOTAL $  5140.52

# SMALL CLAIMS COMPLAINT

**Pulaski County District Court**
3001 West Roosevelt Road
Little Rock, Arkansas 72204
Phone: 340-6830  Fax: 340-6899

CASE # PCSC-26-189

PLAINTIFF ~~XXXXXXXX~~ Bradley Burchfield

ADDRESS 5420 Kavanaugh Blvd #7927 (HM) PHONE 479-223-0038 (WK)

CITY Little Rock      STATE AR      ZIP 72217

VS.

DEFENDANT - 1  Alibaba Group Holding Limited

EMPLOYMENT

ADDRESS 26/F Tower One, Times Square | HOME ADDRESS
Matheson St, Causeway Bay

CITY Hong Kong, China   STATE ___  CITY ___   STATE ___

ZIP ___   PHONE 852-2215-5100   ZIP ___   PHONE ___

DEFENDANT - 2  Zichang New Materials (SHANDONG) Co., LTD;

EMPLOYMENT

ADDRESS Room A2-907, Xinyuanxin Center  HOME ADDRESS
Huaxin Road, Jinan, SHandong, China

CITY ___   STATE ___   CITY ___   STATE ___

ZIP ___   PHONE N/A   ZIP ___   PHONE ___

AGENT OF SERVICE FOR CORPORATION (DEFENDANT'S) Incorporating Services Ltd.

ADDRESS 7801 Folsom Blvd Ste 202 CITY Sacramento  STATE CA  ZIP 95826

AMOUNT OF RELIEF CLAIMED $ 5,000.00      DATE CLAIM AROSE 6/1/2021

FACTS EXPLAINING THIS CLAIM I attempted to purchase a product from Alibaba.com and it was never delivered, see attached receipt. I tried to resolve it through their dispute resolution process and to date it has not been resolved.

Bradley Burchfield

SIGNATURE OF PLAINTIFF

**IMPORTANT: IF YOU FAIL TO FILE A WRITTEN ANSWER WITHIN 30 DAYS FROM THE DATE YOU RECEIVE THIS COMPLAINT, JUDGMENT WILL BE ENTERED AGAINST YOU FOR THE AMOUNT OF THE CLAIM FILED PLUS THE COURT COSTS.**

CLAIM AMOUNT $ 5000.00
FILING FEES $ 105.00
SERVICE FEES $ 75.52   SERVER CM
TOTAL $ 5140.52

# Receipt

· Marketplace Operator:

Receipt number: #91906090501027582

Receipt date: 10:41 AM, May 29th, 2026 (PDT)

**Alibaba.com Singapore E-Commerce Private Limited**
51 Bras Basah Road, #01-21 Lazada One, Singapore 189554

| Sold by: | Buyer's company address: | Ship to: |
|---|---|---|
| **Zichang New Materials (shandong) Co., Ltd.** | **Burchfield Sales and Consulting LLC** | **Bradley Burchfield** |
| Room A2-907, Xinyuanxin Center, Huaxin Road, Jinan, Shandong, CN | 121 2nd st Apt A Hot Springs, AR 71913, Hot Springs, Arkansas, US | Bradley Burchfield +1 8706174081, Burchfield Sales and Consulting LLC, 6834 Cantrell Road Suite 210 little rock Arkansas 72207, 4 mile corner, Arkansas, 72207, United States of America |

Order number: #91906090501027582          Order date: **8:55 PM, Jun 1st, 2021 (PDT)**

## Order details

| Item description | Qty | | Unit price (excl. tax) | Total amount (excl. tax) |
|---|---|---|---|---|
| factory N-Isopropylbenzylamine CAS 102-97-6 | 1.00 | | USD 615.0000 | USD 615.00 |
| | Subtotal | | | USD 615.00 |
| | Shipping fee | | | USD 50.00 |
| | Logistics insurance fee | | | USD 50.00 |
| | **Order total** | | | **USD 715.00** |

| Payment information | |
|---|---|
| Order total | USD 715.00 |
| Payment processing fee | USD 21.38 |
| **Amount paid** | **USD 736.38** |
| Paid on June 01, 2021 (Credit/debit card) | USD 736.38 |

## Notice:

· Alibaba.com reserves the right to determine and conclude payment processing fee in this receipt.

· This is a computer-generated document and no signature is required.

· You alone shall bear any adverse consequences arising from tampering with the content for purposes other than intended.

· This receipt is not a tax invoice. You may download a tax invoice after your order is completed.