**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF ARKANSAS**

**CENTRAL DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUL 06 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED;
ALIBABA.COM SINGAPORE E-COMMERCE PTE. LIMITED, also known as ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED;
ALIBABA.COM U.S. LLC;
ALIBABA.COM U.S. E-COMMERCE CORP., also known as ALIBABA.COM US E-COMMERCE CORP.;
ALIBABA GROUP (U.S.) INC.;
ALIEXPRESS E-COMMERCE ONE PTE. LTD.;
AUS MERCHANT SERVICES, INC., formerly known as ALIPAY U.S., INC. and ALIPAY U.S. ESCROW, INC.;
ZICHANG NEW MATERIALS (SHANDONG) CO., LTD.;
ZHISHANG NEW MATERIALS (SHANDONG) CO., LTD. (name, translation, beneficiary, affiliate, or account variation to be clarified);
SHAANXI BLOOM TECH CO., LTD.;
JOHN DOE ALIBABA PLATFORM, PAYMENT, OWNER, OPERATOR, PARENT, SUBSIDIARY, AFFILIATE, AGENT, BUSINESS-PARTNER,

Case No. 4:26-cv-00611-DPM

JURY TRIAL DEMANDED

COMPLIANCE, PAYMENT-ROUTING, OR ALTER-EGO ENTITIES 1–10, and JOHN DOE SELLER/MERCHANT ACCOUNT OPERATORS, SALES AGENTS, PAYMENT BENEFICIARIES, PAYMENT PROCESSORS, PAYMENT-ROUTING PARTICIPANTS, CHEMICAL-PRODUCT SOLICITORS, IMPORT/SHIPMENT PARTICIPANTS, AND CO-CONSPIRATORS 1–20

Defendants.

**FIRST AMENDED COMPLAINT FOR CIVIL RICO, RICO CONSPIRACY, FRAUD, BREACH OF CONTRACT, DECEPTIVE TRADE PRACTICES, UNJUST ENRICHMENT, ALTER-EGO/AGENCY RELIEF, AND RELATED RELIEF**

---

**Civil RICO Case Statement Included**

Plaintiff Bradley Burchfield, appearing pro se only as to his own individual claims and not purporting to represent any separate limited liability company unless counsel appears for that entity, files this First Amended Complaint under Federal Rules of Civil Procedure 8, 9(b), 15(a)(2), and 15(d), and alleges as follows based on personal knowledge as to his own actions and records and on information and belief as to Defendants' internal acts, agency relationships, account records, payment routing, and communications:

## I. NATURE OF THE ACTION

1. This is a civil action arising from an Alibaba.com Trade Assurance transaction, Order No. 91906090501027582, dated on or about June 1, 2021, involving a chemical product identified in the contract records as factory N-Isopropylbenzylamine, CAS 102-97-6, and related marketplace, seller, payment, customer-service, and post-order communications.

2. Plaintiff alleges that Defendants and related John Doe participants used the Alibaba.com marketplace, Trade Assurance representations, seller accounts, sales-agent communications, payment channels, platform records, and customer-service/dispute-resolution systems to induce Plaintiff to pay money for goods while failing to deliver the contracted goods, failing to honor Trade Assurance remedies, concealing or denying material records, and using coercive or misleading communications to discourage complaints, reports, or refund demands.

3. Plaintiff pleads in the alternative under Rule 8(d). Plaintiff alleges first that the contracted goods were not delivered as promised. To the extent any Defendant contends that any goods were delivered, Plaintiff alternatively alleges that the goods were not as represented, were not fit for the lawful commercial, industrial, rust-inhibitor, or similar represented use, and did not satisfy the contract, advertising, seller representations, or Trade Assurance promises.

4. Plaintiff does not admit any unlawful purpose for any purchase. Plaintiff alleges that the product was represented and sold to him as a lawful commercial or industrial product and/or rust-inhibitor product, calcium acetate, and/or acrylic nail resin. Plaintiff seeks relief for injury to his business or property arising from alleged deception, non-delivery, failed dispute resolution, wrongful retention of money, and related conduct.

5. This federal action is separate from Plaintiff's Arkansas state small-claims or district-court matter. Plaintiff has sought, or is seeking, to transfer that separate state matter from the small-claims/district-court division to the appropriate Arkansas circuit court because the amended state-court damages exceed the monetary limits of small claims or district civil court. This federal action is not a plaintiff's notice of removal under 28 U.S.C. Section 1441. The state matter is referenced only to explain related facts, including Alibaba's June 2026

Customer Service response to Plaintiff's complaint concerning the same Trade Assurance order and marketplace seller.

6. This First Amended Complaint adds and clarifies the Alibaba and payment-processing defendants identified in Plaintiff's case materials and in the June 29, 2026 Non-Prosecution Agreements with the United States Attorney's Office for the District of Rhode Island concerning Alibaba and AUS Merchant Services. Those public agreements are pleaded as supplemental facts under Rule 15(d) because they became available after the original federal complaint and bear directly on Alibaba.com platform control, the identity of relevant Alibaba.com entities, payment-processing functions, marketplace compliance failures, subject merchandise, and the reason targeted discovery is necessary.

## II. PARTIES

7. Plaintiff Bradley Burchfield is an Arkansas resident. Plaintiff alleges that he paid for, controlled, or beneficially owned the claim arising from Alibaba.com Order No. 91906090501027582 and suffered direct injury to his business or property. To the extent the Court determines that Burchfield Sales and Consulting LLC is the real party in interest, Plaintiff requests leave under Rule 17(a)(3) for ratification, joinder, substitution, or appearance of counsel for the LLC, rather than dismissal on that technical ground.

8. Defendant Alibaba Group Holding Limited is alleged to be the parent, affiliate, controlling entity, and/or alter-ego of relevant Alibaba platform operations. The Alibaba Non-Prosecution Agreement identifies Alibaba Group Holding Limited as an exempted Cayman Islands company whose ADSs are listed on the New York Stock Exchange and identifies subsidiaries, officers, directors, employees, and agents acting within the scope of employment or agency relationships as included within the term "Alibaba." Plaintiff does not

sue Alibaba Group merely because it is a passive investor or parent. Plaintiff sues based on alleged operational control, participation, benefit, agency, platform control, payment infrastructure, policy control, and discovery facts to be proven.

9. Defendant Alibaba.com Singapore E-Commerce Pte. Limited, also known in Plaintiff's records as Alibaba.com Singapore E-Commerce Private Limited, is identified by Plaintiff's transaction records as the marketplace operator connected to Order No. 919060905010275 82. The Alibaba Non-Prosecution Agreement also identifies Alibaba.com Singapore E-Commerce Pte. Limited as a Singapore-based subsidiary and as a legal entity housing Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity operated, managed, controlled, or materially participated in the Alibaba.com marketplace, Trade Assurance contracting system, seller support, order records, customer-service functions, and dispute-resolution process relevant to this case.

10. Defendant Alibaba.com U.S. LLC is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity was involved in, benefitted from, administered, monitored, or supported United States-facing Alibaba.com marketplace operations, seller support, buyer support, payment, compliance, customer-service, or records functions. Its precise role is within Defendants' control and requires discovery.

11. Defendant Alibaba.com U.S. e-Commerce Corp., also known in Plaintiff's filings as Alibaba.com US E-Commerce Corp., is identified in the Alibaba Non-Prosecution Agreement as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff's small-claims service materials also treated

Alibaba.com US E-Commerce Corp. as a proper Alibaba.com United States entity. Plaintiff alleges this entity was involved in, benefitted from, or provided United States-facing marketplace, seller-support, buyer-support, payment, records, compliance, or dispute-resolution functions.

