**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

BRADLEY BURCHFIELD,

      Plaintiff,

      v.

ALIBABA.COM SINGAPORE E-
COMMERCE PRIVATE LIMITED, *et al.*,

      Defendants.

No. 4:26-cv-00611-DPM

**FOUR DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pursuant to Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(6) of the Federal Rules of Civil Procedure, four defendants—Alibaba Group Holding Limited ("AGHL"), Alibaba.com US E-Commerce Corp., Alibaba.com U.S. LLC, and Defendant AUS Merchant Services, Inc. ("AUS") (collectively, the "Moving Defendants")—respond to Plaintiff's First Amended Complaint ("FAC") (ECF No. 11) by seeking dismissal of this lawsuit or, in the alternative, dismissal of all claims asserted against the Moving Defendants.[1]

**PRELIMINARY STATEMENT**

This is a frivolous lawsuit by a *pro se* plaintiff—Bradley Burchfield—who is an ex-convict and frequent filer of lawsuits against various Alibaba defendants that repeatedly have been dismissed. In addition to pursuing claims in Arkansas state court involving the same 2021 transaction at issue here, Plaintiff also filed this lawsuit, which arises out of an alleged purchase

---

[1] This motion, which is directed at the FAC, supersedes and moots the Alibaba Defendants' Motion to Dismiss (ECF No. 16) the initial complaint, so there is no need for the Court to rule on that prior motion to dismiss.

or attempted purchase of a chemical product via Alibaba.com ("the Alibaba.com Platform") from a third-party seller located in China—Zichang New Materials (Shandong) Co. Ltd. ("Zichang")—that is a named defendant in this lawsuit.[2] Although this purchase transaction involves a contract (between Burchfield Sales and Consulting LLC ("BSAC LLC") and Zichang) and payments totaling approximately $736, this lawsuit seeks $1,000,000,000,000 in damages, FAC at page 32. That is not a typographical error. Plaintiff's greed knows no bounds; he seeks one trillion dollars in damages for a transaction that involved a payment by BSAC LLC of less than $750.

This lawsuit (and Plaintiff's pending Arkansas state court litigation) are the latest chapters in a years-long vendetta that Plaintiff has pursued against various companies (and individuals) allegedly associated with the Alibaba.com Platform by filing frivolous *pro se* RICO lawsuits in this Court, the Western District of Arkansas, and the Northern District of California. As discussed below, Plaintiff voluntarily dismissed one of those RICO lawsuits **with prejudice** and, in a filed stipulation signed by him, acknowledged that: (a) dismissal is appropriate because no viable claim exists; and (b) no compensation had been paid or promised to him.

Enough is enough; the Court should end Plaintiff's harassment campaign by granting this motion for the reasons discussed in more detail below. This lawsuit should be dismissed for lack of subject-matter jurisdiction because Plaintiff's RICO claims are wholly insubstantial and frivolous—and therefore are not "colorable" federal claims sufficient to confer subject-matter jurisdiction on this Court (Section I below). In the alternative, this lawsuit should be dismissed for lack of subject-matter jurisdiction because Plaintiff cannot satisfy his burden of establishing that

---

[2] This brief refers to that alleged transaction as a purchase or attempted purchase because Plaintiff makes inherently contradictory, implausible allegations about a factual issue that should be squarely within his own knowledge. He alleges that the purchased product was "not delivered as promised," but he also alleges that, if the purchased product was delivered, it: (a) was "not as represented"; (b) was "not fit for the lawful commercial, industrial, rust-inhibitor, or similar represented use"; and (c) "did not satisfy the contract, advertising, seller representations, or Trade Assurance promises." FAC ¶ 3.

2

he has Article III standing to prosecute the RICO claims (Section II below). If this lawsuit is not dismissed for lack of subject-matter jurisdiction, the claims asserted against the Moving Defendants should be dismissed because Plaintiff cannot satisfy his burden of establishing that this Court has personal jurisdiction (Section III below). Finally, in the alternative, the RICO claims should be dismissed for failure to state a claim upon which relief can be granted (Section IV below).

## ALLEGATIONS AND PROCEDURAL HISTORY

In this lawsuit, Plaintiff sues the Moving Defendants, Zichang (the Chinese third-party seller that allegedly sold him the chemical product at issue here) and other defendants. None of the defendants are located in Arkansas. Alleging RICO claims (based on 28 U.S.C. §§ 1962(c), 1962(d)) and various state law claims, FAC ¶¶ 70-92, Plaintiff seeks $1 trillion in total damages, *id*. at page 32. The FAC specifically refers to the contract that was associated with that alleged purchase—the "Trade Assurance Purchase Contract"—and identifies Zichang as the alleged seller. *Id*. ¶ 15. The FAC lists that Trade Assurance Purchase Contract as Exhibit A to the initial Complaint, FAC at page 32, and Plaintiff filed that contract as an exhibit, *see* Plaintiff's Exhibit A (ECF No. 2, at pages 9-16). He also filed the receipt for that transaction—which shows BSAC LLC as the buyer and a payment of approximately $736—as an exhibit. *See* Plaintiff's Exhibit B (ECF No. 2, at page 17).

This is not the first or second or even third time that Plaintiff has sued AGHL and other defendants allegedly associated with the Alibaba.com Platform in a federal court. As discussed below, three RICO lawsuits that he filed to seek damages for the same purchase (or attempted purchase) at issue here were dismissed by this Court, the Western District of Arkansas, and the Northern District of California. *See infra* pages 6-7. Moreover, Plaintiff filed other federal court

3

lawsuits that named as defendants various companies and/or individuals allegedly associated with the Alibaba.com Platform.[3]

## LEGAL STANDARDS GOVERNING *PRO SE* LAWSUITS

Although a *pro se* complaint should be construed liberally, it "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). A court presiding over a *pro se* lawsuit cannot "supply additional facts" or "construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Id.* (quotation marks omitted); *see Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914).

