**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
AUG 18 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

BRADLEY BURCHFIELD,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

**Case No. 4:26-cv-00611-DPM**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO FOUR DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF NOS. 37-38)**

## INTRODUCTION

Four entities - Alibaba Group Holding Limited ("AGHL"), Alibaba.com US E-Commerce Corp., Alibaba.com U.S. LLC, and AUS Merchant Services, Inc. ("AUS") (collectively, "the Moving Defendants") - move under Rules 12(b)(1), 12(b)(2), and 12(b)(6). ECF Nos. 37-38. Alibaba Group (U.S.) Inc. (the "Defaulted Defendant") is not one of the Moving Defendants. The motion should be denied, or at minimum deferred for narrowly tailored jurisdictional discovery and a reasonable opportunity to cure any real-party-in-interest issue.

The Moving Defendants' threshold theory improperly converts merits defenses into an absence of federal-question jurisdiction. The First Amended Complaint ("FAC") expressly invokes 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c); identifies the alleged enterprise, participants, communications, payment channel, order, alleged predicate acts, and business-or-property injury; and relies in part on signed public admissions in two June 29, 2026 Department of Justice agreements. ECF No. 11 ¶¶ 1-6, 41-65, 70-78. Whether the RICO claims are ultimately barred by claim preclusion, limitations, or the real-party-in-interest rule is a merits question. It does not make the pleaded federal claim fictitious or so wholly insubstantial that jurisdiction disappears.

The present record also reveals concrete factual disputes about which legal entity performed the relevant platform and payment functions. The receipt identifies Order No. 91906090501027582, an Arkansas ship-to contact, a June 1, 2021 card payment of $736.38, and a $21.38 payment-processing fee. ECF No. 2 at 17. AUS admits that it has provided payment processing for Alibaba.com, but its declaration reports only a search for transactions in which the buyer was "Burchfield." ECF No. 38-10 ¶¶ 8-9. The receipt records the buyer as Burchfield Sales and Consulting LLC ("BSAC LLC"), not "Burchfield." ECF No. 2 at 17. AUS did not disclose a search by order number, BSAC LLC, seller, payment amount, payment token, merchant account, card record, or beneficiary identifier.

The public organizational record is also not reconciled with the declarations. During the period encompassing the June 2021 transaction, Alibaba stipulated that its International Commerce Business Unit ("ICBU") operated Alibaba.com and included the legal entities Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. The Alibaba Statement of Facts says ICBU offered Trade Assurance payment processing through April 2021. Yet Plaintiff's June 1, 2021 contract and receipt remained branded as a Trade Assurance transaction and charged a processing fee. ECF No. 2 at 9-17. That temporal gap makes targeted discovery - not dismissal on categorical declarations - the proportionate next step.

Two preserved native Alibaba emails supply additional, technically verifiable links between the Alibaba.com platform and the Singapore entity. A December 30, 2024 message from sale2@service.alibaba.com authenticated through Alibaba and service.alibaba.com, traversed Aliyun-named infrastructure, promoted "Alibaba.com Logistics," linked to logistics.alibaba.com, included recipient-specific campaign data, and named Alibaba.com Singapore E-commerce Private Limited in its footer. A January 29, 2026 message from noreply@member.alibaba.com likewise authenticated, traversed Aliyun-named infrastructure,

carried an "icbu_edm" campaign identifier, linked to Alibaba.com product recommendations, and named the same Singapore entity. Burchfield Decl. ¶¶ 2-16 & Exs. A-D. These facts directly support attribution of the communications to the Alibaba.com service and, through their footers, to the Singapore entity. They do not, by themselves, prove that Alibaba.com US E-Commerce Corp. authored either message. As to that movant, their proper use is to support focused discovery into which ICBU entity operated the campaigns, logistics links, recipient selection, and associated account records.

