**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**Central Division**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM-JJV |

**FOUR DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Four defendants—Alibaba Group Holding Limited ("AGHL"), Alibaba.com US E-Commerce Corp., Alibaba.com U.S. LLC, and AUS Merchant Services, Inc. ("AUS") (collectively, the "Moving Defendants")—file this reply in further support of their Motion to Dismiss First Amended Complaint ("Motion to Dismiss") (ECF No. 37) and in response to Plaintiff's Response in Opposition ("Opposition") (ECF No. 57).[1]

## PRELIMINARY STATEMENT

The Opposition fails to present any persuasive basis to avoid dismissal. As discussed below, Plaintiff makes concessions that support dismissal; erroneously invokes Rule 17(a)(3) of the Federal Rules of Civil Procedure; grasps at straws in a futile effort to conjure up factual

[1] Plaintiff called another defendant—Alibaba Group (U.S.)—the "Defaulted Defendant," Opp'n at 1, but that was premature and is now incorrect. This Court recently denied Plaintiff's Request for Entry of Default as to that defendant and directed the Clerk to file that defendant's Motion to Dismiss First Amended Complaint and Brief in Support. August 21, 2026 Order at 3 (ECF No. 64). There is substantial overlap between the arguments presented in the Motion to Dismiss at issue here and the arguments presented in the motion to dismiss filed by Alibaba Group (U.S.). This reply is filed on behalf of the Moving Defendants, not on behalf of Alibaba Group (U.S.).

disputes that do not exist and do not provide any basis for jurisdictional discovery; and makes arguments that were rejected by the Court's August 21, 2026 Order ("8/21 Order") (ECF No. 64).

The Moving Defendants' Brief in Support of the Motion to Dismiss ("MTD Brief") (ECF No. 38) called this frivolous lawsuit part of Plaintiff's years-long harassment campaign against companies allegedly associated with the Alibaba.com Platform, and nothing in the Opposition refutes that assessment. The Court should stop that harassment and grant the Motion to Dismiss.

## ARGUMENT

### I. Plaintiff's Effort To Invoke Rule 17(a)(3) Lacks Merit Because His Decision To Name Himself (Instead Of His Company) As Plaintiff Was A Litigation Strategy And Deliberate Tactical Maneuvering—Not A Mistake Due To A Difficult Determination Regarding The Proper Plaintiff.

Plaintiff tries to evade the significant standing problem identified in the MTD Brief—namely, that he does not have standing to pursue the RICO claims because Burchfield Sales and Consulting LLC ("BSAC LLC") was the buyer in the June 1, 2021 transaction at issue here—by engaging in a delaying tactic, requesting time to "obtain counsel and secure ratification, joinder, or substitution under Rule 17(a)(3) [of the Federal Rules of Civil Procedure]," Opp'n at 8. That request comes immediately after Plaintiff's acknowledgement that a limited liability company is allowed to appear in federal court only through a licensed attorney. *Id*.

On this record, the Court should not allow Plaintiff to take advantage of Rule 17(a)(3) because he did not mistakenly name himself (instead of BSAC LLC) as the plaintiff in this lawsuit but rather engaged in deliberate tactical maneuvering in an effort to prosecute this lawsuit as a *pro se* plaintiff and avoid the need to have an attorney represent BSAC LLC. Rule 17(a)(3) does not allow a plaintiff to resort to such procedural gamesmanship and then, when the defendant objects, use that rule to request more time to reconfigure his lawsuit. Although that rule, when "[r]ead literally, … would appear to require that a party *always* be given a reasonable time to substitute

