IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 20 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

BRADLEY BURCHFIELD PLAINTIFF

v. No. 4:26-cv-00611-DPM-JJV

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al. DEFENDANTS

## PLAINTIFF'S MOTION FOR LEAVE TO SUBMIT DECLARATION AND PROPOSED EXHIBITS

Plaintiff Bradley Burchfield requests permission under paragraph 4 of ECF 10 to submit a declaration and proposed Exhibits A–H in support of his opposition to ECF 109. He has prepared the proposed materials and will submit them if authorized. He does not treat this motion as permission to place additional evidence in the record.

The requested declaration addresses Plaintiff's purpose in seeking CSC records, his lack of notice or written authorization for the report about him, his concern about family disclosures, and his response to the personal-character allegations in ECF 110. It would be executed under 28 U.S.C. § 1746.

The proposed appendix contains the following identified materials: A, the subpoena, service return, correspondence, and CSC rejection already filed at ECF 92, pages 9–24; B, ECF 13, ECF 16, ECF 37, and clearly identified excerpts of ECF 17, pages 1 and 20–21; C, the complete orders at ECF 10 and ECF 64; D, the complete 29-page Alibaba NPA; E, the complete 26-page AUS Merchant Services NPA; F, the one-page June 18, 2026 customer-service email; G, the three-page original small-claims complaint and receipt; and H, ECF 104, ECF 109, and only the six-page brief portion of ECF 110.

Exhibits A–C and H consolidate records already before this Court and retain their existing page stamps. The criminal exhibits to ECF 110 are not duplicated. No consumer report, Social Security number, or family-name list is included in the proposed appendix.

Exhibits D–G are offered only for the limited context described in the supporting brief. Plaintiff acknowledges ECF 64's rejection of earlier NPA-based discovery and does not renew a broad alter-ego inquiry through this submission. Both agreements are complete so that their qualifications, periods, statements of facts, and scope may be read together. The June email and original small-claims record are offered to distinguish the original transaction from later correspondence, without seeking to amend or adjudicate the separate small-claims case here.

The Court may allow a narrower submission, take account of existing docket materials without duplication, exclude any proposed exhibit, or resolve the discovery motion without additional evidence. Plaintiff requests that the Court identify what materials it permits and allow seven days after its order for filing and service. No material has been represented as already admitted or authenticated by the Court.

WHEREFORE, Plaintiff requests leave to submit the proposed declaration and appendix, or the portions the Court finds useful, under the stated limitations. The accompanying proposed order includes an optional ruling on this request.

Respectfully submitted,
Date: 10/20/26, 2026 Signature: Bradley Burchfield

Bradley Burchfield, Plaintiff pro se
5420 Kavanaugh Blvd. #7927, Little Rock, Arkansas 72217
479-223-0038 | burchfieldbradley123@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on October 20, 2026, I served a true and correct copy of this motion for leave and its proposed order, including any accompanying exhibits or proposed order actually submitted, on the following counsel by the method marked below. Additional service is identified below.

[✓] CM/ECF upload and resulting Notice of Electronic Filing to registered counsel.
[ ] United States First-Class Mail, postage prepaid, to the addresses below.
[ ] Other authorized method: ____________________

Bart W. Calhoun, Brittany D. Webb, and Ginny Ashcraft
McDaniel Wolff PLLC
1307 West 4th Street, Little Rock, AR 72201
bart@mcdanielwolff.com; bwebb@mcdanielwolff.com; gashcraft@mcdanielwolff.com

B. Robert Liu, Balance Law Firm
1 World Trade Center, Suite 8500, New York, NY 10007
robert.liu@balancelawfirm.com

Additional service by United States First-Class Mail, postage prepaid, to Corporation Service Company, Custodian of Records, 300 South Spring Street, Suite 900, Little Rock, AR 72201.

Signature: Bradley Burchfield
Bradley Burchfield

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRADLEY BURCHFIELD PLAINTIFF

v. No. 4:26-cv-00611-DPM-JJV

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al. DEFENDANTS

**PROPOSED DECLARATION OF BRADLEY BURCHFIELD**

I, Bradley Burchfield, declare as follows:

1. I am the Plaintiff in this action. I make the factual statements below from my personal knowledge. Where I describe a belief about another person's purpose, I identify it as a belief rather than personal knowledge of that person's state of mind.

2. I seek the CSC records to understand what process CSC received, how it handled that process, and the appointment or limitation it relied upon. I want the Court to evaluate any legally material dispute about service and response timing from the records. I did not seek the subpoena to harass CSC employees for doing their jobs.

3. I participated in the correspondence with B. Robert Liu reproduced at ECF 92, pages 19–23. The proposed reproduction preserves those filed pages, including my replies. I understood the July 29 proposal to condition acceptance of service on withdrawal of the subpoena and restrictions on further CSC discovery. That condition contributed to my concern about how the service dispute was being used. I do not know counsel's undisclosed reasoning.

4. I believe the service objection was used tactically to affect response timing and discourage independent inquiry into CSC's handling of process. That is my inference from the sequence. I ask the Court to determine the issue; I do not claim to have personal knowledge establishing a fraud or a sham.

5. The report obtained about me included Social Security number information and names of members of my family. I received no notice from counsel or the report provider telling me that the report had been requested or obtained. I did not give written instructions authorizing its acquisition by defendants or their counsel. I do not owe defendants a debt. I am not reproducing my Social Security number or family members' identities in this declaration.

6. I regard the exposure of family information as serious and fear that it could discourage me from making further filings or giving testimony. My concern about the report and the disclosures is the reason for my privacy objections. The concern is not an assertion that I know every recipient of the report or that a court has found intimidation.

7. I have paid the restitution, court fines, and other monetary obligations ordered in the criminal matters that I am addressing in response to ECF 110. I am not claiming that payment erased the convictions or that those records were fabricated.

8. I have served as assistant director of Joe B's Recovery Home and have assisted with housing people involved in the Pulaski County court system. In 2025, I testified in Pulaski County mental-health court concerning the mental health of a person on state probation. I provide this information to explain my present activities and respond to the portrayal of my purpose, without identifying that person or disclosing their medical information.

9. I attribute the methamphetamine involved in my 2016 criminal matter to a purchase from defendants or an entity I allege was their alter ego. That is my allegation about the source. I do not represent that either NPA identifies my purchase, proves an alter-ego relationship, or establishes a finding about my criminal case.

10. The proposed June 18, 2026 email and small-claims materials are copies of the documents I supplied for use in this litigation. The June 18 email concerns the trade-assurance order

identified in the small-claims materials and offers Alibaba credit. The original small-claims filing predates that email. I ask that any legal effect of the subsequent communication be decided in the appropriate proceeding.

11. I request no finding about fentanyl quantities or lethal doses based on the dollar amounts in the NPAs. I understand that the agreements must be evaluated according to their actual terms, and that the Court has not admitted the proposed appendix merely because it has been prepared.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____________________, 2026, at ________________________________.

Signature: __________________________________

Bradley Burchfield

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS | CENTRAL DIVISION
Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.
No. 4:26-cv-00611-DPM-JJV

# PROPOSED EVIDENTIARY APPENDIX

Exhibits A–H proposed in support of Plaintiff's opposition to ECF 109.

This appendix is prepared for submission if the Court grants leave. The accompanying motion requests permission under ECF 10 paragraph 4. The declaration is a separate document.

Both non-prosecution agreements are reproduced in full. The index identifies the PDF page range containing each exhibit's source pages; divider pages are additional. Original source text and page stamps are retained.


| **Exhibit and contents** | **PDF pages** |
|---|---|
| A CSC subpoena and filed correspondence | 3–18 |
| B Service and response chronology | 20–30 |
| C Orders governing evidence and discovery | 32–36 |
| D Alibaba non prosecution agreement | 38–66 |
| E AUS Merchant Services non prosecution agreement | 68–93 |
| F June 18 2026 customer service email | 95–95 |
| G Original small claims complaint and receipt | 97–99 |
| H Motion and briefs addressed by this opposition | 101–114 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS | CENTRAL DIVISION
Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.
No. 4:26-cv-00611-DPM-JJV

# EXHIBIT A

CSC subpoena and filed correspondence

Complete reproduction of ECF 92 pages 9–24. The original internal exhibit labels are retained. Includes the issued subpoena, notices, service return, email exchanges as filed, and CSC rejection. The separate letter mentioned in the August 10 email is not present in these source pages.

Proposed appendix source pages 3–18.

# EXHIBIT A

July 22 notice and clerk-issued AO 88B packet
Source page 1

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUL 22 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

**BRADLEY BURCHFIELD**
**Plaintiff,**

**Civil Action No.**
**4:26-cv-00611-DPM**

**v.**

**ALIBABA GROUP HOLDING LIMITED, et al.**
**Defendants.**

## NOTICE OF INTENT TO SERVE NONPARTY DOCUMENT SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45(a)(4), Plaintiff Bradley Burchfield gives notice that, after this notice and the attached copy of the subpoena have been served on each party, Plaintiff intends to serve a document-only subpoena on nonparty Corporation Service Company at 300 S. Spring Street, Suite 900, Little Rock, Arkansas 72201.

The subpoena seeks narrowly defined records concerning CSC Transmittal No. 34483454 and CSC's July 9, 2026 rejection of federal process directed to Alibaba Group Holding Limited in this action. The subpoena does not require testimony, does not command a personal appearance, and expressly excludes records concerning any Arkansas state-court summons or mailing.

A copy of the proposed subpoena and Attachment A is served with this notice. Plaintiff will not serve the subpoena on Corporation Service Company until the Rule 45(a)(4) notice requirement has been satisfied.

Date: 7/22/26

Respectfully submitted,

Bradley Burchfield

Bradley Burchfield, Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

# EXHIBIT A

July 22 notice and clerk-issued AO 88B packet
Source page 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

**BRADLEY BURCHFIELD**
**Plaintiff,**

**Civil Action No.**
**4:26-cv-00611-DPM**

**v.**

**ALIBABA GROUP HOLDING LIMITED, et al.**
**Defendants.**

## CERTIFICATE OF SERVICE

**I certify that on July 22, 2026, before service of the subpoena on Corporation Service Company, I served a copy of the Notice of Intent to Serve Nonparty Document Subpoena, the proposed subpoena, and Attachment A on each named party in this action by U.S. Mail at the address stated below:**

| Party | Address Used | Method |
|---|---|---|
| Alibaba Group Holding Limited | c/o Corporation Service Company<br>19 West 44th Street, Suite 200<br>New York, NY 10036 | U.S. Mail |
| Alibaba.com Singapore E-Commerce Pte. Limited<br>*a/k/a Alibaba.com Singapore E-Commerce Private Limited* | 51 Bras Basah Road, #01-21, Lazada One<br>Singapore 189554 | U.S. Mail |
| Alibaba.com U.S. LLC | c/o Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808 | U.S. Mail |
| Alibaba.com U.S. e-Commerce Corp.<br>*a/k/a Alibaba.com US E-Commerce Corp.* | c/o Incorporating Services, Ltd.<br>7801 Folsom Blvd., Suite 202<br>Sacramento, CA 95826 | U.S. Mail |
| Alibaba Group (U.S.) Inc. | c/o Incorporating Services, Ltd.<br>3500 S. Dupont Hwy.<br>Dover, DE 19901 | U.S. Mail |
| AliExpress E-Commerce One Pte. Ltd. | c/o Alibaba Group Holding Ltd., Legal Department<br>26/F Tower One, Times Square<br>1 Matheson Street, Causeway Bay, Hong Kong | U.S. Mail |
| AUS Merchant Services, Inc.<br>*f/k/a Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.* | c/o The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801 | U.S. Mail |
| Zisheng New Materials (Shandong) Co., Ltd. | Room A2-907, Xinyuanxin Center<br>Huaxin Road, Jinan, Shandong, China | U.S. Mail |
| Zhisheng New Materials (Shandong) Co., Ltd. | 400 S. El Camino Real<br>San Mateo, CA 94402 | U.S. Mail |
| Shenzhen Bloom Tech Co., Ltd. | 400 S. El Camino Real<br>San Mateo, CA 94402 | U.S. Mail |

Bradley Burchfield
Date: 7/22/26

*Unidentified Doe defendants are not listed because no mailing address has been identified.*

# EXHIBIT A

July 22 notice and clerk-issued AO 88B packet
Source page 3

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

## UNITED STATES DISTRICT COURT
for the
Eastern District of Arkansas

Bradley Burchfield
*Plaintiff*
v.
Alibaba Group Holding Limited, et al.
*Defendant*

Civil Action No. 4:26-cv-00611-DPM

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: CORPORATION SERVICE COMPANY, through its Custodian of Records
300 S. Spring St. Suite 900
Little Rock, AR 72201

*(Name of person to whom this subpoena is directed)*

☒ ***Production:*** **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The documents and electronically stored information described in "Attachment A", incorporated into this subpoena. This Subpoena concerns only CSC's receipt, processing and rejection of federal process in Civil Action No: 4:26-cv-00611-DPM and CSC Transmittal No. 34483454. No Arkansas State-Court service records are requested.

| Place: 300 S. Spring St. Suite 900<br>Little Rock, AR 72201<br>Electronic production permitted to:<br>burchfieldbradley123@gmail.com | Date and Time:<br>Thirty (30) days after service, but not earlier than September 1, 2026 at 5:00 pm Central time. |
|---|---|

☐ ***Inspection of Premises:*** **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 7/22/26

TAMMY H. DOWNS
CLERK OF COURT

[signature]
*Signature of Clerk or Deputy Clerk*

OR

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Bradley Burchfield
Pro Se, representing Plaintiff, who issues or requests this subpoena, are:
5420 Kavanaugh Blvd. #7927, Little Rock, AR 72217; 479-223-0038
Email: burchfieldbradley123@gmail.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT A

July 22 notice and clerk-issued AO 88B packet
Source page 4

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**
***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ______________
______________________________________________________________
______________________________ on *(date)* ______________ ; or

☐ I returned the subpoena unexecuted because: ______________________________
______________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ______________ .

My fees are $ __________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

# EXHIBIT A

July 22 notice and clerk-issued AO 88B packet
Source page 5

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

July 22 notice and clerk-issued AO 88B packet
Source page 6

## ATTACHMENT A

### DOCUMENTS AND ELECTRONICALLY STORED INFORMATION TO BE PRODUCED

*Burchfield v. Alibaba Group Holding Limited, et al.* | *Case No. 4:26-cv-00611-DPM*

**Scope limitation.** This subpoena is limited to CSC's receipt, intake, coding, processing, rejection, retention, return, and forwarding of the federal summons and First Amended Complaint directed to Alibaba Group Holding Limited in the above-captioned federal action, including CSC Transmittal No. 34483454 and the July 9, 2026 Rejection of Service of Process. It does not request records concerning any Arkansas state-court summons or mailing.

### DEFINITIONS

"CSC" means Corporation Service Company and the departments, offices, employees, agents, databases, and service-of-process systems reasonably involved in the federal service attempt described above.

"Federal Process" means the federal summons, First Amended Complaint, envelope, certified-mail materials, and any accompanying papers received in connection with Civil Action No. 4:26-cv-00611-DPM.

"Transmittal" means CSC Transmittal No. 34483454 and the related July 9, 2026 Rejection of Service of Process.

"Document" includes writings, records, forms, images, scans, emails, messages, databases, logs, audit trails, metadata, and other electronically stored information within CSC's possession, custody, or control.

"Communication" means any transmission of information by email, letter, message, ticket, note, telephone memorandum, or other medium.

### INSTRUCTIONS

1. Search the centralized or other reasonably accessible CSC systems using Transmittal No. 34483454, the party name Alibaba Group Holding Limited, the case number, and the July 9, 2026 rejection date.
2. Produce documents as kept in the ordinary course of business or organize and label them to correspond to the numbered requests below.
3. Produce searchable PDF files for documents and native or reasonably usable format for logs, spreadsheets, database exports, and other structured data, preserving available date, sender, recipient, and audit metadata.
4. Electronic production is permitted. No personal appearance is required.
5. CSC may redact unrelated customer information and may mark responsive material confidential. If any responsive material is withheld based on privilege or protection, provide a privilege log sufficient to assess the claim.
6. If a request can be answered by producing documents sufficient to establish the requested fact, CSC need not produce duplicative versions of the same information.

### DOCUMENT REQUESTS

REQUEST NO. 1: The complete CSC file for Transmittal No. 34483454, including the Federal Process as received; all scans or images; the envelope and mailing label; certified-mail and tracking information; intake records; internal notes; routing entries; status history; audit trail; rejection record; and records showing what CSC retained, returned, destroyed, or forwarded.

REQUEST NO. 2: Documents showing the exact rejection reason or reasons selected or applied to the Transmittal, including all reason codes, database fields, decision entries, checkboxes, notes, and documents relied upon. If more than one reason was considered, identify each reason and the final operative reason.

REQUEST NO. 3: Documents sufficient to identify each CSC employee, contractor, office, team, or automated system that received, opened, scanned, reviewed, coded, routed, approved, generated, mailed, or otherwise processed the Transmittal, including each person's title or function and the date and time of the act.

REQUEST NO. 4: Documents sufficient to explain why the rejection form identifies "Alibaba Group Holding Limited" as the "Party Served" but identifies the "Title of Action" as "Bradley Burchfield vs. Alibaba.com Singapore E-Commerce Private Limited," including the source of each entry, whether either entry was manually entered or system-generated, and whether the title entry affected the rejection decision.

# EXHIBIT A

July 22 notice and clerk-issued AO 88B packet
Source page 7

## ATTACHMENT A - DOCUMENT REQUESTS (CONTINUED)

**REQUEST NO. 5:** All nonprivileged communications between CSC and Alibaba Group Holding Limited, any Alibaba affiliate, or any representative or counsel for either concerning the Federal Process, Transmittal No. 34483454, the rejection decision, or the return or forwarding of the Federal Process.

**REQUEST NO. 6:** Documents sufficient to show whether CSC was appointed or authorized, as of July 9, 2026, to receive, accept, transmit, or forward service of process for Alibaba Group Holding Limited in New York, including the effective dates and scope of any appointment and any limitation based on the type of action, court, claim, statute, or method of service. CSC may produce an excerpt, designation record, or other document sufficient to establish the relevant authority and limitations rather than an entire unrelated commercial agreement.

**REQUEST NO. 7:** Documents sufficient to show the source, date, and content of the records CSC consulted when it concluded that it was not the registered or authorized agent for Alibaba Group Holding Limited or that the entity was inactive, had resigned, withdrawn, surrendered, merged, dissolved, or been revoked, including any Secretary of State or other governmental records consulted.

**REQUEST NO. 8:** Documents sufficient to show the CSC policies or procedures in effect on July 9, 2026 that governed intake and rejection of certified-mail service directed to a foreign entity at CSC's New York service-of-process office, including the procedure for selecting the party served, title of action, jurisdiction served, rejection reason, and return-to-sender disposition.

**REQUEST NO. 9:** Documents showing when, where, and by what method CSC sent the rejection notice and returned or disposed of the Federal Process, including mailing, delivery, tracking, chain-of-custody, scan, or destruction records.

**REQUEST NO. 10:** A declaration or certification from a qualified CSC custodian under 28 U.S.C. § 1746 sufficient to authenticate the produced records as records of a regularly conducted activity under Federal Rules of Evidence 803(6) and 902(11), or, alternatively, the name, title, office address, telephone number, and email address of the custodian who can authenticate the records.

Production contact: Bradley Burchfield, burchfieldbradley123@gmail.com, 479-223-0038. Electronic production may be arranged by secure link, encrypted email, or other mutually agreeable method.

# EXHIBIT A

## July 22 notice and clerk-issued AO 88B packet
## Source page 8

### FEDERAL RULE OF CIVIL PROCEDURE 45
### REQUIRED PROVISIONS

*Rule 45(c), (d), (e), and (g)*

**Rule 45(c) - Place of Compliance**

(1) For a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

(2) For Other Discovery. A subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and (B) inspection of premises at the premises to be inspected.

**Rule 45(d) - Protecting a Person Subject to a Subpoena; Enforcement**

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction - which may include lost earnings and reasonable attorney's fees - on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises - or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the serving party may move the court for the district where compliance is required for an order compelling production or inspection, and any order must protect a nonparty from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that fails to allow a reasonable time to comply, requires compliance beyond Rule 45(c)'s geographical limits, requires disclosure of privileged or other protected matter when no exception or waiver applies, or subjects a person to undue burden. The court may also quash or modify a subpoena that requires disclosure of trade secrets or other confidential commercial information, or certain unretained-expert information, and may impose appropriate conditions instead.

# EXHIBIT A

July 22 notice and clerk-issued AO 88B packet
Source page 9

## FEDERAL RULE OF CIVIL PROCEDURE 45
## REQUIRED PROVISIONS (CONTINUED)

**Rule 45(e) - Duties in Responding to a Subpoena**

(1) Producing Documents or Electronically Stored Information.

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources identified as not reasonably accessible because of undue burden or cost. On a motion to compel or for protective order, the responding person must show the inaccessibility; the court may nonetheless order discovery for good cause and may specify conditions.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim of privilege or trial-preparation protection must expressly make the claim and describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing privileged or protected information, will enable the parties to assess the claim.

(B) Information Produced. If information produced is subject to a claim of privilege or protection, the person making the claim may notify any party that received the information. After notification, the receiving party must promptly return, sequester, or destroy the specified information and must not use or disclose it until the claim is resolved; the receiving party may promptly present the information under seal to the court for the district where compliance is required.

**Rule 45(g) - Contempt**

The court for the district where compliance is required - and also, after a motion is transferred, the issuing court - may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# EXHIBIT B

Signed return for service on CSC on July 27
Source page 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* CSC - Corporation Service Company
on *(date)* 7/27/26 .