12. Defendant Alibaba Group (U.S.) Inc. is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and subsidiary of Alibaba Group Holding Limited. Plaintiff alleges this entity may have participated in United States-facing Alibaba platform operations, compliance, payment, records, support, or agency functions relevant to United States buyers and requires discovery into its relationship to Alibaba.com, Trade Assurance, AUS Merchant Services, and Order No. 91906090501027582.

13. Defendant AliExpress E-Commerce One Pte. Ltd. is identified in the Alibaba Non-Prosecution Agreement as a Singapore-based subsidiary of Alibaba Group Holding Limited and as a legal entity housing the AliExpress platform. Plaintiff's transaction was through Alibaba.com, not AliExpress.com. Plaintiff names this entity only because the Non-Prosecution Agreement describes Alibaba Platforms and cross-platform compliance, subject-merchandise, payment, and policy failures involving Alibaba.com and AliExpress, and because discovery is needed to determine whether any shared policies, compliance controls, payment flows, seller records, or platform agents affected the transaction at issue. If discovery shows that this entity had no role, Plaintiff will amend or dismiss it as appropriate.

14. Defendant AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., is identified in the AUS Non-Prosecution Agreement as a Delaware company with its principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085. The AUS Non-Prosecution Agreement states that AUS offered payment processing

and settlement services to Alibaba-owned e-commerce platforms, including Alibaba.com, and processed United States dollar payments on behalf of overseas merchants selling to United States-based buyers. Plaintiff alleges on information and belief that AUS, Alipay, or a related payment entity may have processed, screened, retained, monitored, or possessed records concerning Plaintiff's Alibaba.com payment or related seller/beneficiary payment flow. Its precise relationship to Plaintiff's payment must be determined through discovery.

15. Defendant Zichang New Materials (Shandong) Co., Ltd. is identified in the Trade Assurance Purchase Contract as the seller for Alibaba.com Order No. 919060905010275 82. Plaintiff alleges this seller or its agents represented the goods, induced the order, accepted or benefited from the transaction, communicated through Alibaba.com or related channels, and failed to deliver the contracted goods or provide a refund. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

16. Defendant Zhishang New Materials (Shandong) Co., Ltd. is identified in uploaded payment records as a beneficiary associated with a domestic wire transfer account or payment instructions. Plaintiff alleges that Zichang and Zhishang may be a spelling, translation, beneficiary, account, affiliate, or alter-ego variation related to the seller and seeks discovery to determine the correct legal identity and payment beneficiary. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

17. Defendant Shaanxi Bloom Tech Co., Ltd. is identified in uploaded payment records and in the bloomtechz.com email evidence. Plaintiff alleges that this entity, sales@bloomtechz.com,

Aurora Song, and/or related agents participated in chemical-product solicitations, direct WhatsApp/WeChat communications, payment routing, buyer communications, post-order communications, concealment, or related enterprise conduct. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

18. The John Doe Alibaba Platform owner, operator, parent, subsidiary, affiliate, agent, payment, compliance, business-partner, payment-routing, or alter-ego entities 1-10 are presently unknown entities that owned, operated, controlled, administered, profited from, provided payment or compliance services to, or exercised authority over Alibaba.com, Trade Assurance, seller accounts, buyer communications, payment records, customer-service responses, dispute records, platform-level compliance functions, or related post-order communications relevant to Plaintiff's transaction. These Doe Defendants include, without limitation, any Alibaba-related entity, affiliate, business unit, agent, service provider, payment participant, compliance participant, or alter-ego entity that operated or controlled seller or merchant accounts; communicated with Plaintiff; issued or participated in chemical-product solicitations; used WhatsApp, WeChat, email, Alibaba.com messaging, or other channels to solicit or discuss N-Isopropylbenzylamine or related chemicals; represented product properties or legality; routed or received funds; controlled beneficiary accounts; participated in the alleged non-delivery or misrepresentation; or assisted in concealing, discouraging, threatening, or obstructing complaints concerning Order No. 91906090501027582 and related post-order communications, including the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine." For purposes of this Complaint, the term "related communications" includes, without limitation, Alibaba.com

platform messages, Trade Assurance communications, seller or sales-agent emails, payment instructions, WhatsApp or WeChat solicitations, customer-service responses, dispute-resolution communications, and the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine."

19. The John Doe seller/merchant account operators, sales agents, payment beneficiaries, payment processors, payment-routing participants, chemical-product solicitors, import/shipment participants, and co-conspirators 1-20 are presently unknown individuals or entities that operated or controlled seller or merchant accounts; communicated with Plaintiff; issued or participated in chemical-product solicitations; used WhatsApp, WeChat, email, Alibaba.com messaging, or other channels to solicit or discuss N-Isopropylbenzylamine or related chemicals; represented product properties or legality; routed, processed, or received funds; controlled beneficiary accounts; participated in the alleged non-delivery or misrepresentation; or assisted in concealing, discouraging, threatening, or obstructing complaints concerning Order No. 91906090501027582 and related post-order communications, including the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine." These Doe Defendants include persons or entities using or associated with names, accounts, and communications such as Sweety Yin, Aurora Song, Erica Wang, sales@bloomtechz.com, BloomTechz, and other marketplace, sales-agent, seller, payment-account, or beneficiary actors whose full legal identities, employers, agency relationships, and service addresses are presently unknown.

## III. JURISDICTION, VENUE, AND SERVICE

20. This Court has federal-question jurisdiction under 28 U.S.C. Section 1331 because Plaintiff asserts claims under the federal civil RICO statute, 18 U.S.C. Sections 1961-1968, including

Sections 1962(c) and 1962(d). This Court has civil RICO jurisdiction and remedial authority under 18 U.S.C. Section 1964(c), which authorizes a person injured in business or property by reason of a violation of 18 U.S.C. Section 1962 to sue in an appropriate United States district court for treble damages, costs, and attorneys' fees.

21. This Court has supplemental jurisdiction under 28 U.S.C. Section 1367 over related state-law claims and common-law claims because those claims arise from the same transaction, communications, payment flow, injury, and alleged enterprise conduct as the federal RICO claims.

22. This Court has personal jurisdiction over Defendants to the extent permitted by due process, Arkansas law, Federal Rule of Civil Procedure 4(k), and RICO's nationwide service provisions. Defendants and their agents allegedly directed electronic marketplace, payment, and customer-service communications into Arkansas; accepted or processed payment from an Arkansas resident; used United States payment systems and United States-facing Alibaba.com operations; and caused injury to Plaintiff's business or property in Arkansas.

23. Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the events, communications, payments, reliance, injury, and records occurred in Arkansas, were directed to Arkansas, or caused injury in Arkansas. Venue is also proper under RICO venue principles because the alleged enterprise conducted or affected interstate and foreign commerce through an international e-commerce marketplace, electronic mail, internet platform transmissions, United States bank accounts and/or United States payment channels, and communications between Arkansas, China, Singapore, California, New York, and other locations. One or more foreign Defendants may also be sued in any judicial district where personal jurisdiction exists.