## ARGUMENT

I.    **The Court Should Dismiss This Lawsuit For Lack Of Subject-Matter Jurisdiction Because Plaintiff's RICO Claims Are Wholly Insubstantial And Frivolous—And Therefore Are Not "Colorable" Federal Claims Sufficient To Confer Subject-Matter Jurisdiction On This Court.**

As a court of limited jurisdiction, this Court is required to evaluate whether it has subject-matter jurisdiction over this lawsuit. "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) (quotation marks omitted; alteration in original). As the party invoking federal subject-matter jurisdiction, Plaintiff has the burden of establishing that this Court has such

---

[3] In 2020, Plaintiff filed a lawsuit in the Western District of Arkansas (*Burchfield v. Jones, et al.*, No. 6:20-cv-06121) against numerous defendants, including President Donald Trump; Jeff Bezos; and Jack Ma, who was identified in the caption of that lawsuit as "owner Alibab.com [*sic*] and alibaba express." In 2020, Plaintiff filed a lawsuit in the Western District of Arkansas (*Burchfield v. McCormick, et al.*, No. 6:20-cv-06121) against numerous defendants, including President Donald Trump; "Members of the United States Congress"; and "Jak [*sic*] Ma," who was identified in the caption of that lawsuit as "Owner of Alibaba.com and Aliexpress.com." In 2021, Plaintiff filed a lawsuit in this Court (*Burchfield v. Clark, et al.*, No. 4:21-cv-339-DPM) against numerous defendants, including "General Assembly of Arkansas Members"; Jeff Bezos; Jack Ma, who was identified in the caption of that lawsuit as "Owner, Alibaba.com"; and David Zhang, who was identified in that caption as "CEO, Alibaba.com." All of those cases were dismissed.

jurisdiction. *See Magee v. United States*, 9 F.4th 675, 680 (8th Cir. 2021).

When a claim invokes federal question jurisdiction under 28 U.S.C. § 1331, the claim is subject to dismissal for lack of subject-matter jurisdiction if the claim "is not colorable, *i.e.*, if it is … wholly insubstantial and frivolous." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006) (quotation marks omitted); *see Garcia-Aguillon v. Mukasey*, 524 F.3d 848, 850 (8th Cir. 2008) (quoting with approval *Arbaugh*, 546 U.S. at 513 n.10). As the Eighth Circuit stated, "[t]o be colorable, a claim must have some possible validity." *Garcia-Aguillon*, 524 F.3d at 850 (quotation marks omitted).

Here, the FAC invokes federal question jurisdiction, 28 U.S.C. § 1331, based on civil RICO claims as the sole basis for subject-matter jurisdiction, but those claims are not colorable because they do not have any possible validity, as discussed below.

### A. Res Judicata Principles Establish that Plaintiff's RICO Claims do not have Any Possible Validity and Therefore are not Colorable.

In federal question cases, federal common law governs the issue of res judicata. *See In re Finstad*, 4 F.4th 693, 696 (8th Cir. 2021). The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." *See New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. *See id.* Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.* at 748-49. By precluding parties from contesting matters that parties have had a full and fair opportunity to litigate, claim preclusion and issue preclusion "protect[] their adversaries from the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial

5

action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

In light of Plaintiff's prior lawsuits in three different federal courts, res judicata principles bar the RICO claims alleged in this case and lead to the conclusion that those claims are not colorable because they do not have any possible validity.

Plaintiff previously asserted civil RICO claims, which arose out of the same Alibaba.com transaction at issue in this lawsuit, in this Court in a lawsuit captioned *Burchfield v. Alibaba.com LLC, et al.*, No. 4:22-cv-00861-LPR (E.D. Ark.). The Complaint filed by Plaintiff in that case is attached as **Exhibit 1**.[4] Plaintiff voluntarily dismissed that lawsuit ***with prejudice***, in a stipulation signed by him acknowledging that "dismissal is appropriate because no viable claim exists." February 2023 Stipulation of Dismissal (attached as **Exhibit 2**). That stipulation also stated that "no compensation in any form has passed directly or indirectly to Plaintiff and no promise, understanding, or agreement to give any such compensation has been made." *Id*.

Plaintiff also asserted civil RICO claims, which arose out of the same Alibaba.com transaction at issue in this lawsuit, in a California federal court in a lawsuit captioned *Burchfield v. Alibaba Group Holding Ltd., et al.*, No. 4:22-cv-02925-HSG (N.D. Cal.). Plaintiff filed an Amended Complaint in that case (attached as **Exhibit 3**), after 28 U.S.C. § 1915 screening of his initial complaint led the court to: (a) hold that it failed to state a RICO claim; and (b) dismiss that pleading with leave to amend. After Plaintiff filed the Amended Complaint, the court dismissed it without leave to amend, stating that the court was "convinced that [Plaintiff] cannot allege facts to

---

[4] That pleading and most of the other exhibits attached hereto are publicly available court records that the Court is permitted to consider when deciding the Rule 12(b)(1) subject-matter jurisdiction argument presented here. Moreover, when deciding the Rule 12(b)(6) argument presented below, the Court is permitted to take judicial notice of those public court records without converting this motion into a motion for summary judgment. *See, e.g.*, *Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003); *State of Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

cure the defects" identified by the court's order and that "granting Plaintiff further leave to amend would be futile." Order Dismissing Case (attached as **Exhibit 4**).

Plaintiff also asserted civil RICO claims, which arose out of the same Alibaba.com transaction at issue in this lawsuit, in a lawsuit that was initially filed in this Court and then transferred to the Western District of Arkansas, captioned *Burchfield v. Alibaba Group Holding Ltd., et al.*, No. 1:22-cv-01023-SOH (W.D. Ark.). The Complaint and Amended Complaint filed in that lawsuit are attached respectively as **Exhibit 5** and **Exhibit 6**. After engaging in 28 U.S.C. § 1915 screening of those pleadings, Magistrate Judge Bryant issued a report and recommendation in May 2022: (a) stating that Plaintiff was then "an inmate of the Randall L. Williams Correctional Facility of the Arkansas Division of Correction"; (b) recommending that all of his "federal claims be dismissed for failure to state a claim;"; and (c) recommending that "the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith." *Burchfield v. Alibaba Group Holding Ltd.*, No. 1:22-cv-01023-SOH, 2022 WL 2082306, at *1, 10 (W.D. Ark. May 17, 2022). Judge Hickey adopted that report and recommendation in its entirety, dismissing Plaintiff's federal claims "for failure to state a claim upon which relief may be granted" and certifying "that an in forma pauperis appeal of this Order would not be taken in good faith." *Burchfield v. Alibaba Group Holding Ltd.*, No. 1:22-cv-01023-SOH, 2022 WL 2079880 (W.D. Ark. June 9, 2022).[5]