Plaintiff does not contend that his particular order was adjudicated in, or necessarily covered by, the government agreements. Nor does he contend that the agreements establish civil liability here. They matter because their stipulated organizational and functional facts concern the same 2016-2024 period, identify the entities that housed and managed the business unit operating Alibaba.com, and provide a concrete basis to test the Moving Defendants' broad denials. If transaction-specific discovery establishes that AUS neither processed the June 2021 payment nor participated in the June 2026 customer-service credit response, Plaintiff will agree that AUS should be dismissed from claims arising from this transaction.

## RELEVANT RECORD

1. The FAC concerns Alibaba.com Trade Assurance Order No. 91906090501027582, dated June 1, 2021, with Zichang New Materials (Shandong) Co., Ltd. as seller. ECF No. 11 ¶¶ 1, 15, 25; ECF No. 2 at 9-17.
2. The receipt identifies Alibaba.com Singapore E-Commerce Private Limited as marketplace operator; BSAC LLC as the buyer; Bradley Burchfield as the Arkansas ship-to contact; an Arkansas buyer-company address; a $715.00 order total; a $21.38 processing fee; and a $736.38 card payment. ECF No. 2 at 17.

**3.** The FAC alleges that Plaintiff personally paid for, controlled, or beneficially owned the claim and personally sustained a direct business-or-property injury. It alternatively invokes Rule 17(a)(3) if the Court determines that BSAC LLC owns the claim. ECF No. 11 ¶ 7.

**4.** On June 18, 2026, an "Alibaba Service Team" message from queryreply@service.alibaba.com identified the same order, stated that a senior team had reviewed or escalated the complaint, discussed platform and logistics records, and offered to help Plaintiff apply for a $500 Alibaba credit for a future Trade Assurance order. ECF No. 2 at 23; ECF No. 11 ¶¶ 31-34. Plaintiff relies on this communication to identify the responsible entity and records - not as a concession that the credit itself caused the original 2021 payment injury.

**5.** AUS's declarant states that AUS has provided Alibaba.com payment processing and that several other companies also have provided such services. ECF No. 38-10 ¶ 8. The declarant reports only a buyer-name search for "Burchfield" during May 15-June 15, 2021. Id. ¶ 9.

**6.** The June 29, 2026 AUS Statement of Facts states that AUS began Alibaba.com payment processing in 2020; enabled overseas sellers to accept payments from U.S. buyers; received merchant, buyer, product, and sale-order information; and processed credit-card and other payments during a relevant period extending through December 2023. AUS Agreement, Attachment A ¶¶ 2-7. These general admissions do not prove AUS handled this order, but they identify specific records and search fields that should resolve the question.

**7.** The June 29, 2026 Alibaba agreement defines ICBU as the business unit operating Alibaba.com and identifies Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. as the legal entities housing that unit. Alibaba Agreement § 1(g). Its Statement of Facts states that the Singapore entity managed ICBU, including within the United States; that ICBU operated the marketplace and seller programs; and that ICBU processed Trade Assurance payments through April 2021. Alibaba Agreement, Attachment A ¶¶ 2-4.

**8.** On January 29, 2026, Plaintiff received an account-specific email from "Alibaba" <noreply@member.alibaba.com> with the subject "c10h15n crystalmethamphetmine: order with ease." The message linked to Alibaba.com searches and product images. Gmail's Authentication-Results reported DKIM, SPF, and DMARC passes for member.alibaba.com; the Received fields identified out210-111.dm.aliyun.com at 140.205.210.111 and smtp.aliyun-inc.com; the DKIM selector was aliyun-cn-hangzhou; the Feedback-ID ended in "icbu_edm"; and the footer named Alibaba.com Singapore E-commerce Private Limited, 51 Bras Basah Road, Singapore. Burchfield Decl. ¶¶ 2-10 & Exs. A-B. Plaintiff has preserved the native .eml; its SHA-256 digest is 8f1e9b300e769e2dded5145b7c6e45d0b8fb799232dc7021ccb5045f9c4bfb36.