the real party in interest where objection has been made[,]" … [s]uch a literal reading … would countenance conduct in violation of the spirit of the Rules ...." *Esposito v. United States*, 368 F.3d 1271, 1275 (10th Cir. 2004) (emphasis in original); *see Sisson v. Patel*, No. 20-05101-CV-SW-BP, 2021 WL 9958730, at *2 (W.D. Mo. Mar. 8, 2021) (quoting Advisory Committee Notes to Rule 17 and stating that "it has been held that[,] when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed" (quotation marks omitted)). Thus, "'[m]ost courts have interpreted this sentence [in Rule 17(a)(3)] as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult.'" *Taylor v. Comcast Cablevision of Arkansas, Inc.*, 252 F. Supp. 2d 793, 795 (E.D. Ark. 2003) (quoting *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 308 (5th Cir. 2001)); *see Crowder v. Gordons Transports, Inc.*, 387 F.2d 413, 418 (8th Cir. 1967) (Rule 17 "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made" (quotation marks omitted)); *Anderson v. Bristol, Inc.*, 847 F. Supp. 2d 1128, 1135 (S.D. Iowa 2012) (quoting *Crowder*, 387 F.2d at 418, with approval). When deciding whether to dismiss a lawsuit or allow substitution of the real party in interest, "a court should consider whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was honest)." *Suda v. Weiler Corp.*, 250 F.R.D. 437, 440 (D.N.D. 2008) (quotation marks omitted).

Here, the Opposition and the First Amended Complaint ("FAC") show that Plaintiff knew exactly what he was doing when he decided to file this lawsuit in his own name, instead of naming BSAC LLC as the plaintiff. That decision was intentional—not a mistake. The Opposition does not claim that it was a mistake. For more than five years before this lawsuit was filed, Plaintiff

knew that BSAC LLC was identified as the buyer in the June 1, 2021 Trade Assurance Purchase Contract that is at the center of this lawsuit. Moreover, Plaintiff's decision to invoke Rule 17(a)(3) in the FAC (¶ 7) and describe himself as the "beneficial owner of the subject claim," FAC at page 1 (caption), further supports the conclusion that Plaintiff did not make a mistake regarding the proper plaintiff but instead engaged in tactical maneuvering to try to serve his perceived litigation interest.[2] The issue here is not whether Plaintiff failed to name the correct "Alibaba" company as a ***defendant***; it is whether he mistakenly named the wrong plaintiff. He named the wrong plaintiff, but it was not a mistake within the meaning of the Rule 17(a)(3) case law, so he is not entitled to the benefit of Rule 17(a)(3). *Compare Bell v. Mine Safety Appliances*, No. 1:13-cv-01075, 2015 WL 10939715, at *3 (W.D. Ark. Nov. 17, 2015) (rejecting plaintiffs' Rule 17(a)(3) argument and stating: "The determination of the real party in interest was not difficult for the Plaintiffs in this case; nor was there an understandable or excusable mistake in this regard.") *with Applied Risk Servs., Inc. v. Beemac Driver Mgmt., LLC*, No. 8:15CV110, 2016 WL 3033704, at *3 (D. Neb. May 26, 2016) (allowing named plaintiff to file Rule 17(a) motion to substitute to name a different plaintiff provided that named plaintiff "can show it made an honest or understandable mistake as to the identification of the real party in interest"); *Suda*, 250 F.R.D. at 441 (declining to dismiss lawsuit based on Rule 17(a) because "[t]here is no evidence that [plaintiff] engaged in deliberate tactical maneuvering when he brought this action in his own name based on his mistaken belief that his insurance policy had a deductible").[3]

---

[2] Now that the Moving Defendants have objected based on the lack of a proper plaintiff, Plaintiff may regret his tactical decision and may conclude that it was a mistake, but such hindsight-driven regret is not the kind of mistake that matters for purposes of the Rule 17(a)(3) case law discussed above.

[3] Plaintiff unsuccessfully tries to conjure up a factual dispute by arguing that a "sworn declaration and underlying payment record can resolve th[e] factual question," Opp'n at 7, regarding whose credit card or bank account funded the payment at issue here. Those facts are within Plaintiff's knowledge, so he could have alleged them in the FAC. In any event, that is not a genuine factual dispute because, even if Plaintiff

## II. Plaintiff's Arguments Regarding Preclusion Principles Are Unavailing.

As established by the MTD Brief, Plaintiff's RICO claims are barred by preclusion principles (claim preclusion and/or issue preclusion)[4] based on what happened in Plaintiff's prior RICO lawsuits involving the same Alibaba.com Platform transaction at issue here:

- the *sua sponte* dismissal ruling in the Western District of Arkansas case, where Judge Hickey certified "'that an in forma pauperis appeal of [that dismissal order] would not be taken in good faith,'" MTD Brief at 7 (quoting dismissal order);

- the *sua sponte* dismissal ruling in the Northern District of California, where the court was "'convinced that [Plaintiff] cannot allege facts to cure the defects'" identified by the court's order and that "'granting Plaintiff further leave to amend would be futile,'" *id*. at 6-7 (same);

- Plaintiff's admission, in the stipulation of dismissal with prejudice of the Eastern District of Arkansas lawsuit, that dismissal was "'appropriate because no viable claim exists,'" *id*. at 6 (quoting stipulation of dismissal with prejudice).[5]

The Opposition does not—and cannot—dispute what happened in those prior RICO lawsuits.