☐ I served the subpoena by delivering a copy to the named person as follows: Jeff Johnson Authorized Agent on *(date)* 7/27/26 ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ .

My fees are $ 65 for travel and $ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 7/27/26

*Server's signature*

Allison Douglas Process Server
*Printed name and title*

22 Baltimore St. LR AR 72206
*Server's address*

Additional information regarding attempted service, etc.:

# EXHIBIT C

July 22 and August 10–11 subpoena correspondence
Source page 1

Gmail  **Burchfield Bradley <burchfieldbradley123@gmail.com>**

---

## Case No. 4/26-cv-00611-DPM

**3 messages**

---

**Burchfield Bradley <burchfieldbradley123@gmail.com>**  **Wed, Jul 22, 2026 at 4:49 PM**
To: robert.liu@balancelawfirm.com

Please see attached. Have a nice day.

Bradley Burchfield
Burchfield Sales & Consulting LLC
479-223-0038
burchfieldbradley123@gmail.com
burchfieldbradley123@icloud.com
ID#2503103532

---

NON PARTY DOCUMENT SUBPOENA.pdf
10455K

---

**B. Robert Liu, Esq. <robert.liu@balancelawfirm.com>**  **Mon, Aug 10, 2026 at 1:43 PM**
To: Burchfield Bradley <burchfieldbradley123@gmail.com>
Cc: Brittany Webb <bwebb@mcdanielwolff.com>, Bart Calhoun <bart@mcdanielwolff.com>

Mr. Burchfield,

Please see Defendant Alibaba Group Holding Limited's letter opposing the subpoena in the attachment.

Thank you and all the best,

B. Robert Liu, Esq.
Balance Law Firm
One World Trade Ctr, Ste 8500
New York, NY 10007
balancelawfirm.com
(212) 741-8080
(631) 490-4465 fax

CFA Institute CFA CHARTERHOLDER  SuperLawyers.com

[Quoted text hidden]

---

**2 attachments**

NON PARTY DOCUMENT SUBPOENA.pdf
10455K

Letter Objecting to Subpoena.pdf
315K

---

**Burchfield Bradley <burchfieldbradley123@gmail.com>**  **Tue, Aug 11, 2026 at 8:17 AM**
To: "B. Robert Liu, Esq." <robert.liu@balancelawfirm.com>
Cc: Brittany Webb <bwebb@mcdanielwolff.com>, Bart Calhoun <bart@mcdanielwolff.com>

# EXHIBIT C

## July 22 and August 10–11 subpoena correspondence
Source page 2

Mr. Liu:

For clarity of the record, your August 10 letter states that you are writing on behalf of Alibaba Group Holding Limited, states that "AGHL hereby objects," and is signed as counsel for AGHL.

Please confirm:

1. Whether you also represent Corporation Service Company in connection with the subpoena served on CSC on July 27, 2026; and
2. Whether your August 10 letter was intended to constitute a written objection served by CSC, as the person commanded, under Federal Rule of Civil Procedure 45(d)(2)(B), or instead an objection asserted solely by AGHL.

This request for clarification does not extend any deadline or waive any right.

Sincerely,

Bradley Burchfield
479-223-0038
burchfieldbradley123@gmail.com
burchfieldbradley123@icloud.com
ID#2503103532

[Quoted text hidden]

# EXHIBIT D

July 29 through August 6 service proposal email thread
Source page 1

Gmail **Burchfield Bradley <burchfieldbradley123@gmail.com>**

## Proposed Agreement re Service-of-Process Issue Involving AGHL

**4 messages**

---

**B. Robert Liu, Esq. <robert.liu@balancelawfirm.com>** **Wed, Jul 29, 2026 at 4:48 PM**
To: burchfieldbradley123@gmail.com

Mr. Burchfield,

I'm writing on behalf of Alibaba Group Holding Limited ("AGHL"). To simplify and narrow the issues in your pending litigation against AGHL (and other defendants), we propose the agreement set forth below regarding the service-of-process issue involving AGHL.

If you agree to the terms set forth in the next paragraph, AGHL is prepared to accept -- and not contest -- service of process in your federal court lawsuit (U.S. District Court for the Eastern District of Arkansas, Case No. 4:26-cv-00611-DPM) and in your state court lawsuit (Circuit Court of Pulaski County, Arkansas, Case No. 60CV-26-8633). Those concessions by AGHL would make unnecessary and render moot certain discovery and other relief you seek regarding that service-of-process issue.

In return for the concessions described in the immediately preceding paragraph, you will immediately (by this Friday, July 31, 2026): (a) withdraw your subpoena directed to Corporation Service Company ("CSC"); and (b) withdraw your motion for leave to serve AGHL by court-ordered alternative service (Case No. 4:26-cv-00611-DPM, Docket No. 28). You also agree not to seek any discovery in the future from AGHL, CSC, or any other person or entity regarding the relationship between AGHL and CSC or any other issues related to your efforts to effect service of process on AGHL by serving CSC.

Please get back to me promptly regarding whether you accept the proposed agreement outlined above.

This proposed agreement is limited to your pending litigation against AGHL. Nothing in this proposed agreement should be construed as a waiver by AGHL or any other concession by AGHL in any other lawsuit involving any actual or attempted service of process on AGHL.

B. Robert Liu, Esq.
Balance Law Firm
One World Trade Ctr, Ste 8500
New York, NY 10007
balancelawfirm.com
(212) 741-8080
(631) 490-4465 fax

---

**Burchfield Bradley <burchfieldbradley123@gmail.com>** **Thu, Jul 30, 2026 at 5:04 PM**
To: "B. Robert Liu, Esq." <robert.liu@balancelawfirm.com>

Mr. Liu,

I acknowledge the concessions you have offered. However, the subpoena was personally served by a process server on July 27, 2026, upon Jeff Johnson, the authorized agent at that location. Based on that service date, my understanding is that CSC has until August 10, 2026, to serve any written objections, and production by September 11, 2026.

I may also ask the respective clerks to reissue the summonses and pursue service on the Cayman Islands registered agent through the applicable procedures, as I have done with the other foreign defendants. In addition, I received the return receipt today confirming CSC's receipt of the federal amended complaint.

In an effort to resolve these matters globally, I propose the attached agreement. If you and counsel for the other defendants are willing to approve it in principle, I am open to considering reasonable revisions proposed by defense counsel. Once the parties reach a mutually acceptable form, it can be presented to the Arkansas circuit court and submitted to the appropriate State of Arkansas officials for their independent review, approval, and signatures as required.

# EXHIBIT D

## July 29 through August 6 service proposal email thread
## Source page 2

Upon the agreement becoming effective and its closing conditions being satisfied, I would dismiss the pending actions and withdraw the discovery requests and subpoenas within my control. I would also agree not to bring future claims against your clients arising from the conduct covered and released by the agreement. That release would not extend to a breach of the agreement or to materially new conduct occurring after its effective date that independently warrants court action.

Please review the attached proposal and let me know whether your clients are willing to use it as the basis for further discussions.

Hope this proposal does not come off as me being a greedy ex-convict.

Sincerely,

Bradley Burchfield
479-223-0038
burchfieldbradley123@gmail.com
burchfieldbradley123@icloud.com
ID#2503103532

[Quoted text hidden]

---

2 attachments

Proposed_Arkansas_State_Led_Global_Settlement_NPA.docx
88K

IMG_0485.PDF
300K

---

B. Robert Liu, Esq. <robert.liu@balancelawfirm.com> Thu, Aug 6, 2026 at 3:56 PM
To: Burchfield Bradley <burchfieldbradley123@gmail.com>

Mr. Burchfield,

I have presented your settlement offer to my clients. We respectfully decline this settlement offer.

Thank you and all the best,

B. Robert Liu, Esq.
Balance Law Firm
One World Trade Ctr, Ste 8500
New York, NY 10007
balancelawfirm.com
(212) 741-8080
(631) 490-4465 fax

[Quoted text hidden]

---

Burchfield Bradley <burchfieldbradley123@gmail.com> Thu, Aug 6, 2026 at 4:01 PM
To: "B. Robert Liu, Esq." <robert.liu@balancelawfirm.com>

Mr. Liu,

I acknowledge receipt of your email regarding your clients' position.

Sincerely,
Bradley Burchfield

**EXHIBIT D**

**July 29 through August 6 service proposal email thread**
**Source page 3**

**Hope credit**
**[Quoted text hidden]**

# EXHIBIT E

CSC rejection notice for Transmittal 34483454
Source page 10

null
Transmittal Number: 34483454

CSC

## Rejection of Service of Process

**Return to Sender Information:**

Bradley Burchfield null
Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217

| | |
|---|---|
| Date: | 07/09/2026 |
| Party Served: | Alibaba Group Holding Limited |
| Jurisdiction Served: | NY |
| Method Served: | Certified Mail |
| Title of Action: | Bradley Burchfield vs. Alibaba.com Singapore E-Commerce Private Limited |
| Case/Reference No: | 4:26CV611-DPM |

The service of process received for the party served, as listed above, cannot be forwarded to the intended party for one of the reasons listed below:

- **Agent** - According to our records and the records at the Secretary of State, or other appropriate state agency, we are not the registered agent for the company you are trying to serve or the status of the entity is no longer active.
- **Name** - Because two or more companies can have very similar names, the name of the company to which service of process is directed MUST BE IDENTICAL to the company name on file with the Secretary of State or other appropriate state agency.
- **Resignation** - CSC has resigned as the registered agent for the company being served.

Or the entity served is inactive at the state for one of the reasons listed below:

- Withdrawn
- Surrendered
- Merged Out of Existence
- Dissolved
- Revoked

It is your responsibility to verify this information with the Secretary of State or other appropriate state agency.

Our customer records are confidential. We do not release any information related to our customers, agent representation, or service of process received. Please contact the Secretary of State or other appropriate agency for more information.

For an electronic copy of the identified service of process, send your request by e-mail to sop@cscglobal.com. Please include the transmittal number located in the upper right-hand corner of this letter..

251 Little Falls Drive, Wilmington, Delaware 19808-1674
(888) 690-2882 | sop@cscglobal.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS | CENTRAL DIVISION
Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.
No. 4:26-cv-00611-DPM-JJV

# EXHIBIT B

Service and response chronology

ECF 13, ECF 16, and ECF 37 are reproduced in full. ECF 17 is reproduced only at pages 1 and 20–21, the identified passages concerning the pleading addressed and CSC authority. The excerpts are expressly identified and retain their original page stamps.

Proposed appendix source pages 20–30.

RECEIVED US DISTRICT COURT EASTERN DISTRICT ARKANSAS
2026 JUL -8 A 10:00
TAMMY H. DOWNS

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUL 08 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, ET AL;

Defendants.

Case No. 4:26-cv-00611-DPM

JURY TRIAL DEMANDED

AFFIDAVIT OF SERVICE

COMES NOW THE PLAINTIFF, for an affidavit of service for the original complaint on Alibaba Group Holding Limited by and through their registered agent. Attached hereto this affidavit is the green card returned by the United States Postal Service.

Respectfully Submitted,
Bradley Burchfield 7/6/26

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
479-223-0038
burchfieldbradley123@gmail.com

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Alibaba Group Holding Limited
~~Corp.~~ CSC
19 W. 44th St. Suite 200
New York, NY 10036

9590 9402 9891 5335 0166 60

2. Article Number (Transfer from service label)

9589 0710 5270 4101 5802 60

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery
6/29

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
sured Mail
sured Mail Restricted Delivery
ver $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

USPS TRACKING #

9590 9402 9891 5335 0166 60

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217

-703399

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| BRADLEY BURCHFIELD, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATED LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM |

**DEFENDANT ALIBABA GROUP HOLDING LIMITED'S AND
DEFENDANT ALIBABA.COM US E-COMMERCE CORP.'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1), Rule 12(b)(2), Rule 12(b)(5), and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Alibaba Group Holding Limited ("AGHL") and Alibaba.com US E-Commerce Corp. (collectively, the "Moving Defendants") file this motion to dismiss. For the reasons stated in more detail in the accompanying Brief in Support, the Court should: (a) dismiss this lawsuit for lack of subject-matter jurisdiction; (b) dismiss all claims asserted against the Moving Defendants for lack of personal jurisdiction; or (c) dismiss the claims asserted against AGHL for insufficient service of process. In the alternative, if the Court declines to issue those dismissal rulings based on lack of subject-matter jurisdiction or lack of personal jurisdiction, the Court should dismiss the Moving Defendants from this lawsuit by dismissing the RICO claims asserted against them for failure to state a claim upon which relief can be granted and declining to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

Dated: July 20, 2026

Respectfully submitted,

BALANCE LAW FIRM

By: B. Robert Liu

B. Robert Liu, Esq. (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I electronically filed the foregoing Moving Defendants' Motion to Dismiss, Memorandum in Support, Declarations, and Exhibits with the Clerk of the Court using the CM/ECF system. I further certify that because Plaintiff is proceeding pro se and is not a registered CM/ECF participant, I served a true and correct copy of the aforementioned documents via United States First-Class Mail, postage prepaid, addressed to Plaintiff as follows:

Bradley Burchfield

5420 Kavanaugh Blvd #7927

Little Rock, AR 72217

Dated: July 20, 2026

Respectfully submitted,

BALANCE LAW FIRM

By: *B. Robert Liu*

B. Robert Liu, Esq. (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| BRADLEY BURCHFIELD, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATED LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM |

**BRIEF IN SUPPORT OF DEFENDANT ALIBABA GROUP HOLDING LIMITED'S AND DEFENDANT ALIBABA.COM US E-COMMERCE CORP.'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1), Rule 12(b)(2), Rule 12(b)(5), and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Alibaba Group Holding Limited ("AGHL") and Alibaba.com US E-Commerce Corp. (collectively, the "Moving Defendants") respond to Plaintiff's Complaint (ECF No. 1) by seeking dismissal of this lawsuit or, in the alternative, dismissal of all claims asserted against the Moving Defendants.[1]

**PRELIMARY STATEMENT**

This is a frivolous lawsuit by a *pro se* plaintiff—Bradley Burchfield—who is an ex-convict and frequent filer of lawsuits against various Alibaba defendants that repeatedly have been dismissed. Although Plaintiff has a pending small claims court lawsuit (seeking $5,000 in damages) involving the same 2021 transaction at issue in this case against some of the same defendants that have been sued in this case (including the Moving Defendants), he is not willing to litigate only that case. Never content with filing just one lawsuit, Plaintiff has piled on by filing

[1] That Complaint was served, or purportedly served, on the Moving Defendants. Although the docket shows that Plaintiff filed an Amended Complaint, that pleading has not been served on the Moving Defendants.

In sum, Plaintiff cannot satisfy his burden of establishing that Alibaba US E-Commerce Corp. engaged in any suit-related conduct that created a substantial connection with Arkansas, so this Court does not have specific personal jurisdiction over Alibaba US E-Commerce Corp.

### B. Based on Fourteenth Amendment Due Process Principles, this Court does not Have Personal Jurisdiction over the Moving Defendants as to Plaintiff's State Law Claims.

A Fourteenth Amendment due process analysis leads to the conclusion that Plaintiff cannot satisfy his burden of establishing that this Court has personal jurisdiction over the state law claims asserted against the Moving Defendants.

For the reasons set forth above and in the Li Declaration and the Zhao Declaration, AGHL and Alibaba US E-Commerce Corp. are not at home in Arkansas within the meaning of the Supreme Court's *Daimler* ruling. Therefore, this Court does not have general personal jurisdiction over the Moving Defendants.

Likewise, for the reasons set forth above and in the Li Declaration and the Zhao Declaration, AGHL and Alibaba US E-Commerce Corp. did not engage in any suit-related conduct that created a substantial connection with Arkansas. Thus, this Court does not have specific personal jurisdiction over the Moving Defendants.

## IV. In the Alternative, The Court Should Dismiss The Claims Asserted Against AGHL For Insufficient Service Of Process.

Before a federal court is allowed to exercise personal jurisdiction over a defendant, the requirement of service of summons must be satisfied. *Omni Capital Int'l, Ltd. v Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987), *superseded in part by statute on other grounds as stated in Cox v. CoinMarketCap OPCO, LLC*, 112 F.4th 822, 832 (9th Cir. 2024). In other words, "[i]f a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Printed Media Servs. Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). As the Supreme Court

explained: "[T]here must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Omni Capital Int'l,* 484 U.S. at 104. A plaintiff has the burden of proving proper service once it is contested. *See, e.g., Brinkley v. City of Helena–West Helena, Arkansas*, No. 2:11-cv-00207-SWW, 2012 WL 5207595, at *3 (E.D. Ark. Oct. 22, 2012) (citing cases).

Here, Plaintiff attempted to serve AGHL by sending the Complaint and Summons to Corporation Service Company ("CSC") in New York, New York, but that is not proper service of process on AGHL for this lawsuit. Although CSC serves as AGHL's registered agent for service of process in the United States of America, CSC's authorization is strictly limited. Li Declaration ¶ 23. CSC does not have the legal authority accept service of general civil lawsuits against AGHL. *Id.* Therefore, Plaintiff is not allowed to effect service of process on AGHL by sending service-of-process papers to CSC.

When ruling on similar service-of-process issues, federal courts repeatedly have acknowledged and applied limitations that restricted the scope of a registered agent's authority to accept service of process. *See, e.g., Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514-15 (D.C. Cir. 2002), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F. 3d 883 (D.C. Cir. 2021); *King v. CAE Inc.*, No. CV 12-00441-PHX-FJM, 2012 WL 3127437 (D. Ariz. July 16, 2012); *Stormhale, Inc. v. Baidu.com, Inc.*, 675 F. Supp. 2d 373, 375 (S.D.N.Y. 2009). This Court should do so as well by holding that Plaintiff's purported service of process on CSC was not within the scope of CSC's limited authority and dismissing all claims asserted against AGHL because Plaintiff failed to effect service of process on AGHL.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM |

**FOUR DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pursuant to Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(6) of the Federal Rules of Civil Procedure, four defendants—Alibaba Group Holding Limited ("AGHL"), Alibaba.com US E-Commerce Corp., Alibaba.com U.S. LLC, and Defendant AUS Merchant Services, Inc. ("AUS") (collectively, the "Moving Defendants")—file this motion to dismiss Plaintiff's First Amended Complaint. For the reasons stated in more detail in the accompanying Brief in Support, the Court should: (a) dismiss this lawsuit for lack of subject-matter jurisdiction; or (b) dismiss all claims asserted against the Moving Defendants for lack of personal jurisdiction. In the alternative, if the Court declines to issue those dismissal rulings, the Court should dismiss the Moving Defendants from this lawsuit by dismissing the RICO claims asserted against them for failure to state a claim upon which relief can be granted and declining to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

Dated: August 5, 2026

Respectfully submitted,

McDANIEL WOLFF, PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
McDaniel Wolff, PLLC
1307 West 4th Street
Little Rock, AR 72201
(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

and

BALANCE LAW FIRM

B. Robert Liu (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited, Alibaba.com US E-Commerce Corp., Alibaba.com U.S. LLC, and AUS Merchant Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2026, I electronically filed the foregoing Motion to Dismiss First Amended Complaint, Brief in Support, Declarations, and other Exhibits with the Clerk of the Court using the CM/ECF system. I further certify that, because Plaintiff is proceeding *pro se* and is not a registered CM/ECF participant, I served a true and correct copy of the aforementioned documents via United States First-Class Mail, postage prepaid, addressed to Plaintiff as follows:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217

Dated: August 5, 2026

/s/ Brittany D. Webb
Brittany D. Webb, Ark. Bar No. 2023139

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS | CENTRAL DIVISION
Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.
No. 4:26-cv-00611-DPM-JJV

# EXHIBIT C

Orders governing evidence and discovery

Complete reproductions of ECF 10 and ECF 64. These orders govern the requested evidence submission, early discovery, withdrawal of AGHL's service objection, and the separate ruling involving Alibaba Group (U.S.) Inc.

Proposed appendix source pages 32–36.

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**BRADLEY BURCHFIELD** **PLAINTIFF**

**v.** **No. 4:26-cv-611-DPM**

**ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED; ALIBABA.COM US E COMMERCE CORP.; ALIBABA GROUP HOLDING LIMITED; ZICHANG NEW MATERIALS (SHANDONG) CO., LTD.; ZHISHANG NEW MATERIALS (SHANDONG) CO., LTD.; SHAANXI BLOOM TECH CO., LTD.; John Doe Alibaba.Com Owner/Operator/Parent/Affiliate/Alter-ego Entities 1-10; and John Doe Seller Account Operators, Sales Agents, Payment Beneficiaries, and Co-Conspirators 1-20** **DEFENDANTS**

**INITIAL ORDER FOR *PRO SE* PLAINTIFFS**

You are proceeding in this federal lawsuit without a lawyer's help. Even though you're not a lawyer, there are rules and procedures you must follow in your lawsuit.

**1. Follow All Court Rules.** You must comply with the Federal Rules of Civil Procedure and the Local Rules for the Eastern District of Arkansas. These rules are available online at these websites:

- http://www.uscourts.gov/rules-policies/current-rules-practice-procedure

- http://www.are.uscourts.gov/court-info/local-rules-and-orders/local-rules

In particular, Local Rule 5.5(c)(2) explains requirements for plaintiffs who aren't represented by a lawyer:

- If your address changes, you must promptly notify the Clerk and the other parties in the case. If you don't keep the Court informed about your current address, your lawsuit can be dismissed without prejudice.
- You must monitor the progress of your case and prosecute it diligently.
- You must sign all papers filed with the Court; and each paper you file must include your current address.
- If the Court issues an Order directing you to do something by a certain date, and you don't, then your case may be dismissed without prejudice.