24. Plaintiff will prepare summonses for each Defendant on the Clerk's form and file proof of service in compliance with Federal Rule of Civil Procedure 4 and Local Rule 4.1. Because this First Amended Complaint names domestic and foreign corporate defendants, including entities located in the United States, Singapore, China, Hong Kong, and other jurisdictions, Plaintiff requests leave, to the extent required, to serve each Defendant by any method authorized by Federal Rule of Civil Procedure 4(d), 4(f), 4(h), applicable treaty including the Hague Service Convention, waiver, authorized registered agent, or further order of the Court. Plaintiff does not contend that NPA counsel represents any Defendant in this civil action unless counsel enters an appearance or expressly agrees in writing to accept service.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. The Trade Assurance Transaction

25. On or about June 1, 2021, Plaintiff entered into an Alibaba.com Trade Assurance Purchase Contract for Order No. 91906090501027582. The contract records identify the seller as Zichang New Materials (Shandong) Co., Ltd., and identify the buyer/contact as Burchfield Sales and Consulting LLC / Bradley Burchfield. The product was identified as factory N-Isopropylbenzylamine, CAS 102-97-6.

26. Plaintiff alleges that he paid approximately $736.38 in connection with the order, including a contract amount reflected around $715.00 and related payment, fee, or transaction amounts reflected in his records.

27. Plaintiff alleges that he relied on Alibaba.com marketplace structure, Trade Assurance branding, seller verification or platform presentation, order records, buyer/seller records, and dispute-resolution representations in making payment.

28. Plaintiff alleges the goods were not delivered as promised and that Defendants failed to provide a timely refund, meaningful Trade Assurance remedy, or accurate logistics/dispute records. Alternatively, if any goods are alleged to have been delivered, Plaintiff alleges they were not as represented or fit for the represented lawful commercial use.

29. Plaintiff alleges that the transaction was not presented as an offline transaction with an unrelated stranger. It was presented through the unified Alibaba.com marketplace, Alibaba.com branding, Alibaba.com order system, Trade Assurance framework, customer-service channels, and dispute-resolution process.

**B. Marketplace Control and the June 2026 Alibaba Customer-Service Response**

30. Plaintiff pursued a separate Arkansas small-claims or district-court matter involving the same Alibaba.com Trade Assurance order and marketplace seller. Plaintiff is seeking to move that state matter out of the small-claims/district-court track and into the appropriate Arkansas circuit court because the state-court damages sought exceed the lower court monetary limits. That state case and this federal case are separate matters.

31. After Plaintiff pursued the state dispute or after Alibaba received notice of Plaintiff's complaint concerning the dispute, Alibaba Customer Service responded in writing from queryreply@service.alibaba.com under the subject line "Solution for Trade Assurance Order 919060905010275 82."

32. In that response, Alibaba stated that it had received Plaintiff's complaint regarding the order, that the case had been escalated to Alibaba's senior team, that the order was over three years old, that logistics information could no longer be verified, and that the platform had no record of Plaintiff contacting customer service regarding the order.

33. Alibaba did not respond by saying the matter belonged only to a foreign marketplace seller and that Alibaba had no platform role. Instead, Alibaba reviewed or claimed to review the order and platform records, discussed logistics verification and customer-service records, and offered to help Plaintiff apply a $500 Alibaba credit to settle the matter.

34. Plaintiff alleges that this response is evidence supporting discovery into which Alibaba entity or entities controlled the order, platform records, seller account, Trade Assurance process, customer-service response, payment flow, and settlement-credit authority.

**C. Alibaba Buyer-Information Routing, Supplier Follow-Up, and Continued Seller Outreach**

35. Plaintiff references Exhibit A-4, the Haihang email with attached translation. The exhibit reflects a January 4, 2016 Alibaba/AliSourcePro system email from alisourcepro@service.alibaba.com to export036@haihangchem.com concerning RFQ 102-97-6. The translated email states that the supplier's quotation for RFQ 102-97-6 was successfully sent to a United States buyer, instructs the supplier to view the quotation and contact the buyer, and states that buyer contact information could be viewed in the My Alibaba backend or Procurement Direct quotation-management system.

36. Plaintiff alleges that Exhibit A-4 is evidence that Alibaba made buyer inquiry information, buyer identity information, buyer country/region information, and buyer contact information available to suppliers or supplier-side users through Alibaba's own platform systems, and that Alibaba encouraged supplier follow-up with buyers for RFQ 102-97-6. Plaintiff pleads this evidence as relevant to platform control, buyer-information routing, supplier solicitation, agency, selling or monetizing buyer information, RICO enterprise methods, and discovery into how suppliers and seller agents obtained buyer information for chemical-product inquiries.

37. Plaintiff further references Exhibit A-3, the 2025 email from Decho Chemical. In that email, a Decho Chemical sales representative states that she found Plaintiff had an inquiry for N-Isopropylbenzylamine, CAS 102-97-6, asks about Plaintiff's business regarding that chemical, and offers to provide current prices and further chemical-product sales assistance. Plaintiff alleges that Exhibit A-3 shows that the same type of selling or making available of buyer-information, buyer-information routing, supplier follow-up, or seller outreach concerning CAS 102-97-6 continued in 2025, years after the 2016 Haihang/AliSourcePro email and after Plaintiff's 2021 Trade Assurance transaction. Plaintiff pleads Exhibits A-3 and A-4 as evidence of continuity, relatedness, platform-enabled solicitation, and the need for discovery concerning Alibaba's buyer-information practices, supplier access to buyer data, and seller-agent contact methods.

**D. The January 9, 2022 BloomTechz Email and Alternative Analogue Theory**

38. On or about January 9, 2022, Plaintiff received an email from sales@bloomtechz.com under the subject "Details N-Isopropylbenzylamine." The forwarded-header evidence identifies the sender as sales@bloomtechz.com, the date as January 9, 2022 at approximately 8:47 p.m., and the recipient as Plaintiff's email address.

39. Plaintiff alleges that the email promoted "Blue Pure N iso crystal" or similar chemical products, listed prices for 100g, 500g, and 1kg quantities, solicited direct WhatsApp/WeChat contact, and discussed N-Isopropylbenzylamine, 4-Isopropylbenzylamine, 2-Amino-4-phenylbutane / 2A4P, and related products.

40. Plaintiff further alleges that the email used terms such as "effect," "diluting," "Food grade," "molecule formula," "chemical structure," and "pharmaceutical properties," and stated in

substance that from the sender's chemical-research opinion the product had the "Same Molecule Formula of C10H15N."

41. Plaintiff alleges that C10H15N is a molecular formula commonly associated with methamphetamine, and that Defendants' own marketing language therefore created a material red flag that the product was being compared to, substituted for, or promoted in relation to a controlled stimulant substance. Plaintiff does not allege that molecular formula alone conclusively proves illegality. Plaintiff pleads the statement as evidence of scienter, deceptive marketing, concealment, materiality, and the need for discovery and expert proof concerning chemical structure, intended use, represented effects, and platform compliance.

42. The same email also used coercive language, including "Each words and pictures here is real, dont talk about any fake here!" and "It must be a legal product, otherwise you have better keep silent." Plaintiff alleges that this language was intended or reasonably calculated to discourage questions, disputes, refund demands, reports to platform compliance, reports to law enforcement or regulators, or court complaints.