This lawsuit is a perfect example of why courts use res judicata principles to prevent the kind of duplicative, vexatious litigation abuse perpetrated by Plaintiff. After unsuccessfully pursuing these RICO claims in three prior federal lawsuits against various defendants that Plaintiff believes are associated with the Alibaba.com Platform, he is not allowed to continue his

---

[5] Although Plaintiff discussed that Western District of Arkansas RICO lawsuit in the FAC, *see* FAC ¶ 97, he failed to disclose his Northern District of California RICO lawsuit (which was dismissed by that court, as discussed above) or his Eastern District of Arkansas RICO lawsuit (which Plaintiff dismissed with prejudice, as discussed above).

harassment campaign by trying to take a fourth bite of the apple. Plaintiff's RICO claims are not colorable—and do not confer subject-matter jurisdiction on this Court—because res judicata principles establish that those claims do not have any possible validity.

### B. Plaintiff's RICO Claims Clearly are Barred by the Statute of Limitations, so Those Claims do not Have any Possible Validity and Therefore are not Colorable.

Civil RICO claims are governed by a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs, Inc.*, 483 U.S. 143, 156 (1987). The four-year limitations period "begins when the plaintiff discovers or should have discovered the injury." *Schreier v. Drealan Kvilhaug Hoefker & Co., P.A.*, 992 F.3d 674, 681 (8th Cir. 2021).

Here, this Court need not speculate about when Plaintiff should have discovered the alleged injury because his prior litigation conduct reveals that he actually discovered the alleged injury more than four years before he filed this lawsuit on June 22, 2026. The Complaint (Exhibit 5) and Amended Complaint (Exhibit 6) in one of Plaintiff's prior RICO lawsuits against AGHL (discussed above) were filed respectively in February and March 2022. Thus, even giving Plaintiff every benefit of the doubt, he clearly was aware of the alleged injury by no later than February or March 2022—more than four years before he filed this lawsuit. Thus, Plaintiff's RICO claims are time-barred, which is an additional reason to conclude that they do not have any possible validity and therefore are not colorable.

*       *       *       *

In sum, the Court should dismiss Plaintiff's RICO claims as not colorable and therefore not sufficient to confer subject-matter jurisdiction on this Court. Moreover, without the RICO claims as a jurisdictional anchor, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, as contemplated by 28 U.S.C. § 1367(c)(3). *See McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) ("[W]hen a district court has dismissed every federal

claim … judicial economy, convenience, fairness, and comity will usually point toward declining to exercise jurisdiction over the remaining state-law claims." (quotation marks omitted)).

**II.    In The Alternative, The Court Should Dismiss This Lawsuit For Lack Of Subject-Matter Jurisdiction Because Plaintiff Cannot Satisfy His Burden Of Establishing That He Has Article III Standing To Prosecute The RICO Claims.**

Whether a plaintiff has standing to sue for claims asserted in a federal lawsuit, as required by Article III of the Constitution, "is always an antecedent question" that affects whether the court has subject-matter jurisdiction over the lawsuit. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 933 (8th Cir. 2012). This standing doctrine ensures "that federal courts do not exceed their authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2015). "When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." *Miller*, 688 F.3d at 934.[6] Article III standing "presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim." *Miller*, 688 F.3d at 934. As the party invoking federal jurisdiction, Plaintiff has the burden of establishing Article III standing. *Id*.

Article III standing consists of three elements; "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Plaintiff cannot satisfy those elements because the FAC (and documents incorporated by reference therein as exhibits filed by him) establish that BSAC LLC—not Plaintiff—purchased (or attempted to purchase) the chemical product in the transaction that is at issue here. Assuming for the sake of

---

[6] The Eighth Circuit is "careful not to conflate" Article III standing and statutory standing. *Miller*, 688 F.3d at 934. Statutory standing is discussed below in Section IV.A.

argument that any injuries were caused that can fairly be traced to the Moving Defendants' alleged conduct challenged in the FAC (which the Moving Defendants deny), such injuries were felt by BSAC LLC, not Plaintiff. Moreover, any such injuries would not be redressed by a favorable decision in this lawsuit because, if Plaintiff were to recover damages here, nothing would preclude BSAC LLC from subsequently seeking damages in a separate lawsuit for the same alleged conduct by the Moving Defendants at issue in the FAC. To state the obvious, Plaintiff and BSAC LLC are legally separate and distinct.[7] For example, if Plaintiff had been sued in a breach-of-contract lawsuit for failing to pay for the chemical product at issue in this lawsuit, he could have defended against that lawsuit by arguing that he is not the proper defendant—and pointing out: (a) that the "Trade Assurance Purchase Contract" shows BSAC LLC (not Plaintiff) as the buyer; and (b) that BSAC LLC (not Plaintiff) is a party to that contract. Plaintiff is not entitled to reap the benefits of doing business through a limited liability company (BSAC LLC) and then disregard the corporate form, when it suits his litigation strategy, by suing in his own individual capacity to seek damages for injuries allegedly felt by BSAC LLC, not by him.

In sum, Plaintiff's RICO claims must be dismissed for lack of Article III standing. If the Court dismisses those claims, it should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *McManemy*, 970 F.3d at 1041.

**III.     In The Alternative, The Court Should Dismiss The Claims Asserted Against The Moving Defendants Because Plaintiff Cannot Satisfy His Burden Of Establishing That This Court Has Personal Jurisdiction.**

Personal jurisdiction is "an essential element" of a court's jurisdiction, "without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574,

---

[7] "[A] corporation and its stockholders are separate and distinct, even though a stockholder may own the majority or all of the stock," and that rule applies "to limited liability companies and their members." *Thomason v. Randall*, No. 4:12-CV-4155, 2015 WL 247707, at *3 & n.1 (W.D. Ark. Jan. 20, 2015).