**9.** On December 30, 2024, Plaintiff received an account-specific email from "Alibaba.com" <sale2@service.alibaba.com> with the subject "Need shipping support now?" Gmail reported DKIM pass for alibaba.com, SPF pass for sale2@service.alibaba.com and 47.90.197.64, and DMARC pass for service.alibaba.com. The Received fields identified out197-64.us.a.dm.aliyun.com and smtp.aliyun-inc.com. The message promoted "Alibaba.com Logistics," linked to logistics.alibaba.com and Alibaba.com pages, embedded recipient-specific campaign-tracking data, and named Alibaba.com Singapore E-commerce Private Limited in its footer. Burchfield Decl. ¶¶ 2, 4-5, 11-15 & Exs. C-D. The native-file digest is recorded in the declaration and exhibit covers.

**10.** The authenticated routing fields establish that both messages were authorized for Alibaba-controlled domains and traversed Aliyun-named infrastructure; the footers separately attribute the communications to the Singapore entity. The hostname fragment "us.a" and Aliyun routing do not establish that Alibaba.com US E-Commerce Corp. sent either message, and the technical fields do not establish a sender's physical location. The messages instead identify specific campaign, logistics, account, and recipient-selection records through which discovery can determine the responsible ICBU entity.

**11.** The Defaulted Defendant is not a signatory to ECF No. 37 as a movant. The Court should therefore distinguish any entity-specific Rule 12(b)(2) or Rule 12(b)(6) relief sought by the four Moving Defendants from the procedural status of the Defaulted Defendant.

## ARGUMENT

### I. THE COURT HAS FEDERAL-QUESTION JURISDICTION.

A claim arising under federal law supplies jurisdiction unless it is immaterial and made solely to obtain jurisdiction or is wholly insubstantial and frivolous. Bell v. Hood, 327 U.S. 678, 682-83 (1946); Shapiro v. McManus, 577 U.S. 39, 45-46 (2015). Ordinarily, the failure of a federal claim on the merits does not defeat subject-matter jurisdiction. Steel Co. v. Citizens for a

Better Environment, 523 U.S. 83, 89 (1998). The "wholly insubstantial" exception is narrow; it is not a substitute for deciding difficult or even dispositive merits defenses.

The FAC does more than attach a RICO label. It alleges a commercial order, an Arkansas destination, payment and processing charges, platform and seller representations, identified communications, an association-in-fact theory, alleged mail and wire uses, business-or-property loss, and a conspiracy theory. ECF No. 11 ¶¶ 1-6, 25-34, 53-65, 70-78. The Moving Defendants vigorously dispute those allegations, but that dispute confirms there is a federal controversy to adjudicate; it does not eliminate jurisdiction.

The two principal grounds advanced under Rule 12(b)(1) - claim preclusion and limitations - are affirmative merits defenses. A limitations defense ordinarily supports dismissal under Rule 12(b)(6) only when the complaint itself conclusively establishes the defense. Weatherly v. Ford Motor Co., 994 F.3d 940, 942-43 (8th Cir. 2021). Claim preclusion likewise requires an element-by-element analysis of the judgment, parties or privies, and nucleus of operative fact. Elbert v. Carter, 903 F.3d 779, 782 (8th Cir. 2018). Treating those defenses as proof that the federal claim never supplied jurisdiction would erase the distinction recognized in Bell, Steel Co., and Shapiro. The Rule 12(b)(1) request should be denied.

## II. THE PRESENT RECORD DOES NOT ESTABLISH AN ARTICLE III DEFECT, AND RULE 17(a)(3) REQUIRES A REASONABLE OPPORTUNITY TO CURE ANY REAL-PARTY-IN-INTEREST ISSUE.

At the pleading stage, a plaintiff may rely on factual allegations of injury, traceability, and redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The FAC alleges that Plaintiff paid for, controlled, or beneficially owned the claim and directly lost business or property. ECF No. 11 ¶¶ 7, 25-28, 64-65. The receipt identifies BSAC LLC as buyer but also identifies Plaintiff personally as the Arkansas ship-to contact; it does not identify whose card or account funded the $736.38 payment. ECF No. 2 at 17. A sworn declaration and underlying payment record can resolve that factual question.