Plaintiff's efforts to evade the preclusion impact of his "no viable claim exists" admission and the dismissal rulings lack merit. The Moving Defendants are not required to "map every current Moving Defendant to a prior party or establish privity for each one," Plaintiff's Opp'n at 13, because the plaintiff who admitted that no viable claims exists in one prior RICO lawsuit and whose claims were dismissed by court rulings in two other prior RICO lawsuits is the same plaintiff

---

made that payment from his own credit card or bank account, he would have made that payment for or on behalf of BSAC LLC, in his capacity as a member and/or officer of that company.

[4] In one of the cases cited in the MTD Brief, the Supreme Court used the term "res judicata doctrines" to refer collectively to claim preclusion and issue preclusion. MTD Brief at 5 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)); *see Sandy Lake Band of Mississippi Chippewa v. United States*, 714 F.3d 1098, 1102 (8th Cir. 2013) ("Res judicata incorporates the concepts of both issue preclusion and claim preclusion."). The Moving Defendants invoke both preclusion doctrines.

[5] This Court can decide the preclusion issues presented by the Moving Defendants without passing judgment on whether the prior dismissal decisions were correct because, as the Eighth Circuit made clear, "issue preclusion prevents relitigation of wrong decisions just as much as right ones." *Sandy Lake Band of Mississippi Chippewa*, 714 F.3d at 1104 (quotation marks omitted). By making this point, the Moving Defendants in no way suggest that they have any doubts regarding whether the prior dismissal decisions were right. They clearly were right, but this Court can rule in favor of the Moving Defendants without determining whether they were right.

who is pursuing RICO claims here arising out of the same Alibaba.com Platform transaction that was at issue in his prior RICO lawsuits. The key question for determining the preclusive impact of a prior lawsuit on a subsequent lawsuit is not whether the prior lawsuit and the current lawsuit allege exactly the same claims against exactly the same line-up of defendants. What matters is "whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate" and whether the subsequent lawsuit would "relitigat[e] issues that were or ***could have been raised*** in [the prior lawsuit]." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (emphasis added).

Based on those principles, this lawsuit must be dismissed because it alleges RICO claims that arise out of the same nucleus of operative fact or are based on the same factual predicate as the claims alleged in Plaintiff's three prior RICO lawsuits—namely, the June 1, 2021 Alibaba.com Platform transaction involving the chemical product sold by the third-party seller Zichang New Materials (Shandong) Co. Ltd. ("Zichang")—so this lawsuit relitigates issues that Plaintiff did raise, or could have raised, in those prior RICO lawsuits. In *Elbert*, the Eighth Circuit held that "[t]here is no good reason why [plaintiff] should have a second chance to add these claims and defendants" and went on to explain that "all of his claims arise out of the same police raid"; that plaintiff "could have brought the new claims against [the defendant] in the first action and failed to do so"; and that plaintiff "could have joined the other police officers as defendants in the first action but failed to do so in a timely manner." *Elbert*, 903 F.3d at 784. After all, any "other rule would enable plaintiff to avoid the doctrine of res judicata by the simple expedient of not naming all possible defendants in [his] first action." *Id*. (alterations in original; quotation marks omitted). Likewise, Plaintiff's RICO claims in this lawsuit arise out of the same June 1, 2021 Alibaba.com Platform transaction that was at issue in his three prior RICO lawsuits, and it does not matter that