2. **No Right to Appointed Counsel.** This is a civil case. Unlike in a criminal case, you have no right to an appointed lawyer.

3. **Do Not File Your Discovery Requests.** Discovery requests—like interrogatories and requests for documents—should not be filed with the Court. Instead, discovery requests should be sent to the Defendant's lawyer (or directly to the Defendant if he or she isn't represented by a lawyer). But don't send any discovery requests to a

Defendant until after they've been served and you and they have discussed your claims, the option of settlement, and a discovery plan.

**4. Only Send Documents to the Court in Three Situations.** You may send documents or other evidence to the Court only if (a) they are attached to a motion for summary judgment, (b) they are attached to your response to a motion for summary judgment, or (c) the Court orders you to send documents or other evidence.

**5. Provide a Witness List Before Trial.** If your case goes to trial, you'll be asked for a witness list as your trial date approaches.

So Ordered.

D.P. Marshall Jr.
United States District Judge

2 July 2026

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

BRADLEY BURCHFIELD PLAINTIFF

v. 4:26-cv-00611-DPM-JJV

ALIBABA.COM SINGAPORE
E-COMMERCE PTE LIMITED, *et al.* DEFENDANTS

**ORDER**

United States District Judge D.P. Marshall Jr. has referred this case to me to handle all pretrial matters. (Doc. No. 45.) The Court makes the following rulings on the pending motions.

1. Plaintiff Bradley Burchfield's Motion for Leave to Serve Defendant Alibaba Group Holding Limited by Court-Ordered Alternative Service Through Appearing Counsel (Doc. No. 28) is DENIED. Defendant Alibaba Group Holding Limited no longer contests service of process (Doc. No. 42 at 2), so an alternative means of service is not necessary.

2. Plaintiff's Renewed Motion for Leave to Take Limited Early Jurisdictional and Alter-Ego Discovery (Doc. No. 24) and Plaintiff's Motion Regarding Alter Ego and Piercing the Corporate Veil to Defer Final Determination and for Limited Discovery (Doc. No. 30) are DENIED. The Defendants who have been served have moved for dismissal on, among other grounds, lack of personal jurisdiction. (Doc. Nos. 37-38.) Their Motion is supported by detailed Declarations setting forth the relevant facts. (Doc. Nos. 38-7, 38-8, 38-9, 38-10.) Plaintiff's request to conduct discovery in order to "test those assertions" (Doc. No. 25 at 1) is based on speculation and conjecture – specifically, a Non-Prosecution Agreement entered into by some Defendants and the United States Attorney's Office in the District of Rhode Island, which seems to have no relevance to the claims in this case. Additionally, Plaintiff's proposed interrogatories

and requests for production of documents (Doc. Nos. 26-27) are extremely wide-ranging, getting into merits issues not appropriate for early jurisdictional discovery.

3. Plaintiff's Request for Clerk's Entry of Default against Defendant Alibaba Group (US) Inc. (Doc. No 41) is DENIED, and Defendant Alibaba Group (US) Inc.'s Motion for Extension of Time to File the Motion to Dismiss (Doc. No. 49) is GRANTED for good cause. The Declaration submitted in support of Defendant's Motion shows this Defendant's failure to timely respond was because of excusable neglect – specifically, the service-of-process papers were incorrectly routed, and counsel was not aware this Defendant had been served until Plaintiff requested a clerk's entry of default. (Doc. No. 50-2.) Defendant then promptly sought leave to file its motion to dismiss out of time, acting in good faith. Allowing it to do so would not prejudice Plaintiff, as the case is still in its early stages – some defendants having not been served yet – and the proposed motion to dismiss makes the same or similar arguments put forth by other defendants. *See* Fed. R. Civ. P. 6(b)(1)(B); *Union Pacific R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781 (8th Cir. 2001). The Clerk shall file Defendant Alibaba Group (US) Inc.'s Motion to Dismiss First Amended Complaint and the accompanying Brief in Support and Exhibit. (Doc. No. 50-1.)

4. Plaintiff's Motion to Require Corrected and Supplemental Rule 7.1 Disclosures (Doc. No. 62) is DENIED. Defendants' Corporate Disclosure Statements (Doc. Nos. 51-55) identify any parent corporations and any publicly held corporations owning ten percent or more of their stock, which is all that Rule 7.1(a)(1) requires.

IT IS SO ORDERED this 21st day of August 2026.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS | CENTRAL DIVISION
Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.
No. 4:26-cv-00611-DPM-JJV

# EXHIBIT D

Alibaba non prosecution agreement

The complete 29-page source PDF supplied by Plaintiff, including its cover, agreement, Statement of Facts, and attachments. No pages are omitted. Proposed use and evidentiary limitations are described in the supporting brief.

Proposed appendix source pages 38–66.

U.S. Department of
JUSTICE

The Department of Justice is posting this court document as a courtesy to the public. An official copy of this court document can be obtained (irrespective of any markings that may indicate that the document was filed under seal or otherwise marked as not available for public dissemination) on the Public Access to Court Electronic Records website at https://pacer.uscourts.gov. In some cases, the Department may have edited the document to redact personally identifiable information (PII) such as addresses, phone numbers, bank account numbers, or similar information, and to make the document accessible under Section 508 of the Rehabilitation Act of 1973, which requires federal agencies to make electronic information accessible to people with disabilities.

**United States Department of Justice**
*United States Attorney's Office*
*District of Rhode Island*

One Financial Plaza, 17th Floor
Providence, Rhode Island 02903

---

June 29, 2026

Samuel G. Williamson, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
2601 South Bayshore Dr, Ste 1550
Miami, FL 33133
***Counsel for Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., and Alibaba.com U.S. LLC***

**Re: Alibaba.com U.S. LLC et al. Non-Prosecution Agreement**

Dear Counsel:

The Government and Alibaba enter into this Non-Prosecution Agreement ("Agreement") for misdemeanor violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq*. The Government agrees not to prosecute Alibaba during the term of this Agreement or thereafter for any violation related to the conduct described in the Statement of Facts, attached hereto as **Attachment A**. The Parties agree to certain terms and obligations as set forth below.

**A. Definitions**

1. In this Agreement, the following terms shall have the meanings provided below. Capitalized terms used but not defined in this Section have the meanings given elsewhere in this Agreement.

a. **"Alibaba"** means Alibaba Group Holding Limited (an exempted company incorporated in the Cayman Islands with limited liability on June 28, 1999, the ADSs of which are listed on the New York Stock Exchange) and all of its subsidiaries and their officers, directors, employees, and agents acting within the scope of their employment and agency relationships with Alibaba Group Holding Limited, including Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., Alibaba Group (U.S.) Inc., and Alibaba.com U.S. LLC, and includes the Alibaba Platforms, as defined in this Section.

b. **"Alibaba Platforms"** mean ICBU and AliExpress, i.e., the business units that operate Alibaba's cross border international business-to-business (ICBU) which operates Alibaba.com and business-to-consumer (AliExpress) e-commerce platforms, respectively.

c. **"AliExpress"** means the business unit within Alibaba that operates the AliExpress cross-border international business-to-consumer e-commerce platform, including the legal entities that house this unit Alibaba.com Singapore E-Commerce Pte. Ltd. and AliExpress E-Commerce One Pte. Ltd.

d. **"Business Day"** means any day other than a Saturday, Sunday, or legal public holiday in the United States (as defined by 5 U.S.C. § 6103(a)).

e. **"Drug, Device, and Importation Laws"** mean the following statutes: (a) the FDCA (21 U.S.C. § 301 *et seq.*); (b) the Controlled Substances Act ("CSA") (21 U.S.C. § 801 *et seq.*); and (c) Smuggling (18 U.S.C. § 545).

f. **"Government"** means the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section.

g. **"ICBU"** means Alibaba's International Commerce Business Unit, which is the business unit within Alibaba that operates Alibaba.com, the international business-to-business platform, including the legal entities that house this unit, Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp.

h. **"Parties"** means the Government and Alibaba.

i. **"Subject Merchandise"** means drugs (as defined in 21 U.S.C. § 321(g)), devices (as defined in 21 U.S.C. § 321(h)), equipment used to manufacture counterfeit drugs (including tableting and encapsulating machines, punches, dies, plates, stones, and other things referenced in 21 U.S.C. §§ 331(i)(2) and 843(a)(5)-(7)), controlled substances (as defined in 21 U.S.C. § 802(6)), listed chemicals or chemical mixtures (as defined in 21 U.S.C. §§ 802(33) and (40)), anabolic steroids (as defined in 21 U.S.C. § 802(41)(A) and (C)), and other items regulated by the CSA (21 U.S.C. § 801 *et seq.*), the FDCA (21 U.S.C. § 301 *et seq.*), and any other product whose importation into the United States is prohibited under federal law and where such importation would constitute a felony.

**B. <u>Acceptance of Responsibility</u>**

2. The Alibaba Platforms admit, accept, and acknowledge that they are responsible under United States law for the acts of their officers, directors, employees, and agents as set forth in the Statement of Facts provided in **Attachment A** and incorporated by reference into this Agreement. Alibaba admits the facts described in **Attachment A** are true and accurate.

3. In any prosecution or proceeding against Alibaba, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the Government in its case-in-chief and rebuttal

case; (b) impeachment evidence offered by the Government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. Additionally, Alibaba shall not assert any claim that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines"), or any other federal rule.

C. **Term of the Agreement**

4. Alibaba's obligations under this Agreement shall have a term of three years from the date on which the Agreement is executed (the "Term"). Alibaba agrees, however, that in the event the Government determines, in its sole discretion, acting reasonably, that Alibaba has knowingly and materially violated any provision of this Agreement, or has failed to completely perform or fulfill its material obligations under this Agreement, an extension or extensions of the Term may be imposed by the Government, in its sole discretion, for up to a total aggregate additional time period of one year, without prejudice to the Government's rights to proceed as provided in the below breach provisions of this Agreement. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement for the Alibaba Platforms in **Attachment D** and any tolling periods for any applicable statutes of limitation, for an equivalent period. The Government will provide Alibaba with written notice specifying the alleged violation in reasonable detail no fewer than thirty (30) calendar days before any extension is imposed, and Alibaba will have thirty (30) calendar days following receipt of such written notice (the "**Extension Cure Period**") to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions the Alibaba Platforms have taken to address and remediate the situation, which explanation the Government shall consider in determining whether to extend the Term. The Government shall provide Alibaba with a written determination specifying the violation upon which the extension is based and the duration of the extension to be imposed.

D. **Relevant Considerations**

5. The Government enters into this Agreement based on the individual facts and circumstances of this case, including those presented by Alibaba. These facts and circumstances include, but are not limited to, the following:

a. The seriousness of the conduct described in the Statement of Facts, which involved advertisements and sales related to Subject Merchandise;

b. Alibaba's lack of voluntary disclosure credit based on their failure to timely and voluntarily disclose to the Government the conduct described in the Statement of Facts; The Alibaba Platforms' compliance failures that contributed to the offense conduct, including material compliance failures that occurred after the Alibaba Platforms implemented remedial measures;

c. Credit for the Alibaba's cooperation with the Government's investigation, which included:

i. investigating facts and obtaining information as requested by the Government, which allowed the Government to preserve and obtain evidence as part of their own independent investigation;

ii. at the Government's request, collecting, organizing, and producing voluminous documents in ways that did not implicate foreign data privacy laws;

iii. assisting in making employees available to be interviewed;

iv. creating and producing to the Government certain information from the databases of the Alibaba Platforms regarding relevant e-commerce sales of Subject Merchandise to U.S. customers in ways that did not implicate foreign data privacy laws;

v. making factual presentations to the Government on a wide variety of topics; and

vi. providing separate counsel to witnesses to facilitate the Government's investigation, where appropriate.

d. The Alibaba Platforms' good-faith efforts to implement and refine compliance measures designed to detect and prevent violations of the statutes, terminating business relationships with companies and persons known to have been involved in the conduct described in the Statement of Facts; terminating third-party sellers' abilities to use the Alibaba Platforms services to unlawfully advertise, sell, import or export, distribute, or smuggle Subject Merchandise; closing categories associated with high risk transactions; making investments in staffing and resources for its legal and compliance teams, including engaging third-party vendors to assist with daily monitoring; updating policies, procedures, and supervisory structures with an emphasis on preventing and detecting the unlawful advertisement, sale, import or export, distribution, and smuggling of Subject Merchandise; and expanding employee training;

e. The Alibaba Platforms' agreements to enhance their corporate compliance programs and internal controls by adopting the minimum elements of a corporate compliance program provided in **Attachment C**;

f. The Alibaba Platforms' agreement to continue to cooperate with the Government as described in Section E;

g. Alibaba's lack of prior criminal history;

h. Accordingly, after considering (a) through (g) above, the Government has determined that the appropriate resolution in this case is this Agreement with Alibaba, with a monetary penalty of $125,000,000 ("**Monetary Penalty**") for a

misdemeanor violation of the Food, Drugs, and Cosmetics Act and a civil forfeiture of $200,000,000 (**"Forfeiture Amount"**) assessed against Alibaba.

**E. <u>Cooperation Requirements</u>**

6. The Alibaba Platforms shall fully cooperate with the Government on any matter that relates to: (1) the conduct described in this Agreement and the Statement of Facts and any individual or entity referred to therein, as well as any other related conduct under investigation by the Government in connection with Subject Merchandise at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term; (2) the advertisement, sale, import, export, distribution, or smuggling of Subject Merchandise into the United States transacted through the Alibaba Platforms that facilitate the advertisement, sale, import, export, distribution, or smuggling of Subject Merchandise into the United States; and (3) possible violations of Drug, Device, and Importation Laws by third-party sellers and U.S.-based buyers who use the Alibaba Platforms or any other e-commerce platforms owned or controlled by Alibaba. The Alibaba Platforms' obligation to cooperate with the Government under this Section shall end on the date that the investigations and prosecutions of all such matters conclude or the date that the Term ends, whichever date is later.

7. The Alibaba Platforms' cooperation pursuant to this Section is subject to applicable law and regulations, including valid claims of federal attorney-client privilege and attorney work-product doctrine. If the Alibaba Platforms withhold information based on the assertion of any such law, regulation, or privilege, the entity shall provide the Government with a log that describes the withheld information and the foundation of the law, regulation or privilege within thirty (30) Business Days of making their determination to withhold the information; cooperation and disclosure obligations under this Section include, but are not limited to, the following:

a. Each Alibaba Platform shall designate one or more agents to accept and process the Government's requests for cooperation within fifteen (15) Business Days of signing this Agreement. Each Alibaba Platform shall accept the Government's requests for cooperation via email through one or more dedicated email addresses.

b. Within fifteen (15) Business Days of receiving a request for cooperation, the requested Alibaba Platform shall conduct a diligent search for, and inform the Government whether it has identified, responsive information. If the entity identifies responsive information, the entity shall provide the Government with an estimated timeframe within which it expects to produce the information. Unless otherwise agreed to by the Government, this timeframe shall not exceed sixty (60) calendar days from the date that the entity receives the Government's request.

c. The Alibaba Platforms shall report within thirty (30) calendar days to the Government any evidence or allegation of a violation of federal law in connection with Subject Merchandise that the Alibaba Platforms learns was committed by the Alibaba Platforms' users of their e-commerce services in the United States, including buyers and sellers.

d. The Alibaba Platforms shall provide complete, truthful, and accurate information to the Government.

e. In its sole discretion, the Government may share any information, testimony, documents, records, or other tangible evidence that the Alibaba Platforms provide to the Government with any federal, state, or foreign government authority.

**F. <u>Monetary Penalty</u>**

8. Alibaba agrees that the Monetary Penalty in the amount of one hundred and twenty-five million dollars ("$125,000,000" or "$125 million") is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Section D. Alibaba agrees to pay the Monetary Penalty of $125 million to the U.S. Treasury no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion.

9. Alibaba's payment of the Monetary Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Monetary Penalty is the maximum penalty that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher fine, although the Government agrees that under those circumstances, the Government will recommend to a court that the Monetary Penalty paid by Alibaba pursuant to this Agreement be applied toward any fine that a court might impose as part of its judgment against Alibaba. Alibaba acknowledges that such a recommendation will not be binding in any court.

10. Alibaba acknowledges that no U.S. tax deduction may be sought in connection with the payment of any part of the Monetary Penalty. Alibaba shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the Monetary Penalty amount that Alibaba pays pursuant to this Agreement.

**G. <u>Civil Forfeiture</u>**

11. Alibaba admits that money and/or property is subject to civil forfeiture because of third-party transactions on Alibaba Platforms that violated Drug, Device, and Importation Laws. Pursuant to Title 18, U.S. Code, Section 981(a)(1)(C), Alibaba consents to civil forfeiture in the Forfeiture Amount of two hundred million dollars ($200,000,000 or "$200 million"). Alibaba agrees that this Forfeiture Amount constitutes gross merchandise value of certain transactions conducted by third-party sellers on Alibaba Platforms in violation of Title 18, United States Code, Section 545.

12. Alibaba shall pay the Forfeiture Amount, plus any associated transfer fees, no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion. Alibaba hereby releases any and all claims that it may have to the Forfeiture Amount and agree that the forfeiture of such funds may be accomplished either administratively or judicially at the Government's election, and waive the requirements of any applicable laws, rules, or regulations governing the forfeiture of

assets, including those requiring notice of forfeiture. If the Government seeks to forfeit the Forfeiture Amount judicially, Alibaba waives all requirements pertaining to forfeiture set forth in Title 18, U.S. Code, Section 983, including the filing of a civil forfeiture complaint as to its Forfeiture Amount and notice of the same, and consents to entry of an order of forfeiture directed to such funds. If the Government seeks to forfeit the Forfeiture Amount administratively, Alibaba consents to the entry of a declaration of forfeiture and waive the requirements of Title 18, U.S. Code, Section 983 regarding notice of seizure in non-judicial forfeiture matters.

13. Alibaba agrees to sign any additional documents necessary to complete forfeiture of the Forfeiture Amount. Alibaba also agrees that they shall not file any petitions for remission, restoration, or any other assertion of ownership or request for return relating to the Forfeiture Amount, or any other action or motion seeking to collaterally attack the seizure, restraint, forfeiture, or conveyance of the Forfeiture Amount, nor shall it assist any others in filing any such claims, petitions, actions, or motions.

14. Alibaba's payment of the Forfeiture Amount is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Forfeiture Amount surrendered by Alibaba is the maximum forfeiture that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher criminal forfeiture amount or substitute money judgment in a criminal proceeding, although the Government agrees that under those circumstances, the Government will recommend to a court that the Forfeiture Amount paid by Alibaba pursuant to this Agreement be applied toward any criminal forfeiture or substitute money judgment that a court might impose as part of its judgment. Alibaba acknowledges that such a recommendation will not be binding on any court.

15. Alibaba agrees that they shall not claim, assert, or apply for, either directly or indirectly, any tax deduction, tax credit, or any other offset with regard to any U.S. federal, state, or local tax or taxable income in connection with the payment of any part of the Forfeiture Amount. Alibaba shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the Forfeiture Amount that Alibaba pays pursuant to the Agreement.

**H. <u>Conditional Release from Liability</u>**

16. Except as otherwise provided in this Agreement, the Government agrees that it will not bring any criminal or civil case against Alibaba relating to (i) any of the conduct described in the Statement of Facts of this Agreement, (ii) any of the information disclosed by Alibaba to the Government as part of this investigation prior to executing this Agreement, or (iii) any information known by the Government prior to the execution of this Agreement that relates to the conduct described in the Statement of Facts to this Agreement. However, the Government may use any information related to the conduct described in the Statement of Facts against Alibaba: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; or (c) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. Nothing herein shall preclude Alibaba from presenting this Agreement, and the Government's agreement herein, to any other law enforcement, regulatory, or government authority as evidence of cooperation with, and resolution of claims by, the Government with

respect to the conduct described herein.

17. This Agreement does not provide any protection against prosecution for any future conduct by Alibaba. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with Alibaba.

### I. Corporate Compliance Program

18. The Alibaba Platforms shall implement (or continue to the extent already implemented) a corporate compliance program that meets the minimum elements and standards provided in **Attachment C**. The Alibaba Platforms' corporate compliance program shall be designed to prevent and detect violations of Drug, Device, and Importation Laws involving Subject Merchandise. The Compliance Program shall cover the operations of the Alibaba Platforms' employees, contractors, and subcontractors whose responsibilities relate to the (a) advertisement, sale, import, export or distribution of Subject Merchandise; (b) review and moderation of product listings related to Subject Merchandise; and (c) review and moderation of licenses of buyers and sellers of Subject Merchandise who use the Alibaba Platforms' online services. No later than thirty (30) calendar days after the Term expires, each of the Alibaba Platforms, by their respective Chief Executive Officers and Chief Compliance Officers, will certify to the Government, in the form of executing the document attached as Attachment E to this Agreement, that each Alibaba Platform has met its compliance obligations pursuant to this Agreement. Such certification will be deemed a material statement and representation by the Alibaba Platform to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519.

19. The Alibaba Platforms will periodically review their corporate compliance programs and correct any deficiencies in the programs' internal controls, policies, and procedures that prevent the programs from effectively detecting and deterring violations of Drug, Device, and Importation Laws through the purchase or sale of Subject Merchandise through their online platforms.