43. Plaintiff pleads in the alternative, subject to discovery and expert testimony, that if the product marketed as N-Isopropylbenzylamine / N ISO is found to have a substantially similar chemical structure to methamphetamine or another Schedule I or II controlled substance, and if the product was represented, intended, or marketed to have substantially similar stimulant effects or intended for human consumption, then the January 9, 2022 email supports a controlled-substance-analogue theory under 21 U.S.C. Sections 802(32)(A) and 813. Plaintiff does not admit any unlawful purchase purpose and does not seek to privately prosecute the Controlled Substances Act. Plaintiff pleads these facts to show fraudulent inducement,

scienter, concealment, intimidation, deceptive trade practices, RICO predicate context, and the need for discovery.

**E. The DOJ Non-Prosecution Agreements and Correct Alibaba/Payment Entities**

44. On June 29, 2026, the United States Attorney's Office for the District of Rhode Island entered into public Non-Prosecution Agreements with Alibaba.com U.S. LLC et al. and AUS Merchant Services, Inc. et al. The agreements became publicly available after Plaintiff's original pleading and are supplemental facts under Rule 15(d).

45. The Alibaba Non-Prosecution Agreement identifies counsel for Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., and Alibaba.com U.S. LLC. It defines "Alibaba" to include Alibaba Group Holding Limited and subsidiaries, officers, directors, employees, and agents acting within the scope of their employment or agency relationships, including Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., Alibaba Group (U.S.) Inc., and Alibaba.com U.S. LLC.

46. The Alibaba Non-Prosecution Agreement defines "ICBU" as Alibaba's International Commerce Business Unit, the business unit that operates Alibaba.com, including the legal entities that house this unit: Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. This directly overlaps with Plaintiff's transaction records and the defendants previously named in this case.

47. The Alibaba Non-Prosecution Agreement's Statement of Facts states that Alibaba.com was a global business-to-business platform that connected buyers and sellers on a single platform, and that ICBU was managed by Alibaba.com Singapore E-Commerce Pte. Limited, which managed Alibaba.com, including within the United States.

48. The Statement of Facts further states that ICBU operated the Alibaba.com marketplace, offered services to independent third-party sellers including Gold and Verified supplier membership programs, and through April 2021 offered a payment service on Alibaba.com called "trade assurance" through which ICBU processed payments linked to e-commerce orders. Plaintiff's records identify his June 1, 2021 transaction as a Trade Assurance Purchase Contract, which creates a factual issue for discovery concerning the Trade Assurance system, its transition, continuation, entity ownership, and payment-processing responsibility for Plaintiff's order.

49. The Alibaba Non-Prosecution Agreement defines "Subject Merchandise" to include drugs, devices, equipment used to manufacture counterfeit drugs, controlled substances, listed chemicals or chemical mixtures, anabolic steroids, other CSA- or FDCA-regulated items, and any product whose importation into the United States is prohibited under federal law and where such importation would constitute a felony. Plaintiff alleges that this definition is relevant to platform notice, product-risk controls, chemical-product screening, seller enforcement, and the need for discovery, but Plaintiff does not allege that the NPA alone proves his specific product was illegal.

50. The Alibaba Statement of Facts states that during approximately January 2016 through December 2024, Alibaba employees raised concerns that ICBU was used to sell improper products into the United States and that compliance measures and filtering systems were inadequate. It further states that approximately 80,000 product sales on the Alibaba Platforms involved product sales from overseas countries to the United States that lacked required approvals under FDCA and other Drug, Device, and Importation Laws, with combined gross merchandise value greater than $200 million. Plaintiff states that each supplier, including this

one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

51. The AUS Non-Prosecution Agreement identifies AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., as a Delaware company with principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085. It states that AUS offered payment processing and settlement services to Alibaba-owned e-commerce platforms, including Alibaba.com, and commenced payment processing and settlement services for Alibaba.com transactions in 2020.

52. The AUS Statement of Facts states that AUS's business model included payment processing and settlement services enabling overseas sellers on Alibaba.com to accept payments from United States-based buyers; that AUS received transaction information including merchant identity, buyer identity, and product description; and that AUS accepted United States dollar-denominated payments, including wire transfers for Alibaba.com orders, into United States bank accounts.

53. The AUS Statement of Facts further states that AUS and affiliates would, in certain instances, report merchants who sold Subject Merchandise on Alibaba's e-commerce platforms, including Alibaba.com, to Alibaba rather than systematically restricting those merchants themselves; that overseas merchants used AUS payment services to facilitate the sale and importation of Subject Merchandise; and that AUS processed transactions for overseas Alibaba.com merchants and United States-based buyers involving Subject Merchandise imported into the United States in violation of law. The Alibaba NPA states that ICBU offered the Alibaba.com Trade Assurance payment service through April 2021. Plaintiff's June 1, 2021, contract, however, is titled "Trade Assurance Purchase Contract"

and contains Trade Assurance obligations. Plaintiff therefore requests discovery into whether Trade Assurance continued after April 2021 under another Alibaba entity, seller-contract structure, AUS/Alipay payment structure, successor payment process, or other Alibaba-controlled platform framework.

54. Plaintiff alleges that these public NPA facts support, at minimum, discovery and plausible pleading on the identity of proper Alibaba and payment-processing defendants, platform-level control, United States payment channels, seller monitoring, compliance failures, notice, agency, and enterprise structure. Plaintiff does not rely on the NPA as a substitute for pleading his own injury; Plaintiff alleges his injury was caused by the June 2021 Trade Assurance order, payment, and related misrepresentations and omissions. Plaintiff submitted supplemental information to the United States Attorney's Office for the District of Rhode Island on July 2, 2026, under USPS Tracking No. 9534612845466183991255, concerning alleged continuing Alibaba.com listings for chemical precursors or restricted chemical products after the public NPA resolution. Plaintiff further alleges that at least one seller listing reflected a "verified seller" history of approximately thirteen years, which, if accurate, would predate the NPA's January 2016 Relevant Period by approximately three years. Plaintiff does not allege that this evidence alone proves Plaintiff's specific order was included in the NPA-covered transactions. Plaintiff pleads it as notice, seller-vetting, compliance, continuity, and discovery evidence concerning Alibaba's platform controls, chemical-product screening, seller-verification practices, and post-NPA compliance.

## V. CIVIL RICO CASE STATEMENT

### A. RICO Persons

55. The RICO persons include Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Pte. Limited / Private Limited, Alibaba.com U.S. LLC, Alibaba.com U.S. e-Commerce Corp. / Alibaba.com US E-Commerce Corp., Alibaba Group (U.S.) Inc., AUS Merchant Services, Inc., Zichang New Materials (Shandong) Co., Ltd., Zhishang New Materials (Shandong) Co., Ltd., Shaanxi Bloom Tech Co., Ltd., and John Doe seller, payment, and platform participants, to the extent each conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

### B. Enterprise

56. The enterprise is an association-in-fact enterprise consisting of Alibaba platform entities, seller entities, seller-account operators, sales agents, payment processors, payment beneficiaries, customer-service/dispute personnel, and Doe participants who functioned together through Alibaba.com marketplace systems, Trade Assurance records, payment infrastructure, seller accounts, email/direct messaging, and customer-service/dispute-resolution channels. The enterprise had a common purpose: to solicit, process, and retain payments for chemical-product transactions through a trusted marketplace and related payment systems while concealing non-delivery, nonconforming goods, improper product-risk representations, and/or unavailable remedies.

57. The enterprise is distinct from any single defendant because it is pleaded as an association-in-fact among multiple legal entities, seller accounts, sales agents, payment processors, and Doe participants. Plaintiff does not allege that a corporation is both the sole RICO person and the sole enterprise. The structure, roles, rules, seller accounts, payment channels, and customer-

service systems show relationships among participants and continuity long enough to pursue the enterprise's purposes.