584 (1999) (quotation marks omitted). When personal jurisdiction has been controverted or denied by a defendant, the plaintiff has the burden of proving facts sufficient to establish that the court has personal jurisdiction over the defendant. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). The plaintiff's personal jurisdiction showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id*. (quotation marks omitted). Personal jurisdiction must be established as to each defendant, *see Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 268 (2017) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (emphasis added)), so it is "plainly unconstitutional" for a court to "consider[] the 'defending parties' together and aggregat[e] their forum contacts in determining whether it ha[s] [personal] jurisdiction," *Rush*, 444 U.S. at 331-32.

### A. Based on Fifth Amendment Due Process Principles, this Court does not Have Personal Jurisdiction over the Moving Defendants as to Plaintiff's RICO Claims.

A RICO lawsuit "can only be brought in a district court where personal jurisdiction is established as to at least one defendant." *Wilkins v. Trial Lawyers, Inc.*, No. Civ. 05-5118, 2006 WL 375618, at *2 (W.D. Ark. Jan. 25, 2006) (citing *PT United Can Co., Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)). In other words, 18 U.S.C. § 1965 in its entirety "'does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found.'" *Peters Broadcast Engineering, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 439 (6th Cir. 2022) (quoting *PT United Can*, 138 F.3d at 71). Rather, "nationwide [personal] jurisdiction hinges on whether at least one defendant has minimum contacts with the forum state." *Id*.

There are two kinds of personal jurisdiction: "general jurisdiction" (also known as "all-purpose jurisdiction") and "specific jurisdiction" (also known as "case-linked jurisdiction"). *See Bristol-Myers Squibb*, 582 U.S. at 262; *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2017).

11

*Daimler* "considerably altered the analytic landscape" regarding due process limitations on a court's ability to assert general personal jurisdiction over a corporate defendant. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (rejecting plaintiff's reliance on pre-*Daimler* cases). After *Daimler*, due process principles preclude a court from exercising general personal jurisdiction over a corporate defendant unless it has been sued in a forum "in which the corporation is fairly regarded as at home." *Daimler*, 571 U.S. at 137. Thus, there are now two bases for asserting general personal jurisdiction—the defendant's place of incorporation and principal place of business. *See id.*

Here, Plaintiff cannot establish that at least one defendant has minimum contacts with the forum state (Arkansas), so this Court should apply a forum-specific personal jurisdiction analysis, rather than a nationwide analysis, to the RICO claims asserted against the Moving Defendants. None of the other defendants are "at home" in Arkansas (place of incorporation or principal place of business) and, as discussed below, the Moving Defendants also are not "at home" in Arkansas, which means that this Court does not have general personal jurisdiction over at least one defendant.

The minimum contacts analysis required for specific personal jurisdiction leads to the conclusion that this Court also does not have specific personal jurisdiction over at least one defendant because Plaintiff cannot establish that any of the defendants have the requisite minimum contacts with Arkansas. The due process inquiry to determine whether a court can assert specific personal jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quotation marks omitted). Thus, for a court to assert specific personal jurisdiction consistent with due process principles, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. at 284. Moreover, due process limits "principally protect the liberty of the

nonresident defendant—not the convenience of plaintiffs or third parties[,]" so the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id*. This means that the relationship among the defendant, the forum, and the litigation "must arise out of contacts that the defendant *himself* creates with the forum State." *Id*. (emphasis in original; quotation marks omitted). In other words, "however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive." *Id*. at 285 (quotation marks omitted).[8] None of the other defendants themselves engaged in "suit-related conduct" that created a substantial connection with Arkansas, and, as discussed below, the same conclusion applies to the Moving Defendants, so this Court should apply a forum-specific personal jurisdiction analysis to the RICO claims asserted against the Moving Defendants.

### 1. AGHL

*First*, Plaintiff cannot satisfy his burden of establishing that this Court has general personal jurisdiction over AGHL as to his RICO claims because AGHL is not "at home" in Arkansas within the meaning of the Supreme Court's *Daimler* ruling discussed above. AGHL (a non-operating holding company with numerous subsidiaries) is incorporated under the laws of the Cayman Islands and has its principal place of business in the People's Republic of China. Declaration of Jieyun Li ¶¶ 4-5 ("Li Declaration") (attached as **Exhibit 7**). AGHL is not registered to do business in Arkansas or in any other state in the United States of America. *Id*. ¶ 10. AGHL does not have any offices in Arkansas or elsewhere in the United States of America. *Id*. ¶ 11. AGHL does not have any employees in Arkansas, in the United States of America, or anywhere else in the world.

---

[8] The Arkansas long-arm statute extends personal jurisdiction to the maximum limits permissible by the United States Constitution, so this Court should focus on due process principles without separately analyzing whether that statute authorizes the Court to exercise personal jurisdiction. *See, e.g., Wilkins*, 2006 WL 375618, at *3 (citing *Davis v. St. Johns Health Sys., Inc.*, 71 S.W.3d 55, 58 (Ark. 2002)).

*Id.* ¶ 12. Thus, Plaintiff cannot satisfy his burden of establishing that AGHL is "at home" in Arkansas, so the Court does not have general personal jurisdiction over AGHL.[9]

***Second***, Plaintiff also cannot satisfy his burden of establishing that this Court has specific personal jurisdiction over AGHL as to his RICO claims because AGHL did not engage in "suit-related conduct" that created a substantial connection with Arkansas within the meaning of the Supreme Court's *Walden* ruling discussed above. This lawsuit involves an alleged purchase (or attempted purchase) of a product from a third-party seller via the Alibaba.com Platform. The Alibaba.com Platform is an electronic web-based platform for exchanging information and offering services online between buyers and sellers all over the world. Li Declaration ¶ 7. It is a "business-to-business" platform, which means that the platform connects potential buyers that are businesses and potential sellers that are businesses. *Id.* AGHL does not own, operate, or control the Alibaba.com Platform and does not exercise day-to-day control over the indirect subsidiary that owns and operates that platform. *Id.* ¶¶ 8-9. AGHL does not direct, target, or specifically tailor any of its business activities to or at Arkansas or the United States of America. *Id.* ¶ 10.