The Moving Defendants also conflate constitutional standing with the statutory and real-party-in-interest questions. Whether a statute authorizes a particular plaintiff to recover is ordinarily a merits question, not Article III jurisdiction. Lexmark International, Inc. v. Static Control Components, Inc., 572 U.S. 118, 127-28 & n.4 (2014). And Rule 17(a)(3) commands that an action not be dismissed for failure to prosecute in the name of the real party in interest until a reasonable time has been allowed for ratification, joinder, or substitution. The Eighth Circuit has reversed dismissal where that opportunity was not provided. Jaramillo v. Burkhart, 999 F.2d 1241, 1246 (8th Cir. 1993). See also Kuelbs v. Hill, 615 F.3d 1037, 1042-43 (8th Cir. 2010).

Plaintiff understands that an LLC may appear in federal court only through licensed counsel. Rowland v. California Men's Colony, 506 U.S. 194, 202 (1993); Conway v. Heyl, 770 F.3d 729, 733 (8th Cir. 2014). If the Court determines that BSAC LLC, rather than Plaintiff, owns the claim, Plaintiff requests a defined period to obtain counsel and secure ratification, joinder, or substitution under Rule 17(a)(3). Ratification or substitution would also eliminate the Moving Defendants' stated concern about duplicate recovery.

## III. THE COURT SHOULD DENY OR DEFER RULE 12(b)(2) RELIEF AND ALLOW NARROWLY TAILORED JURISDICTIONAL DISCOVERY.

### A. Plaintiff has identified forum-directed conduct and a concrete jurisdictional theory.

Arkansas's long-arm statute extends to the limits of due process. Whaley v. Esebag, 946 F.3d 447, 451 (8th Cir. 2020). Specific jurisdiction requires purposeful forum contacts and claims arising out of or relating to those contacts. Ford Motor Co. v. Montana Eighth Judicial District Court, 592 U.S. 351, 359-65 (2021). On a Rule 12(b)(2) motion decided without an evidentiary hearing, the plaintiff need only make a prima facie showing, and factual conflicts are viewed in the plaintiff's favor. Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co. KG, 646 F.3d 589, 592-93 (8th Cir. 2011).

The FAC alleges that Zichang used Alibaba.com to contract for a shipment to an identified Arkansas destination, accepted an Arkansas-linked order, used the platform's Trade Assurance and payment systems, and caused the claimed injury in Arkansas. ECF No. 11 ¶¶ 15, 20-29. Those are defendant-created, suit-related contacts, not merely Plaintiff's unilateral residence. At minimum, they provide a nonfrivolous basis to examine whether one defendant transacted affairs in Arkansas for purposes of 18 U.S.C. § 1965(a).

The December 30, 2024 and January 29, 2026 emails are also relevant to the prima facie and discovery inquiries. Both were addressed specifically to Plaintiff, used authenticated Alibaba-controlled sending domains, linked back to Alibaba.com services, carried campaign or recipient-tracking data, and named the Singapore entity in their footers. The earlier message expressly promoted Alibaba.com Logistics and linked to logistics.alibaba.com; the later message carried an ICBU campaign identifier. Plaintiff declares that he was physically present in Arkansas when both messages were received and when he accessed them. Burchfield Decl. ¶¶ 2-16 & Exs. A-D. An email address or the recipient's presence alone does not establish purposeful direction, but the messages are evidence of continuing, recipient-specific platform solicitation and of records capable of identifying the responsible ICBU entity and any Arkansas-linked account information.

The Eighth Circuit has not squarely selected a circuit-wide interpretation of § 1965 for civil RICO. The Moving Defendants invoke the forum-state approach applied in Peters Broadcast Engineering, Inc. v. 24 Capital, LLC, 40 F.4th 432, 439-40 (6th Cir. 2022), under which jurisdiction must first exist over at least one defendant before § 1965(b) may bring other domestic parties before the court when the ends of justice require. Even under that framework, ECF No. 38 does not analyze Zichang's alleged Arkansas-directed contract and shipment. Section 1965(b) is not itself a method for service in China, and Plaintiff does not use it to evade the Hague Service Convention. The point is narrower: the motion has not eliminated the pleaded

forum anchor or the need to identify which domestic platform and payment entities participated in the Arkansas-directed transaction.