Plaintiff now seeks to expand the scope of his claims by adding certain defendants that were not named in some or all of those prior lawsuits because he could have named those defendants in those lawsuits. His prior RICO lawsuits gave Plaintiff "a full and fair opportunity to litigate," *Montana v. United States*, 440 U.S. 147, 153 (1979); *Elbert*, 903 F.3d at 784 (quotation marks omitted), any RICO claims allegedly arising out of that June 1, 2021 transaction, so he is not allowed to use this lawsuit to relitigate RICO claims that were, or could have been, asserted in those prior lawsuits. Or, as the Eighth Circuit put it, the "question here is not whether [plaintiff] is entitled to the time-honored tradition of 'his own day in court,' but whether he gets 'a second bite at the apple.'" *Elbert*, 903 F.3d at 784 (citations omitted). Of course, the situation here is even worse than the situation addressed in *Elbert*, because Plaintiff already had three bites at the RICO apple. The Court should not allow him to take a fourth bite.[6]

## III. Plaintiff Concedes That The Moving Defendants' Statute-Of-Limitations Argument Creates "A Serious Limitations Issue," But He Does Not Present Any Meritorious Rebuttals To That Argument.

As the Moving Defendants established, Plaintiff's prior RICO lawsuits show that Plaintiff was aware of the alleged RICO injury at issue here by no later than February or March 2022—more than four years before he filed this lawsuit, which means that his RICO claims are barred by

[6] Plaintiff grasps at straws by criticizing the MTD Brief for failing to "separate the original 2021 transaction from material events alleged to have occurred after the prior pleadings [filed in his prior lawsuits]." Opp'n at 13. That argument lacks merit because Plaintiff does not specify those "material events" and because, in any event, no events alleged in the FAC to have occurred after those prior pleadings are ***material*** to Plaintiff's RICO claims. Plaintiff certainly cannot rely on a 2026 offer of a $500 credit for a future purchase on the Alibaba.com Platform, *see* Opp'n at 4, as a RICO predicate act that caused a compensable RICO injury because that offer is unrelated to the merits of his RICO claims and because he does not—and cannot—identify any harm that the offer (which he rejected) caused him for which the Moving Defendants can be held liable under the RICO statute. Likewise, the December 2024 email and the January 2026 email attached as exhibits to Plaintiff's Declaration (ECF No. 61) are unrelated to the RICO claims, and Plaintiff does not (and cannot) identify any compensable RICO injury that can be traced to those emails.

the applicable four-year limitations period. *See* MTD Brief at 8, 28-29. Plaintiff does not (and cannot) dispute that his RICO claims are governed by a four-year limitations period.

Plaintiff admits that the Moving Defendants' statute-of-limitations argument "creates a serious limitations issue," Opp'n at 14, but he does not present any meritorious rebuttals to that argument. The best he can do is—once again—grasp at straws by focusing on the June 2026 $500 credit offer for a future purchase on the Alibaba.com Platform, *id*., but in the next breath he acknowledges that he does not ask the Court to treat that offer "as automatically restarting limitations for the 2021 loss," *id*. That acknowledgement makes sense. There is no plausible scenario in which that credit offer, which Plaintiff rejected, caused any injury compensable by the RICO statute and started the limitations clock ticking on a RICO claim, so the Court should not be misled by his discussion of that credit offer.

Plaintiff also cannot evade the dispositive statute-of-limitations argument discussed above by vaguely arguing that "the Court should permit Plaintiff to identify in a sworn declaration any independent business-or-property loss first suffered or discovered after June 22, 2022 and the conduct causing it," Opp'n at 15. Plaintiff had ample opportunity to allege any such loss(es) in his initial Complaint or in the FAC, but he did not do so. There is no plausible scenario in which any such loss(es) would: (a) have the requisite causal connection to his RICO claims that arise out of the June 1, 2021 transaction at issue here; and (b) save his RICO claims from dismissal on statute-of-limitations grounds.

## IV. Plaintiff Has No Persuasive Response To The Moving Defendants' Lack-Of-Personal Jurisdiction Arguments, Which Are Supported—As This Court Stated Recently—By Detailed Declarations Setting Forth The Relevant Facts.

As this Court acknowledged, the Moving Defendants seek dismissal for lack of personal jurisdiction in a motion that "is supported by detailed Declarations setting forth the relevant facts."

8/21 Order at 1. Plaintiff's Opposition lacks any persuasive response to the Moving Defendants' lack-of-personal-jurisdiction arguments and fails to satisfy Plaintiff's burden of establishing that this Court has personal jurisdiction over the Moving Defendants in this lawsuit.