### J. Compliance Monitoring

20. For the purpose of assessing or determining compliance with this Agreement, the Government may, upon written notice to the Alibaba Platforms:

a. require the Alibaba Platforms to submit written reports, certifications, or other information relating to compliance with any provision of this Agreement;

b. interview, under oath or otherwise, officers, employees, or agents of the Alibaba Platforms who may have relevant knowledge; and

c. require the Alibaba Platforms to produce documents, communications, data, and other information in their possession, custody, or control relating to compliance with any provision of this Agreement, subject to applicable laws and regulations, as well as valid claims of federal attorney-client privilege and attorney work-product doctrine.

21. The Alibaba Platforms shall designate one or more agents of the Alibaba Platforms to accept and process the Government's requests related to compliance monitoring within seven (7) Business Days of signing this Agreement. The Alibaba Platforms shall accept the Government's requests for compliance monitoring information via email through one or more dedicated email addresses maintained by each company. The Alibaba Platforms shall comply with the Government's compliance monitoring requests within thirty (30) calendar days of receiving the Government's written notice. In its sole discretion, the Government may grant extensions of time for the Alibaba Platforms to comply with the Government's requests for compliance monitoring information.

### K. <u>Non-Prosecution</u>

22. The Government agrees that if Alibaba complies with its obligations under this Agreement, (a) the Government will not bring any criminal case or other enforcement action against Alibaba, or any of its present or former subsidiaries or affiliates relating to any of the conduct described in the Statement of Facts, and (b) at the conclusion of the Term, this Agreement shall expire. In assessing Alibaba's compliance, the Government shall consider the totality of Alibaba's conduct under this Agreement and shall not declare a failure to comply based solely on minor or promptly cured technical violations, which shall be determined at the Government's discretion, acting reasonably. To the extent there is conduct disclosed by Alibaba that is not set forth in this Agreement, such conduct shall not be exempt from further prosecution and is outside the scope of this Agreement. Alibaba expressly acknowledges and agrees that this Agreement does not preclude the filing of a case arising from conduct that is not described in this Agreement and the Statement of Facts.

### L. <u>Breach of the Agreement</u>

23. If, during the Term, either of the Alibaba Platforms (a) commits a felony under United States law; (b) knowingly provides in connection with this Agreement materially false, incomplete, or misleading information, including in connection with the disclosure of information about individual culpability; (c) knowingly and materially fails to cooperate as provided in Section E of this Agreement; (d) knowingly fails to implement compliance programs in all material respects as provided in Section I of this Agreement and **Attachment C**; or (e) otherwise knowingly and materially fails to perform or fulfill any term or condition of this Agreement, the relevant Alibaba Platform shall be in breach, and thereafter be subject to prosecution for violations of applicable federal law, including, but not limited to, for conduct described in the Attached Statement of Facts, regardless of whether the Government obtains knowledge of the breach after the Term expires if the breach occurred during the Term of the Agreement. The notice-of-breach and cure provisions set forth in Paragraphs 26 through 28 shall apply to any such post-Term breach determination.

24. Any prosecution resulting from a knowing and material breach of this Agreement, as defined in Section L, Paragraph 23, may be pursued by the Government in the United States District Court for the District of Rhode Island or any other appropriate venue. As to the conduct described in the Statement of Facts, Alibaba knowingly waives any constitutional or statutory right

to venue and to presentment to or indictment by a grand jury for felony crimes, and consents to the filing of an information or complaint for said crimes. Determination of whether Alibaba has breached this Agreement and whether to pursue prosecution shall be in the Government's sole discretion, acting reasonably, after good-faith consideration of any written response submitted by Alibaba pursuant to Paragraph 26. Any such prosecution may be premised on information provided by Alibaba.

25. Any prosecution relating to the conduct described in this Agreement or relating to conduct of the Alibaba Platforms in connection with a violation of the Drug, Device, and Importation Laws known to the Government prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against Alibaba notwithstanding the expiration of the statute of limitations, for the period between the signing of this Agreement and the expiration of the Term plus six months. Thus, by signing this Agreement, Alibaba agrees that the statute of limitations with respect to any such prosecution against Alibaba that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus six months. In addition, Alibaba agrees to toll the running of the statute of limitations as to any violation of Drug, Device, and Importation Laws that occurs during the Term for one year from the date upon which the violation occurs, and that this period shall be excluded from any calculation of time for purposes of the application of any applicable statute of limitations.

26. In the event the Government determines that Alibaba has breached this Agreement, as defined in this Section L, the Government agrees to provide the entity with written notice of such breach prior to instituting any prosecution resulting from such breach. Written notice of breach shall include: (a) the provision breached; (b) the approximate date of the breach; and (c) a description of the breach sufficient to permit the respective company to cure. Within thirty (30) calendar days of receipt of such notice, the entity shall have the opportunity to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions the entity has taken to address and remediate the breach, which explanation the Government shall consider in determining whether to pursue prosecution of Alibaba.

27. In the event that the Government determines that Alibaba has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23: (a) all statements made by or on behalf of Alibaba to the Government, including the Statement of Facts, and any testimony given by Alibaba before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Government against Alibaba; and (b) Alibaba shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, Section 1B1.1(a) of the USSG, or any other federal rule that any such statements or testimony made by or on behalf of Alibaba prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current officer, director, or employee, or any person acting on behalf of, or at the direction of, the relevant Alibaba Platform, will be imputed to the relevant Alibaba Platform for the purpose of determining whether that entity has deliberately violated any provision

of this Agreement as defined in Section L, Paragraph 23, and shall be in the sole discretion of the Government, acting reasonably.

28. It is further understood that within thirty (30) calendar days after receiving a notice of breach, or to such longer period as the Government may agree in writing, Alibaba may cure the breach to the Government's reasonable satisfaction (**"Cure Period"**).

29. Alibaba acknowledges that the Government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if any entity breaches this Agreement and this matter proceeds to judgment. Alibaba further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

30. On the date that the period of non-prosecution specified in this Agreement expires, each of the Alibaba Platforms, by their respective Chief Executive Officers and the Chief Financial Officers, shall submit their respective certifications set forth in **Attachment D** and certify to the Government that they have met their obligations pursuant to this Agreement. Each certification will be deemed a material statement and representation by the Alibaba Platforms in a matter within the jurisdiction of the executive branch of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the District of Rhode Island.

**M. Applicability**

31. Except as may otherwise be agreed by the Government and Alibaba, in connection with a particular transaction, Alibaba agrees that in the event that, during the Term, they undertake any change in corporate form that directly involves Alibaba Platforms, including if Alibaba sells, merges, or transfers business operations that are material to Alibaba Platforms' operations, or to the operations of any of Alibaba's subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, Alibaba shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

32. The purchaser or successor in interest must also agree in writing that the Government's ability to declare breach under this Agreement is applicable in full force as to that entity. Alibaba agrees that the failure to include these provisions in their transactions will make any such transactions null and void. Alibaba shall provide notice to the Government at least thirty (30) calendar days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Government shall notify Alibaba within fifteen (15) calendar days if it determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If, at any time during the Term, Alibaba engages in a transaction that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Government may deem it a breach of this Agreement pursuant to Section K of this Agreement. Nothing in this Agreement shall restrict Alibaba from indemnifying (or otherwise holding harmless) the purchaser

or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Government, acting reasonably.

N. **Public Statements by Alibaba**

33. Alibaba shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for Alibaba, make any public statement, contradicting in whole or in part the acceptance of responsibility by the Alibaba Platforms as set forth in this Agreement. Any such contradictory statement shall, subject to the cure rights of the Alibaba Platforms described in this paragraph, constitute a breach of this Agreement, and the relevant Alibaba Platform thereafter shall be subject to prosecution as set forth in this Agreement. The decision whether any public statement by any such person contradicting a fact contained in this Agreement will be imputed to the respective Alibaba Platform for the purpose of determining whether it has breached this Agreement shall be in the sole discretion of the Government, acting reasonably.

34. If the Government determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Government shall notify Alibaba, and Alibaba may avoid a breach of this Agreement by publicly repudiating such statement(s) within ten (10) Business Days after notification. Alibaba shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in this Agreement provided that such defenses and claims do not contradict, in whole or in part, a statement contained in this Agreement. This paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of Alibaba in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of Alibaba. Any determination by the Government, acting reasonably, that a public statement constitutes a breach of this Agreement shall be subject to the 30-day written notice and opportunity to respond procedure set forth in Paragraph 26 before any prosecution may be initiated.

35. If Alibaba issues a press release or holds any press conference in connection with this Agreement, Alibaba shall first consult with the Government to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Government and Alibaba; and (b) whether the Government has any objection to the release.

36. The Government agrees, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Alibaba Platforms' cooperation and remediation. By agreeing to provide this information to such authorities, the Government does not agree to advocate on behalf of Alibaba. Instead, the Government only agrees to provide facts to be evaluated independently by such authorities.

**O. Limitations on Binding Effect of Agreement**

37. This Agreement is binding on Alibaba, the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section. It does not bind any other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies. The Government shall bring the cooperation of Alibaba and its compliance with its obligations under this Agreement to the attention of such agencies and authorities if requested to do so by Alibaba.

**P. Notice**

38. Any notice to the Government under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

Chief, Criminal Division
U.S. Attorney's Office, District of Rhode Island
One Financial Plaza, 17th Floor
Providence, RI 02903

Director, Enforcement & Affirmative Litigation Branch, Civil Division
U.S. Department of Justice
450 5th Street NW, Room 6400 South
Washington, DC 20530

Chief, Bank Integrity Unit
Money Laundering, Narcotics and Forfeiture Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington DC 20005

39. Any notice to Alibaba under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

Alibaba Group Holding Ltd.
26/F Tower One, Times Square
1 Matheson Street
Causeway Bay, Hong Kong
Attention: Legal Department

Alibaba.com U.S. LLC
525 Alamnor Ave, Suite 400
Sunnyvale, CA 94085
Attention: Chief Compliance Officer

With a copy to:

Quinn Emanuel Urquhart & Sullivan LLP
2601 South Bayshore Dr, Ste 1550
Miami, FL 33133
Attention: Samuel G. Williamson

40. Notice shall be effective upon actual receipt by the Government or Alibaba. Notice shall also be given by email to any email addresses designated by the Government or Alibaba.

**Q. Complete Agreement**

**41.** The Government and Alibaba acknowledge that each party has had a full opportunity to negotiate the terms of this Agreement. The rule of construction that interprets contracts against the drafter, therefore, shall not apply to this Agreement. This Agreement, including its attachments, sets forth all the terms of the Agreement between Alibaba and the Government. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Government, the attorneys for Alibaba, and a duly authorized representative of Alibaba. The following documents are attached to and incorporated into this Agreement:

**Attachment A**: The Alibaba Statement of Facts

**Attachment B**: The Alibaba Certificate of Corporate Resolutions

**Attachment C**: The Alibaba Corporate Compliance Program

**Attachment D**: The Alibaba Disclosure Certification

**Attachment E**: The Alibaba Compliance Certification

**AGREED AND CONSENTED TO:**

***The United States of America***

CHARLES C. CALENDA
First Assistant United States Attorney

Date: 6/29/2026 By: [signature]
Dulce Donovan
Executive Assistant U.S. Attorney

Date: 6/29/2026 By: Julianne Klein [signature]
Julianne Klein
Assistant U.S. Attorney

LISA K. HSIAO
Director
Enforcement and Affirmative Litigation Branch,
Civil Division

Date: 6/29/2026 By: ______________________
Patrick R. Runkle
Assistant Director

Date: 6/29/2026 By: ______________________
Colin W. Trundle
Trial Attorney

Date: 6/29/2026 By: ______________________
Cadesby B. Cooper
Trial Attorney

MARGARET A. MOESER
Chief
Money Laundering, Narcotics and Forfeiture
Section, Criminal Division

Date: 6/29/2026 By: ______________________
Rachel N. Agress
Trial Attorney

Date: 6/29/2026 By: ______________________
Elysa Wan
Trial Attorney

**AGREED AND CONSENTED TO:**

***Alibaba Group Holding Limited and Alibaba.com Singapore E-Commerce Pte. Ltd.***

Date: June 29, 2026 By: ______________________

Siying Yu
Authorized Officer and General Counsel
Alibaba Group Holding Limited

Date: June 29, 2026 By: ______________________

Albert Liu
General Counsel
Alibaba.com Singapore E-Commerce Pte. Ltd.

Date: June 29, 2026 By: ______________________

Samuel G. Williamson
Quinn Emanuel Urquhart & Sullivan, LLP
Counsel for Alibaba Group Holding Limited and
Alibaba.com Singapore E-Commerce Pte. Ltd.

**ATTACHMENT A**
**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Non-Prosecution Agreement (the "Agreement") between the Government and Alibaba (as defined in the Agreement). Alibaba agrees and stipulates that the following information is true and accurate. The Alibaba Platforms admit, accept, and acknowledge that they are responsible for the acts of their officers, directors, employees, and agents as set forth below. Should the Government later pursue the prosecution that is covered by this Agreement, Alibaba agrees that it will neither contest the admissibility of, nor contradict, this Statement of Facts in any such proceeding. The following facts describe events that occurred between approximately January 2016 and December 2024 (the "Relevant Period").

1. During the Relevant Period, Alibaba Group (U.S.) Inc., and Alibaba.com US LLC were Delaware companies with a principal place of business at 400 South El Camino Real, Suite 400, San Mateo, California 94402. Alibaba Group (U.S.) Inc. and Alibaba.com US LLC were subsidiaries of Alibaba Group Holding Limited. Alibaba.com Singapore E-Commerce Pte. Limited and AliExpress E-Commerce One Pte. Limited were Singapore based subsidiaries of Alibaba Group Holding Limited. Alibaba Group Holding Limited was founded in 1999 in China and was listed on the New York Stock Exchange in 2014. Alibaba Group Holding Limited was organized and existed under the laws of the Cayman Islands, with its principal executive offices at 969 West Wen Yi Road, Yu Hang District, Hangzhou 31 1121, China.

2. Alibaba.com was a global business-to-business ("B2B") e-commerce platform that connected buyers and sellers from around the world on a single platform, which facilitated wholesale distribution of a wide range of goods. The International Commerce Business Unit ("ICBU") was the business arm managed by Alibaba.com Singapore E-Commerce Pte. Limited, which managed Alibaba.com, including within the United States. A separate business unit within Alibaba Group Holding Limited, AliExpress, was a global business-to-customer ("B2C") e-commerce platform, which facilitated sales of a wide range of goods from sellers to individual customers. AliExpress was operated by Alibaba.com Singapore E-Commerce Pte. Limited and AliExpress E-Commerce One Pte. Limited. The B2B and B2C services were offered through the web domains Alibaba.com and AliExpress.com, respectively. During the Relevant Period, there were at any given time more than 200 million product listings available on Alibaba.com and over 50 billion product sales occurred on a yearly basis.

3. ICBU was not an importer of record in connection with the transactions that are the subject of this resolution, nor did it take physical possession of goods. Instead, ICBU operated the Alibaba.com marketplace which linked third-party buyers and sellers to transact the sale of goods. During the Relevant Period, ICBU offered services to independent third-party sellers that were intended to enhance sales and facilitate transactions with buyers on Alibaba.com. These services included "Gold" and "Verified" supplier membership programs that promoted independent third-party sellers' products. Through April 2021, ICBU also offered a payment service on Alibaba.com called "trade assurance." Through this payment service, ICBU processed payments linked to e-commerce orders.

4. During the relevant period, ICBU had policies which governed what products could be sold on Alibaba.com. Sellers agreed to abide by those policies to access the platform. ICBU held the right to take enforcement actions against non-compliant sellers, including barring sellers from selling goods on Alibaba.com. ICBU maintained and periodically improved those policies throughout the Relevant Period.

5. During the Relevant Period, ICBU maintained a Rules Center, a centralized hub on which it published the various policies and penalty procedures which governed sellers and buyers using Alibaba.com. ICBU's rules expressly prohibited the use of Alibaba.com to sell and import pharmaceuticals that were non-compliant with U.S. Food and Drug Administration ("FDA") regulations. ICBU's listing policies also expressly prohibited the sale of pill presses and other illegal products. In addition, ICBU's policies and terms of use required all users to comply with the laws of the jurisdictions within which the users operated. Despite its policies to the contrary, ICBU failed to prevent some third-party sellers from circumventing controls and measures implemented by Alibaba.com and using Alibaba.com to sell and import goods into the United States that violated the Federal Food, Drug, and Cosmetic Act ("FDCA"), as well as other Drug, Device, and Importation Laws through Alibaba.com.

6. ICBU further offered proprietary, built-in messenger platforms that allowed real-time, private chat interactions, requests for price quotes, and management of orders by buyers and merchants. Some third-party merchants at times used ICBU's private messaging platform to discuss, among other things, the arrangement of shipments with U.S. buyers in a manner that would evade US customs laws or to provide buyers with contact information for encrypted messaging platforms unaffiliated with ICBU to evade restrictions imposed by the FDCA, as well as other Drug, Device, and Importation Laws. ICBU had the capability to monitor and moderate seller and buyer use of its own messaging platforms and implemented monitoring measures at some points during the Relevant Period, but those measures were not sufficient to prevent the product sales that gave rise to this Agreement. For example, the Alibaba Platforms generally did not penalize merchants unless they publicly posted prohibited goods on the platform.

7. During the Relevant Period, ICBU's systems, policies, and procedures failed to prevent the sale and importation of certain controlled substances, List I chemicals, List II chemicals, prescription drugs, active pharmaceutical ingredients, and pharmaceutical equipment by independent third-party sellers who were not qualified to distribute such products into the United States. Because of this, some third-party sellers used Alibaba.com to sell and import these products into the United States in violation of the FDCA, FDA regulations, and other Drug, Device, and Importation Laws and in violation of ICBU policies. However, since ICBU charged membership, marketing, advertising, shipping, and transaction processing fees to users of the Alibaba.com marketplace, ICBU derived some profit related to those sellers' illegal activities.

8. During the Relevant Period, similar sales also occurred on AliExpress' B2C platform. The transaction value of these sales tended to be lower, as AliExpress is a B2C platform (in contrast to Alibaba.com's B2B platform).

9. Through the Alibaba Platforms, the Government conducted over 40 undercover purchases of drugs and equipment that were illegal to be imported into the United States under the

FDCA as well as other Drug, Device, and Importation Laws. These products were ultimately shipped to the District of Rhode Island by third-party sellers.

10. At times, Alibaba employees raised concerns that the ICBU platform was used to sell improper products into the United States. The Alibaba employees also raised concerns that ICBU's compliance measures and filtering systems were inadequate to prevent the sale of the products that are the subject of this resolution to buyers in the United States. ICBU was not sufficiently reactive or proactive in following up on these concerns.

11. Approximately 80,000 product sales on the Alibaba Platforms took place during the Relevant Period and involved product sales from overseas countries to the United States that lacked the requisite approvals under the FDCA as well as other Drug, Device, and Importation Laws. The combined gross merchandise value of these transactions was greater than $200 million. The value of these transactions represents the prices charged by third-party merchants, and not revenues or profits received by the Alibaba Platforms. These funds are subject to civil forfeiture pursuant to Title 18, U.S. Code, Section 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to smuggling goods by independent third-party sellers in violation of Title 18, U.S. Code, Section 545.

**ALIBABA GROUP HOLDING LIMITED**
(Incorporated in the Cayman Islands)
(the "Company")

Certified Extract of Minutes of a Meeting of the Board of Directors (the "Board") of the Company held at Times Square, Hong Kong and via Video Conference on March 18, 2026, Beginning at 9:35 a.m., Hong Kong Time (the "Board Minutes")

---

A. Extract of the relevant definition in the Board Minutes:

"Authorized Officers": "the officers named in Schedule A hereto."

"Company Secretary": "the Company Secretary of the Company."

"Proposed Settlement": "a settlement proposal offered by the DOJ including (1) a non-prosecution agreement (the "Agreement"), (2) a characterization of certain conduct as misdemeanor and (3) a penalty of US$325 million."

B. Extract of the relevant Board Minutes:

**After due and careful consideration, IT WAS UNANIMOUSLY RESOLVED BY THE INDEPENDENT DIRECTORS PRESENT,**

**THAT the Proposed Settlement, on terms substantively as described herein be and hereby is approved;**

**THAT the Company agrees to pay a monetary penalty amount of $125,000,000 and a civil forfeiture of $200,000,000 pursuant to the Agreement;**

**The Company accepts the terms and conditions of the Agreement, including, but not limited to: (a) a knowing waiver of its rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) a knowing waiver for purposes of the Agreement and any charges by the United States arising out of the conduct described in the Statement of Facts attached to the Agreement of any objection with respect to indictment and venue and consents to the filing of an information, as provided under the terms of the Agreement, in the United States District Court for the District of Rhode Island, or any other appropriate venue; and (c) a knowing waiver of any defenses based on the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the DOJ prior to the date on which the Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of the Agreement;**

**THAT the Authorized Officers, acting together or singly, be and hereby are authorized, approved and directed, on behalf of the Company, to further negotiate with the DOJ to finalize the terms of the Proposed Settlement and the Agreement, and to approve, execute and deliver the Agreement, in such form and with such terms and conditions as any such Authorized Officer shall approve, such Authorized Officer's execution thereof**

**to be conclusive evidence of such Authorized Officer's approval of the terms of the Agreement;**

**THAT the Authorized Officers, acting together or singly, be and hereby are authorized, approved and directed, on behalf of the Company, to take such further actions and to approve, execute and deliver such further agreements or documents as such Authorized Officer shall in his or her reasonable discretion deem necessary, appropriate or advisable in order to carry out the intent and purposes of the foregoing resolutions (including without limitation making any public announcements and/or filings); *provided*, in each case, that such documents, actions, announcements and filings are consistent with and within the scope of the foregoing resolutions; and**

**THAT any and all actions previously taken by any Authorized Officer or designee thereof relating to and within the scope of these resolutions be and hereby are adopted, approved and ratified and confirmed as valid acts and deeds taken on behalf of the Company.**

**<u>Schedule A</u>**

**Authorized Officers**

Joseph C. TSAI, Chairman, or his successor

Eddie Yongming WU, Chief Executive Officer, or his successor

Toby Hong XU, Chief Financial Officer, or his successor

Sara Siying YU, General Counsel, or her successor

Certified as a true extract of the Board Minutes:

ZHANG Jinwei
Company Secretary
Date: June 25, 2026

**ATTACHMENT C**

**THE ALIBABA CORPORATE COMPLIANCE PROGRAM**

In order to address any deficiencies in internal controls and compliance policies and procedures as they relate to prevention, detection and deterrence of violations of the Drug, Device and Importation Laws in connection with the Subject Merchandise (collectively, the "Compliance Program"), each of the Alibaba Platforms agree to continue to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its Compliance Program and to implement enhancements as warranted. At a minimum, the Compliance Programs should include the following elements, to the extent they are not already present:

*Commitment to Compliance*

1. Each of the Alibaba Platforms will ensure that its directors and senior management provide strong, explicit, and visible support and commitment to compliance with its Compliance Program and demonstrate rigorous support for compliance principles via their actions and words.