**C. Conduct of the Enterprise**

58. Defendants conducted or participated in the enterprise's affairs by operating or controlling the marketplace, presenting the seller/order/Trade Assurance system, processing or facilitating payment, maintaining seller or buyer records, monitoring or failing to monitor high-risk chemical-product transactions, routing communications, responding to disputes, offering limited future credits rather than refunds, and concealing or denying material logistics or customer-service records.

**D. Predicate Acts Pleaded With Particularity**

59. Predicate Act 1 - June 1, 2021 Trade Assurance order/wire communication. Actors: Alibaba.com marketplace entities, ICBU-related entities, Zichang New Materials, seller-account operators, and Doe platform participants. Conduct: electronic Trade Assurance Purchase Contract and order record for Order No. 91906090501027582 transmitted through Alibaba.com to Plaintiff in Arkansas. Misrepresentation/Omission: represented or implied that the seller and order were legitimate, Trade Assurance-backed, deliverable, documented, and subject to meaningful refund/remedy protections. Predicate: wire fraud, 18 U.S.C. Section 1343.

60. Predicate Act 2 - June 1, 2021 payment/order processing. Actors: marketplace/payment participants, seller/beneficiary entities, AUS/Alipay or other Alibaba payment participants to be confirmed through discovery, and Doe payment processors. Conduct: electronic payment/order processing for the contract amount and alleged total paid of approximately $736.38. Misrepresentation/Omission: caused Plaintiff to part with money by representing

that payment would secure conforming goods and Trade Assurance protection while omitting material facts about delivery risk, payment routing, seller verification, product-risk controls, and the actual availability of meaningful refund remedies. Predicate: wire fraud, 18 U.S.C. Section 1343.

61. Predicate Act 3 - June 2021 and related period Alibaba monitoring / 1,000 kg order communication. Actors: seller agent/account identified as Sweety Yin and related seller, platform, or payment participants. Conduct: Alibaba.com or related message stating that Alibaba monitoring required certain high-value orders to be delivered to Alibaba for transportation and soliciting payment by bank for a 1,000 kg pro forma invoice. Misrepresentation/Omission: represented Alibaba monitoring/logistics and bank-payment procedures in a manner Plaintiff alleges was used to legitimize seller conduct, direct payment routing, and support an appearance of Alibaba platform oversight. Predicate: wire fraud, 18 U.S.C. Section 1343; evidence of enterprise structure and agency.

62. Predicate Act 4 - January 9, 2022 BloomTechz email. Actors: sales@bloomtechz.com, Aurora Song or related sales agents, Shaanxi Bloom Tech or related entities, and Doe participants. Conduct: email titled "Details N-Isopropylbenzylamine" soliciting chemical purchases, direct WhatsApp/WeChat contact, price lists, and statements regarding "effect," "diluting," "Food grade," molecule formula, chemical structure, pharmaceutical properties, and "Same Molecule Formula of C10H15N." Misrepresentation/Omission: represented legitimacy, availability, product characteristics, possible effects, formula, and legality while warning buyers not to talk about fake products and to keep silent if legality was questioned. Predicate: wire fraud, 18 U.S.C. Section 1343; alternative intimidation or witness-tampering predicate under 18 U.S.C. Section 1512 if intent, agency, and proceeding/reporting nexus are

proven; alternative controlled-substance or analogue racketeering context if expert proof and discovery establish all statutory elements.

63. Predicate Act 5 - post-order concealment and dispute communications. Actors: seller entities, Alibaba customer-service/dispute personnel, platform entities, and Doe participants. Conduct: failure to provide reliable logistics/dispute records, failure to provide refund or meaningful remedy, and June 2026 response stating logistics could no longer be verified and no customer-service contact record existed while offering a limited $500 future Alibaba credit. Misrepresentation/Omission: concealed, denied, or failed to preserve material records and offered a limited future credit rather than refunding Plaintiff's money. Predicate: scheme continuation and concealment; wire fraud context; agency and alter-ego evidence. Plaintiff does not rely on this post-payment communication alone to establish proximate cause of the initial payment injury, but it is relevant to concealment, control, and limitations/tolling issues.

64. Predicate Act 6 - 2016 Haihang/AliSourcePro buyer-information email and 2025 Decho Chemical seller outreach. Actors: Alibaba/AliSourcePro/Alibaba Procurement Direct, suppliers including Haihang and Decho Chemical, and Doe platform, supplier, seller-agent, or payment participants to be identified through discovery. Conduct: Exhibit A-4 shows a 2016 Alibaba system email stating that a supplier's quotation for RFQ 102-97-6 had been successfully sent to a United States buyer and instructing the supplier to view quotation details and buyer information through My Alibaba or Procurement Direct; Exhibit A-3 shows a 2025 seller email stating that the sender found Plaintiff had an inquiry for N-Isopropylbenzylamine, CAS 102-97-6, and soliciting business and prices for that chemical. Misrepresentation/Omission: Plaintiff alleges that Alibaba or related participants distributed, sold, transferred, monetized, or made available

buyer inquiry/contact information concerning CAS 102-97-6 to suppliers or seller agents while failing to disclose or control later chemical-product solicitation and data use. Predicate use: wire-fraud context, enterprise-method evidence, buyer-information-routing evidence, relatedness, continuity, platform control, and the need for discovery. Plaintiff does not plead these emails as stand-alone direct-payment predicates unless discovery connects them to Plaintiff's payment, injury, or the same enterprise conduct.

65. Predicate Act 7 - NPA-related similar conduct. Actors: Alibaba Platforms, ICBU, AUS, third-party sellers, and payment participants described in the public Non-Prosecution Agreements. Conduct: admitted platform and payment-processing failures involving Subject Merchandise and United States buyers during overlapping periods. Misrepresentation/Omission: platform policies, filtering, monitoring, seller enforcement, and payment monitoring were allegedly inadequate while the platforms and payment systems continued to facilitate transactions. Predicate use: the NPA facts are pleaded as supplemental evidence of enterprise structure, notice, pattern, continuity, control, and the need for discovery. Plaintiff does not plead the NPA alone as a direct predicate causing his individual payment injury unless discovery shows Plaintiff's order is within the covered or related conduct.

**E. Pattern, Continuity, and Relatedness**

66. The predicate acts were related because they involved the same or similar purposes, participants, victims, methods, and results: Alibaba.com marketplace chemical-product transactions, RFQ and buyer-information routing, supplier follow-up, seller/payment channels, buyer reliance, Trade Assurance or platform representations, direct chemical-

product solicitation, failed delivery/refund remedies, and concealment or discouragement of complaints.

67. Closed-ended and open-ended continuity are plausibly pleaded by the January 2016 Haihang/AliSourcePro email concerning RFQ 102-97-6 and buyer-information access, the June 2021 order/payment, the June 2021 1,000 kg communication, the January 2022 BloomTechz email, the April 2025 Decho Chemical email concerning Plaintiff's inquiry for N-Isopropylbenzylamine, CAS 102-97-6, post-order dispute and credit communications, and the NPA-described platform/payment conduct spanning approximately January 2016 through December 2024 for Alibaba and approximately January 2020 through December 2023 for AUS. Discovery is needed to determine the precise relationship between Plaintiff's transaction, RFQ/buyer-information routing, seller accounts, payment entities, and the NPA-described platform conduct.