Moreover, AGHL did not have any communications with Plaintiff and did not have any connection to the product that he or his company (BSAC LLC) allegedly bought or tried to buy from a third-party seller.[10] AGHL does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on the Alibaba.com Platform. Li Declaration ¶ 9. AGHL did

---

[9] The result (lack of general personal jurisdiction over AGHL) would be the same even if the Court were to apply a nationwide, rather than a forum-specific, personal jurisdiction analysis to the RICO claims asserted against AGHL. As shown above and in the Li Declaration, Plaintiff cannot satisfy his burden of establishing that AGHL is "at home" in the United States of America.

[10] As discussed above (page 3), documents filed by Plaintiff in this lawsuit show that the transaction at issue here actually was an alleged purchase (or attempted purchase) by BSAC LLC, not by Plaintiff himself. If the Court reaches the personal jurisdiction arguments, it can rule on them without focusing on that distinction.

14

not participate in or supervise any transaction where Plaintiff (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform from the third-party seller Zichang. *Id*. ¶ 13. AGHL does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so AGHL was not an agent for Zichang when Plaintiff (or his company) allegedly bought or tried to buy a product from Zichang. *Id*. ¶ 14. AGHL does not have any communications with users or members of the Alibaba.com Platform, so Plaintiff could not have communicated with AGHL about any product that he (or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 15. AGHL does not send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. *Id*. ¶ 16. Therefore, neither Plaintiff nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from AGHL; or (b) any advertisements, marketing e-mails, or messages where AGHL had any control over their content. *Id*. AGHL does not introduce potential buyers to sellers or otherwise play any role in creating any contacts between sellers and potential buyers, so AGHL could not have introduced Plaintiff (or his company) to Zichang or played any role in creating any contacts between him (or his company) and Zichang. *Id*. ¶ 17. AGHL plays no role in the sale process involving a product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the sale process involving any purchase (or attempted purchase) by Plaintiff (or his company) of a product offered for sale by Zichang. *Id*. ¶ 18. AGHL plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in manufacturing the product that Plaintiff (or his company) allegedly bought or

15

tried to buy from Zichang. *Id.* ¶ 19. AGHL plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the shipping or distribution process for the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 20. AGHL does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so AGHL could not have taken possession or control of, and could not have taken title to, the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 21. Zichang has never been an agent for AGHL, and AGHL has never stated or done anything to suggest, or create the appearance, that Zichang is AGHL's agent. *Id.* ¶ 22.

In sum, Plaintiff cannot satisfy his burden of establishing that AGHL engaged in any suit-related conduct that created a substantial connection with Arkansas, so this Court does not have specific personal jurisdiction over AGHL.[11]

### 2.  Alibaba.com US E-Commerce Corp.

*First*, Plaintiff cannot satisfy his burden of establishing that this Court has general personal jurisdiction over Alibaba.com US E-Commerce Corp. as to his RICO claims because Alibaba.com US E-Commerce Corp. is not "at home" in Arkansas within the meaning of the Supreme Court's *Daimler* ruling. Alibaba.com US E-Commerce Corp. is incorporated under the laws of the State of Delaware and has its principal place of business in the State of New York. Declaration of Xingjian Zhao ¶ 4 ("First Zhao Declaration") (attached as **Exhibit 8**). Alibaba.com US E-Commerce Corp. is not registered to do business in Arkansas. *Id.* ¶ 7. Alibaba.com US E-

---

[11] That result (lack of specific personal jurisdiction over AGHL) would be the same even if the Court were to apply a nationwide, rather than a forum-specific, personal jurisdiction analysis to the RICO claims asserted against AGHL. As shown above and in the Li Declaration, Plaintiff cannot satisfy his burden of establishing that AGHL engaged in suit-related conduct that created a substantial connection with the United States of America.

Commerce Corp. has no office in Arkansas and has no employee in Arkansas. *Id*. ¶¶ 8-9. Therefore, Plaintiff cannot satisfy his burden of establishing that Alibaba.com US E-Commerce Corp. is "at home" in Arkansas, which means that the Court does not have general personal jurisdiction over Alibaba.com US E-Commerce Corp.

***Second***, Plaintiff also cannot satisfy his burden of establishing that this Court has specific personal jurisdiction over Alibaba.com US E-Commerce Corp. as to his RICO claims because Alibaba.com US E-Commerce Corp. did not engage in "suit-related conduct" that created a substantial connection with Arkansas within the meaning of the Supreme Court's *Walden* ruling. Alibaba.com US E-Commerce Corp. does not own, operate, or control the Alibaba.com Platform and does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on that platform. First Zhao Declaration ¶ 6. Alibaba.com US E-Commerce Corp. does not direct, target, or specifically tailor any of its business activities to or at Arkansas. *Id*. ¶ 7.

Furthermore, as shown below, Alibaba.com US E-Commerce Corp. did not have any communications with Plaintiff and did not have any connection to the product that he (or his company) allegedly bought or tried to buy from the third-party seller Zichang. Alibaba.com US E-Commerce Corp. did not participate in or supervise any transaction where Plaintiff (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform from Zichang. First Zhao Declaration ¶ 10. Alibaba.com US E-Commerce Corp. does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so Alibaba.com US E-Commerce Corp. was not an agent for Zichang when Plaintiff (or his company) allegedly bought or tried to buy a product from Zichang. *Id*. ¶ 11. Alibaba.com US E-Commerce Corp. does not have any communications with users or members of the Alibaba.com Platform, so Plaintiff could not have communicated with

17

Alibaba.com US E-Commerce Corp. about any product that he (or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 12. Alibaba.com US E-Commerce Corp. does not send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. *Id*. ¶ 13. Therefore, neither Plaintiff nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from Alibaba.com US E-Commerce Corp.; or (b) any advertisements, marketing e-mails, or messages where Alibaba.com US E-Commerce Corp. had any control over their content. *Id*. Alibaba.com US E-Commerce Corp. does not introduce potential buyers to sellers or otherwise play any role in creating any contacts between sellers and potential buyers, so Alibaba.com US E-Commerce Corp. could not have introduced Plaintiff (or his company) to Zichang or played any role in creating any contacts between him (or his company) and Zichang. *Id*. ¶ 14. Alibaba.com US E-Commerce Corp. plays no role in the sale process involving a product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba.com US E-Commerce Corp. could not have played any role in the sale process involving any purchase (or attempted purchase) by Plaintiff (or his company) of a product offered for sale by Zichang. *Id*. ¶ 15. Alibaba.com US E-Commerce Corp. plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba.com US E-Commerce Corp. could not have played any role in manufacturing the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 16. Alibaba.com US E-Commerce Corp. plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba.com US E-Commerce Corp. could not have played any role in the shipping or distribution process for the product that Plaintiff

18

(or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 17. Alibaba.com US E-Commerce Corp. does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so Alibaba.com US E-Commerce Corp. could not have taken possession or control of, and could not have taken title to, the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 18. Zichang has never been an agent for Alibaba.com US E-Commerce Corp., and Alibaba.com US E-Commerce Corp. has never stated or done anything to suggest, or create the appearance, that Zichang is Alibaba.com US E-Commerce Corp.'s agent. *Id*. ¶ 19.