**B. The declarations and stipulated public record create specific, resolvable factual issues.**

The declarations repeatedly state that each Moving Defendant is separate and did not own, operate, control, participate in, communicate about, manufacture, or ship the product. ECF Nos. 38-7 through 38-10. Corporate separateness, standing alone, does not answer which legal entity housed ICBU, processed the payment, maintained the seller account, retained the fee, controlled the Trade Assurance transition, or issued the 2026 response. Those facts are within Defendants' records.

The signed Alibaba agreement supplies more than speculation. It defines ICBU - the business unit that operates Alibaba.com - to include Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. Alibaba Agreement § 1(g). It states that ICBU operated the marketplace, promoted Gold and Verified suppliers, maintained platform rules, could penalize sellers, and processed Trade Assurance payments through April 2021. Id., Attachment A ¶¶ 2-5. Those facts do not automatically establish alter ego, jurisdiction, or liability. They do, however, create an unreconciled tension with declarations that isolate the entities and deny any relevant operational role during the same period.

The native emails reinforce the need to reconcile the declarations with that organizational record. Their authenticated Alibaba-controlled domains, Aliyun relay fields, recipient or campaign identifiers, Alibaba.com and logistics.alibaba.com links, and Singapore-entity footers are observable facts. Exs. A-D. The December 2024 footer includes a disclaimer concerning Alibaba's role, knowledge, or control over the third-party listings; Plaintiff does not treat the email as proof that Alibaba created those listings. Neither message establishes alter ego or automatically attributes a campaign to Alibaba.com US E-Commerce Corp. But because the

signed agreement identifies both the Singapore entity and Alibaba.com US E-Commerce Corp. as legal entities housing ICBU, Defendants possess the records needed to identify which entity controlled the campaigns, logistics promotion, recipient selection, search-derived recommendations, and related marketplace data.

The agreement's promise not to contradict the Statement of Facts is expressly framed for a later government prosecution covered by the agreement. Plaintiff therefore does not assert automatic issue preclusion in this civil case. But the facts remain formal, signed stipulations by Alibaba entities, concern the period including June 2021, and identify the organizational structure and records that focused discovery should test.

The AUS record is even more concrete. Paragraph 8 of the Kang declaration admits that AUS has provided Alibaba.com payment processing and that other processors also provided it. Paragraph 9 reports a search only for a buyer named "Burchfield." The contemporaneous receipt records "Burchfield Sales and Consulting LLC" as buyer and the unique order number 91906090501027582. ECF No. 2 at 17. The AUS Statement of Facts says AUS generally received merchant identity, buyer identity, product description, and sale-order data when it facilitated payments. AUS Agreement, Attachment A ¶ 3. A search limited to one surname does not resolve whether AUS or another processor handled this order.

There is a second temporal question. The Alibaba Statement of Facts says ICBU offered Trade Assurance payment processing only "through April 2021." Alibaba Agreement, Attachment A ¶ 3. The order was placed June 1, 2021, yet its contract, receipt, and 2026 service response continued to identify Trade Assurance. ECF No. 2 at 9-17, 23. The record does not say who took over or continued those functions after April 2021, which entity retained the June 2021 processing fee, or which entity authorized the June 2026 $500 credit offer. These are narrow identification questions, not a request for unrestricted merits discovery.

**C. The requested discovery can be tightly limited.**

Where jurisdictional facts are unknown or disputed and the plaintiff offers documentary evidence rather than mere speculation, tailored discovery is appropriate. Steinbuch v. Cutler, 518 F.3d 580, 589 (8th Cir. 2008). Viasystems affirmed denial only where the facts necessary to the jurisdictional inquiry were known and undisputed. 646 F.3d at 598. Here, a short, transaction-specific protocol can resolve the dispute without burdening unrelated operations.