***First***, when presenting his personal jurisdiction arguments, Plaintiff completely ignores the "transnational context of this dispute," but that "bears attention," *Daimler AG v. Bauman*, 571 U.S. 117, 140 (2014). Various companies named as defendants in this lawsuit—including AGHL, Alibaba.com Singapore E-Commerce Private Limited, and Zichang—are foreign companies that are incorporated under the laws of, and have their principal places of business in, other countries. Thus, in accordance with *Daimler*, this Court should take "international comity" and "[c]onsiderations of international rapport," *id*. at 141-42, into account when deciding whether to accept Plaintiff's unduly broad arguments regarding personal jurisdiction as to the foreign defendants.

***Second***, Plaintiff tries to create a personal jurisdiction hook as to the Moving Defendants by making the cursory argument that this Court has personal jurisdiction over Zichang, *see* Opp'n at 9, but that argument lacks merit. Plaintiff does not—and cannot—contend that Zichang is "at home" in Arkansas within the meaning of *Daimler*, 571 U.S. at 137, so this Court does not have general personal jurisdiction over Zichang in this case.

This Court also lacks specific personal jurisdiction over Zichang. The due process inquiry to determine whether a court can assert specific personal jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quotation marks omitted), so "the defendant's suit-related conduct must create a substantial connection with the forum State," *id*. at 284. The relationship among the defendant, the forum, and the litigation "must arise out of contacts that the defendant *himself*

creates with the forum State." *Id*. (emphasis in original; quotation marks omitted). It "is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id*. at 291. Moreover, a defendant's "random, fortuitous, or attenuated contacts" or "the unilateral activity of a plaintiff" do not suffice to give a court specific personal jurisdiction. *Id*. at 286 (quotation marks omitted); *see Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co.*, 646 F.3d 589, 594 (8th Cir. 2011) (holding that defendant's contacts with the forum State—"scattered e-mails, phone calls, and a wire-transfer of money" to plaintiff in the forum State—were "the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction"). Thus, ***Plaintiff's*** decision to cause his company to enter into a contract (via the Internet) with a seller located in the People's Republic of China (Zichang) does not establish that ***Zichang itself*** created contacts with Arkansas sufficient to subject Zichang to specific personal jurisdiction in this Court. Plaintiff created those contacts through his unilateral activity, and there is no basis to conclude that it mattered to Zichang, when it entered into the contract at issue here, that Plaintiff was located in Arkansas, as opposed to anywhere else in the world where a buyer using the Internet to purchase a product from Zichang could be located. In sum, any contacts between Zichang and Arkansas related to Plaintiff's claims in this lawsuit were created by Plaintiff and/or were so random, fortuitous, or attenuated that they do not give rise to specific personal jurisdiction as to Zichang.

***Third***, when addressing AUS, Plaintiff grasps at straws once again—misconstruing the August 5, 2026 Declaration of Jing Kang ("8/5 Kang Declaration") (ECF No. 38-10) regarding AUS's search of its records for the June 1, 2021 transaction alleged in the FAC—and misses the mark once again. He argues that Paragraph 9 of that declaration "reports a search only for a buyer named 'Burchfield'" and that a "search limited to one surname does not resolve whether AUS or

another [payment] processor handled this order." Opp'n at 11. However, Paragraph 9 of the 8/5 Kang Declaration does ***not*** state that AUS's search of its records was limited to one "surname." In fact, that search was for the ***word*** "Burchfield," which would have captured a transaction involving Plaintiff Bradley Burchfield or his company Burchfield Sales and Consulting LLC or any other transaction in which the buyer's name included the word "Burchfield".[7] AUS did not find any such transaction, so AUS did not participate in or supervise any transaction where Plaintiff Bradley Burchfield (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform between May 15, 2021 to June 15, 2021. 8/5 Kang Declaration ¶ 9; 8/20 Kang Declaration ¶ 9. Thus, this Court does not have specific personal jurisdiction over AUS; there was no "suit-related conduct" by AUS that "create[d] a substantial connection with [Arkansas]." *Walden*, 571 U.S. at 284.[8]