2. Each of the Alibaba Platforms will ensure that mid-level management throughout its organization reinforces leadership's commitment to compliance policies and principles and encourages employees to abide by them. Each of the Alibaba Platforms will create and foster a culture of ethics and compliance with the laws of the United States in its day-to-day operations at all levels of the company.

*Periodic Risk Assessment and Review*

3. Each of the Alibaba Platforms will independently implement a risk management process to identify, analyze, and address the individual circumstances of its e-commerce platform, and in particular the compliance risks it faces relating to the potential advertisement, sale, importation, and distribution of Subject Merchandise in the United States through its e-commerce services and potential violations of Drug, Device, and Importation Laws.

4. On the basis of its periodic risk assessment, each of the Alibaba Platforms shall take appropriate steps to design, implement, or modify each element of its Compliance Program to reduce the risk of violations of Drug, Device, and Importation Laws and associated compliance policies.

*Policies and Procedures*

5. Each of the Alibaba Platforms will independently develop and promulgate a clearly articulated and visible corporate policy against violations of Drug, Device, and Importation Laws, which shall be memorialized in a written compliance policy or policies, such as the Platform's existing Prohibited and Restricted Items Policy.

6. Each of the Alibaba Platforms will enhance its respective Prohibited and Restricted Items Policy and other applicable elements of its Compliance Program to reduce the risk of violations of Drug, Device, and Importation Laws. Each of the Alibaba Platforms will take

appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violations of Drug, Device, and Importation Laws under the Compliance Program by personnel at all levels of the company. These policies and procedures shall apply to all directors, officers, and employees and, where necessary and appropriate, outside parties acting on behalf of the applicable Alibaba Platform, including, but not limited to, agents, consultants, and joint venture partners (collectively, "agents and business partners"). Each of the Alibaba Platforms shall notify all employees that compliance with the Compliance Program is the duty of individuals at all levels of the company. Such enhancements to the Compliance Program shall include continued prohibition of the use of any e-commerce Internet services on the applicable Alibaba Platform to list, advertise the sale of, or otherwise facilitate offers to sell, distribute, or dispense to customers in the U.S. any of the following products to the extent that the sale of such products would violate the Controlled Substances Act ("CSA") and the Federal Food, Drug, and Cosmetic Act ("FDCA"), including as part of a new Controlled Substance, Drug and Pill Press Policy:

a. drugs (as defined in 21 U.S.C. § 321(g)(1));

b. any Class III medical "device" (as defined in 21 U.S.C. § 321(h) and 21 U.S.C. § 360c(a)(1)(C));

c. equipment used to manufacture counterfeit drugs (including tableting and encapsulating machines, punches, dies, plates, stones, and other things referenced in 21 U.S.C. §§ 331(i)(2) and 843(a)(5)-(7));

d. any "controlled substance" (as defined in 21 U.S.C. § 802(6) and included on Schedules I through V, 21 C.F.R. § 1308.11 through .15, subject to the exclusions and exceptions in 21 C.F.R. § 1308.21 through .35);

e. listed chemicals or chemical mixtures (as defined in 21 U.S.C. §§ 802(33) and (40)); and

f. anabolic steroids (as defined in 21 U.S.C. § 802(41)(A) and (C));

7. Each of the Alibaba Platforms will maintain, or where necessary establish, effective, risk-based transaction monitoring systems capable of detecting conduct that violates the CSA and the FDCA. The adequacy of the systems shall be evaluated in light of the state of available commercial technology and existing industry practices and standards at the time of assessment.

8. If, through its Compliance Program, an Alibaba Platform determines that there are reasonable grounds to believe that a user of its e-commerce services is knowingly engaged in the unlawful solicitation, advertisement, sale, importation or exportation, distribution, or smuggling of counterfeit prescription die molds, Schedule I-V controlled substances, or List I and II chemicals into or within the United States, the relevant Alibaba Platform shall suspend the user and initiate an internal investigation. Upon completion of the investigation, if the Alibaba Platform concludes that the grounds for initiating the investigation are substantiated by the information reviewed, the relevant Alibaba Platform will permanently ban that user from using its e-commerce services. Each of the Alibaba Platforms shall take reasonable steps to ensure the permanent ban cannot be readily

circumvented, and such steps shall include, but shall not be limited to, measures to prevent banned parties from re-utilizing the Alibaba Platforms in different forms.

9. Each of the Alibaba Platforms shall evaluate, periodically reassess, and, where appropriate, apply and expand its respective artificial intelligence-based technologies to prevent the sale and advertisement of products on the Alibaba Platforms whose sale or importation into the United States would violate that the CSA and the FDCA.

10. Each of the Alibaba Platforms shall ensure that its Compliance Program includes risk-based measures designed to prevent the advertisement, sale, import or export, distribution, and smuggling of counterfeit die molds, Schedule I-V controlled substances, or List I and II chemicals to Mexico and Canada, where such materials are commonly used by drug traffickers to manufacture controlled substances which are then smuggled into the United States.

11. Within ninety (90) calendar days of the execution of the Agreement, each of the Alibaba Platforms shall implement an online, fast-track law enforcement request intake and processing system ("Law Enforcement Green Channel" or "Green Channel") designed to facilitate timely receipt and processing of valid U.S. subpoenas, court orders, and /or search warrants seeking information related to United States-based users of the Alibaba Platforms as well as information regarding purchases and sales to/from the United States. The Law Enforcement Green Channel shall be available to federal, state, and local law enforcement agencies in the United States. Each of the Alibaba Platforms agrees to waive any federal or state statutory right to personal service of United States-based legal process that is related to a United States-based criminal investigation relating to alleged use of the Alibaba Platforms to violate the Drug, Device and Importation Laws. Each of the Alibaba Platforms will comply with such legal process unless it receives relief from doing so by a court of competent jurisdiction in the United States.

12. Within the same period, each of the Alibaba Platforms shall develop and publish a guidebook that provides notice to United States-based law enforcement of what information is readily available and for how long it is stored by the company. The guidebook shall also provide notice to United-States based law enforcement of how to operate the Law Enforcement Green Channel, including how to create an account, if applicable, and how to serve United States-based legal process on the Alibaba Platforms through the Green Channel. Each of the Alibaba Platforms shall periodically update the guidebook to reflect updates to the Law Enforcement Green Channel when appropriate.

13. Each of the Alibaba Platforms will ensure that it has a system of internal controls, reasonably designed to ensure the completeness and accuracy of records pertaining to the advertisement, sale, importation, and distribution of Subject Merchandise to customers in the United States.

14. The Alibaba Platforms will ensure that it has a system of financial and accounting procedures, including a system of internal controls, reasonably designed to ensure (i) the accuracy of records pertaining to the advertisement, sale, importation, or distribution of Subject Merchandise into the U.S. through that Alibaba Platform's e-commerce services; and (ii) the prevention and detection of violations of the CSA and FDCA on that Alibaba Platform.

15. Each of the Alibaba Platforms shall review its Compliance Program as necessary to address changing and emerging risks and update the Compliance Program as appropriate to ensure its continued effectiveness, taking into account relevant developments in the field and evolving international and industry standards.

*Independent, Autonomous, and Empowered Oversight*

16. Each of the Alibaba Platforms will assign responsibility to one or more senior corporate executives of the company for the implementation and oversight of the Compliance Program. Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, including the applicable Alibaba Platform's internal audit function, or the applicable Alibaba Platform's Board of Directors and any appropriate committee thereof, and shall have an adequate level of stature and autonomy from management as well as sufficient resources and authority to maintain such autonomy.

*Training and Guidance*

17. Each of the Alibaba Platforms will implement mechanisms designed to ensure that the Compliance Program is effectively communicated to all directors, officers, employees, and, where necessary and appropriate, agents and business partners. These mechanisms shall include: (a) periodic training for all directors and officers, all employees in positions of leadership or trust, any positions that require such training (e.g., internal audit, sales, legal, compliance, finance), and, where necessary and appropriate, agents and business partners; (b) metrics for measuring knowledge retention and effectiveness of the training; and (c) corresponding certifications by all such directors, officers, employees, agents and business partners, certifying compliance with the training requirements. Each of the Alibaba Platforms will conduct training in a manner tailored to the audience's size, sophistication, and subject-matter expertise and, where appropriate, will discuss prior compliance incidents.

18. Each of the Alibaba Platforms will maintain, or, where necessary, establish, an effective system for providing guidance and advice to directors, officers, employees, and, where necessary and appropriate, agents and business partners, on complying with the Controlled Substance and Pill Press Policy and other compliance policies and procedures regarding Subject Merchandise under the Compliance Program, including when such individuals need advice on an urgent basis, or need advice in any foreign jurisdiction in which that Alibaba Platform operates.

*Confidential Reporting Structure and Investigation of Misconduct*

19. Each of the Alibaba Platforms will maintain, or where necessary establish, an effective system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, agents and business partners concerning violations of that Alibaba Platform's Compliance Program. This system will provide protection for directors, officers, employees, and, where appropriate, agents and business partners who make such reports.

20. Each of the Alibaba Platforms will maintain, or where necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of the CSA and the FDCA. Each of the Alibaba Platforms will handle the investigations into such complaints in an effective manner, including routing the complaints to proper personnel, conducting timely and thorough investigations, and following up with appropriate discipline where necessary.

*Compensation and Consequence Management*

21. Each of the Alibaba Platforms will implement clear mechanisms amongst all directors, officers, employees, and, where necessary and appropriate, parties acting on behalf of that Alibaba Platform, to incentivize behavior that complies with that Alibaba Platform's Compliance Program. These incentives shall include, but shall not be limited to, the implementation of criteria related to compliance in that Alibaba Platform's compensation and bonus system.

22. Each of the Alibaba Platforms will institute appropriate disciplinary procedures to address, among other things, violations of its Compliance Program, the CSA, or the FDCA by that Alibaba Platform's directors, officers, and employees. Such procedures will be applied consistently and fairly, and in a manner consistent with the violation, regardless of the position held by, or perceived importance of, the director, officer, or employee. Each of the Alibaba Platforms shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent similar misconduct in the future, including assessing its internal controls and compliance policies and procedures, and making modifications necessary to ensure that Alibaba Platform's overall Compliance Program is effective.

*Third-Party Management*

23. Each of the Alibaba Platforms will institute appropriate risk-based due diligence and compliance requirements pertaining to the retention and oversight of all agents, business partners, and sellers who use that Alibaba Platform's ecommerce services in connection with Subject Merchandise, including:

a. properly documented due diligence pertaining to the hiring and appropriate and regular oversight of agents and business partners;

b. informing agents and business partners of that Alibaba Platform's commitment to abiding by the Drug, Device, and Importation Laws, and of the company's Compliance Program; and

c. seeking a reciprocal commitment from agents and business partners.

24. Where necessary and appropriate, each of the Alibaba Platforms will include standard provisions in agreements, contracts, and renewals thereof with all agents, business partners, and e-commerce sellers that are reasonably calculated to prevent violations of the CSA (21 U.S.C. § 801 et seq.) and the FDCA (21 U.S.C. § 301 et seq.), which may, depending on the

circumstances, include: (a) representations and undertakings relating to compliance with such laws; (b) rights to conduct audits of the books and records of the agent, business partner, or e-commerce seller in support of efforts to ensure compliance with such laws; and (c) rights to suspend or terminate an agent, business partner, or e-commerce seller as a result of any violation of such laws, Alibaba Platform's Compliance Policy, or relevant representations and undertakings related to such matters.

*Mergers and Acquisitions*

25. Each of the Alibaba Platforms will develop and implement policies and procedures for mergers and acquisitions requiring that the applicable Alibaba Platform conduct appropriate risk-based due diligence on potential new business entities, including appropriate due diligence regarding compliance with the CSA and the FDCA by legal, accounting, and compliance personnel associated with those new business entities.

26. Each of the Alibaba Platforms will ensure that its Compliance Program, including procedures regarding compliance with the CSA and the FDCA, applies as quickly as is practicable to newly-acquired businesses or entities that are merged with that Alibaba Platform, and will promptly (a) train the directors, officers, employees, agents, and business partners consistent with Paragraph 17; (b) where warranted, conduct an audit of all newly acquired or merged businesses as quickly as is practicable concerning compliance with the CSA and the FDCA; and (c) where warranted, based on the nature and scale of the acquired business, each Alibaba Platform will ensure that it establishes a plan to implement the compliance program systems and controls described in this Attachment C into its newly-acquired businesses or entities as quickly as practicable, with priority given to implementing the transaction monitoring system, Law Enforcement Green Channel access, and seller due diligence procedures described herein.

*Monitoring and Testing*

27. Each of the Alibaba Platforms will conduct periodic reviews and testing of all elements of its Compliance Program to evaluate and improve their effectiveness in preventing and detecting violations of the CSA and the FDCA; and related policies and procedures, taking into account relevant developments in the field and evolving international and industry standards.

28. Each of the Alibaba Platforms will ensure that compliance and control personnel have sufficient direct or indirect access to relevant sources of data to allow for timely and effective monitoring and testing of platform transactions.

*Analysis and Remediation of Misconduct*

29. In the event an Alibaba Platform identifies material misconduct related to violations of the CSA and the FDCA, it will conduct a root cause analysis of that misconduct, including any prior misconduct such as any prior misconduct relating to this investigation, to identify any systemic issues and any control failures. That Alibaba Platform will timely and appropriately remediate the root causes of the identified misconduct. That Alibaba Platform will ensure that root causes, including systemic issues and controls failures, and relevant remediation are shared with management as appropriate.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS | CENTRAL DIVISION
Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.
No. 4:26-cv-00611-DPM-JJV

# EXHIBIT E

AUS Merchant Services non prosecution agreement

The complete 26-page source PDF supplied by Plaintiff, including its cover, agreement, Statement of Facts, and attachments. No pages are omitted. Proposed use and evidentiary limitations are described in the supporting brief.

Proposed appendix source pages 68–93.

U.S. Department of JUSTICE

The Department of Justice is posting this court document as a courtesy to the public. An official copy of this court document can be obtained (irrespective of any markings that may indicate that the document was filed under seal or otherwise marked as not available for public dissemination) on the Public Access to Court Electronic Records website at https://pacer.uscourts.gov. In some cases, the Department may have edited the document to redact personally identifiable information (PII) such as addresses, phone numbers, bank account numbers, or similar information, and to make the document accessible under Section 508 of the Rehabilitation Act of 1973, which requires federal agencies to make electronic information accessible to people with disabilities.

**United States Department of Justice**
*United States Attorney's Office*
*District of Rhode Island*

One Financial Plaza, 17th Floor
Providence, Rhode Island 02903

June 29, 2026

Sharon Cohen Levin, Esq.
Sullivan & Cromwell LLP
125 Broad St
New York, NY 10004
***Counsel for AUS Merchant Services, Inc.***

**Re: AUS Merchant Services, Inc. et al. Non-Prosecution Agreement**

Dear Counsel:

The Government and AUS Merchant Services, Inc. ("AUS" or the "Company") enter into this Non-Prosecution Agreement ("Agreement") for misdemeanor violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.* The Government agrees not to prosecute AUS during the term of this Agreement or thereafter for any violation related to the conduct described in the Statement of Facts, attached hereto as **Attachment A**. The Parties agree to certain terms and obligations as set forth below.

**A. Definitions**

1. In this Agreement, the following terms shall have the meanings provided below. Capitalized terms used but not defined in this Section have the meanings given elsewhere in this Agreement.

a. **"AUS"** means AUS Merchant Services, Inc. (formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.), a Delaware company with its principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085.

b. **"Business Day"** means any day other than a Saturday, Sunday, or legal public holiday in the United States (as defined by 5 U.S.C. § 6103(a)).

c. **"Government"** means the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section.

d. **"Parties"** means the Government and AUS.

e. **"Subject Merchandise"** means drugs (as defined in 21 U.S.C. § 321(g)), devices (as defined in 21 U.S.C. § 321(h)), equipment used to manufacture counterfeit drugs (including tableting and encapsulating machines, punches, dies, plates, stones, and other things referenced in 21 U.S.C. §§ 331(i)(2) and 843(a)(5)-(7)), controlled substances (as defined in 21 U.S.C. § 802(6)), listed chemicals or chemical mixtures (as defined in 21 U.S.C. §§ 802(33) and (40)), anabolic steroids (as defined in 21 U.S.C. § 802(41)(A) and (C)), and other items regulated by the FDCA.

**B. Acceptance of Responsibility**

2. AUS admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as set forth in the Statement of Facts provided in **Attachment A** and incorporated by reference into this Agreement, and that the facts described in **Attachment A** are true and accurate.

3. In any prosecution or proceeding against AUS, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the Government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the Government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. Additionally, AUS shall not assert any claim that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines"), or any other federal rule.

**C. Term of the Agreement**

4. AUS's obligations under this Agreement shall have a term of three years from the date on which the Agreement is executed (the "Term"). AUS agrees, however, that in the event the Government determines, in its sole discretion, acting reasonably, that AUS has knowingly and materially violated any provision of this Agreement as defined in Section L, Paragraph 23, or has failed to completely perform or fulfill its material obligations under this Agreement, an extension or extensions of the Term may be imposed by the Government, in its sole discretion, for up to a total aggregate additional time period of one year, without prejudice to the Government's rights to proceed as provided in the below breach provisions of this Agreement. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in **Attachment D** and any tolling periods for any applicable statutes of limitation, for an equivalent period. The Government will provide AUS with written notice specifying the alleged violation in reasonable detail no fewer than thirty (30) calendar days before any extension is imposed, and AUS will have thirty (30) calendar days following receipt of such written notice (the "Extension Cure Period") to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions AUS has taken to address and remediate the situation, which explanation the Government shall consider in determining whether to extend the Term. The Government shall provide AUS with a written determination specifying the violation upon which the extension is based and the duration of the extension to be imposed.

**D. Relevant Considerations**

5. The Government enters into this Agreement based on the individual facts and circumstances of this case, including those presented by AUS. These facts and circumstances include, but are not limited to, the following:

a. The nature of the conduct described in the Statement of Facts, which involved payment processing related to Subject Merchandise;

b. AUS's acknowledgement that unlawful activities related to Subject Merchandise were committed by third-party actors on the e-commerce platforms that were owned and operated by Alibaba Group Holding Limited and its relevant subsidiaries ("Alibaba"), including Alibaba.com, and whose payments were processed through AUS;

c. AUS's lack of voluntary disclosure credit based on its failure to timely and voluntarily disclose to the Government the conduct described in the Statement of Facts;

d. Gaps in AUS's compliance program that contributed to the offense conduct, including gaps that occurred before the Company finished implementing remedial measures;

e. AUS's credit for its cooperation with the Government's investigation, which included:

i. investigating facts and obtaining information as requested by the Government, which allowed the Government to preserve and obtain evidence as part of their own independent investigation;

ii. at the Government's request, collecting, organizing, and producing voluminous documents in ways that did not implicate foreign data privacy laws;

iii. assisting in making employees available to be interviewed;

iv. creating and producing to the Government certain information from its databases of AUS's payment processing related to Subject Merchandise in ways that did not implicate foreign data privacy laws;

v. making factual presentations to the Government on a wide variety of topics; and

vi. providing separate counsel to witnesses to facilitate the Government's investigation, where appropriate.

f. AUS's engagement in remedial measures, including terminating business relationships with companies and persons known to have been involved in the conduct described in the Statement of Facts; terminating AUS's customers' and users' abilities to use AUS's services to unlawfully advertise, sell, import or export, distribute, or smuggle Subject Merchandise; making investments in staffing and resources for AUS's legal and compliance teams; updating policies, procedures, and supervisory structures with an emphasis on preventing and detecting the unlawful advertisement, sale, import or export, distribution, and smuggling of Subject Merchandise; strengthening controls and enhancing compliance-related documentation; and expanding employee training;

g. AUS's recognition that ongoing commitments to its compliance program protects U.S.-based consumers and merchants as well as the integrity of the financial system;

h. AUS's agreement to further enhance its corporate compliance programs and internal controls with respect to BSA/AML and FDCA compliance —including risk assessment and review, customer and third-party relationships, transaction monitoring, and suspicious activity reporting—as set forth in **Attachment C**;

i. AUS's agreements to continue to cooperate with the Government as described in Section E; and

j. AUS's lack of prior criminal history.