**F. Injury and Proximate Cause**

68. Plaintiff suffered injury to business or property by paying money, losing the use of money, losing the benefit of the bargain, losing time and business opportunities pursuing refund/dispute relief, and incurring costs connected to the non-delivery or nonconforming transaction. Plaintiff's injury was directly caused by the alleged predicate acts because the electronic order, Trade Assurance representations, seller representations, and payment processing induced Plaintiff to part with money.

69. Plaintiff's alleged injuries are not personal-injury damages. They are business/property injuries involving payment, contract value, lost goods, business time, consequential business loss, and unjust retention of funds. Plaintiff reserves the right to prove all damages through records, testimony, discovery, expert proof, and accounting.

## VI. CLAIMS FOR RELIEF

**COUNT I - Civil RICO, 18 U.S.C. Section 1962(c)**

70. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

71. Each RICO person that conducted or participated in the enterprise's affairs through the pattern of racketeering activity described above violated 18 U.S.C. Section 1962(c).

72. The enterprise affected interstate and foreign commerce because it involved electronic communications, an international marketplace, foreign and United States entities, foreign sellers, United States buyers, United States payment channels, and international product-sale and importation representations.

73. The predicate acts include wire fraud and, in the alternative and subject to proof, intimidation/witness-tampering or controlled-substance/analogue-related racketeering context where all elements are established. The NPA facts and Exhibits A-3 and A-4 are pleaded to show platform control, notice, buyer-information routing, supplier follow-up, relationship, continuity, payment-processing structure, and the need for discovery.

74. Plaintiff was injured in his business or property by reason of the RICO violations and seeks treble damages under 18 U.S.C. Section 1964(c), costs, attorneys' fees if counsel appears or as otherwise allowed, interest, and all appropriate relief.

**COUNT II - RICO Conspiracy, 18 U.S.C. Section 1962(d)**

75. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

76. Defendants and Doe participants knowingly agreed, expressly or tacitly, that one or more enterprise participants would conduct or participate in the enterprise's affairs through the pattern of racketeering activity alleged above, including electronic marketplace

representations, seller/order/payment communications, direct chemical-product solicitations, concealment, and failure to provide promised remedies.

77. Plaintiff pleads conspiracy based on circumstantial evidence including shared marketplace systems, seller accounts, payment channels, communications, customer-service/dispute responses, NPA-described platform/payment functions, and the common objective of obtaining and retaining money from buyers through the alleged scheme.

**COUNT III - Fraud, Fraudulent Inducement, and Misrepresentation**

78. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

79. Defendants and Doe participants made or caused material misrepresentations and omissions concerning the seller, product, delivery, Trade Assurance protection, refund/dispute remedy, product legality/characteristics, payment routing, and customer-service records. Plaintiff has pleaded the who, what, when, where, and how in the RICO predicate section and incorporates those particulars here.

80. Plaintiff reasonably relied on the marketplace, Trade Assurance, seller, order, and payment representations when paying for the order. Plaintiff was damaged by non-delivery, nonconformity, loss of payment, loss of use of funds, and related business/property injury.

**COUNT IV - Breach of Contract / Trade Assurance Contract**

81. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

82. The Trade Assurance Purchase Contract and related order records created contractual duties concerning the sale, delivery, documentation, payment, and remedy of the goods. Zichang and/or the proper seller/beneficiary entity breached those duties by failing to deliver the goods or, alternatively, by providing goods not conforming to the contract and represented lawful commercial use.

83. The Alibaba platform defendants are liable to the extent they were parties to, administrators of, beneficiaries of, agents for, apparent principals of, or alter egos responsible for the Trade Assurance system, payment system, dispute process, seller-account enforcement, or contract representations at issue.

**COUNT V - Arkansas Deceptive Trade Practices / Unfair or Deceptive Practices**

84. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

85. Defendants' alleged conduct constitutes deceptive, unconscionable, false, or misleading business practices, including misrepresentations or omissions concerning product characteristics, seller legitimacy, platform backing, Trade Assurance remedies, refund availability, product-risk representations, and the actual handling of Plaintiff's dispute.

86. Plaintiff suffered actual financial loss and business/property injury proximately caused by reliance on Defendants' deceptive or unconscionable practices.

**COUNT VI - Unjust Enrichment / Money Had and Received**

87. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

88. Defendants received or benefitted from Plaintiff's payment, platform fees, seller benefits, payment-processing benefits, retained money, or unjust commercial benefit under circumstances that make it inequitable to retain those benefits without providing the goods, refund, or remedy promised.

89. Plaintiff seeks restitution, disgorgement, accounting, constructive trust, and all other equitable relief necessary to return money or benefits wrongfully retained.

**COUNT VII - Alter Ego, Agency, Apparent Authority, Instrumentality, and Equitable Proper-Party Relief**

90. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

91. Plaintiff alleges that the Alibaba-related defendants operated through overlapping platform names, entities, business units, policies, payment flows, customer-service systems, and seller-account controls. Plaintiff cannot determine the exact internal division of responsibility without discovery because Defendants control the corporate records, seller-account records, payment-processing records, Trade Assurance records, and customer-service records.

92. Plaintiff seeks leave to proceed under alter-ego, agency, apparent-authority, instrumentality, and proper-party theories and requests discovery into which Alibaba.com entity or payment entity owned, operated, controlled, participated in, or benefitted from the order, seller account, payment flow, Trade Assurance framework, customer-service response, and dispute-resolution process.

## VII. REQUEST FOR DISCOVERY AND CORPORATE DISCLOSURE

93. Plaintiff requests that each appearing nongovernmental corporate defendant file a complete Federal Rule of Civil Procedure 7.1 disclosure statement and any necessary supplemental disclosure identifying parent corporations, publicly held owners of ten percent or more, and relevant corporate relationships concerning Alibaba.com, ICBU, Trade Assurance, AUS/Alipay payment services, seller support, buyer support, customer service, and dispute resolution.

94. Plaintiff requests targeted jurisdictional, RICO-enterprise, payment, and veil-piercing discovery into: the identity and role of each Alibaba platform entity; the entity that controlled Order No. 91906090501027582; the seller-account owner/operator; payment processor and beneficiary; Trade Assurance terms and transition; communications with Zichang, Zhishang, Shaanxi Bloom Tech, and BloomTechz; records concerning Plaintiff's dispute; and whether

Plaintiff's transaction, seller, product, or payment records are within or related to any NPA-described subject-merchandise or compliance records.

## VIII. DAMAGES

95. Plaintiff seeks actual damages including at least the amounts paid for the transaction, loss of use of funds, benefit-of-the-bargain damages, consequential business/property damages, business interruption, time and expense incurred pursuing remedies, and all other recoverable damages proved at trial. Plaintiff pleads actual damages as the predicate for RICO trebling and for non-RICO relief, subject to proof and non-duplicative recovery.

96. For the federal civil RICO claims, Plaintiff seeks treble damages under 18 U.S.C. Section 1964(c). For state-law claims, Plaintiff seeks actual damages, restitution, disgorgement, statutory remedies, punitive damages where permitted, costs, attorneys' fees where permitted, prejudgment interest, post-judgment interest, and equitable relief. Plaintiff requests total monetary relief in the Prayer for Relief equal to $1,000,000,000,000.00, exclusive of costs, attorneys' fees, interest, and non-monetary equitable or declaratory relief.