In sum, Plaintiff cannot satisfy his burden of establishing that Alibaba.com US E-Commerce Corp. engaged in any suit-related conduct that created a substantial connection with Arkansas, so this Court does not have specific personal jurisdiction over Alibaba.com US E-Commerce Corp.

### 3. Alibaba.com U.S. LLC

*First*, Plaintiff cannot satisfy his burden of establishing that this Court has general personal jurisdiction over Alibaba.com U.S. LLC as to his RICO claims because Alibaba.com U.S. LLC is not "at home" in Arkansas within the meaning of the Supreme Court's *Daimler* ruling discussed above. Alibaba.com U.S. LLC is a limited liability company that is organized under the laws of, and has its principal place of business in, Delaware. Declaration of Xingjian Zhao ¶ 4 ("Second Zhao Declaration") (attached as **Exhibit 9**). Alibaba.com U.S. LLC is not registered to do business in Arkansas. *Id*. ¶ 7. Alibaba.com U.S. LLC has no office in Arkansas and has no employee or member in Arkansas. *Id*. ¶¶ 8-9. Thus, Plaintiff cannot satisfy his burden of establishing that Alibaba.com U.S. LLC is "at home" in Arkansas, so the Court does not have general personal jurisdiction over Alibaba.com U.S. LLC.

*Second*, Plaintiff also cannot satisfy his burden of establishing that this Court has specific personal jurisdiction over Alibaba.com U.S. LLC as to his RICO claims because Alibaba.com U.S. LLC did not engage in "suit-related conduct" that created a substantial connection with Arkansas within the meaning of the Supreme Court's *Walden* ruling discussed above. Alibaba.com U.S. LLC does not own, operate, or control the Alibaba.com Platform. Second Zhao Declaration ¶ 6. Alibaba.com U.S. LLC does not direct, target, or specifically tailor any of its business activities to or at Arkansas. *Id*. ¶ 7.

Furthermore, as shown below, Alibaba.com U.S. LLC did not have any communications with Plaintiff and did not have any connection to the product that he (or his company) allegedly bought or tried to buy from the third-party seller Zichang. Alibaba.com U.S. LLC does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on the Alibaba.com Platform. Second Zhao Declaration ¶ 6. Alibaba.com U.S. LLC did not participate in or supervise any transaction where Plaintiff (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform from the third-party seller Zichang. *Id*. ¶ 10. Alibaba.com U.S. LLC does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so Alibaba.com U.S. LLC was not an agent for Zichang when Plaintiff (or his company) allegedly bought or tried to buy a product from Zichang. *Id*. ¶ 11. Alibaba.com U.S. LLC does not have any communications with users or members of the Alibaba.com Platform, so Plaintiff could not have communicated with Alibaba.com U.S. LLC about any product that he (or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 12. Alibaba.com U.S. LLC does not send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted

20

to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. *Id.* ¶ 13. Therefore, neither Plaintiff nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from Alibaba.com U.S. LLC; or (b) any advertisements, marketing e-mails, or messages where Alibaba.com U.S. LLC had any control over their content. *Id.* Alibaba.com U.S. LLC does not introduce potential buyers to sellers or otherwise play any role in creating any contacts between sellers and potential buyers, so Alibaba.com U.S. LLC could not have introduced Plaintiff (or his company) to Zichang or played any role in creating any contacts between him (or his company) and Zichang. *Id.* ¶ 14. Alibaba.com U.S. LLC plays no role in the sale process involving a product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba.com U.S. LLC could not have played any role in the sale process involving any purchase (or attempted purchase) by Plaintiff (or his company) of a product offered for sale by Zichang. *Id.* ¶ 15. Alibaba.com U.S. LLC plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba.com U.S. LLC could not have played any role in manufacturing the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 16. Alibaba.com U.S. LLC plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba.com U.S. LLC could not have played any role in the shipping or distribution process for the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 17. Alibaba.com U.S. LLC does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so Alibaba.com U.S. LLC could not have taken possession or control of, and could not have taken title to, the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 18. Zichang has never been an agent for Alibaba.com U.S. LLC, and Alibaba.com U.S. LLC

21

has never stated or done anything to suggest, or create the appearance, that Zichang is Alibaba.com U.S. LLC's agent. *Id*. ¶ 19.

In sum, Plaintiff cannot satisfy his burden of establishing that Alibaba.com U.S. LLC engaged in any suit-related conduct that created a substantial connection with Arkansas, so this Court does not have specific personal jurisdiction over Alibaba.com U.S. LLC.

### 4. AUS

***First***, Plaintiff cannot satisfy his burden of establishing that this Court has general personal jurisdiction over AUS as to his RICO claims because AUS is not "at home" in Arkansas within the meaning of the Supreme Court's *Daimler* ruling. AUS is a corporation that is incorporated under the laws of the State of Delaware and has its principal place of business in the State of California. Declaration of Jing Kang ¶ 3 ("Kang Declaration") (attached as **Exhibit 10**). AUS does not have any offices or employees in Arkansas. *Id*. ¶¶ 6-7. Therefore, Plaintiff cannot satisfy his burden of establishing that AUS is "at home" in Arkansas, which means that the Court does not have general personal jurisdiction over AUS.