Plaintiff requests discovery limited to the following subjects and identifiers:

- the entity or processor associated with Order No. 91906090501027582, BSAC LLC, Bradley Burchfield, Zichang, the $736.38 charge, the $21.38 processing fee, and the June 1, 2021 payment token or merchant record;
- the legal entity that housed or administered ICBU, Trade Assurance, seller verification, customer service, and payment-processing functions for this order on June 1, 2021;
- the transition, successor, or continuation of Trade Assurance/payment functions after April 2021 and before July 2021;
- the identity of the entity that reviewed the same order and authorized, funded, or issued the June 18, 2026 $500 Alibaba credit offer; and
- the entity, campaign owner, data source, logistics-service owner, and recipient-selection records for the December 30, 2024 and January 29, 2026 emails, including the "icbu_edm" Feedback-ID, X-AliDM and X-EnvId fields, campaign-tracking identifiers, member.alibaba.com and service.alibaba.com sending authorizations, logistics.alibaba.com links, search/recommendation inputs, and any link between the recipient account and an Arkansas address; and
- the Arkansas destination, IP/account, seller-account, fee, and communications records for this single order, sufficient to assess purposeful direction, agency, and the correct parties.

Plaintiff is willing to limit production initially to entity-identification documents, a Rule 30(b)(6) declaration or short deposition on those topics, and no more than ten interrogatories and ten requests for production. Plaintiff will meet and confer under Local Rule 7.2(g) before serving any court-authorized discovery. If the verified records establish that AUS had no role in the 2021 payment and no role in the 2026 response, Plaintiff will dismiss AUS as to this transaction. This narrowing answers the concern raised in ECF No. 43 that earlier proposed discovery was too broad.

## IV. THE RULE 12(b)(6) DEFENSES DO NOT WARRANT THE BLANKET, WITH-PREJUDICE RELIEF REQUESTED.

### A. Any statutory-injury or real-party issue should be addressed under Rule 17, not used to terminate the entire action at the threshold.

Section 1964(c) requires injury to the plaintiff's business or property by reason of a RICO violation. The FAC alleges such an individual injury, while recognizing that the order record names BSAC LLC and expressly requesting Rule 17(a)(3) relief if the Court determines the claim belongs to the LLC. ECF No. 11 ¶ 7. The appropriate sequence is to determine ownership from the payment and entity records, then permit ratification, joinder, or substitution if required. Immediate dismissal would disregard Rule 17(a)(3)'s anti-forfeiture command.

### B. Claim preclusion requires defendant-by-defendant and conduct-by-conduct analysis.

Plaintiff acknowledges that the prior cases and the February 2023 dismissal with prejudice must be addressed directly. But ECF No. 38 does not map every current Moving Defendant to a prior party or establish privity for each one; nor does it separate the original 2021 transaction from material events alleged to have occurred after the prior pleadings. Federal claim preclusion requires a final merits judgment, proper jurisdiction, the same parties or their privies, and the same claim or nucleus of operative fact. Elbert, 903 F.3d at 782.

Claims based on conduct occurring after an earlier complaint are generally not barred merely because they resemble earlier conduct. Lucky Brand Dungarees, Inc. v. Marcel Fashions

Group, Inc., 590 U.S. 405, 412-14 (2020); Lawlor v. National Screen Service Corp., 349 U.S. 322, 327-28 (1955). The June 2026 review of the order and credit communication could not have been pleaded in the 2022 actions. ECF No. 11 ¶¶ 31-34. Plaintiff does not contend that this communication, standing alone, revives every earlier claim or creates a new RICO injury. It does mean the preclusion analysis must identify the particular claim, injury, defendant or privy, and operative facts rather than declare the entire federal controversy nonexistent.

At a minimum, claim preclusion is a merits ground for claim-specific dismissal - not a basis to dismiss the entire case for want of subject-matter jurisdiction and not a basis for four movants to obtain entity-specific merits relief on behalf of the Defaulted Defendant.