***Fourth***, turning to the other Moving Defendants, Plaintiff also has no persuasive response to the detailed declarations setting forth the relevant facts establishing that the Court lacks specific personal jurisdiction over those defendants in this lawsuit because those defendants did not engage in any "suit-related conduct" that "create[d] a substantial connection with [Arkansas]," *Walden*, 571 U.S. at 284. For example, Plaintiff's effort to take advantage of a non-prosecution agreement with the United States Attorney's Office in Rhode Island is unavailing. That agreement is not

[7] To put to rest any doubt that Plaintiff tries to manufacture regarding this issue, AUS submits here a Declaration of Jing Kang ("8/20 Kang Declaration") (attached as **Exhibit 1**) that was filed recently in a related lawsuit pending in this Court before Judge Baker, where AUS is also seeking dismissal of Plaintiff's claims for lack of personal jurisdiction. The search conducted by AUS "would capture any transaction in which the buyer's name included the word 'Burchfield,' regardless of whether that word was part of an individual's names or part of a company's name." 8/20 Kang Declaration ¶ 9.

[8] Plaintiff does not, and cannot, challenge AUS's showing that this Court does not have general personal jurisdiction over AUS.

relevant to the claims asserted in this case, as this Court correctly recognized. 8/21 Order at 1.[9] Likewise, Plaintiff grasps at straws by pointing to two emails (from December 2024 and January 2026) attached to his Declaration (ECF No. 61). Those emails are irrelevant to Plaintiff's claims, so the emails cannot provide any basis for the Court to conclude that the Moving Defendants engaged in the requisite "suit-related conduct" that "create[d] a substantial connection with [Arkansas]," *Walden*, 571 U.S. at 284. The same conclusion applies to Plaintiff's effort to rely on the June 2026 $500 credit offer for a future purchase on the Alibaba.com Platform. That is another irrelevant straw that does not support Plaintiff's burden of establishing personal jurisdiction.

***Finally***, Plaintiff tries to continue his harassment campaign by seeking leave to pursue wide-ranging, burdensome jurisdictional discovery from the Moving Defendants, but that argument also lacks merit. Plaintiff apparently does not want to accept the detailed factual declarations regarding personal jurisdiction issues attached as exhibit to the MTD Brief, but his speculation and conjecture regarding what information he might learn during discovery does not entitle him to discovery to test the assertions in those declarations. *See* 8/21 Order at 1 (denying Plaintiff's motion for leave to take jurisdictional discovery; stating that Plaintiff's request to conduct discovery to "'test th[e] assertions'" in the Moving Defendants' declarations "is based on speculation and conjecture"); *see also Viasystems*, 646 F.3d at 598 (affirming denial of jurisdictional discovery because plaintiff's assertions about what facts such discovery "'would likely' reveal" was "entirely speculative"). Moreover, to the extent that Plaintiff seeks discovery about which defendant owns and operates the Alibaba.com Platform, that is completely unnecessary on this record because one of the declarations attached as an exhibit to the MTD Brief

---

[9] Moreover, nothing in the non-prosecution-agreement papers filed by Plaintiff contradicts the sworn statements in the declarations submitted by the Moving Defendants. Plaintiff's efforts to conjure up contradictions are based on mischaracterizations and unsupported speculation.

(ECF No. 38-7, ¶¶ 2, 8) states that Alibaba.com Singapore E-Commerce Private Limited (a defendant in this case) owns and operates the Alibaba.com Platform. That sworn statement is consistent with the receipt for the June 1, 2021 transaction that Plaintiff filed as an exhibit in this lawsuit, which shows "Alibaba.com Singapore E-Commerce Private Limited" as the "Marketplace Operator" (ECF No. 2, at page 17). Plaintiff has no basis (other than unsupported speculation and conjecture) to claim that another company owns and operates the Alibaba.com Platform, so there is no need to grant him leave to pursue jurisdictional discovery. If any doubt remains regarding whether Plaintiff has any meritorious basis to seek jurisdictional discovery, it should be laid to rest by focusing on the fact that he seeks discovery regarding the identity of the entity that authorized, funded, or issued the June 2026 $500 credit offer discussed above. *See* Opp'n at 12. That offer does not give rise to any claims at issue in this lawsuit, so it does not constitute "suit-related conduct" that "create[d] a substantial connection with [Arkansas]," *Walden*, 571 U.S. at 284, and does not give this Court personal jurisdiction over the Moving Defendants in this case.