Accordingly, after considering (a) through (j) above, the Government has determined that the appropriate resolution in this case is this Agreement with AUS with a monetary penalty of $85,000,000 ("Monetary Penalty") assessed against AUS for a misdemeanor violation of the FDCA and a civil forfeiture of $190,000,000 ("Forfeiture Amount").

**E. <u>Cooperation Requirements</u>**

6. AUS shall fully cooperate with the Government on any matter that relates to the: (1) conduct described in this Agreement and the Statement of Facts and any individual or entity referred to therein, as well as any other related conduct under investigation by the Government in connection with Subject Merchandise at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term; (2) advertisement, sale, import, export, distribution, or smuggling of Subject Merchandise through AUS's payment-processing services; (3) possible violations of the FDCA by buyers and sellers who use AUS's payment-processing services; and (4) compliance with the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311 *et seq.*, and AML laws and regulations. AUS's obligations to cooperate with the Government under this Section shall end on the date that the investigations and prosecutions of all such matters conclude or the date that the Term ends, whichever date is later.

7. AUS's cooperation pursuant to this Section is subject to applicable laws and regulations, including valid claims of federal attorney-client privilege and attorney work-product doctrine. If AUS withholds information based on the assertion of any such law, regulation, or privilege, AUS shall provide the Government with a log that describes the withheld information and the foundation of the law, regulation, or privilege within thirty (30) Business Days of making their determination to withhold the information; AUS's cooperation and disclosure obligations under this Section include, but are not limited to, the following:

a. AUS shall designate one or more agents to accept and process the Government's requests for cooperation within fifteen (15) Business Days of signing this Agreement. AUS shall accept the Government's requests for cooperation via email through one or more dedicated email addresses.

b. Within fifteen (15) Business Days of receiving a request for cooperation, AUS shall conduct a diligent search for, and inform the Government whether it has identified, responsive information. If AUS identifies responsive information, AUS shall provide the Government with an estimated timeframe within which it expects to produce the information. Unless otherwise agreed to by the Government, this timeframe shall not exceed sixty (60) calendar days from the date that AUS receives the Government's request.

c. AUS shall provide quarterly reports listing: (1) all Suspicious Activity Reports filed; and (2) any credible allegations of FDCA or Controlled Substances Act violations that AUS learns was committed by users of AUS's payment-processing services in the United States.

d. AUS shall provide complete, truthful, and accurate information to the Government.

e. In its sole discretion, the Government may share any information, testimony, documents, records, or other tangible evidence that AUS provides to the Government with any federal, state, or foreign government authority.

**F. <u>Monetary Penalty</u>**

8. AUS agrees that the Monetary Penalty in the amount of eighty-five million dollars ("$85,000,000" or "$85 million") is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Section D. AUS agrees to pay the Monetary Penalty of $85 million to the U.S. Treasury no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion.

9. AUS's payment of the Monetary Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Monetary Penalty is the maximum penalty that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher fine, although the Government agrees that under those circumstances, the Government will

recommend to a court that the Monetary Penalty paid by AUS pursuant to this Agreement be applied toward any fine that a court might impose as part of its judgment against AUS. AUS acknowledges that such a recommendation will not be binding in any court.

10. AUS acknowledges that no U.S. tax deduction may be sought in connection with the payment of any part of the Monetary Penalty. AUS shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the penalty amount that AUS pays pursuant to this Agreement.

**G. Civil Forfeiture**

11. AUS acknowledges that money and/or property is subject to civil forfeiture because of overseas merchants' and their United States-based buyers' violations of the FDCA transacted through Alibaba's online platforms, including Alibaba.com. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), AUS consents to civil forfeiture of one hundred ninety million dollars ("$190,000,000 or "$190 million") ("Forfeiture Amount").

12. AUS shall pay the Forfeiture Amount, plus any associated transfer fees, no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion. AUS hereby releases any and all claims that it may have to the Forfeiture Amount and agrees that the forfeiture of such funds may be accomplished either administratively or judicially at the Government's election, and waives the requirements of any applicable laws, rules, or regulations governing the forfeiture of assets, including those requiring notice of forfeiture. If the Government seeks to forfeit the Forfeiture Amount judicially, AUS waives all requirements pertaining to forfeiture set forth in Title 18, United States Code, Section 983, including the filing of a civil forfeiture complaint as to the Forfeiture Amount and notice of the same, and consent to entry of an order of forfeiture directed to such funds. If the Government seeks to forfeit AUS's Forfeiture Amount administratively, AUS consents to the entry of a declaration of forfeiture and waives the requirements of Title 18, United States Code, Section 983 regarding notice of seizure in non-judicial forfeiture matters.

13. AUS agrees to sign any additional documents necessary to complete forfeiture of the Forfeiture Amount. AUS also agrees that it shall not file any petitions for remission, restoration, or any other assertion of ownership or request for return relating to the Forfeiture Amount, or any other action or motion seeking to collaterally attack the seizure, restraint, forfeiture, or conveyance of the Forfeiture Amount, nor shall AUS assist any others in filing any such claims, petitions, actions, or motions.

14. AUS's payment of the Forfeiture Amount is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Forfeiture Amount surrendered by AUS is the maximum forfeiture that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher criminal forfeiture amount or substitute money judgment in a criminal proceeding, although the Government agrees that under those circumstances, the Government will recommend to a court that the Forfeiture Amount paid by AUS pursuant to this Agreement be applied toward any criminal forfeiture or substitute money judgment that a court

might impose as part of its judgment. AUS acknowledges that such a recommendation will not be binding on any court.

15. AUS acknowledges that it shall not claim, assert, or apply for, either directly or indirectly, any tax deduction, tax credit, or any other offset with regard to any U.S. federal, state, or local tax or taxable income in connection with the payment of any part of the Forfeiture Amount. AUS shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the Forfeiture Amount that AUS pays pursuant to the Agreement.

**H. <u>Conditional Release from Liability</u>**

16. Except as otherwise provided in this Agreement, the Government agrees that it will not bring any criminal or civil case against AUS relating to (i) any of the conduct described in the Statement of Facts of this Agreement; (ii) any of the information disclosed by AUS to the Government as part of this investigation prior to executing this Agreement; or (iii) any information known by the Government prior to the execution of this Agreement that relates to the conduct described in the Statement of Facts to this Agreement. However, the Government may use any information related to the conduct described in the Statement of Facts against AUS: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; or (c) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. Nothing herein shall preclude AUS from presenting this Agreement, and the Government's agreement herein, to any other law enforcement, regulatory, or government authority as evidence of cooperation with, and resolution of claims by, the Government with respect to the conduct described herein.

17. This Agreement does not provide any protection against prosecution for any future conduct by AUS. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with AUS.

**I. <u>Corporate Compliance Program</u>**

18. AUS shall implement (or continue to the extent already implemented) a corporate compliance program that meets the minimum elements and standards provided in **Attachment C**. AUS's corporate compliance program shall be designed (or continue to the extent already implemented) to detect and prevent violations of the BSA, laws prohibiting money laundering and unlicensed money transmission, other laws prohibiting illicit finance, and violations of the FDCA through AUS's payment processing services. No later than thirty (30) calendar days after the Term expires, AUS, through its Chief Executive Officer and Chief Compliance Officer, will certify to the Government, in the form of executing the document attached as **Attachment E** to this Agreement, that AUS has met its compliance obligations pursuant to this Agreement. Such certification will be deemed a material statement and representation by AUS to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519.

19. AUS will periodically review its corporate compliance program and correct any deficiencies within AUS's ethics programs, policies, procedures, systems, and internal controls

regarding compliance with the BSA, laws prohibiting money laundering, and other laws prohibiting illicit finance.

J. **Compliance Monitoring**

20. For the purpose of assessing or determining compliance with this Agreement, the Government may, upon written notice to AUS:

a. require AUS to submit written reports, certifications, or other information relating to compliance with any provision of this Agreement;

b. interview, under oath or otherwise, any of AUS's officers, employees, or agents who may have relevant knowledge; and

c. require AUS to produce documents, communications, data, and other information in its possession, custody, or control relating to compliance with any provision of this Agreement, subject to applicable laws and regulations.

21. AUS shall designate one or more agents of AUS to accept and process the Government's requests related to compliance monitoring within seven (7) Business Days of signing this Agreement. AUS shall accept the Government's requests for compliance monitoring information via email through one or more dedicated email addresses maintained by each company. AUS shall comply with the Government's compliance monitoring requests within thirty (30) calendar days of receiving the Government's written notice. In its sole discretion, the Government may grant extensions of time for AUS to comply with the Government's requests for compliance monitoring information.

K. **Non-Prosecution**

22. The Government agrees that if AUS complies with its obligations under this Agreement, (a) the Government will not bring any criminal case or other enforcement action against AUS or any of its present or former subsidiaries or affiliates relating to any of the conduct described in the Statement of Facts; and (b) at the conclusion of the Term, this Agreement shall expire. In assessing AUS's compliance, the Government shall consider the totality of AUS's conduct under this Agreement and shall not declare a failure to comply based solely on minor, or promptly cured technical violations, which shall be determined at the Government's discretion, acting reasonably. To the extent there is conduct disclosed by AUS that is not set forth in this Agreement, such conduct shall not be exempt from further prosecution and is outside the scope of this Agreement. AUS expressly acknowledges and agrees that this Agreement does not preclude the filing of a case arising from conduct that is not described in this Agreement and the Statement of Facts.

L. **Breach of the Agreement**

23. If, during the Term, AUS (a) commits any felony under United States law; (b) knowingly and willfully provides in connection with this Agreement materially false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) knowingly and materially fails to cooperate as provided in Section E of this Agreement; (d) knowingly fails to implement compliance programs in all material respects as provided in Section I of this Agreement and **Attachment C**; or (e) otherwise knowingly and materially fails to perform or fulfill any term or condition of this Agreement, AUS shall be in breach, and thereafter be subject to prosecution for violations of applicable federal law, including, but not limited to, for conduct described in the attached Statement of Facts, regardless of whether the Government obtains knowledge of the breach after the Term expires.

24. Any prosecution resulting from a knowing and material breach of this Agreement, as defined in Section L, Paragraph 23, may be pursued by the Government in the United States District Court for the District of Rhode Island or any other appropriate venue. As to the conduct described in the Statement of Facts, AUS knowingly waives any constitutional or statutory right to venue and to presentment to or indictment by a grand jury for felony crimes, and consents to the filing of an information or complaint for said crimes. Determination of whether AUS has breached this Agreement and whether to pursue prosecution shall be in the Government's sole discretion, acting reasonably, after good-faith consideration of any written response submitted by AUS pursuant to Paragraph 26. Any such prosecution may be premised on information provided by AUS.

25. Any prosecution relating to the conduct described in this Agreement or relating to the conduct of AUS in connection with a violation of the FDCA known to the Government prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against AUS notwithstanding the expiration of the statute of limitations, for the period between the signing of this Agreement and the expiration of the Term plus six months. Thus, by signing this Agreement, AUS agrees that the statute of limitations with respect to any such prosecution against AUS that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus six months. In addition, AUS agrees to toll the running of the statute of limitations as to any violation that occurs during the Term for one year from the date upon which the violation occurs, and that this period shall be excluded from any calculation of time for purposes of the application of any applicable statute of limitations.

26. In the event the Government determines that AUS has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23, the Government agrees to provide AUS with written notice of such breach prior to instituting any prosecution resulting from such breach. Written notice of breach shall include: (a) the provision breached; (b) the approximate date of the breach; and (c) a description of the breach sufficient to permit AUS to cure. Within thirty (30) calendar days of receipt of such notice, AUS shall have the opportunity to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions AUS has taken to address and remediate the breach, which explanation the Government shall consider in determining whether to pursue prosecution of AUS.

27. In the event that the Government determines that AUS has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23: (a) all statements made by or on behalf of AUS to the Government, including the Statement of Facts, and any testimony given by AUS before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Government against AUS; and (b) AUS shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, Section 1B1.1(a) of the USSG, or any other federal rule that any such statements or testimony made by or on behalf of AUS prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current officer, director, or employee, or any person acting on behalf of, or at the direction of, AUS will be imputed to AUS for the purpose of determining whether AUS has knowingly and materially violated any provision of this Agreement as defined in Section L, Paragraph 23 shall be in the sole discretion of the Government, acting reasonably.

28. It is further understood that within thirty (30) calendar days after receiving a notice of breach, or to such longer period as the Government may agree in writing, AUS may cure the breach to the Government's reasonable satisfaction ("Cure Period").

29. AUS acknowledges that the Government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if AUS breaches this Agreement and this matter proceeds to judgment. AUS further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

30. On the date that the period of non-prosecution specified in this Agreement expires, AUS, by its respective Chief Executive Officer and the Chief Compliance Officer, shall submit their certification set forth in **Attachment D** and certify to the Government that AUS has met its obligations pursuant to this Agreement. Each certification will be deemed a material statement and representation by AUS in a matter within the jurisdiction of the executive branch of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the District of Rhode Island.

## M. Applicability to AUS's Related Business Entities

31. Except as may otherwise be agreed by the Government and AUS in connection with a particular transaction, AUS agrees that in the event that, during the Term, AUS undertakes any change in corporate form, including if AUS sells, merges, or transfers business operations that are material to AUS's consolidated operations, or to the operations of any of its subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, AUS shall include in any contract for sale, merger, transfer, or other

change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

32. The purchaser or successor in interest must also agree in writing that the Government's ability to declare breach under this Agreement is applicable in full force as to that entity. AUS agrees that the failure to include these provisions in the transaction will make any such transaction null and void. AUS shall provide notice to the Government at least thirty (30) calendar days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Government shall notify AUS within fifteen (15) calendar days if it determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If, at any time during the Term, AUS engages in a transaction that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Government may deem it a breach of this Agreement pursuant to Section L, paragraph 23 of this Agreement. Nothing in this Agreement shall restrict AUS from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Government, acting reasonably.

**N. <u>Public Statements by AUS</u>**

33. AUS shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for AUS, make any public statement, contradicting in whole or in part the acceptance of responsibility by AUS as set forth in this Agreement. Any such contradictory statement shall, subject to cure rights of the Company described in this paragraph, constitute a knowing and material breach of this Agreement, as defined in Section L, Paragraph 23, and AUS thereafter shall be subject to prosecution as set forth in this Agreement. The decision whether any public statement by any such person contradicting a fact contained in this Agreement will be imputed to AUS for the purpose of determining whether it has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23, shall be in the sole discretion of the Government, acting reasonably.

34. If the Government determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Government shall notify AUS, and AUS may avoid a breach of this Agreement by publicly repudiating such statement(s) within ten (10) Business Days after notification. AUS shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in this Agreement provided that such defenses and claims do not contradict, in whole or in part, a statement contained in this Agreement. This paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of AUS in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of AUS. Any determination by the Government, acting reasonably, that a public statement constitutes a knowing and material breach of this Agreement shall be subject to the 30-day written notice and opportunity to respond procedure set forth in Paragraph 26 before any prosecution may be initiated.

35. If AUS issues a press release or holds any press conference in connection with this Agreement, AUS shall first consult with the Government to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Government and AUS; and (b) whether the Government has any objection to the release.

36. The Government agrees, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of AUS's cooperation and remediation. By agreeing to provide this information to such authorities, the Government does not agree to advocate on behalf of AUS. Instead, the Government only agrees to provide facts to be evaluated independently by such authorities.

**O. <u>Limitations on Binding Effect of Agreement</u>**

37. This Agreement is binding on AUS and the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section. It does not bind any other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies. The Government shall bring the cooperation of AUS and its compliance with its obligations under this Agreement to the attention of such agencies and authorities if requested to do so by AUS.

**P. <u>Notice</u>**

38. Any notice to the Government under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

Chief, Criminal Division
U.S. Attorney's Office
District of Rhode Island
One Financial Plaza, 17th Floor
Providence, RI 02903

Director, Enforcement & Affirmative Litigation Branch, Civil Division
U.S. Department of Justice
450 5th Street NW, Room 6400 South
Washington, DC 20001

Chief, Bank Integrity Unit
Money Laundering, Narcotics, and Forfeiture Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20005

39. Any notice to AUS under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

AUS Merchant Services, Inc.
525 Almanor Avenue
Sunnyvale, CA 94085

40. Notice shall be effective upon actual receipt by the Government or AUS. Notice shall also be given by email to any email addresses designed by the Government or AUS.

**Q. Complete Agreement**

41. The Government and AUS acknowledge that each party has had a full opportunity to negotiate the terms of this Agreement. The rule of construction that interprets contracts against the drafter, therefore, shall not apply to this Agreement. This Agreement, including its attachments, sets forth all the terms of the Agreement between AUS and the Government. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Government, the attorneys for AUS, and a duly authorized representative of AUS. The following documents are attached to and incorporated into this Agreement:

**Attachment A:** The AUS Merchant Services, Inc. Statement of Facts

**Attachment B:** The AUS Merchant Services, Inc. Certificate of Corporate Resolutions

**Attachment C:** The AUS Merchant Services, Inc. Corporate Compliance Program

**Attachment D:** The AUS Merchant Services, Inc. Disclosure Certification

**Attachment E:** The AUS Merchant Services, Inc. Compliance Certification

**AGREED AND CONSENTED TO:**

***The United States of America***

CHARLES C. CALENDA
First Assistant United States Attorney

Date: 6/29/2026 By: [signature]
Dulce Donovan
Executive Assistant U.S. Attorney

Date: 6/29/2026 By: Julianne Klein
Julianne Klein
Assistant U.S. Attorney

LISA K. HSIAO
Director
Enforcement and Affirmative Litigation Branch, Civil Division

Date: 6/29/2026 By: ______________________
Patrick R. Runkle
Assistant Director

Date: 6/29/2026 By: ______________________
Colin W. Trundle
Trial Attorney

Date: 6/29/2026 By: ______________________
Cadesby B. Cooper
Trial Attorney

MARGARET A. MOESER
Chief
Money Laundering, Narcotics and Forfeiture Section, Criminal Division

Date: 6/29/2026 By: ______________________
Rachel N. Agress
Trial Attorney

Date: 6/29/2026 By: ______________________
Elysa Wan
Trial Attorney

**AGREED AND CONSENTED TO:**

***AUS Merchant Services, Inc.***

Date: June 29, 2026 By: ______________________
Roseate Wagner
Chief Executive Officer and President
AUS Merchant Services, Inc.

Date: June 29, 2026 By: ______________________
Sharon Cohen Levin, Esq.
Counsel for AUS Merchant Services, Inc.

## ATTACHMENT A

## STATEMENT OF FACTS

The following Statement of Facts is incorporated by reference as part of the Non-Prosecution Agreement (the "Agreement") between the Government and AUS (as defined in the Agreement). AUS agrees and stipulates that the following information is true and accurate. AUS admits, accepts, and acknowledges that it is responsible for the acts of its officers, directors, employees and agents as set forth below. Should the Government later pursue the prosecution that is covered by this Agreement, AUS agrees that it will neither contest the admissibility of, nor contradict, this Statement of Facts in any such proceeding. The following facts describe events that occurred between approximately January 2020 and December 2023.

### A. AUS Background and Business Model

1. AUS (formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.) was registered in Delaware and maintained its principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085.

2. Partnering with certain of its affiliates, AUS offered payment processing services to the e-commerce platforms that were owned and operated by Alibaba Group Holding Limited and its relevant subsidiaries ("Alibaba"), including Alibaba.com. Alibaba Group Holding Limited was organized and existed under the laws of the Cayman Islands, with its principal executive offices in Hangzhou, China.

3. AUS's business model included, but was not limited to, providing payment processing and settlement services to enable overseas sellers on Alibaba.com to accept payments from United States-based buyers. When AUS facilitated payment processing and settlement services for Alibaba's merchants selling to United States-based buyers, it received certain information about transactions. The information generally included the merchant's and buyer's identities as well as a description of the product ordered ("sale order") through Alibaba.com. AUS commenced payment processing and settlement services for Alibaba.com transactions in 2020.

4. AUS's payment processing and settlement services included accepting United States Dollar-denominated payments on behalf of overseas merchants linked to sales orders on Alibaba.com.

5. Payors could make payments linked to Alibaba's e-commerce transactions in multiple ways, including through credit card payments, other alternative payment methods, or, solely for Alibaba.com, wire transfer. The United States Dollar-denominated wire transfer payments directed to overseas merchants on Alibaba.com were accepted by AUS into one of two United States based-bank accounts of AUS. When Alibaba.com buyers paid via wire transfer in U.S. dollars, the checkout page instructed buyers to include in the wire transfer instructions what was identified as the overseas merchant's "beneficiary account number" as well as the Alibaba.com order number.

6. The "beneficiary account number" was a unique routable identification number, which caused the deposits to be transferred to one of AUS's United States-based bank accounts, and for AUS or its affiliate to associate that credit with a specific merchant. Once payments were deposited into AUS's United States-based bank accounts, AUS transferred the funds to offshore accounts held by an AUS affiliate. The AUS affiliate then handled settlement of the transaction to the overseas merchant associated with that particular "beneficiary account number."

7. Beginning in July 2021, AUS also offered settlement services to support payments to merchants using the Alibaba.com Pay service ("Alibaba.com Pay"), which was separate from the Alibaba.com e-commerce platform. Unlike the global payment processing and settlement services for orders made on the Alibaba.com e-commerce site, merchants uploaded supporting documentation into a portal for sales consummated outside of the e-commerce site. Such transactions were higher risk because the Alibaba e-commerce platform did not electronically monitor data in real time as to the nature and purpose of the transaction.