## IX. NOTICE REGARDING PRIOR FEDERAL ACTION

97. Plaintiff previously filed Burchfield v. Alibaba Group et al., Civil No. 1:22-cv-01023, in the United States District Court for the Western District of Arkansas. That action was dismissed at preservice screening after the magistrate judge concluded that the earlier pleading did not adequately plead, among other things, a RICO enterprise distinct from the alleged racketeering activity, the particularized who/what/when/where/how of fraud as to most defendants, interstate wire communications, a plausible witness-tampering or retaliation predicate, and a controlled-substance predicate.

98. This Complaint is drafted to address those identified pleading defects by: (a) pleading a narrower operational association-in-fact enterprise; (b) identifying concrete marketplace, seller, sales-agent, payment, and customer-service roles; (c) pleading specific electronic communications, order records, payment records, email solicitations, and dates; (d) focusing the RICO predicates on wire fraud and only pleading witness-intimidation as an alternative predicate if discovery links the communications to Defendants; and (e) seeking damages for business or property injury, not personal injury or generalized grievances.

99. Plaintiff does not intend to relitigate claims that a court determines were finally adjudicated in the prior case. Plaintiff alleges separate, additional, and continuing facts, including the specific Trade Assurance Order No. 91906090501027582, bank/payment records, post-transaction email solicitations, post-dismissal customer-service communications, and continued refusal to provide meaningful relief. Plaintiff pleads these facts to the fullest extent not barred by claim preclusion, issue preclusion, statutes of limitation, or other defenses.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. Actual damages in an amount to be proven at trial, presently pleaded as the predicate actual-damages component of $200,000,000,000.00;

B. Civil RICO treble-damages recovery under 18 U.S.C. Section 1964(c), calculated from the actual-damages component in subparagraph A, in the amount of $600,000,000,000.00, inclusive of subparagraph A and not in addition to it;

C. Restitution, disgorgement, accounting, constructive trust, or money-had-and-received relief as appropriate, pleaded as alternative or non-duplicative relief and not in addition to the total monetary relief unless the law permits separate recovery;

D. Prejudgment and post-judgment interest;

E. Punitive damages only for non-RICO claims and only to the extent permitted by applicable law and proven by the evidence, in the amount of $400,000,000,000.00;

F. Costs and attorneys' fees to the extent allowed by law or if counsel appears;

G. Declaratory and equitable relief concerning alter ego, agency, apparent authority, proper-party status, and responsibility for the Alibaba.com order, payment, Trade Assurance process, seller account, customer-service response, and dispute-resolution process;

H. Leave to conduct targeted discovery concerning RICO enterprise, jurisdiction, payment, seller-account, and corporate-control issues;

I. A jury trial on all issues so triable;

J. All other relief the Court deems just and proper; and

K. For avoidance of doubt, Plaintiff requests total monetary relief equal to $1,000,000,000,000.00, exclusive of costs, attorneys' fees, prejudgment interest, post-judgment interest, and non-monetary equitable or declaratory relief, and Plaintiff does not seek duplicative recovery beyond what the law permits.

## XI. JURY DEMAND

100. Plaintiff demands a trial by jury on all issues so triable.

## XII. EXHIBIT LIST / DOCUMENTS PLAINTIFF EXPECTS TO USE

1. Exhibit A-1 - Email to NPA attorneys and reply to Solution for Trade Assurance Order 919060905010275 82;

2. Exhibit A-2 - Homesite Financial Services LLC Arkansas Debt Collector License;

3. Exhibit A-3 - Email from Decho Chemical;

4. Exhibit A-4 - Haihang email with attached translation;

5. Trade Assurance Purchase Contract for Order No. 919060905010275 82 (Original Exhibit A, original complaint filing);

6. Payment records, bank/account information, and beneficiary/account screenshots (Original Exhibits D and E, original complaint filing);

7. Alibaba monitoring / 1,000 kg order communications (Original Exhibit C, previous complaint filing);

8. January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine" (Original Exhibit F, original complaint filing);

9. June 18, 2026 and June 22, 2026 Alibaba Customer Service email titled "Solution for Trade Assurance Order 91906090501027582" (Original Exhibit I, original complaint filing);

10. Alibaba.com U.S. LLC et al. Non-Prosecution Agreement dated June 29, 2026 (Original Exhibit S, original complaint filing);

11. AUS Merchant Services, Inc. et al. Non-Prosecution Agreement dated June 29, 2026 (Original Exhibit R, original complaint filing);

12. Small-claims/state-court service materials and transfer/amendment filings, only for limited context concerning Alibaba's response and separate state proceedings (Original Exhibits K and L, original complaint filing);

13. USPS/service records and proof-of-service documents filed in this federal case (filed in this Court on or about June 30, 2026);

14. Any discovery produced by Defendants concerning corporate structure, payment processing, Trade Assurance, seller accounts, customer service, buyer-information routing, supplier access to buyer data, and compliance records; and

15. Plaintiff references the preceding exhibit filings for identification purposes and will refile or attach any exhibit the Court requires.

Respectfully submitted,

Bradley Burchfield 7/6/26

Bradley Burchfield (Jul 4, 2026 18:01:47 CDT)

Bradley Burchfield

5420 Kavanaugh Blvd #7927

Little Rock, AR 72217

Phone: 479-223-0038

Email: burchfieldbradley123@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on 7/4/26, 2026, I served a true and correct copy of this First Amended Complaint and related filing papers on all parties or counsel of record by the method allowed by the Federal Rules of Civil Procedure and the Local Rules, or I will serve newly added defendants with summons and the operative pleading as required by Rule 4.

Bradley Burchfield 7/6/26
Bradley Burchfield
Bradley Burchfield (Jul 4, 2026 18:01:47 CDT)

Bradley Burchfield

Exhibit A-1

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

## Solution for Trade Assurance Order 91906090501027582

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Fri, Jul 3, 2026 at 11:04 AM
To: Alibaba Customer Service <queryreply@service.alibaba.com>, levinsc@sullcrom.com, samwilliamson@quinnemanuel.com
Bcc: [redacted]

Happy Fourth of July!

Last email.

Sweet deal ya'll made with Feds. But I think I might have ruined your black panther party. Everyone is free in China just not in the United States it seems. Ain't that something. I mean there should be a "Right to Recovery" instead of jail sentences for citizens, if a corporation can get away with this on such a large scale. You do have the highest paid attorneys there are though. I never could afford an attorney and had to do it myself.

Now I do realize that your counsel for the NPA has not appeared in these federal and state cases in Arkansas but it does say in the NPA to address them for reasons outlined in the agreement or breach thereof, as best as I can understand it. So don't consider this service of process, unless you want to, but after service in state court you did respond through this channel. That's something the court clerk was upset about as you answered me and not the court. Well here we are, and yesterday I sent off notice to the U.S. District Court of Rhode Island to show them the cases and the precursors still available on the site and that particular supplier had been registered for 13 years which is outside that agreement you made between 2016-2024. So is the Small Claims case that's now been removed to civil circuit court as of yesterday. I'll be filing this amended complaint Monday morning to align with the NPAs which have also been submitted as exhibits yesterday. Just a professional courtesy as I did send out this information to the attorneys of record on the NPAs.

No, I don't agree to a $500 payment. Please see civil relief requested in state and federal court here in Arkansas. Lots of zeroes. Will be filing amended pleadings first thing Monday morning in both courts.

I sure would like to go into the rehabilitation and recovery business with ya'll. It would be a great civil accomplishment. Makes 6 times the amount of money that regular real estate does and considering the extent of NPA disclosures tt would be great Public Relations and service to the citizens of the United States and Arkansas. I've got 4 good years of experience in the recovery field and I am looking for a job. I think insurance pays 15-30k a month per person for rehabilitation. I digress.