***Second***, Plaintiff also cannot satisfy his burden of establishing that this Court has specific personal jurisdiction over AUS as to his RICO claims because AUS did not engage in "suit-related conduct" that created a substantial connection with Arkansas within the meaning of the Supreme Court's Walden ruling. Plaintiff speculates—through an "information and belief" allegation—that AUS may have been involved in processing the payment for the June 1, 2021 purchase on the Alibaba.com Platform that is at issue in this lawsuit, see FAC ¶ 14, but that speculation is unfounded. AUS is not, and has not been, the only company providing payment processing services for sale/purchase e-commerce transactions consummated via the Alibaba.com Platform. Kang Declaration ¶ 8. Several other companies provide, and have provided, payment processing

services for sale/purchase e-commerce transactions consummated via the Alibaba.com Platform. *Id*. AUS did not process any Alibaba.com transaction in which "Burchfield" was the buyer between May 15, 2021 to June 15, 2021, so AUS did not participate in or supervise the transaction at issue in this lawsuit. *Id*. ¶ 9. AUS does not own, operate, or control the Alibaba.com Platform and does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on that platform. *Id*. ¶ 10. AUS does not direct, target, or specifically tailor any of its business activities to or at Arkansas. *Id*. ¶ 5.

Furthermore, as shown below, AUS did not have any communications with Plaintiff and did not have any connection to the product that he (or his company) allegedly bought or tried to buy from the third-party seller Zichang. AUS does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on the Alibaba.com Platform. Kang Declaration ¶ 10. AUS does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so AUS was not an agent for Zichang when Plaintiff (or his company) allegedly bought or tried to buy a product from Zichang. *Id*. ¶ 11. AUS does not have any communications with buyers of products on the Alibaba.com Platform, so Plaintiff could not have communicated with AUS about any product that he (or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 12. AUS does not send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. *Id*. ¶ 13. Therefore, neither Plaintiff nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from AUS; or (b) any advertisements, marketing e-mails, or messages where AUS had any control over their content. *Id*.

AUS does not introduce potential buyers to sellers or otherwise play any role in creating any contacts between sellers and potential buyers, so AUS could not have introduced Plaintiff (or his company) to Zichang or played any role in creating any contacts between him (or his company) and Zichang. *Id*. ¶ 14. AUS plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AUS could not have played any role in manufacturing the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 15. AUS plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AUS could not have played any role in the shipping or distribution process for the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 16. AUS does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so AUS could not have taken possession or control of, and could not have taken title to, the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id*. ¶ 17. Zichang has never been an agent for AUS, and AUS has never stated or done anything to suggest, or create the appearance, that Zichang is AUS's agent. *Id*. ¶ 18.

In sum, Plaintiff cannot satisfy his burden of establishing that AUS engaged in any suit-related conduct that created a substantial connection with Arkansas, so this Court does not have specific personal jurisdiction over AUS.

**B. Based on Fourteenth Amendment Due Process Principles, this Court does not Have Personal Jurisdiction over the Moving Defendants as to Plaintiff's State Law Claims.**

A Fourteenth Amendment due process analysis leads to the conclusion that Plaintiff cannot satisfy his burden of establishing that this Court has personal jurisdiction over the state law claims asserted against the Moving Defendants.

For the reasons set forth above and in the accompanying declarations, AGHL, Alibaba.com US E-Commerce Corp., Alibaba.com U.S. LLC, and AUS are not at home in Arkansas within the meaning of the Supreme Court's *Daimler* ruling. Therefore, this Court does not have general personal jurisdiction over the Moving Defendants.

Likewise, for the reasons set forth above and in the accompanying declarations, AGHL, Alibaba.com US E-Commerce Corp., Alibaba.com U.S. LLC, and AUS did not engage in any suit-related conduct that created a substantial connection with Arkansas. Thus, this Court does not have specific personal jurisdiction over the Moving Defendants.

## IV.     In The Alternative, The Court Should Dismiss The RICO Claims Asserted Against The Moving Defendants For Failure To State A Claim Upon Which Relief Can Be Granted.

"The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers," *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2002) (quotation marks omitted)), and "the Eighth Circuit has rejected attempts to convert ordinary civil disputes into RICO cases," *Rolfes v. MBNA America Bank N.A.*, 416 F. Supp. 2d 745, 753 (D.S.D. 2005) (dismissing RICO claims and stating that they are "[n]o more than ordinary or garden variety fraud claims"). Here, Plaintiff is trying to use the RICO sledgehammer to seek $1 trillion in damages for what is merely an ordinary civil dispute over an alleged purchase of a chemical product by a buyer (BSAC LLC), which paid approximately $736, *see* Plaintiff's Exhibit A (ECF No. 2, at pages 9-16); Plaintiff's Exhibit B (ECF No. 2, at page 17), from a third-party seller in a transaction that allegedly resulted in the product not being delivered to the buyer—or allegedly being delivered but not working as expected.

"[P]laintiffs wielding RICO almost always miss the mark," so "courts have expressed skepticism toward civil RICO claims." *Sky Med. Supply, Inc. v. SCS Support Claims Servs., Inc.*,

17 F. Supp. 3d 207, 220-21 (E.D.N.Y. 2014) (citation omitted). For several reasons, this Court should not only be skeptical of Plaintiff's RICO claims but should dismiss them as fundamentally flawed.

### A.    The RICO Claims Fail Because Plaintiff does not have Statutory Standing to Pursue them.

As discussed above (Section II), Article III standing and statutory standing are different concepts that should not be conflated. According to the Eighth Circuit, the issue of statutory standing "has nothing to do with whether there is case or controversy under Article III." *Miller*, 688 F.3d at 934 (quotation marks omitted). "Statutory standing is simply statutory interpretation: the question it asks is whether Congress … has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Id*. (emphasis in original).