**C. Limitations must be analyzed injury by injury; any deficiency should result in leave to amend, not jurisdictional dismissal.**

Civil RICO has a four-year limitations period that begins when the plaintiff discovers or should discover the injury. Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987); Schreier v. Drealan Kvilhaug Hoefker & Co., P.A., 992 F.3d 674, 681 (8th Cir. 2021). The Eighth Circuit also follows separate accrual: each independent RICO injury has its own accrual date, while an injury of the same type, flowing from the same source and part of one cognizable pattern, does not restart limitations. Geivett v. AMC Management, LLC, No. 24-3093, slip op. at 3-5 (8th Cir. Nov. 5, 2025) (published).

The Moving Defendants rely on Plaintiff's 2022 lawsuits to show knowledge of the original payment injury. That creates a serious limitations issue as to recovery for that particular injury, but it does not support Rule 12(b)(1), and the Court must still perform the claim-by-claim analysis required by Geivett. The June 2026 communication is relevant to entity identity, records, and alleged later conduct; Plaintiff does not ask the Court to treat a $500 future-purchase credit offer as automatically restarting limitations for the 2021 loss.

Before dismissing with prejudice, the Court should permit Plaintiff to identify in a sworn declaration any independent business-or-property loss first suffered or discovered after June 22, 2022 and the conduct causing it. If no timely independent injury can be pleaded, the Court may limit the RICO damages accordingly. That merits determination should not be converted into a finding that the federal claim was never colorable.

### D. Any dismissal should be limited and accompanied by leave to amend.

Leave to amend should be freely given when justice requires. Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). The current disputes concern curable matters: identifying the payment and customer-service entities, documenting who paid, clarifying any timely independent injury, and using Rule 17(a)(3) if BSAC LLC owns the claim. If the Court finds the FAC deficient, Plaintiff requests a short deadline to file a focused amended pleading after jurisdictional discovery rather than dismissal with prejudice.

## V. THE COURT SHOULD DISREGARD PERSONAL ATTACKS THAT DO NOT BEAR ON THE RULE 12 QUESTIONS.

ECF No. 38 discusses Plaintiff's criminal history, describes his motives in pejorative terms, and emphasizes the size of the damages demand. Those matters do not determine federal-question jurisdiction, Article III standing, personal jurisdiction, claim ownership, preclusion, or accrual. Plaintiff asks the Court to decide the motion on the pleadings, admissible record, and governing law. Plaintiff is prepared to amend the prayer for relief to seek only damages and remedies authorized by law and supported by proof.

## CONCLUSION

Plaintiff respectfully requests that the Court:

1. deny dismissal under Rule 12(b)(1) because the FAC presents a colorable federal RICO claim and the Moving Defendants' preclusion and limitations arguments are merits defenses;

**2.** deny or defer Rule 12(b)(2) relief and permit the narrowly tailored, transaction-specific jurisdictional discovery described above;

**3.** deny Rule 12(b)(6) relief or, alternatively, allow a reasonable period for Rule 17(a)(3) ratification, joinder, or substitution and for amendment under Rule 15(a)(2);

**4.** limit any entity-specific Rule 12(b)(2) or Rule 12(b)(6) relief to the four Moving Defendants and not adjudicate defenses for the Defaulted Defendant that the Defaulted Defendant has not presented;

**5.** permit Plaintiff to dismiss AUS if verified transaction and customer-service records establish that AUS had no role in either the June 2021 payment or the June 2026 response; and

**6.** grant such other relief as is just and proper.

Respectfully submitted,
Bradley Burchfield
_______________________

Bradley Burchfield, Pro Se
5420 Kavanaugh Blvd. #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0035
Email: burchfieldbradley123@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on August 18, 2026, I served a true and correct copy of the foregoing response, supporting declaration, and Exhibits A-D by electronic mail on counsel of record at bart@mcdanielwolff.com, bwebb@mcdanielwolff.com, gashcraft@mcdanielwolff.com, and robert.liu@balancelawfirm.com. Upon docketing, the CM/ECF system will also transmit notice to registered counsel of record.

Bradley Burchfield
_______________________
Bradley Burchfield