## CONCLUSION

For the reasons set forth above and in the MTD Brief, the Court should grant the Motion to Dismiss.

Dated: August 26, 2026

Respectfully submitted,

McDANIEL WOLFF, PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
McDaniel Wolff, PLLC
1307 West 4th Street
Little Rock, AR 72201
(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

and

BALANCE LAW FIRM

B. Robert Liu (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited, Alibaba.com US E-Commerce Corp., Alibaba.com U.S. LLC, and AUS Merchant Services, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2026, I electronically filed the foregoing Reply (with exhibits) with the Clerk of the Court using the CM/ECF system. I further certify that, because Plaintiff is proceeding *pro se* and is not a registered CM/ECF participant, I served a true and correct copy of the foregoing Reply (with exhibits) via United States First-Class Mail, postage prepaid, addressed to Plaintiff as follows:

Bradley Burchfield
5420 Kavanaugh Blvd. #7927
Little Rock, AR 72217

/s/ Brittany D. Webb
Brittany D. Webb, Ark. Bar No. 2023139

# EXHIBIT 1

**DECLARATION OF JING KANG**

I, Jing Kang, declare as follows:

1. I make this declaration based on personal knowledge and my review of corporate records in the regular course of my duties. I am over the age of eighteen and am authorized to make the statements set forth in this declaration. If called as a witness, I could and would competently testify to the statements set forth below.

2. I am Senior Legal Counsel for AUS Merchant Services, Inc. ("AUS").

3. AUS is a corporation that is incorporated under the laws of the State of Delaware and has its principal place of business in the State of California.

4. AUS is a separate legal entity and maintains its own books and records.

5. AUS does not direct, target, or specifically tailor any of its business activities to or at the State of Arkansas.

6. AUS does not have any offices in the State of Arkansas.

7. AUS does not have any employees in the State of Arkansas.

8. AUS provides, and has provided, payment processing services for sale/purchase e-commerce transactions consummated via Alibaba.com ("the Alibaba.com Platform"). AUS is not, and has not been, the only company providing payment processing services for those sale/purchase e-commerce transactions consummated via the Alibaba.com Platform. Several other companies provide, and have provided, payment processing services for sale/purchase e-commerce transactions consummated via the Alibaba.com Platform.

9. AUS searched for transactions in which the buyer was "Burchfield" amongst the Alibaba.com transactions processed by AUS between May 15, 2021 to June 15, 2021. That search would capture any transaction in which the buyer's name included the word "Burchfield,"

regardless of whether that word was part of an individual's name or part of a company's name. AUS did not find any such transaction. AUS did not participate in or supervise any transaction where Plaintiff Bradley Burchfield (or his company Burchfield Sales and Consulting LLC) allegedly bought or tried to buy a product on the Alibaba.com Platform between May 15, 2021 to June 15, 2021.

10. AUS does not own, operate, or control the Alibaba.com Platform and does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on the Alibaba.com Platform.

11. AUS does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so AUS was not an agent for the third-party seller Zichang New Materials (shandong) Co. Ltd. ("Zichang") when Mr. Burchfield (or his company) allegedly bought or tried to buy a product from Zichang.

12. AUS does not have any communications with buyers of products on the Alibaba.com Platform, so Mr. Burchfield could not have communicated with AUS about any product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

13. AUS does not send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. Therefore, neither Mr. Burchfield nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from AUS; or (b) any advertisements, marketing e-mails, or messages where AUS had any control over their content.

14. AUS does not introduce potential buyers to sellers or otherwise play any role in creating any contacts between sellers and potential buyers, so AUS could not have introduced Mr.

Burchfield (or his company) to Zichang or played any role in creating any contacts between Mr. Burchfield (or his company) and Zichang.

15. AUS plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AUS could not have played any role in manufacturing the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

16. AUS plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AUS could not have played any role in the shipping or distribution process for the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

17. AUS does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so AUS could not have taken possession or control of, and could not have taken title to, the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

18. Zichang has never been an agent for AUS. AUS has never stated or done anything to suggest, or create the appearance, that Zichang is AUS's agent.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __20th__ day of August, 2026.

Jing Kang