**B. Legal and Regulatory Background**

8. Congress enacted the Bank Secrecy Act ("BSA") to address an increase in criminal money laundering activity utilizing financial institutions. The BSA requires financial institutions to establish, implement, and maintain risk-based anti-money laundering ("AML") programs to combat money laundering and the financing of terrorism through financial institutions.

9. AUS is a "financial institution" as defined in the BSA. 31 U.S.C. § 5312(a)(2); 31 C.F.R. § 1010.100. As a financial institution and money services business ("MSB"), AUS is required to establish, implement, and maintain an effective AML compliance program that, at a minimum, provides for: (a) internal policies, procedures, and controls reasonably designed to prevent money laundering; (b) a program design commensurate with the risks posed by the location, size, nature, and volume of the financial services provided by the MSB; (c) an individual to coordinate and monitor day-to-day compliance with the BSA and AML requirements; (d) an ongoing employee training program; (e) independent review of programs; and (f) procedures reasonably designed to assure compliance with BSA and AML requirements when conducting operations via data processing systems. 31 U.S.C. § 5318(h); 31 C.F.R. § 1022.210.

10. To satisfy the BSA's requirements, an MSB must maintain a risk-based AML program, tailor its systems for identifying suspicious activity to effectively monitor its customer base and the products and services it offers, and report suspicious activity. Moreover, an MSB's AML policies, procedures, and controls must be calibrated to address emerging and evolving risk, including risk associated with new products and services and new patterns of suspicious activity.

11. The BSA authorizes the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") to "require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1).

12. At all times relevant to this case, by regulation, FinCEN required MSBs to file a Suspicious Activity Report ("SAR") on any transaction involving or aggregating at least $2,000

where the MSB "knows, suspects, or has reason to suspect." 31 C.F.R. § 1022.320(a)(2). These requirements apply to a transaction that:

a. involves funds derived from illegal activities or is intended or conducted in order to hide or disguise funds or assets derived from illegal activities (including, without limitation, the ownership, nature, source, location, or control of such funds or assets) as part of a plan to violate or evade any federal law or regulation or to avoid any transaction reporting requirement under federal law or regulation;

b. is designed to evade any requirements of the BSA or of any other regulations promulgated under the BSA;

c. has no business or apparent lawful purpose, and the MSB knows of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction; or

d. involves use of the MSB to facilitate criminal activity.

13. MSBs have an obligation to file a SAR "no later than 30 calendar days after the date of initial detection . . . of facts that may constitute a basis for filing a SAR." *Id.* § 1022.320(b)(3).

## C. AUS's Risk Function and AML Compliance Program Did Not Prevent Federal Food, Drug, and Cosmetic Act ("FDCA") Violations by Alibaba Merchants and Other Bad Actors.

14. With respect to AUS's U.S.-based customers, AUS conducted "Know Your Customer" protocols and due diligence. With respect to AUS's affiliates' overseas customers, AUS relied upon AUS's overseas affiliates to conduct certain functions of its AML compliance program for overseas merchants, including those customers using AUS for wire transfers. Until 2022, AUS relied upon AUS's overseas affiliates to monitor transactions involving overseas merchants selling goods on Alibaba.com, including those using AUS's unique routable identification numbers for wire transfers. In 2022, AUS also began using its own transaction monitoring system, previously used for other products—for transactions originating on Alibaba.com, rather than continuing to rely on its overseas affiliates. However, when implementing this change, AUS failed to fully incorporate wire data from its United States-based bank accounts to supplement the sales order data that it used to monitor. As a result, AUS's monitoring did not always show that some of these wire transfer transactions were funded by payments originating from high-risk jurisdictions or from multiple payors on a single invoice.

15. AUS and its affiliates would, in certain instances, report merchants who sold Subject Merchandise on Alibaba's e-commerce platforms, including Alibaba.com, to Alibaba, rather than systematically restricting those merchants themselves.

16. At times, Alibaba.com's overseas merchants used AUS's payment processing and settlement services to facilitate the sale and importation of Subject Merchandise, including pharmaceutical products, into the United States, in violation of the FDCA.

17. In October 2022, AUS created a case investigating Merchant A, an Alibaba overseas merchant who used AUS's payment processing and settlement services. An AUS employee reviewed the sales order information and noted that Merchant A had sold prohibited Subject Merchandise to United States customers using AUS's payment processing services. AUS filed a regulatory report in connection with Merchant A's transaction in October 2022 and relevant prior activity. In January 2023, Merchant A sold additional prohibited Subject Merchandise to a United States customer. In July 2023, an AUS employee reviewed the transaction and sales order and noted that the product was "prohibited" and could not "be sold online without prescription," but concluded that the activity was below the regulatory reporting requirements.

18. AUS acknowledges that it processed transactions for sales between overseas merchants for Alibaba.com and United States-based buyers, which involved Subject Merchandise that was imported into the United States in violation of law. AUS agrees not to contest the forfeiture of the Forfeiture Amount of $190 million pursuant to Title 18, U.S. Code, Section 545.

## ATTACHMENT B

## THE AUS MERCHANT SERVICES, INC. CERTIFICATE OF CORPORATE RESOLUTIONS

WHEREAS, AUS Merchant Services, Inc. ("AUS") has been engaged in discussions with the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section (collectively, the "Government"); and

WHEREAS, in order to resolve such discussions, it is proposed that AUS enters into a certain non-prosecution agreement with the Government (the "Agreement"); and

WHEREAS, AUS's internal counsel, together with outside counsel for AUS (collectively, "AUS Counsel"), have advised AUS's Board of Directors of its rights, possible defenses, the provisions of the U.S. Sentencing Guidelines, and the consequences of entering into such Agreement with the Government;

Therefore, the Board of Directors has RESOLVED that:

1. AUS agrees to pay a monetary penalty in the amount of $85,000,000 and consents to a civil forfeiture of $190,000,000 pursuant to Sections F and G of the Agreement;

2. AUS accepts the terms and conditions of this Agreement, including, but not limited to: (a) a knowing waiver for purposes of the Agreement and any charges by the United States arising out of the conduct described in the Statement of Facts in **Attachment A** of the Agreement of any objection with respect to indictment and venue and consents to the filing of a civil forfeiture complaint, as provided under the terms of the Agreement, in the United States District Court for the District of Rhode Island, or any other appropriate venue; and (b) a knowing waiver of any defenses based on the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Government prior to the date on which the Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of the Agreement;

3. Roseate Wagner, Chief Executive Officer and President of AUS, is hereby authorized, empowered, and directed, on behalf of AUS, to execute the Agreement substantially in such form as reviewed by this Board of Directors at this meeting with such changes as AUS Counsel may approve;

4. Roseate Wagner, Chief Executive Officer and President of AUS, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms or provisions of any agreement, or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

5. All of the actions of AUS Counsel, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of AUS.

Date: June 29, 2026

By: [signature]
Richard Chih-Chiu Lin
Board of Directors
AUS Merchant Services, Inc.

## ATTACHMENT C

## THE AUS MERCHANT SERVICES, INC. CORPORATE COMPLIANCE PROGRAM

In order to ensure the adequacy of its internal controls, policies, and procedures regarding compliance with the Bank Secrecy Act, Title 31, United States Code, Section 5311, *et seq.* ("BSA") and anti-money laundering ("AML") laws and regulations, which include but are not limited to Title 31, Code of Federal Regulations, Part 1022 (collectively, "BSA and AML Laws"), and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301 et seq.) ("FDCA"), AUS Merchant Services, Inc. ("AUS"), a payment processor operating in the United States, agrees to continue to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its existing internal controls, policies, and procedures.

AUS has taken steps to remediate and enhance its BSA/AML and other compliance programs to prevent violations of the FDCA and other federal laws. These efforts included the hiring of additional staff and retaining the support of outside compliance consultants and counsel.

Where necessary and appropriate, AUS agrees to ensure that its compliance program, including internal controls, compliance policies, and procedures, complies with BSA and AML Laws and other federal laws. AUS further agrees to ensure that its compliance program is designed to detect, deter, investigate, and report violations of the FDCA and other federal laws, where required. At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of AUS's existing internal controls, compliance program, policies, and procedures:

*Commitment to Compliance*

1. AUS will ensure that its directors and management provide strong, explicit, and visible support for compliance with BSA/AML Laws, the FDCA, and the Controlled Substances Act ("CSA"). AUS directors and management will demonstrate this commitment through their actions and communications with employees.

2. AUS will continue to ensure that management reinforces AUS's commitment to compliance policies and principles related to BSA/AML, the FDCA, and prevention of federal criminal statutory violations. Management will enforce adherence to those policies and principles. AUS will continue to foster a culture of ethics and compliance with the laws of the United States in its day-to-day operations at all levels of AUS.

*Risk Assessment and Review*

3. AUS will continue to utilize a risk management process to identify, analyze, and address the individual circumstances of AUS, in particular the risks facing AUS from the potential sale of Subject Merchandise in the United States through its payment processing for e-commerce services and from violations of BSA and AML Laws.

4. On the basis of its risk assessment, AUS shall continue to take appropriate steps to re-design, enhance, implement, or modify its compliance program to reduce the risk of violations of BSA and AML Laws, and the FDCA.

*Policies and Procedures*

5. AUS will continue to maintain a clearly articulated and visible corporate policy against violations of BSA and AML Laws and the FDCA. These policies shall be memorialized in written compliance policies.

6. AUS will continue to maintain and appropriately enhance compliance policies and procedures designed to reduce the prospect of violations of BSA and AML Laws and the FDCA, including addressing any systemic issues. AUS will continue to take appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violations of BSA and AML Laws and the FDCA by personnel at all levels of AUS. These policies and procedures shall apply to all directors, officers, and employees and, where necessary and appropriate, outside parties acting on behalf of AUS in the United States or foreign jurisdictions, including, but not limited to, agents, intermediaries, consultants, representatives, distributors, contractors, suppliers, and joint venture partners (collectively, "agents and business partners"). AUS shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of AUS.

7. Within ninety (90) calendar days of the execution of the Agreement, AUS shall implement an electronic portal or mailbox ("Law Enforcement Mailbox" or "Mailbox") that is dedicated to producing information related to United States-based users of AUS's online services in response to United States-based legal process, including valid U.S. subpoenas, court orders, and search warrants, that is related to United States-based criminal investigations. The Law Enforcement Mailbox shall be available to federal, state, and local law enforcement agencies in the United States. AUS agrees to waive any federal or state statutory right to personal service of United States-based legal process that is related to United States-based criminal investigations. AUS will comply with such legal process unless it receives relief from doing so by a court of competent jurisdiction in the United States. AUS will provide appropriate instructions on how to use the Law Enforcement Mailbox. The Mailbox is for the exclusive use of U.S.-based law enforcement agencies conducting criminal investigations.

8. AUS will continue to maintain a system of internal controls reasonably designed to ensure the completeness and accuracy of records to the extent required by applicable laws and regulations.

9. AUS will continue to maintain a system to retain books and records, including a system of internal controls, reasonably designed to ensure the prevention and detection of violations of BSA/AML Laws, the FDCA, and the CSA.

10. AUS will continue to review its compliance policies and procedures regarding BSA, AML, FDCA, and other applicable federal laws as needed, to address changing and emerging risks.

*Suspicious Activity Reports*

11. AUS has created and will continue to maintain and appropriately enhance policies and procedures to ensure that it will continue to follow all laws and regulations concerning the filing of Suspicious Activity Reports ("SARs") in the United States for any suspicious activity, as defined by the BSA and its implementing regulations. This includes, but is not limited to, filing SARs identifying: suspicious activity identified by AUS related to transactions or attempted transactions that involve $2,000 or more in funds or in aggregate funds and are to, from, or through the United States, regardless of where in the world the suspicious transactions originate or are received, and regardless of where in the world the data relating to such transactions is located.

*Transaction Monitoring and Reporting*

12. As part of its compliance program, AUS has instituted and will continue to maintain and appropriately enhance its transaction monitoring program. The transaction monitoring program operated by AUS will be adaptive to identified risks, including risks identified internally by AUS, by regulators, and in written findings, including review of publicly available information and law enforcement referrals or inquiries. AUS will continue to ensure the transaction monitoring program is informed by its risk profile and appropriately accounts for the areas of greatest risk, with particular emphasis on higher-risk products, services, customers, and geographies. AUS will continue to regularly review its transaction monitoring program, including its scope, resources, and coverage. AUS will continue to test and update the transaction monitoring program as needed to ensure it appropriately addresses risk areas.

13. As part of its compliance program, AUS has instituted and will continue to maintain and appropriately enhance procedures for monitoring transactions settled or cleared on behalf of any other money services business or e-commerce businesses that AUS provides services to, which includes collection, transmission, and monitoring of transactions and counterparty information for all transactions processed through AUS. Transaction monitoring will conform with applicable laws and regulations. AUS will maintain clear records of the data it utilizes to conduct transaction monitoring, including a description of the categories of data used by AUS for transaction monitoring that is made available upon request to U.S. regulators.

14. AUS has instituted and will continue to maintain and appropriately enhance its policies, procedures, and processes for managing alerts identified by its transaction monitoring program. This includes, but is not limited to, making decisions on SARs, and completing and filing SARs. AUS will continue to ensure adequate staff are assigned to the identification, research, and reporting of suspicious activities.

15. AUS will continue to maintain and appropriately enhance its policies, procedures, and processes for identifying subjects of law enforcement requests, monitoring the transaction activity of those subjects when appropriate, identifying suspicious activity related to those subjects, and filing, as appropriate, SARs related to those subjects.

16. AUS has and will continue to generate reports for its BSA Officer's review which includes patterns or outliers in transaction activity that may be indicative of illicit conduct. AUS's BSA Officer or their designee, who shall be located in the United States, will continue to review

patterns or outliers in transaction activity and shall consider those reports in enhancing AUS's compliance with BSA and AML Laws, including the reporting of potential FDCA violations and other federal criminal statutes. AUS's management and AUS's BSA officer will continue to select filtering criteria and thresholds to produce such transaction reports, subject to review and approval, that will continue to enable AUS to detect potential patterns and typologies of unusual activity and for AUS management to receive reports of that activity.

17. AUS's transaction monitoring systems have been and will continue to be independently tested and reviewed for reasonable filtering criteria and thresholds, and such reviews are included in independent audits of AUS's compliance program and function.

*Third-Party Relationships*

18. As part of its compliance program, AUS will continue to institute and enhance appropriate, risk-based policies and procedures related to third-party money services business or e-commerce businesses who utilize AUS payment processing or settlement services in accordance with applicable laws and regulations.

*Independent, Autonomous, and Empowered Oversight*

19. AUS has assigned and will continue to assign responsibility to one or more senior corporate executives of AUS for the implementation and oversight of AUS's compliance policies and procedures regarding BSA and AML Laws and the FDCA. Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, including internal audit, AUS's Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of stature and autonomy from management as well as sufficient resources and authority to maintain such autonomy.

*Training and Guidance*

20. AUS has implemented and will continue to enhance and maintain mechanisms designed to ensure that its policies and procedures regarding BSA and AML Laws and the FDCA are effectively communicated to all directors, officers, employees, and, where necessary and appropriate, agents and business partners. These mechanisms shall include: (a) training for all directors and officers, all employees in positions of leadership or trust, any positions that require such training (*e.g.*, internal audit, sales, legal, compliance, finance), and, where necessary and appropriate, agents and business partners; (b) metrics for measuring knowledge retention and effectiveness of the training; and (c) corresponding certifications by all such directors, officers, employees, agents and business partners, certifying compliance with the training requirements. AUS will continue to conduct training in a manner tailored to the audience's size, sophistication, and subject-matter expertise and, where appropriate, will continue to discuss prior compliance incidents.

21. AUS will continue to maintain or, where necessary, establish an effective system for providing guidance and advice to directors, officers, employees, and, where necessary and appropriate, agents and business partners, on complying with its policies and procedures regarding

BSA and AML Laws and the FDCA, including when such individuals need advice on an urgent basis, or need advice in any foreign jurisdiction in which AUS operates.

*Confidential Reporting Structure and Investigation of Misconduct*

22. AUS will continue to maintain or, where necessary, establish an adequate system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, agents and business partners concerning violations of AUS's policies and procedures regarding BSA and AML Laws and the FDCA.

23. AUS will continue to maintain or, where necessary, establish an effective process and sufficient resources for responding to, investigating, and documenting allegations of violations of BSA and AML Laws, its compliance policies, and the FDCA. AUS will continue to handle the investigations into such complaints in an effective manner, including routing the complaints to proper personnel, conducting timely and thorough investigations, and following up with appropriate discipline where necessary.

24. AUS will conduct a root cause analysis of any shortcomings related to compliance with BSA and AML Laws, the FDCA, or AUS's compliance policies, which shall include the review of any prior failures during the time period covered in the Agreement. This root cause analysis shall identify whether there are any systemic issues and/or any control failures. AUS will timely and appropriately remediate any identified issues related to compliance with BSA and AML Laws, the FDCA, or AUS's compliance policies. AUS will ensure that root causes, including systemic issues and control failures, and relevant remediation are shared with management as appropriate.

*Mergers and Acquisitions*

25. AUS will continue to develop and implement policies and procedures for mergers and acquisitions requiring that AUS conduct appropriate risk-based due diligence on potential new business entities, including appropriate due diligence regarding compliance with BSA and AML Laws and the FDCA by legal, accounting, and compliance personnel associated with those new business entities.

26. AUS will continue to ensure its compliance policies and procedures regarding BSA and AML Laws and the FDCA apply as quickly as is practicable to newly-acquired businesses or entities merged with AUS, and will promptly (a) train the directors, officers, employees, agents, and business partners consistent with Paragraph 20; (b) where warranted, conduct an audit of all newly acquired or merged businesses as quickly as is practicable concerning compliance with BSA and AML Laws and the FDCA; and (c) where warranted, establish a plan to integrate the acquired businesses or entities into AUS's enterprise resource planning systems as quickly as practicable.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS | CENTRAL DIVISION
Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.
No. 4:26-cv-00611-DPM-JJV

# EXHIBIT F

June 18 2026 customer service email

One-page source reproduction of the email concerning Trade Assurance Order 9190609501027582. The email offers $500 in Alibaba credit subject to conditions. This is the supplied document image, not an original EML file or a separately authenticated mailbox export.

Proposed appendix source pages 95–95.

EXHIBIT E · JUNE 18, 2026 CUSTOMER-SERVICE RESPONSE

 Exhibit - I

Gmail Burchfield Bradley <burchfieldbradley123@gmail.com>

**Solution for Trade Assurance Order 91906090501027582**

Alibaba Customer Service <queryreply@service.alibaba.com> Thu, Jun 18, 2026 at 1:28 AM
To: burchfieldbradley123@gmail.com

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

Since this order is over three years old, the logistics information can no longer be verified. Additionally, the platform has no record of you contacting customer service regarding this order.

However, we fully understand your concerns, to better assist you and enhance your purchasing experience on our platform, we will help you apply 500USD Alibaba credit (validity period is 90days from the date of issue) to settle this case. This credit can be applied to your future trade assurance order, including product and shipping costs, but please kindly note it cannot be applied to payment processing fees, taxes, or other additional services.
You may check the credit amount/validity in My Alibaba > Coupons and Credit.

Important note: All discounts (includes coupons & credit) can be combined used in your future trade assurance order as long as your order exceeds the minimum amount of USD 0.30.

Alibaba.com Credit cannot be used to settle the remaining balance of an order.

Please reply AGREE if you can accept this option.

Thank you for your kindly trust and patience with us.

Best Regard,
Alibaba Service Team

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS | CENTRAL DIVISION
Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.
No. 4:26-cv-00611-DPM-JJV

# EXHIBIT G

Original small claims complaint and receipt

Complete three-page source reproduction supplied by Plaintiff, comprising the small-claims complaint and order receipt. This original filing predates the June 18, 2026 email. The company purchaser identified on the receipt is preserved.

Proposed appendix source pages 97–99.

# SMALL CLAIMS COMPLAINT

**Pulaski County District Court**
**3001 West Roosevelt Road**
**Little Rock, Arkansas 72204**
**Phone: 340-6830 Fax: 340-6899**

FILED
11:58:22

CASE # PCSC-26-189

PLAINTIFF: Bradley Burchfield
ADDRESS: 5420 Kavanaugh Blvd #7927 (HM) PHONE: 479-223-0038 (WK)
CITY: Little Rock STATE: AR ZIP: 72217

VS.

DEFENDANT - 1: Alibaba.com Singapore E-Commerce Private Limited
EMPLOYMENT:
ADDRESS: 51 Bras Basah Rd #01-21 HOME ADDRESS:
CITY: Lazada One, Singapore 189554 STATE: CITY: STATE:
ZIP: PHONE: N/A ZIP: PHONE:

DEFENDANT - 2: Alibaba.com US E-Commerce Corp.
EMPLOYMENT:
ADDRESS: 525 Almanor Ave, Suite 400 HOME ADDRESS:
CITY: Sunnyvale STATE: CA CITY: STATE:
ZIP: 94085 PHONE: 844-292-4741 ZIP: PHONE:

AGENT OF SERVICE FOR CORPORATION (DEFENDANT'S): A Incorporating Services, Ltd.
ADDRESS: 7801 Folsom Blvd. Suite 202 CITY: Sacramento STATE: CA ZIP: 95826

---

AMOUNT OF RELIEF CLAIMED $ 5,000.00 DATE CLAIM AROSE: 6/1/2021

FACTS EXPLAINING THIS CLAIM: I attempted to purchase a product from Alibaba.com and it was never delivered, see attached receipt. I tried to resolve it through their dispute resolution process and to date it has not been resolved.