Per your last request below you will find the account you can deposit foreign currency to directly. All substantial offers would be considered.

Beneficiary Name: Homesite Financial Services LLC
Beneficiary Account Number: [redacted]5910
IBAN Code: N/A
Routing Number (for U.S. Banks): 026009593
Sort Code (for UK Banks): N/A
BSB Code (for Australian Banks): N/A
Beneficiary Address: 1560 E SOUTHLAKE BLVD SUITE 100-222, SOUTHLAKE, TX 76092
Beneficiary Bank: BANK OF AMERICA, N.A.
Beneficiary Bank Country: UNITED STATES
Beneficiary Bank SWIFT Code (necessary) : **BOFAUS6S** — for wires sent in **foreign currency** to Bank of America in the U.S.
Intermediary Bank SWIFT Code (if applicable):
StreetName: (necessary, Maximum 70 characters) : CALIFORNIA ST
BuildingNumber: (necessary, Maximum 16 characters) : 555
PostalCode: (necessary, Maximum 16 characters) : 94104
TownName: (necessary, Maximum 35 characters) : SAN FRANCISCO
CountrySubdivision: (necessary) : CA

For U.S. Dollar wires

Formatted bank address:

**Bank of America, N.A.**
**222 Broadway**
**New York, NY 10038**
**United States**
**SWIFT: BOFAUS3N**

I did speak with the bank so there shouldn't be a problem in foreign transfers.

Bradley Burchfield

479-223-0038
burchfieldbradley123@gmail.com
burchfieldbradley123@icloud.com
ID#2503103532

On Mon, Jun 22, 2026 at 1:18 AM Alibaba Customer Service <queryreply@service.alibaba.com> wrote:

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

---

**9 attachments**

**FINAL COPY_FIRST_AMENDED_FEDERAL_CIVIL_RICO_COMPLAINT_encrypted_.pdf**
361K

**MOTION_FOR_LEAVE_TO_FILE_FIRST_AMENDED_COMPLAINT_encrypted_.pdf**
258K

**PROPOSED_FIRST_AMENDED_STATE_COMPLAINT_PULASKI_CIRCUIT_BURCHFIELD.pdf**
300K

**DOC070226-07022026122951.pdf**
2904K

**DOC070226-07022026123117.pdf**
4535K

**DOC070226-07022026122515.pdf**
3868K

**AFQ59365-1648565087708.pdf**
140K

**Alibaba NPA.pdf**
994K

**AUS Merchant Services NPA.pdf**
827K

Exhibit A-2

SARAH ... NDERS
Governor

D... E. B... T
... and Licensing

ARKANSAS DEPARTMENT OF LABOR AND LICENSING

AR

# State of Arkansas

**Arkansas Dept of Labor and Licensing**
**Arkansas Board of Collection Agencies**
**900 West Capitol Avenue, Suite 400,**
**Little Rock, AR 72201-9709**
**PH (501) 682-4500**
**https://labor.arkansas.gov/licensing**

1560 E SOUTHLAKE BLVD STE 100-222
SOUTHLAKE, TEXAS 76092

**LICENSE #:**
AC-6846

# HOMESITE FINANCIAL SERVICES LLC

Given under our hand and seal this **1st** day of **Jul, 2026.**

This license expires: **06/30/2027.**

Daryl E. Bassett

SECRETARY OF LABOR AND LICENSING

Exhibit A-3



Outlook

## N-Isopropylbenzylamine Cas 102-97-6 from Emily-Decho Chemical

From Emily <sale006@dechochem.com>
Date Wed 4/30/2025 12:36 AM
To [redacted]

Dear colleagues,

How are you?

This is Emily from Decho Chemical, which a manufacturer of chemicals.

If found that you have inquiry of N-Isopropylbenzylamine Cas 102-97-6,
how about your business with item-N-Isopropylbenzylamine Cas 102-97-6?
If still pending I would like to offer our latest prices to promote an opportunity to cooperate with each other.

And if any new inquiry of other chemicals, welcome here and I will try my best to satisfy you well with the competitive price and best quality as per your request.

Looking forward to your response, thank you in advance!

Thanks and Best Regards,
Emily Liao| Sales representative
**DECHO CHEMICAL**
Mobile/Whatsapp/Skype/Wechat: +86 187 6396 9830
E-mail: sale006@dechochem.com
Off. Add: Block D, Yinhe Building, High-tech Zone, Jinan City, Shandong Province
Plant Add: No. 97 Xiqin Industrial Park, Binzhou City, Shandong Province

Exhibit A-4

-------------Original Message-------------
From: alisourcepro@service.alibaba.com

[redacted] 11/13

[redacted]



To: export036@haihangchem.com
Subject: 您对United States买家的报价已经成功发送!
Date: 2016-01-04 17:20:12

---

www.Alibaba.com AliSourcePro My Alibaba | Trade Manager | 外贸圈

您的报价已成功发送至买家

此邮件为系统邮件，请勿直接答复

尊敬的中国供应商会员（Member ID: cn1515309815lfps）：

恭喜您！您针对 RFQ 102-97-6 的报价已成功发送至买家。立即 查看并联系买家

重要提醒:
为保障您和买家的信息安全，预计2015年4月20日起，阿里巴巴的官方邮件中不再包含买家联系信息，您可以在My Alibaba后台查看买家联系信息，谢谢您的支持和配合。

RFQ Subject: 102-97-6

Buyer Name: bull peterbilt

Company Name: No Company Name

Country/Region: United States

您也可以登录"My Alibaba" > "采购直达" > "报价管理"，查看报价详情信息及买家信息。

了解采购直达服务> 查看更多采购直达买家需求（RFQ） 立即登录采购直达频道>

86 185*****990 这是您在阿里巴巴上绑定的手机号码，如有缺失或错误，则该邮件并非发送自阿里巴巴。确保您的账户安全，请注意核对。

祝您早日与买家达成交易!

阿里巴巴采购直达团队

Mobile App | Customer Services | My Alibaba | Business Identity

This email was sent to
Click here to unsubscribe from Alibaba.com emails
點擊 此處 退訂來自阿里巴巴的郵件

[redacted] 12/13

**Your quotation has been successfully sent to the buyer**

This is a system-generated email. Please do not reply directly.

Dear China Supplier Member **Member ID: cn1515309815lfps,**

Congratulations! Your quotation for **RFQ 102-97-6** has been successfully sent to the buyer. View it now and contact the buyer.

**Important reminder:**

To protect the information security of both you and the buyer, starting around **April 20, 2015**, Alibaba's official emails will no longer include buyer contact information. You can view the buyer's contact information in the **My Alibaba** backend. Thank you for your support and cooperation.

**RFQ Subject:** 102-97-6
**Buyer Name:** bull peterbilt
**Company Name:** No Company Name
**Country/Region:** United States

You can also log in to **"My Alibaba" > "Procurement Direct" > "Quotation Management"** to view the quotation details and buyer information.

Learn more about Procurement Direct services > View more Procurement Direct buyer requests **RFQs** > Log in to the Procurement Direct channel now >

**86 185*990** is the mobile phone number you have linked to your Alibaba account. If it is missing or incorrect, then this email was not sent by Alibaba. To ensure your account security, please verify it carefully.

We wish you success in reaching a deal with the buyer soon!

**Alibaba Procurement Direct Team**