Thus, even if the Court declines to accept the Article III standing argument asserted above in Section II, the Court can, and should, rule for the Moving Defendants on the separate issue of whether Plaintiff has statutory standing to assert the RICO claims at issue here. Federal courts deciding similar standing issues in civil RICO lawsuits repeatedly have held that, when a company has been injured by conduct that is prohibited by the RICO statute, an owner of that company— even if he is a sole shareholder or has a large ownership interest in the company—does not have statutory standing to assert a RICO claim because the company was directly injured, so it has standing to file a RICO lawsuit, but the owner does not because his injury was derivative and/or indirect. *See, e.g.*, *Warren v. Manufacturers Nat'l Bank of Detroit*, 759 F.2d 542 (6th Cir. 1985) (holding that sole shareholder of corporation lacked standing to assert RICO lawsuit); *Barry v. Curtin*, 993 F. Supp. 2d 347 (E.D.N.Y. 2014) (holding that member of limited liability company lacked standing to assert RICO lawsuit); *Irish v. Ferguson*, 970 F. Supp. 2d 317, 348-51 (M.D. Pa. 2013) (same). In other words, "[i]t is well-settled that shareholders, officers, and employees lack

26

standing to bring a civil RICO claim, in their individual capacities, for injuries to the corporation," *Barry*, 993 F. Supp. 2d at 352 (quotation marks omitted; citing cases), and that rule applies not only to large, publicly traded corporations but also "to closely held corporations," *id*.

Those legal principles lead inexorably to the conclusion that Plaintiff does not have statutory standing to assert the RICO claims alleged in this lawsuit because the direct injury—if any—was felt by BSAC LLC, not by Plaintiff. Therefore, the Court should dismiss the RICO claims for lack of statutory standing.

**B.  The RICO Claims are Barred by Res Judicata Principles.**

As discussed above (Section I.A.), Plaintiff's prior RICO lawsuits involving the same allegations asserted here and res judicata principles lead to the conclusion that the RICO claims alleged in this lawsuit do not have any possible validity and therefore are not colorable. However, even if the Court declines to accept that argument, such a ruling does not preclude the Court from accepting the Rule 12(b)(6) argument asserted in the alternative here because this argument involves a more lenient standard than establishing that a federal claim does not have any possible validity and is not colorable, for purposes of determining whether it confers subject-matter jurisdiction on a federal court.

Plaintiff's prior RICO lawsuits against various Alibaba defendants—including the federal case that was dismissed with prejudice after Plaintiff stipulated that "dismissal is appropriate because no viable claim exists" and that no compensation was paid or promised to him (Exhibit 2)—preclude this lawsuit based on res judicata principles. Plaintiff apparently thinks that he is allowed to clog up court dockets by vexatiously relitigating claims *ad nauseam* in multiple, duplicative lawsuits against various defendants that he believes are associated with the Alibaba.com Platform, but that is not correct. Res judicata principles give courts tools to protect

27

defendants from "the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153-54. Plaintiff had full and fair opportunities to litigate his RICO claims against various Alibaba defendants in his prior lawsuits. If he believed that those RICO claims had merit, he could have forged ahead with them, instead of dismissing them with prejudice (in one case), and he could have sought appellate review (in the cases where federal district courts dismissed those claims). However, Plaintiff is not allowed to do what he is trying to do here—namely, evade the results of those prior RICO lawsuits by filing a "new" duplicative lawsuit that seeks to relitigate the previously dismissed RICO claims. The Court should dismiss his RICO claims based on res judicata principles.

### C. The RICO Claims are Barred by the Applicable Statute of Limitations.

As discussed above (Section I.B.), Plaintiff's RICO claims do not have any possible validity and are not colorable because they clearly are barred by the four-year statute of limitations. But if the Court were to reject that argument, that ruling would not preclude the Court from accepting the Rule 12(b)(6) argument asserted in the alternative here because this argument involves a more lenient standard than establishing that a claim does not have any possible validity and is not colorable, for purposes of determining whether it confers subject-matter jurisdiction on a federal court.

On this record, undisputed documents—Plaintiff's own pleadings filed in a prior RICO lawsuit against AGHL in February and March 2022 (Exhibit 5 and Exhibit 6, respectively)—establish that Plaintiff was aware of the injury alleged in this lawsuit by no later than February or March 2022. Therefore, even when the Court gives Plaintiff the benefit of the doubt required by Rule 12(b)(6), the only reasonable, appropriate conclusion is that the RICO claims alleged here

28

are untimely because he filed them in June 2026—well more than four years after he was aware of the alleged injury. For this reason as well, the Court should dismiss Plaintiff's RICO claims.

Finally, if the Court dismisses the RICO claims based on one or more of the Rule 12(b)(6) arguments set forth above, it should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *McManemy*, 970 F.3d at 1041.[12]

### CONCLUSION

For the foregoing reasons, the Court should grant this motion and: (a) dismiss this lawsuit for lack of subject-matter jurisdiction; or (b) dismiss all claims asserted against the Moving Defendants for lack of personal jurisdiction. In the alternative, if the Court declines to issue those dismissal rulings, the Court should dismiss the Moving Defendants from this lawsuit by dismissing the RICO claims asserted against them for failure to state a claim upon which relief can be granted and declining to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to Section 1367(c)(3).[13]

Dated: August 5, 2026

Respectfully submitted,

McDANIEL WOLFF, PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
McDaniel Wolff, PLLC
1307 West 4th Street

---

[12] Plaintiff's RICO claims are flawed for various other reasons—including but not limited to the flaws that led to the dismissal of Plaintiff's Western District of Arkansas RICO lawsuit against AGHL and other defendants, *see Burchfield*, 2022 WL 2082306—but there is no need to belabor the point here by making this brief longer than necessary. The Moving Defendants reserve the right to assert other arguments later (if the Court does not grant this motion) to challenge Plaintiff's RICO claims and/or his state law claims.

[13] To simplify and narrow the issues before this Court, AGHL declines to challenge service of process in this action only, so the Court need not address that issue, which was raised in AGHL's prior Motion to Dismiss (ECF No. 16). The decision to forego objecting to service of process in this action should not be construed as a waiver by AGHL of the right to object to service of process in any other proceeding; AGHL reserves the right to assert that defense in other proceedings, including with respect to any similar or identical service methods used against AGHL elsewhere.

Little Rock, AR  72201
(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

and

BALANCE LAW FIRM

B. Robert Liu (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com


*Attorneys for Defendants Alibaba Group
Holding Limited, Alibaba.com US E-
Commerce Corp., Alibaba.com U.S. LLC,
and AUS Merchant Services, Inc.*

30