Bradley Burchfield
SIGNATURE OF PLAINTIFF

**IMPORTANT: IF YOU FAIL TO FILE A WRITTEN ANSWER WITHIN 30 DAYS FROM THE DATE YOU RECEIVE THIS COMPLAINT, JUDGMENT WILL BE ENTERED AGAINST YOU FOR THE AMOUNT OF THE CLAIM FILED PLUS THE COURT COSTS.**

CLAIM AMOUNT $ 5000.00
FILING FEES $ 65.00
SERVICE FEES $ 75.52 SERVER: CM
TOTAL $ 5140.52

# SMALL CLAIMS COMPLAINT

**Pulaski County District Court**
**3001 West Roosevelt Road**
**Little Rock, Arkansas 72204**
**Phone: 340-6830 Fax: 340-6899**

CASE # PCSC-26-189

PLAINTIFF Bradley Burchfield

ADDRESS 5420 Kavanaugh Blvd #7927 (HM) PHONE 479-223-0058 (WK)

CITY Little Rock STATE AR ZIP 72217

VS.

DEFENDANT - 3 Alibaba Group Holding Limited

EMPLOYMENT

ADDRESS 26/F Tower One, Times Square 1 Matheson St, Causeway Bay HOME ADDRESS

CITY Hong Kong, China STATE CITY STATE

ZIP PHONE 852-2215-5100 ZIP PHONE

DEFENDANT - 4 Zichang New Materials (SHANDONG) Co., LTD;

EMPLOYMENT

ADDRESS Room A2-907, Xinyuanxin Center HOME ADDRESS

CITY Huaxin Road, Jinan, STATE Shandong, China CITY STATE

ZIP PHONE N/A ZIP PHONE

AGENT OF SERVICE FOR CORPORATION (DEFENDANT'S) Incorporating Services Ltd.

ADDRESS 7801 Folsom Blvd Ste 202 CITY Sacramento STATE CA ZIP 95826

---

AMOUNT OF RELIEF CLAIMED $ 5,000.00 DATE CLAIM AROSE 6/1/2021

FACTS EXPLAINING THIS CLAIM I attempted to purchase a product from Alibaba.com and it was never delivered, see attached receipt. I tried to resolve it through their dispute resolution process and to date it has not been resolved.

Bradley Burchfield
SIGNATURE OF PLAINTIFF

**IMPORTANT: IF YOU FAIL TO FILE A WRITTEN ANSWER WITHIN 30 DAYS FROM THE DATE YOU RECEIVE THIS COMPLAINT, JUDGMENT WILL BE ENTERED AGAINST YOU FOR THE AMOUNT OF THE CLAIM FILED PLUS THE COURT COSTS.**

CLAIM AMOUNT $ 5000.00
FILING FEES $ 65.00
SERVICE FEES $ 75.52 SERVER CM
TOTAL $ 5140.52

# Receipt

Receipt number: #91906090501027582

Receipt date: 10:41 AM, May 29th, 2026 (PDT)

· Marketplace Operator:

**Alibaba.com Singapore E-Commerce Private Limited**

51 Bras Basah Road, #01-21 Lazada One, Singapore 189554

Sold by:

**Zicheng New Materials (shandong) Co., Ltd.**

Room A2-907, Xinyuanxin Center, Huaxin Road, Jinan, Shandong, CN

Buyer's company address:

**Burchfield Sales and Consulting LLC**

121 2nd st Apt A Hot Springs, AR 71913, Hot Springs, Arkansas, US

Ship to:

**Bradley Burchfield**

Bradley Burchfield +1 8706174081, Burchfield Sales and Consulting LLC, 6834 Cantrell Road Suite 210 little rock Arkansas 72207, 4 mile corner, Arkansas, 72207, United States of America

Order number: #91906090501027582

Order date: 8:55 PM, Jun 1st, 2021 (PDT)

**Order details**

| Item description | Qty | Unit price (excl. tax) | Total amount (excl. tax) |
|---|---|---|---|
| factory N-Isopropylbenzylamine CAS 102-97-6 | 1.00 | USD 615.0000 | USD 615.00 |
| | Subtotal | | USD 615.00 |
| | Shipping fee | | USD 50.00 |
| | Logistics insurance fee | | USD 50.00 |
| | Order total | | USD 715.00 |

| Payment information | |
|---|---|
| Order total | USD 715.00 |
| Payment processing fee | USD 21.38 |
| **Amount paid** | **USD 736.38** |
| Paid on June 01, 2021 (Credit/debit card) | USD 736.38 |

**Notice:**

- Alibaba.com reserves the right to determine and conclude payment processing fee in this receipt.
- This is a computer-generated document and no signature is required.
- You alone shall bear any adverse consequences arising from tampering with the content for purposes other than intended.
- This receipt is not a tax invoice. You may download a tax invoice after your order is completed.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS | CENTRAL DIVISION
Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.
No. 4:26-cv-00611-DPM-JJV

# EXHIBIT H

Motion and briefs addressed by this opposition

Complete ECF 104 and ECF 109. ECF 110 is reproduced only at pages 1–6, comprising the supporting brief. Its criminal exhibits at pages 7–91 are deliberately omitted because their contents need not be republished to address the argument at page 3.

Proposed appendix source pages 101–114.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**Central Division**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM-JJV |

**DEFENDANT ALIBABA GROUP HOLDING LIMITED'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL CORPORATION SERVICE COMPANY TO PRODUCE SUBPOENAED RECORDS AND ALTERNATIVE REQUEST FOR LIMITED DISCOVERY LEAVE**

Without waiving any arguments or defenses asserted in its pending motion to dismiss, Defendant Alibaba Group Holding Limited ("AGHL") hereby opposes Plaintiff's Motion to Compel Corporation Service Company to Produce Subpoenaed Records and Alternative Request for Limited Discovery Leave ("Plaintiff's Motion") (ECF No. 92) and Brief in Support ("Plaintiff's Brief") (ECF No. 93).

Plaintiff served the subpoena at issue here (the "Subpoena") on Corporation Service Company ("CSC") after it declined Plaintiff's attempt to effect service of process on AGHL by sending the service-of-process papers to CSC in New York. The Subpoena sought documents from CSC related to that rejection of service of process. *See* ECF No. 92, at 11-17. As Plaintiff wrote, the Subpoena sought documents concerning "CSC's receipt, processing, and rejection of federal process in Civil Action No. 4:26-CV-00611-DPM and CSC's Transmittal No. 344883454 [CSC's rejection of Plaintiff's service-of-process papers]." *Id.* at 11.

Although AGHL initially contested service of process based on CSC's rejection of Plaintiff's service-of-process papers, AGHL subsequently narrowed the issues by declining to press that argument. As the Court correctly stated in August, AGHL "no longer contests service of process." August 21, 2026 Order at 1 (ECF No. 64).

Any reasonable litigant would have acknowledged that AGHL's concession regarding service of process rendered the Subpoena moot but not Plaintiff. His goal is to harass AGHL and any entity or person associated in any way with AGHL (including its attorneys in this lawsuit), so he refuses to let this issue go. Plaintiff's Motion is a *post hoc* effort to rewrite the Subpoena to evade the fact that it focused on an issue (CSC's rejection of service-of-process papers) that is now moot, but Plaintiff's arguments lack merit.

***First***, Plaintiff discusses communications between him and AGHL's counsel involving counsel's effort to resolve this dispute by agreement, *see, e.g.*, Plaintiff's Brief at 4-5, without coming close to explaining why counsel's entirely appropriate attempt to try to reach agreement regarding this dispute justifies Plaintiff's continued effort to seek documents from CSC. Plaintiff's argument is a pretextual justification for seeking enforcement of the Subpoena that does not withstand scrutiny.

***Second***, Plaintiff's attempt to recast the Subpoena to address an issue presented in AGHL's pending motion to dismiss (ECF No. 37) and brief in support (ECF No. 38) also lacks merit. Plaintiff engages in unsupported speculation when trying to connect documents sought by the Subpoena to AGHL's lack-of-personal-jurisdiction dismissal arguments and asserting that AGHL's declaration in support of its motion to dismiss "describes its corporate status and absence of registration or offices in the United States," Plaintiff's Brief at 3 (citing ECF No. 38-7, ¶¶ 4, 10-11). However, that argument misses the mark because documents sought by the Subpoena—which

relate to rejection of service-of-process papers by a company that serves as a registered agent for numerous corporations—do not have any bearing on the issues discussed in the declaration paragraphs cited by Plaintiff. *See* ECF No. 38-7 ¶ 4 (stating AGHL's place of incorporation and principal place of business), ¶ 10 (stating that AGHL is not registered to do business in Arkansas or any other state in this country and does not direct, target, or specifically tailor its business activities to or at Arkansas or this country), ¶ 11 (stating that AGHL does not have any offices in Arkansas or elsewhere in this country). AGHL's lack-of-personal-jurisdiction arguments are not based on, and do not depend on, whether CSC was (or was not) authorized to accept service of process for AGHL for this lawsuit or why CSC rejected Plaintiff's service-of-process papers. AGHL's lack-of-general-personal-jurisdiction argument involves where AGHL is "at home" (place of incorporation and principal place of business) within the meaning of *Daimler AG v. Bauman*, 571 U.S. 117 (2014). AGHL's lack-of-specific-personal-jurisdiction argument involves whether AGHL engaged in suit-related conduct that created a substantial connection with the forum within the meaning of *Walden v. Fiore*, 571 U.S. 277 (2014). The CSC documents sought by the Subpoena are irrelevant to those issues.

This Court has rejected Plaintiff's other discovery efforts at this early stage of this lawsuit, where motions to dismiss are pending and no Rule 26(f) conference has occurred. The discovery sought here fares no better than Plaintiff's prior discovery efforts, which the Court rejected because they were based on "speculation and conjecture" and addressed irrelevant issues, August 21, 2026 Order at 1 (ECF No. 64).

AGHL expressly reserves the right to assert attorney-client privilege, the work product doctrine, and any other applicable privileges or protections with respect to any documents or communications that may be required to be produced as responsive to the Subpoena. Nothing in

this Opposition shall be construed as a waiver of any privileges or protections to which AGHL is entitled.

In conclusion, for the foregoing reasons, the Court should deny Plaintiff's Motion.

Dated: October 15, 2026

Respectfully submitted,
McDANIEL WOLFF PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
McDaniel Wolff PLLC
1307 West 4th Street
Little Rock, AR 72201
(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

and

BALANCE LAW FIRM

B. Robert Liu (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited; Alibaba.com US E-Commerce Corp.; Alibaba.com U.S. LLC; AUS Merchant Services, Inc.; Alibaba Group (U.S.) Inc.; and AliExpress E-Commerce One Pte. Ltd.*

CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2026, I electronically filed the foregoing Opposition with the Clerk of the Court using the CM/ECF system. I further certify that, because Plaintiff is proceeding *pro se* and is not a registered CM/ECF participant, I served a true and correct copy of the foregoing Opposition via United States First-Class Mail, postage prepaid, addressed to Plaintiff as follows:

Bradley Burchfield
5420 Kavanaugh Blvd. #7927
Little Rock, AR 72217

/s/ *Brittany D. Webb*
Brittany D. Webb, Ark. Bar No. 2023139

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**Central Division**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM-JJV |

**DEFENDANT ALIBABA GROUP HOLDING LIMITED'S**
**MOTION TO QUASH PLAINTIFF'S SUBPOENA OR FOR A PROTECTIVE ORDER**

Without waiving any arguments or defenses asserted in its pending motion to dismiss, Defendant Alibaba Group Holding Limited ("AGHL") hereby asks the Court to quash the subpoena that Plaintiff served on Corporation Service Company or for a protective order precluding the discovery sought by that subpoena. The grounds for this motion are set forth in the accompanying Brief in Support.

In accordance with Local Rule 7.2(g), AGHL's counsel conferred in good faith with Plaintiff regarding the specific issue in dispute, but the parties were unable to resolve their disagreement without intervention by the Court.

Dated: October 19, 2026

Respectfully submitted,

McDANIEL WOLFF PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
1307 West 4th Street
Little Rock, AR 72201

(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

and

BALANCE LAW FIRM

B. Robert Liu (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited; Alibaba.com US E-Commerce Corp.; Alibaba.com U.S. LLC; AUS Merchant Services, Inc.; Alibaba Group (U.S.) Inc.; and AliExpress E-Commerce One Pte. Ltd.*

CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2026, I electronically filed the foregoing Motion and Brief in Support with the Clerk of the Court using the CM/ECF system. I further certify that, because Plaintiff is proceeding *pro se* and is not a registered CM/ECF participant, I served a true and correct copy of the foregoing Motion and Brief in Support via United States First-Class Mail, postage prepaid, addressed to Plaintiff as follows:

Bradley Burchfield
5420 Kavanaugh Blvd. #7927
Little Rock, AR 72217

/s/ *Brittany D. Webb*
Brittany D. Webb, Ark. Bar No. 2023139

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**Central Division**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM-JJV |

**DEFENDANT ALIBABA GROUP HOLDING LIMITED'S BRIEF IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S SUBPOENA OR FOR A PROTECTIVE ORDER**

In response to pro se Plaintiff Bradley Burchfield's ongoing campaign of harassment and abuse of the judicial process, Defendant Alibaba Group Holding Limited ("AGHL") asks the Court to issue an order quashing the subpoena ("Subpoena") that Plaintiff served on Corporation Service Company ("CSC") or, in the alternative, for a protective order precluding the discovery sought by the Subpoena. AGHL files this brief and the accompanying motion ("this Motion") out of an abundance of caution, after having recently addressed the Subpoena (ECF No. 92, at 11-17) in AGHL's Opposition (ECF No. 104) to Plaintiff's Motion to Compel (ECF No. 92). AGHL recommends and requests that the Court consider the briefing on this Motion together with the briefing on that Motion to Compel when deciding both motions.

Plaintiff served the Subpoena on CSC after it declined his attempt to effect service of process on AHGL by sending the service-of-process papers to CSC in New York. The Subpoena sought documents from CSC related to that rejection of service of process. As Plaintiff wrote, the Subpoena sought documents concerning "CSC's receipt, processing, and rejection of federal

process in Civil Action No. 4:26-CV-00611-DPM and CSC's Transmittal No. 344883454 [CSC's rejection of Plaintiff's service-of-process papers]." ECF No. 92, at 11.

Although AGHL initially contested service of process based on CSC's rejection of Plaintiff's service-of-process papers, AGHL subsequently narrowed the issues by declining to press that argument. As the Court correctly stated in August, AGHL "no longer contests service of process." August 21, 2026 Order at 1 (ECF No. 64).

Any reasonable litigant would have acknowledged that AGHL's concession regarding that service-of-process issue rendered the Subpoena moot—but not Plaintiff; his goal is to harass AGHL and any entity or person associated in any way with AGHL (including its attorneys in this lawsuit), so he refuses to let this issue go. For example, this frivolous RICO lawsuit itself constitutes harassment of AGHL and affiliated companies. Plaintiff then filed a frivolous lawsuit in Arkansas state court against undersigned counsel's law firms, to harass and retaliate against counsel for doing their jobs as attorneys for AGHL and other defendants by removing Plaintiff's two other lawsuits from state court to this Court. Immediately after filing that state court lawsuit against undersigned counsel's firms, Plaintiff improperly tried to use that lawsuit to file motions to disqualify undersigned counsel from representing AGHL and other defendants in the three lawsuits pending in this Court, which motions were denied by the Court as frivolous. *See, e.g.*, September 1, 2026 Order (ECF No. 73). Another part of the harassment campaign involved Plaintiff submitting a frivolous professional-misconduct complaint against undersigned counsel (B. Robert Liu) to New York State's Attorney Grievance Committee (for some of the same events alleged in the state court lawsuit discussed in the immediately preceding sentence).

When deciding whether to order production of documents by CSC pursuant to the Subpoena, the Court should take into account not only Plaintiff's prior conduct in this lawsuit and

the other proceedings discussed in the immediately preceding paragraph but also Plaintiffs' criminal record. According to docket reports and records available online from caseinfo.arcourts.gov, Plaintiff is an ex-convict whose record includes felony convictions for: breaking or entering (December 2011 (disposition date)) (**Exhibit 1** attached); burglary residential (June 2012 (disposition date)) (**Exhibit 2** attached); possession of controlled substance meth => 2g < 10g (June 2012 (disposition date)) (**Exhibit 2** attached); theft of property >= $1,000 < $5,000 (April 2015 (disposition date)) (**Exhibit 3** attached); theft of property > $25,000 (March 2016 (disposition date)) (**Exhibit 4** attached); and possession of controlled substance meth < 2g (December 2016 (disposition date)) (**Exhibit 5** attached).[1]

In light of Plaintiff's apparent willingness to violate various criminal laws, it is not surprising that Plaintiff also is willing to abuse the subpoena power by seeking to enforce the Subpoena even though it focuses on an issue (CSC's rejection of service-of-process papers) that is now moot—and therefore is not "relevant to any party's claim or defense" and not "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). Those limitations on the scope of discovery apply to a subpoena served on a non-party. *See Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003) (applying Rule 26(b)(1) limitations on discovery when reviewing district court order that quashed non-party subpoenas). In other words, "a subpoena must ... seek relevant information," *Pioneer v. DART*, 417 F.3d 819, 821 (8th Cir. 2005), and discovery of information sought by a subpoena is prohibited "where no need is shown," *Missouri Dep't of Corrections*, 839

---

[1] The docket reports included in Exhibit 1 through Exhibit 5 have the following disclaimer: "This is not an official court record and should not be considered as such. For official court records, please contact the clerk of the court." The sentencing orders included in Exhibit 1 through Exhibit 5 have been downloaded from caseinfo.arcourts.gov. Exhibits 1 through Exhibit 5 have been redacted to obscure Plaintiff's birthdate and certain other information. If this lawsuit reaches trial and if AGHL seeks to impeach Plaintiff with any convictions during that trial, AGHL will use official court records for impeachment purposes. In any event, if the summary of Plaintiff's various felony convictions set forth above is inaccurate, Plaintiff will have the opportunity to correct the record when he files his opposition to this Motion.

F.3d 732, 736 (8th Cir. 2016) (quotation marks omitted). Moreover, "fishing expeditions" are not allowed in discovery; "[s]ome threshold of relevance" is required "to open wide the doors of discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

Given the current posture of this lawsuit—*i.e.*, AGHL not contesting service of process—the Subpoena is now moot, so Plaintiff is engaging in an improper "fishing expedition" that should be rejected by the Court. *See, e.g.*, *Roberts*, 352 F.3d at 360-62 (affirming order quashing subpoenas that district court held "were not directed at obtaining relevant, discoverable evidence" and criticized as "a 'fishing expedition'"). This Motion should be granted because the subpoena seeks irrelevant documents, and Plaintiff cannot show a valid need for those documents. AGHL's lack-of-personal-jurisdiction arguments (asserted in AGHL's pending motion to dismiss) are not based on, and do not depend on, whether CSC was (or was not) authorized to accept service of process for AGHL for this lawsuit or why CSC rejected Plaintiff's service-of-process papers. AGHL's lack-of-general-personal-jurisdiction argument involves where AGHL is "at home" (place of incorporation and principal place of business) within the meaning of *Daimler AG v. Bauman*, 571 U.S. 117 (2014). AGHL's lack-of-specific-personal-jurisdiction argument involves whether AGHL engaged in suit-related conduct that created a substantial connection with the forum within the meaning of *Walden v. Fiore*, 571 U.S. 277 (2014).

This Court has rejected Plaintiff's other discovery efforts at this early stage of this lawsuit, where: (a) motions to dismiss are pending; (b) some defendants have not been served (and have not appeared); and (c) no Rule 26(f) conference has occurred.[2] The discovery sought by the Subpoena fares no better than Plaintiff's prior discovery efforts, which the Court rejected because

---

[2] Rule 26(d)(1) of the Federal Rules of Civil Procedure prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f)." The Court has not allowed pre-Rule-26(f)-conference discovery in this case, and the other exceptions to the Rule 26(d)(1) prohibition on pre-Rule(f)-conference discovery do not apply here.

they were based on "speculation and conjecture" and addressed irrelevant issues, August 21, 2026 Order at 1 (ECF No. 64).

A trial court has the "discretionary power" to "prevent abuse of its process." *Manning v. Lockhart*, 623 F.2d 536, 539 (8th Cir. 1980) (per curiam); *Kitchen v. Developmental Servs. of Nebraska, Inc.*, Case No. 8:20CV08, 2022 WL 1094244, at *4 (D. Neb. Apr. 12, 2022) (quoting *Manning*, 623 F.2d at 539), and that "power should be exercised to … prevent harassment and undue expense of other parties and non-parties," *Kitchen*, 2022 WL 1094244, at *4 (quotation marks omitted). This Court should exercise that power by precluding Plaintiff from using the Subpoena to obtain documents from CSC.[3]

In conclusion, for the foregoing reasons, the Court should grant this Motion by quashing the Subpoena or, in the alternative, issuing a protective order precluding the discovery sought by the Subpoena.

Dated: October 19, 2026

Respectfully submitted,

McDANIEL WOLFF PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
1307 West 4th Street
Little Rock, AR 72201
(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

and

[3] AGHL expressly reserves the right to assert attorney-client privilege, the work product doctrine, and any other applicable privileges or protections with respect to any documents or communications that may be required to be produced as responsive to the Subpoena. Nothing set forth herein or in this Motion shall be construed as a waiver of any privileges or protections to which AGHL is entitled.

BALANCE LAW FIRM

B. Robert Liu (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited; Alibaba.com US E-Commerce Corp.; Alibaba.com U.S. LLC; AUS Merchant Services, Inc.; Alibaba Group (U.S.) Inc.; and AliExpress E-Commerce One Pte. Ltd.*